UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF NORTH MIAMI BEACH POLICE OFFICERS' AND FIREFIGHTERS' RETIREMENT PLAN and CITY OF NORTH MIAMI BEACH GENERAL EMPLOYEES' RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARCLAYS PLC, JAMES E. STALEY, TUSHAR MORZARIA, and C.S. VENKATAKRISHNAN,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiffs, City of North Miami Beach Police Officers' and Firefighters' Retirement Plan ("NMB Police & FF") and City of North Miami Beach General Employees' Retirement Plan ("NMB GE," collectively with NMB Police & FF, "NMB Funds" or "Plaintiffs"), by and through their attorneys, allege the following upon information and belief, except as to allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief are based upon, among other things, their counsel's investigation, which includes, without limitation, review and analysis of: (a) public filings made by Barclays PLC ("Barclays" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) press releases, shareholder communications, Annual General Meeting ("AGM") statements, postings on Barclays' investor relations website, and other public statements disseminated by Defendants (as defined below); (c) public filings made by Barclays Bank PLC ("BBPLC") with the SEC; (d) news articles and analyst reports concerning Barclays and BBPLC; (e) other publicly available information concerning Barclays, BBPLC, and the Individual Defendants (as defined below).

**NATURE OF THE ACTION**

1.      This is a federal securities class action alleging claims against Barclays and certain

of its officers and directors (collectively "Defendants") for violations of Sections 10(b) and 20(a)

of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and

SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of a "Class" of all

persons who purchased or otherwise acquired Barclays American Depositary Receipts ("ADRs")

on a U.S. open market during the class period February 18, 2021 through March 25, 2022, both

dates inclusive (the "Class Period"). Excluded from the Class are Defendants in this action, the

officers and directors of the Company during the Class Period (the "Excluded D&Os"), members

of Defendants' and Excluded D&Os' immediate families, legal representatives, heirs, successors

or assigns, and any entity in which Defendants or the Excluded D&Os have or had a controlling

interest.

2.      Barclays is a British universal bank, offering consumer banking and payments

services in the United Kingdom ("U.K."), United States ("U.S."), and Europe, as well as global

corporate and investment banking services.

3.      Barclays 2020 Annual Report on Form 20-F, filed with the SEC on February 18,

2021 ("2020 Barclays 20-F"), and 2021 Annual Report on Form 20-F, filed with the SEC on

February 23, 2022 ("2021 Barclays 20-F"), informed investors that Barclays' internal controls over

financial reporting were effective.

4.      However, these statements were materially false and misleading, or failed to

disclose material information necessary to make statements in the Form 20-Fs not misleading, in

violation of Section 10(b) of the Exchange Act and Rule 10b-5.

5.      As Barclays has since admitted, during the Class Period, Barclays internal controls

over financial reporting were not effective, and there was a material weakness in those controls,

due to the fact that starting on February 18, 2021, BBPLC, a wholly owned subsidiary of Barclays, issued and sold approximately $17.64 billion in unregistered securities over and above the maximum amount of securities registered in two BBPLC shelf registration statements, and the fact that the over-issuance was not immediately discovered.

6.     The over-issuance and sale of these unregistered securities was also a violation of U.S. securities laws and/or SEC regulations, and subjected Barclays to legal liability and claims of rescission.

7.     Given the potential exposure to the securities laws and legal liability from the over-issuance of securities, the failure to have controls in place to account for the number of securities issued against the number of securities registered is such an elementary failure of internal control that is so obvious as to be deliberately reckless.

8.     Barclays 2021 quarterly earnings releases and 2021 20-F were also materially false and misleading, or failed to disclose material information necessary to make the statements made therein not misleading because, among other reasons, (a) they failed to disclose the over-issuance, and that BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability and claims of rescission, and (b) as a result, Barclays' reported litigation and conduct expenses and total operating expenses were understated, and Barclays' reported net profit was overstated.

9.     On March 28, 2022, before the trading market for Barclays ADRs opened for the day, Barclays announced the over-issuance for the first time, that BBPLC had issued approximately $15.2 billion in unregistered securities under an August 2019 shelf registration statement, that BBPLC would commence a rescission offer for those unregistered securities, and that Barclays expected the rescission losses to be c.£450m. This disclosure revealed to the market

not only the fact of the over-issuance and Barclays liability for claims of rescission, but that Barclays did not have adequate internal controls to account for issued securities and prevent such an over-issuance of unregistered securities tied to a shelf registration statement.

10.     In response to this news, on March 28, 2022, the price of Barclays ADRs declined 10.61%, or $0.96 per ADR, from a closing price on Friday March 25, 2022 of $9.05 per ADR to a closing price of $8.09 per ADR on Monday March 28, 2022, the next trading day.

11.     Then, on July 28, 2022, before the trading market for Barclays ADRs opened for the day, Barclays issued interim financial results for the quarter ending June 30, 2022, and announced for the first time that BBPLC had also over-issued unregistered securities under a second BBPLC shelf registration statement. The July 28, 2022 financial results announcement also informed investors that Barclays had provisioned "£1,592m [approximately $1.940 billion] (December 2021: £220m) related to the overissuance of structured notes and £165m [approximately $201 million] (December 2021: nil) related to liabilities that could be incurred arising out of ongoing discussions in respect of a potential SEC resolution."

12.     In response to this news, on July 28, 2022, the price of Barclays ADRs declined $0.41 per ADR, or 5.2%, from a closing price of $7.89 per ADR on July 27, 2022 to a closing price of $7.48 per ADR on July 28, 2022.

13.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's ADRs when the truth was disclosed, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

15.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action is a civil action arising under the laws of the United States, and under Section 27 of the Exchange Act (15 U.S.C. § 78aa), which vests exclusive jurisdiction for violations of the Exchange Act in the District Courts of the United States.

16.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) for the following reasons:

a)   Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District;

b)   The Company's ADRs, each representative of four shares of Barclays ordinary shares, are listed and trade under the ticker symbol "BCS" on the New York Stock Exchange ("NYSE"), a national stock market based in this Judicial District;

c)   The depositary bank for Barclays' sponsored ADRs is JP Morgan Chase Bank, N.A. ("JPM"). JPM is incorporated as a bank with limited liability in the State of New York and has its principal office, where it administers its depositary receipts business, in New York City, within this Judicial District;

d)   The ADRs and the deposit agreement, which governs the relationship among Barclays, JPM, and the holders and beneficial owners of the ADRs, are governed by New York law;

e)   Barclays agent for service for its ADRs is the offices of BBPLC located in New York, NY, within this Judicial District; and

f)   According to Barclays' website, Barclays has Corporate Bank and Investment Bank employees and/or offices based in this Judicial District.

17.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

18.     Plaintiff NMB Police & FF is a public pension system organized for the benefit of current and retired North Miami Beach sworn police officers and certain retired North Miami Beach firefighters. Plaintiff NMB Police & FF manages approximately $126 million in assets. As set forth in the accompanying certification, incorporated by reference herein, Plaintiff NMB Police & FF purchased Barclays ADRs during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

19.     Plaintiff NMB GE is a public pension system organized for the benefit of current and retired employees of North Miami Beach and their beneficiaries. Plaintiff NMB GE manages approximately $100 million in assets. As set forth in the accompanying certification, incorporated by reference herein, Plaintiff NMB GE purchased Barclays ADRs during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

20.     Defendant Barclays is incorporated in England and has its principal executive offices in London. Barclays ADRs trade on the NYSE under the ticker symbol "BCS."

21.     Defendant James E. Staley ("Staley") served as the Chief Executive Officer ("CEO") of Barclays and a Director on Barclays' Board of Directors ("Barclays Board") from December 2015 through October 31, 2021.  From March 2019 through October 31, 2021, Staley also served as CEO of BBPLC and a Director on BBPLC's Board of Directors ("BBPLC Board").

22.     Staley signed a certification pursuant to 17 C.F.R. § 240.13(A)-14(A) that was attached to the Barclays 2020 20-F as Exhibit 12.1, and a certification pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 (18 U.S.C. § 1350) that was attached to the Barclays 2020 20-F as Exhibit 13.1, which are alleged to contain materially false and misleading statements or omit material information in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

23.     Defendant Tushar Morzaria ("Morzaria") served as Barclays' Group Finance Director, as a Director on the Barclays Board, and as a Director on the BBPLC Board during all times relevant hereto. Morzaria retired from the BBPLC Board, Barclays Board, and as Group Finance Director effective April 22, 2022.  Currently, Morzaria is Chairman of the Global Financial Institutions Group of Barclay's Investment Bank.

24.     Morzaria signed the Barclays 2020 20-F and Barclays 2021 20-F; certifications pursuant to 17 C.F.R. § 240.13(A)-14(A) that were attached to the Barclays 2020 20-F and Barclays 2021 20-F as Exhibits 12.1; and certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 that were attached to the Barclays 2020 20-F and Barclays 2021 20-F as Exhibits 13.1, all of which are alleged to contain materially false and misleading statements or omit material information in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

25.     Defendant C.S. Venkatakrishnan ("Venkatakrishnan") has served as the CEO of Barclays and a Director on the Barclays Board since November 1, 2021.  Venkatakrishnan has also served as the CEO of BBPLC and as a Director on the BBPLC Board since November 1, 2021.

26.     Venkatakrishnan signed a certification pursuant to 17 C.F.R. § 240.13(A)-14(A) that was attached to the Barclays 2021 20-F as Exhibit 12.1, and a certification pursuant to Section

906 of the Sarbanes-Oxley Act of 2022 that was attached to the Barclays 2021 20-F as Exhibit 13.1, which are alleged to contain materially false and misleading statements or omit material information in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

27.     Defendants Staley, Morzaria, and Venkatakrishnan, (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.

28.     The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

29.     Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations that were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

30.     The Company and the Individual Defendants are collectively referred to as the "Defendants."

## FACTUAL ALLEGATIONS

### Background

31.     Barclays is a transatlantic consumer and wholesale bank with global reach offering products and services across personal, corporate and investment banking, credit cards and wealth management.

32.     BBPLC is the non-ring-fenced bank of Barclays. BBPLC consists of a corporate and investment banking division, a consumer, cards and payments division, and a private bank. BBPLC is a wholly owned subsidiary of Barclays.

33.     In 2019, the membership of the Barclays Board and BBPLC Board was consolidated. Today, membership of the BBPLC Board comprises a subset of the Barclays Board. All members of the Barclays Board, except the Senior Independent Director (Brian Gilvary), and the Chairman of Barclays Bank UK PLC ("BBUKPLC") (Crawford Gillies) also serve on the BBPLC Board.[1]

34.     As a result of the consolidation, the Barclays Board Audit Committee and BBPLC Board Audit Committee were also consolidated, and BBPLC matters are covered in concurrent meetings.[2]  One of the roles of the Barclays Board Audit Committee is to evaluate the effectiveness of Barclays' internal controls.[3]

**BBPLC's Shelf Registration Statements**

35.     On July 18, 2016, BBPLC filed a shelf registration statement with the SEC on Form F-3 (File No. 333-212571), and the shelf registration statement was automatically effective that same day (the "July 2016 Shelf Registration Statement").[4] The July 2016 Shelf Registration

---

[1] Barclays 2020 20-F, at 8, available at www.sec.gov/Archives/edgar/data/0000312069/000156276221000043/fy2020arbplc.htm.  One other Non-Executive Director, Mary Ann Citrino, previously served on just the BBPLC board as well, but she resigned from the board on September 30, 2020. *See* BBPLC Annual Report on Form 20-F, filed with the SEC on February 18, 2021 ("BBPLC 2020 20-F"), at 2, available at www.sec.gov/Archives/edgar/data/312070/000156276221000041/fy2020arbbplc.htm.

[2] Barclays 2020 20-F at 14.

[3] Barclays 2020 20-F at 9, 14.

[4] *See* BBPLC July 2016 Shelf Registration Statement (July 18, 2016), available at www.sec.gov/Archives/edgar/data/312070/000119312516650074/d219304df3asr.htm.

Statement was subsequently amended by a post-effective amendment declared effective on March 30, 2018 (the "March 2018 Shelf Registration Statement").[5]

36.    The securities registered and issued pursuant to the March 2018 Shelf Registration Statement consisted of debt securities, warrants, preference shares, and American Depositary Shares ("ADS").

37.    A shelf registration statement is a filing with the SEC to register a public offering, usually where there is no present intention to immediately sell all the securities being registered. A shelf registration statement permits multiple offerings based on the same registration.

38.    On June 14, 2019, BBPLC filed another shelf registration statement with the SEC on Form F-3 (File No. 333-232144).[6] This shelf registration statement was declared effective on August 1, 2019 and registered $20.76 billion of debt securities (the "August 2019 Shelf Registration Statement").[7]

39.    The securities registered and issued pursuant to the August 2019 Shelf Registration Statement consisted of structured notes and exchange traded notes ("ETNs").

40.    As alleged below (¶¶98-100), Barclays has admitted that (a) from February 18, 2021 through March 2022, BBPLC sold approximately $16.37 billion of additional unregistered securities in excess of the maximum aggregate amount registered pursuant to the August 2019

---

[5] *See* BBPLC March 2018 Shelf Registration Statement (Mar. 30, 2018), available at www.sec.gov/Archives/edgar/data/312070/000119312518098676/d450194dposam.htm; Notice of Effectiveness (Mar. 30, 2018), available at www.sec.gov/Archives/edgar/data/312070/999999999518000718/xslEFFECTX01/primary_doc.xml.

[6] *See* BBPLC June 14, 2019 Shelf Registration Statement (June 14, 2019), available at www.sec.gov/Archives/edgar/data/312070/000119312519173793/0001193125-19-173793-index.htm.

[7] *See* BBPLC August Shelf 2019 Registration Statement (Aug. 1, 2019), available at www.sec.gov/Archives/edgar/data/312070/000119312519206925/d778493df3a.htm; Notice of Effectiveness (Aug. 1, 2019), available at www.sec.gov/Archives/edgar/data/312070/999999999519001783/xslEFFECTX01/primary_doc.xml.

Shelf Registration Statement (for a total of approximately $37 billion), and (b) BBPLC sold an additional $1.27 billion of unregistered securities in excess of the maximum aggregate amount registered pursuant to the March 2018 Shelf Registration Statement.

41.     Also, as alleged below (¶82), Barclays has admitted that "by virtue of the fact that the over-issuance occurred and was not immediately identified, both [Barclays] and BBPLC had a material weakness in relation to certain aspects of their internal control environment and, as a consequence, their internal control over financial reporting for the year ended 31 December 2021 was not effective…"

42.     Because the over-issuance occurred starting February 18, 2021 and was not immediately identified, the material weakness in internal controls also plainly existed prior to and as of February 18, 2021.

43.     On August 1, 2022, Barclays commenced a rescission offer for the $17.6 billion over-issued securities that were sold pursuant to the March 2018 Shelf Registration Statement and August 2019 Shelf Registration Statement.

44.     As alleged below (¶¶81, 84-85, 89, 91), as a result of the over-issuance and rescission offer, Barclays and BBPLC both restated their financial results filed on SEC Form 20-F for the year ended December 31, 2021.

**<u>Defendants' Materially False and Misleading Statements Issued During the Class Period</u>**

45.     The Class Period begins on February 18, 2021, when BBPLC first sold unregistered securities in excess of the maximum aggregate amount of securities registered pursuant to the August 2019 Shelf Registration Statement.

46.     Throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material information about both the improper over-issuance of securities by BBPLC and the strength of Barclays internal controls and procedures.

47.     On February 18, 2021, the same day that BBPLC exceeded the limit of registered securities under the August 2019 Shelf Registration Statement, Barclays filed the Barclays 2020 20-F. The Barclays 2020 20-F was signed by Defendant Morzaria.

48.     In the Barclays 2020 20-F, Barclays described the Company's "robust internal controls" specifically stating that Company had recently "successfully completed" a three-year program, known as the Barclays Internal Control Environment Programme or "BICEP," that "was focus[ed] on strengthening the internal control environment across the Group," and had left the Company's internal controls environment "in a much stronger position."[8]

49.     The Barclays 2020 20-F further stated that the Company "is committed to operating within a strong system of internal control," and lays out eight "Principal Risks…: Credit risk, Market risk, Treasury and Capital risk, Operational risk, Model risk, Reputation risk, Conduct risk and Legal risk." The Barclays 2020 20-F went on to state that the Company's "frameworks, policies and standards enable Barclays to meet regulators' expectations relating to internal control and assurance." [9]

50.     The Barclays 2020 20-F stated that the Barclays Board Audit Committee "concluded that, throughout the year ended 31 December 2020 and to date, the Group has operated a sound system of internal control that provides reasonable assurance of financial and operational controls and compliance with laws and regulations." [10]

51.     Barclays 2020 20-F also stated that "Management has assessed the internal control over financial reporting as of 31 December 2020. In making its assessment, management utilized

---

[8] Barclays 2020 20-F at 14.

[9] *Id.* at 39.

[10] *Id.*

the criteria set out in the 2013 COSO framework and concluded that, based on its assessment, the

internal control over financial reporting was effective as of 31 December 2020."[11]

52.     Attached as Exhibit 12.1 to the Barclays 2020 20-F were certifications pursuant to

17 C.F.R. 240.13(A)-14(A) signed by Defendants Staley and Morzaria, which stated:

1. I have reviewed this annual report on Form 20-F of Barclays PLC;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in this report;

4. The company's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and15d-15(f)) for the company and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the company, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the company's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the company's internal control over financial reporting that occurred during the period covered by the annual report that

---

[11] *Id.* at 40.

has materially affected, or is reasonably likely to materially affect, the company's internal control over financial reporting; and

5. The company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the company's auditors and the audit committee of the company's boards of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the company's internal control over financial reporting.

53.     Attached as Exhibit 13.1 to the Barclays 2020 20-F was a certification pursuant to

Section 906 of the Sarbanes-Oxley Act of 2022 signed by Defendants Staley and Morzaria, which

stated:

Pursuant to section 906 of the Sarbanes-Oxley Act of 2002 (subsections (a) and (b) of section 1350, chapter 63 of title 18, United States Code), each undersigned officer of Barclays PLC, a public limited company incorporated under the laws of England and Wales ("Barclays"), hereby certifies, to such officer's knowledge, that:

The Annual Report on Form 20-F for the year ended December 31, 2020 (the "Report") of Barclays fully complies with the requirements of section 13(a) of the Securities Exchange Act of 1934 and information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of Barclays.

54.     The statements in the Barclays 2020 20-F and the attached certifications above in

paragraphs ¶¶48-53 were untrue statements of material facts or failed to state material facts

necessary in order to make the statements made, in the light of the circumstances under which they

were made, not misleading, because:

a)      As of December 31, 2020 and February 18, 2021, Barclays had a material

weakness in its internal control environment due to the fact that the over-issuance had occurred

and was not immediately identified; and

14

b)        They failed to disclose that as of February 18, 2021 (i) BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement, (ii) BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability, and (iii) BBPLC was required to conduct a recission offer for those unregistered securities.

55.      On April 30, 2021, Barclays issued its Q1 2021 Results Announcement, containing financial results for Barclays for the quarter ending March 31, 2022 ("Q1 2021 RA"). A copy of the Q1 2021 RA was attached as Exhibit 99.1 to a Form 6-K filed by Barclays with the SEC on April 30, 2021 ("April 30, 2021 Form 6-K").[12]

56.      The Q1 2021 RA and April 30, 2021 Form 6-K contained untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because they failed to disclose that, as of March 31, 2021 and April 30, 2021, (a) BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement, (b) BBPLC was required to conduct a recission offer for those unregistered securities, (c) BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability; and (d) Barclays had a material weakness in its internal control environment due to the fact that the over-issuance had occurred and was not immediately identified.

57.      The Q1 2021 RA and April 30, 2021 Form 6-K also contained untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because as a result of

---

[12] Barclays Q1 2021 RA, available at
www.sec.gov/Archives/edgar/data/312069/000156276221000175/q121ex991.htm.

the over-issue, violations of securities laws and regulations, and need to conduct a recission offer, Barclays' litigation and conduct expenses and total operating expenses as reported in the Q1 2021 RA and April 30, 2021 Form 6-K were understated, and profit before tax and profit after tax as reported in the Q1 2021 RA and April 30, 2021 Form 6-K were overstated.[13]

58.     On July 28, 2021, Barclays issued its Interim 2021 Financial Results for the six month period ending June 30, 2021 ("Q2 2021 RA"). A copy of the Q2 2021 RA was attached as Exhibit 99.1 to a Form 6-K filed by Barclays with the SEC on July 28, 2021 ("July 28, 2021 6-K").[14]

59.     The Q2 2021 RA and July 28, 2021 Form 6-K contained untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because they failed to disclose that, as of June 30, 2021 and July 28, 2021, (a) BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement, (b) BBPLC was required to conduct a recission offer for those unregistered securities, (c) BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability; and (d) Barclays had a material weakness in its internal control environment due to the fact that the over-issuance had occurred and was not immediately identified.

60.     The Q2 2021 RA and July 28, 2021 Form 6-K also contained untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because as a result of the over-issue, violations of securities laws and regulations, and need to conduct a recission offer,

---

[13] *See id.* at 6.

[14] Barclays Q2 2021 RA, available at www.sec.gov/ix?doc=/Archives/edgar/data/0000312069/000031206921000064/bcs-20210630.htm.

Barclays' litigation and conduct expenses and total operating expenses as reported in the Q2 2021 RA and July 28, 2021 Form 6-K were understated, and profit before tax and profit after tax as reported in the Q2 2021 RA and July 28, 2021 Form 6-K were overstated.[15]

61.    On October 21, 2021, Barclays issued its Q3 2021 Results Announcement, containing financial results for the nine months ended September 30, 2021 ("Q3 2021 RA"). A copy of the Q3 2021 RA was attached as Exhibit 99.1 to a Form 6-K filed by Barclays with the SEC on October 21, 2021.[16]

62.    The Q3 2021 RA and October 21, 2021 Form 6-K contained untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because they failed to disclose that, as of September 30, 2021 and October 21, 2021, (a) BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement, (b) BBPLC was required to conduct a recission offer for those unregistered securities, (c) BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability; and (d) Barclays had a material weakness in its internal control environment due to the fact that the over-issuance had occurred and was not immediately identified.

63.    The Q3 2021 RA and October 21, 2021 Form 6-K also contained untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because as a result of the over-issue, violations of securities laws and regulations, and need to conduct a recission offer, Barclays' litigation and conduct expenses and total operating expenses as reported in the Q3

---

[15] *See id.* at 7.

[16] Barclays Q3 2021 RA, available at
www.sec.gov/Archives/edgar/data/312069/000031206921000089/q321barclaysplc6-kex991.htm.

2021 RA and October 21, 2021 Form 6-K were understated, and profit before tax and profit after tax as reported in the Q3 2021 RA and October 21, 2021 Form 6-K were overstated.[17]

64.    On February 23, 2022, Barclays filed the Barclays 2021 20-F.[18] The Barclays 2021 20-F was signed by defendant Morzaria.

65.    In the Barclays 2021 20-F, Barclays stated that the Audit Committee is charged with "Overseeing the integrity of our financial disclosures and the effectiveness of the internal control environment," and is "Keenly focused on the Group's internal control environment."[19]

66.    The Barclays 2021 20-F further stated that Audit Committee "continued to oversee the ongoing evolution and enhancement of the internal control environment."[20]

67.    The Barclays 2021 20-F stated that the Company "is committed to operating within a strong system of internal control," and laid out nine "Principal Risks…: Credit risk, Market risk, Treasury and Capital risk, Operational risk, Climate risk, Model risk, Reputation risk, Conduct risk and Legal risk." The Barclays 2021 20-F went on to note that the Company's "frameworks, policies and standards enable Barclays to meet regulators' expectations relating to internal control and assurance." [21]

68.    The Barclays 2021 20-F stated that the Barclays Board Audit Committee "concluded that, throughout the year ended 31 December 2021 and to date, the Group has operated

---

[17] *See id.* at 5.

[18] *See* Barclays 2021 20-F, available at
www.sec.gov/Archives/edgar/data/0000312069/000031206922000059/bcs-20211231.htm.

[19] *Id.* at 22.

[20] *Id.*

[21] *Id.* at 45.

a sound system of internal control that provides reasonable assurance of financial and operational controls and compliance with laws and regulations."[22]

69.     Additionally, the Barclays 2021 20-F stated that "Management has assessed the internal control over financial reporting as at 31 December 2021…and concluded that, based on its assessment, the internal control over financial reporting was effective as at 31 December 2021."[23]

70.     Attached as Exhibit 12.1 to the Barclays 2021 20-F were certifications pursuant to 17 C.F.R. 240.13(A)-14(A) signed by Defendants Venkatakrishnan and Morzaria.  The text of the certifications were identical to the certifications attached as Exhibit 12.1 to the Barclays 2020 20-F (¶52).

71.     Attached as Exhibit 13.1 to the Barclays 2021 20-F was a certification pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 signed by Defendants Venkatakrishnan and Morzaria. The text of the certification was identical to the certification attached as Exhibit 13.1 to the Barclays 2020 20-F (¶53), except the certification was made for the Barclays 2021 20-F.

72.     The statements in the Barclays 2021 20-F and the attached certifications above in paragraphs ¶¶65-71 were untrue statements of material facts or failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, because:

         a)      As of December 31, 2021 and February 23, 2022, Barclays had a material weakness in its internal control environment due to the fact that the over-issuance had occurred and was not immediately identified;

---

[22]*Id.*

[23] *Id.* at 46.

b)      They failed to disclose that, as of December 31, 2021 and February 23, 2022, (i) BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement, (ii) BBPLC was required to conduct a recission offer for those unregistered securities, and (iii) BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability; and

c)      As a result of the over-issue, violations of securities laws and regulations, and need to conduct a recission offer, Barclays' litigation and conduct expenses and total operating expenses as reported in the Barclays 2021 20-F were understated, and profit before tax and profit after tax as reported in the Barclays 2021 20-F were overstated.[24]

**The Truth Is Revealed**

73.     On March 28, 2022, before the market for Barclays ADRs opened for the day, Barclays issued a press release and/or statement announcing that BBPLC had sold $15.2 billion of unregistered securities in excess of the maximum $20.8 billion of securities registered under the August 2019 Shelf Registration Statement, BBPLC would conduct a rescission offer, and that Barclays expected the rescission losses to be c. £450 million:

> **BBPLC has determined that the securities offered and sold under its US shelf registration statement during a period of approximately one year exceeded the registered amount (such excess, the "Affected Securities")[Note 1] giving rise to a right of rescission among certain purchasers of Affected Securities requiring BBPLC to repurchase the Affected Securities at their original purchase price. As a result, BBPLC has elected to conduct a rescission offer to eligible purchasers of the Affected Securities. Details of the rescission offer will be published by BBPLC in due course.**
>
> Based on current market prices of the Affected Securities and the estimated pool of potentially eligible purchasers electing to participate in the rescission offer, **Barclays expects the rescission losses (net of tax) to be c.£450m…**
>
> The above represents Barclays' best estimate at this time of losses which may arise from these matters and will be reflected in BPLC's Q122 Results Announcement.

---

[24] *See id.* at 196.

Barclays is also assessing the impact of these matters on prior period financial statements of BBPLC….

Barclays has commissioned an independent review of the facts and circumstances relating to this matter including, among other things, the control environment related to such issuances. Separately, regulatory authorities are conducting inquiries and making requests for information….

Note 1: **In August 2019, BBPLC registered US$20.8bn in maximum aggregate offering price of securities (the "Registered Amount") and has exceeded the Registered Amount by approximately US$15.2bn**.[25]

74. A copy of Barclays March 28, 2022 press release was filed by Barclays with the SEC on Form 6-K on March 28, 2022.

75. Analysts quickly seized on this news. On the same day, UBS issued an analyst report on Barclays, noting that:

an important and costly control issue like this necessarily - as confirmed by the company - leads to an internal review and 'enquiries and requests for information' from regulators. We could, we think, see increased operational risk capital requirements in addition to the refund loss and associated review process and control remediation opex [operating expense]. We'd expect such costs to be modest but flag regulatory consequences as a key uncertainty.

76. Similarly, an analyst report issued by Jeffries the same day described Barclays' announcement of the over-issuance as "[a]n unhelpful matter which has triggered an independent review around the control environment + regulatory enquiries may weigh on sentiment."

77. In response to this news, on March 28, 2022, the price of Barclays ADRs declined $0.96 per ADR, or 10.61%, from a closing price on Friday March 25, 2022 of $9.05 per ADR to a closing price of $8.09 per ADR on Monday March 28, 2022 (the next trading day) on exceptionally heavy volume of 38.775 million ADRs, more than six times the average daily trading volume of Barclays ADRs.

---

[25] *Barclays PLC and Barclays Bank PLC  Impact of over-issuance under BBPLC US Shelf* (Mar. 28, 2022), available at www.sec.gov/Archives/edgar/data/0000312069/000165495422003926/a1574gn.htm (emphasis added).

78.     On April 28, 2022, before the market for Barclays ADRs opened for the day, Barclays issued its Q1 2022 Results Announcement, which contained financial results for the three months ended March 31, 2022 ("Q1 2022 RA"). A copy of the Q1 2022 RA was filed by Barclays with the SEC as Exhibit 99.1 to a Form 6-K on April 28, 2022.[26]

79.     In the Q1 2022 RA, Barclays provided additional information on the over-issuance, including that BBPLC had started selling securities in excess of the $20.76 billion maximum aggregate amount registered under the August 2019 Shelf Registration Statement on February 18, 2021, and updating the public on reserves and liabilities related to the over-issuance:

> Barclays has a provision of £540m at Q122 relating to this matter, £320m (post-tax impact of £240m) of which was recognised in Q122 and £220m (post-tax of £170m) recognised in 2021 in relation to the c.US$13bn over issuance of structured notes which represents the best estimate of the rescission right investors have for these securities. A contingent liability exists in relation to the c.US$2bn over issuance of ETNs due to evidentiary challenges and the high level of trading in the securities. A contingent liability also exists in relation to any potential claims or enforcement actions taken against Barclays Bank PLC but there is currently no indication of the timetable for resolution and it is not practicable to provide an estimate of the financial effects. Barclays Bank PLC is unable to assess the likelihood of liabilities that may arise out of any civil claims or enforcement actions. Any such liabilities, claims or actions could have an adverse effect on Barclays Bank PLC's and the Group's business, financial condition, results of operations and reputation as a frequent issuer in the securities markets.[27]

80.     In the Q1 2022 RA, Barclays admitted that the securities sold in excess of the maximum aggregate amount were unregistered, and that there was the potential for civil claims and regulatory enforcement actions to be brought against BBPLC:

> Securities issued in excess of the limit are considered to be 'unregistered securities' for the purposes of US securities law with [] certain purchasers of those securities having the right to require [BBPLC] to repurchase those securities at their original purchase price with compensatory interest and the potential for the certain

---

[26] Barclays Q1 2022 RA, available at www.sec.gov/Archives/edgar/data/312069/000031206922000073/version2-barclaysplc6xkcom.htm.

[27] *Id.* at 31.

purchasers to bring civil claims and the SEC and other regulators to take enforcement actions against [BBPLC].[28]

81.     In the Q1 2022 RA, Barclays stated that, as a result of the over-issuance, it would restate the financial statements in BBPLC's 2021 Annual Report on Form 20-F, filed by BBPLC with the SEC on February 23, 2022 ("BBPLC 2021 20-F"), and was in discussions with the SEC as to whether it would need to withdraw, refile, or restate Barclays' financial statements included in the Barclays 2021 20-F:

> Financial Statements in BPLC 2021 Form 20-F: Barclays is currently in discussions with the SEC regarding whether the fact that the financial statements of BPLC included in its Annual Report on Form 20-F for the year ended 31 December 2021 (the BPLC 2021 Form 20-F) do not reflect the £220m provision at 31 December 2021 for the over-issuance of structured notes and a contingent liability disclosure in respect of the over-issuance of exchange traded notes (ETNs) and related potential claims and enforcement actions against BBPLC and its affiliates constitutes a material accounting error under US securities laws. Depending on the outcome of those discussions, Barclays may be required to withdraw and refile (Restate or Restatement) the financial statements included in the BPLC 2021 Form 20-F to reflect these matters. In any event, Barclays will be required to reflect the financial impact of these matters by adjusting the comparative financial periods in its subsequent financial filings until the error has been fully corrected….

> due to the lower applicable materiality threshold for BBPLC, on 27 April 2022 the directors of BBPLC determined that BBPLC would Restate the financial statements included in its Annual Report on Form 20-F for the year ended 31 December 2021 (the BBPLC 2021 20-F) previously filed with the SEC. BBPLC intends to Restate such financial statements to reflect both the provision and the contingent liability referred to above. There will therefore be differences between the 2021 financial statements included in the BBPLC 2021 Form 20-F once amended and the BBPLC 2021 ARA, and investors are therefore cautioned to exercise care in using these financial statements during the course of 2022.[29]

82.     The Q1 2022 RA also confirmed what investors and the public already knew once the over-issuance was announced on March 28, 2022 – Barclays' internal controls were not effective and had a material weakness:

---

[28] *Id.*

[29] *Id.* at 32.

management has concluded that, by virtue of the fact that the over-issuance occurred and was not immediately identified, both BPLC and BBPLC had a material weakness in relation to certain aspects of their internal control environment and, as a consequence, their internal control over financial reporting for the year ended 31 December 2021 was not effective under the applicable Committee of Sponsoring Organizations (COSO) Framework. The material weakness that has been identified relates to a failure to monitor issuances of structured notes and ETNs under BBPLC's US Shelf during the period in which BBPLC's status changed from a "well-known seasoned issuer" to an "ineligible issuer" for US securities law purposes, and BBPLC was required to pre-register a set amount of securities to be issued under its US Shelf with the SEC. As a result of this failure, BBPLC issued securities in excess of that set amount.[30]

83.   The Q1 2022 RA also informed investors that as a result of these material weaknesses in internal controls, Barclays and BBPLC would be filing amendments to their respective 2021 20-Fs:

Amendments to Forms 20-F: BPLC is preparing an amendment to the BPLC 2021 Form 20-F to reflect the change in management's assessment of BPLC's internal control over financial reporting and KPMG's auditor attestation thereon as well as its disclosure controls and procedures. BBPLC is preparing an amendment to the BBPLC 2021 Form 20-F to include its Restated 2021 financial statements and to reflect the change in management's assessment of internal control over financial reporting and disclosure controls and procedures. These amendments will be filed as soon as practicable.[31]

84.   The Q1 2022 RA also instructed investors that until these amendments and restatements were made, investors should not rely on Barclays' or BBPLC's 2021 20-Fs:

Until the BPLC 2021 Form 20-F has been amended to disclose that its internal controls were not effective, KPMG's audit report should not be relied upon by users of BPLC's financial statements. Until BBPLC has Restated its financial statements for the year ended 31 December 2021 and amended the BBPLC 2021 Form 20-F, investors and other users of BBPLC's filings with the SEC are cautioned not to rely on the financial statements included in the BBPLC 2021 Form 20-F.[32]

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

85.     The Q1 2022 RA also informed investors that a portion of the costs associated with the right of rescission for the unregistered securities issued in excess of the amounts registered by the August 2019 Shelf Registration Statement "are attributable to the financial statements for the year ended 31 December 2021," and "[t]his omission in the financial statements has resulted in the restatement of the prior period comparatives with the following impact":

- Litigation and conduct charges in the income statement in relation to 2021 were under reported by £220m increasing total operating expenses from a reported £14,439m to £14,659m. Provisions on the balance sheet have increased from a reported £1,688m to £1,908m.

- Taxation charge in the income statement has reduced by £50m from a reported £1,188m to £1,138m with a corresponding decrease in current tax liabilities on the balance sheet from £739m to £689m.

- CET1 capital decreased £0.2bn from £47.5bn to £47.3bn with the CET1 ratio remaining unchanged at 15.1%. The T1 ratio moved from 19.2% to 19.1% and Total capital ratio moved from 22.3% to 22.2%

- Leverage exposure increased £1.9bn with the UK leverage ratio decreasing from 5.3% to 5.2% and the average UK leverage ratio remaining unchanged at 4.9%

- Total own funds and eligible liabilities decreased £0.2bn to £108bn, which was in excess of a restated requirement to hold £94bn of own funds and eligible liabilities.

The overall impact of the restatement on the 2021 comparatives has been to reduce the reported profit after tax from £7,226m to £7,056m for the full financial year. This reduction in profit after tax was incurred after Q121 and as such, no adjustments have been made to the Q121 reported income statement figures.

Reflecting this adjustment in this Q122 results announcement results in a pre-tax provision of £220m (£170m post-tax) being reflected as at 31 December 2021. This reduces the 2022 impact of the provision previously communicated on 28 March 2022 and results in a pre-tax provision of £320m (£240m post-tax) being recognised in Q122. Had such adjustment not been made the impact on the key performance ratios for Q122 would have been to reduce the return on average tangible shareholders equity to 10.1% and increase the cost:income ratio to 67%.[33]

---

[33] *Id.* at 33.

86.     On May 4, 2022, Barclays held its 2022 Annual General Meeting (AGM), where

Nigel Higgins, Chairman of Barclays, and Defendant Venkatakrishnan addressed investors in their

2022 AGM Statements.[34] In his 2022 AGM Statement, Higgins addressed the over issuance:

> As I have said before, **we do not get everything right**. Let me say a few words
> about our recently reported failure to comply with SEC registration requirements,
> **a failure which has cost us hundreds of millions of pounds, and more in
> reputation. First, all of us here were dismayed that, after so much progress,
> we had this entirely self-inflicted problem.** We have not yet finished the review
> but **I believe that we will find that, in all our complexities, we missed some
> simple tasks**. **This is not rocket science** and we can and will do better, learning
> the lessons from this particular issue and applying discipline across all of our
> controls. [(emphasis added).]

87.     Venkatakrishnan also addressed the over-issuance in his remarks on May 4, 2022:

> Our strong performance in 2021 has carried over into the first quarter of this year,
> although we have seen a disappointing increase in costs. This has been driven in
> particular by the over securities in the US, which Nigel talked about. Let me echo
> his comments. **This situation was entirely avoidable and I am deeply
> disappointed that it occurred.**
>
> The necessity of a strong controls culture has never been clearer to me. In fact, **we
> have made considerable progress improving our controls since 2016. So the
> fact that this happened is particularly upsetting.** [(emphasis added).]

88.     Higgins' and Venkatakrishnan's admissions that the over-issuance was entirely

avoidable, that it was a simple control that was not in place, and that it was not "rocket science" to

stop the over-issuance from taking place, evidences that the Defendants and the other officers and

directors responsible for ensuring adequate internal controls over financial reporting were severely

or deliberately reckless in creating those internal controls and not ensuring internal controls were

in place to stop the over-issuance.

---

[34] Barclays 2022 AGM Statement, available at home.barclays/content/dam/home-
barclays/documents/investor-relations/IRNewsPresentations/2022News/20220504-Barclays-AGM-
statements-2022.pdf.

89.     On May 16, 2022, before the market for Barclays ADRs opened for the day, Barclays issued a press release, which announced that Barclays would restate its financial statements included in its 2021 20-F:

> Barclays PLC ("BPLC") disclosed in its Q122 Results Announcement that it was in discussions with the US Securities and Exchange Commission (the "SEC") about whether it needed to withdraw and refile ("Restate" or "Restatement") the financial statements included in its Annual Report on Form 20-F for the financial year ended 31 December 2021 ("2021 Form 20-F") to reflect the impact of the previously announced over-issuance of structured notes and exchange traded notes by Barclays Bank PLC ("BBPLC") under its US shelf registration statement.

> Following the conclusion of these discussions, **the Board determined on 13 May 2022 that BPLC will Restate the financial statements included in the 2021 Form 20-F**....

> Investors and other users of BPLC's filings with the SEC are cautioned not to rely on the financial statements included in the 2021 Form 20-F, or KPMG LLP's audit report thereon, until the amended 2021 Form 20-F has been filed.[35]

90.     A copy of the May 16, 2022 press release was filed by Barclays with the SEC on Form 6-F on May 16, 2022.

91.     On May 23, 2022, during the trading day for Barclays ADRs, Barclays filed its an Amended 2021 Annual Report on Form 20-F ("Barclays 2021 20-F/A"), which, among other things:

a)     "reflect[ed] the restatement of the Company's financial statements and consolidated financial statements as at and for the year ended 31 December 2021, including the notes thereto (Restated Financial Statements), which are hereby refiled to reflect both a £220m litigation and conduct provision and associated income statement charge recognised in the year ended 31 December 2021 and a contingent liability disclosure in respect of the impact of the c.$15bn over-issuance of securities by Barclays Bank PLC (BBPLC) in excess of the maximum

---

[35] *See Barclays PLC Restatement of Barclays PLC financial statements in its 2021 Form 20-F* (May 16, 2022), available at www.sec.gov/Archives/edgar/data/0000312069/000165495422006820/a6230l.htm.

aggregate offering price registered under BBPLC's Registration Statement on Form F-3, as declared effective by the SEC in August 2019 (2019 F-3) (the Over-issuance of Securities), and related potential claims and enforcement actions against BBPLC and its affiliates, as well as a small number of non-adjusting post-balance sheet events, as described in further detail under Note 1a to the Restated Financial Statements;"

b)    Amended various disclosures and risk factors in the 2021 20-F "to reflect management's conclusion that the Company's internal control over financial reporting and disclosure controls and procedures were not effective under the applicable Committee of Sponsoring Organizations (COSO) Framework as at 31 December 2021 due to a material weakness in the Company's internal control over financial reporting identified subsequent to the Original Filing Date as a result of the Over-issuance of Securities having occurred and not being immediately identified, as publicly disclosed by the Company in its announcement of 28 March 2022, and to disclose the remediation efforts undertaken by the Company's management as at the date of this filing;"

c)    "include[d] the revised Report of Independent Registered Public Accounting Firm of KPMG LLP (KPMG) on the Restated Financial Statements" and "Internal Controls Over Financial Reporting."[36]

92.    The Barclays 2021 20-F/A was signed by Anna Cross, the Group Finance Director and who succeeded Defendant Morzaria upon Morzaria's retirement on April 22, 2022.

93.    On July 25, 2022, before the market for Barclays ADRs opened for the day, Barclays issued a press release announcing that BBPLC was expected to commence the rescission

---

[36] Barclays 2021 20-F/A, at Explanatory Note, available at www.sec.gov/ix?doc=/Archives/edgar/data/0000312069/000031206922000085/bcs-20211231.htm.

offer on August 1, 2022 for a total of approximately "$17.6 billion of relevant securities issued in excess of amounts registered by BBPLC under its U.S. shelf registration statements. Such securities consist of c.U.S.$14.8 billion of structured notes and c.U.S.$2.8 billion of exchange-traded notes."[37] A copy of the July 25, 2022 press release was filed by Barclays with the SEC on Form 6-F on July 25, 2022.

94.   On July 28, 2022, before the trading market for Barclays ADRs opened for the day, Barclays issued interim financial results for the six month period ending June 30, 2022 ("Q2 2022 RA").[38] A copy of the Q2 2022 RA was filed by Barclays with the SEC on as Exhibit 99.1 to a Form 6-F on July 28, 2022

95.   In the Q2 2022 RA, Barclays informed investors for the first time that BBPLC had also over-issued unregistered securities under a second shelf registration statement: "while the vast majority of the over-issuance occurred under the [August 2019 Shelf Registration Statement], a small portion of the over-issuance also occurred under the Predecessor Shelf [the March 2018 Shelf Registration Statement]."[39]

96.   In the Q2 2022 RA, Barclays also updated its reserves for the rescission offer and regulatory and civil liability related to the over-issuance and rescission offer:

> As at 30 June 2022, Barclays PLC has recogni[z]ed a balance sheet provision of £1,757m (December 2021: £220m) in relation to this matter, out of which £1,592m [approximately $1.940 billion] (December 2021: £220m) relates to the overissuance of structured notes and £165m [approximately $201 million]

---

[37] *See Barclays Bank PLC to Commence Rescission Offer* (July 25, 2022), available at www.sec.gov/Archives/edgar/data/0000312069/000165495422010013/a6008t.htm.

[38] Barclays Q2 2022 RA, available at www.sec.gov/ix?doc=/Archives/edgar/data/0000312069/000031206922000097/bcs-20220630_d2.htm.

[39] *Id.* at 30.

(December 2021: nil) relates to liabilities that could be incurred arising out of ongoing discussions in respect of a potential SEC resolution.[40]

97.    In response to this news, on July 28, 2022, the price of Barclays ADRs declined $0.41 per ADR, or 5.2%, from a closing price of $7.89 per ADR on July 27, 2022 to a closing price of $7.48 per ADR on July 28, 2022.

98.    On August 1, 2022, before trading in Barclays ADRs had opened for the day, BBPLC filed a Form 424B5 with the SEC and commenced a recission offer for $17.6 billion over-issued securities that were sold pursuant to the March 2018 Shelf Registration Statement and August 2019 Shelf Registration Statement, whereby BBPLC has offered "to repurchase the applicable securities from relevant purchasers who acquired such securities, at their purchase price plus interest, less the amount of any interest, coupon payments, principal or other income received pursuant to the terms of the securities, or to pay rescissory damages if such securities, after being purchased, were sold, redeemed or matured at a loss."[41]

99.    The August 1, 2022 rescission offer disclosed that from February 18, 2021 through March 2022, BBPLC sold approximately $16.37 billion of unregistered securities in excess of the maximum $20.8 billion of securities registered under the August 2019 Shelf Registration Statement (for a total of approximately $37 billion).[42]

100.    The August 1, 2022 rescission offer also disclosed that BBPLC sold an additional $1.27 billion of unregistered securities in excess of the maximum aggregate amount registered pursuant to the March 2018 Shelf Registration Statement. [43]

---

[40] *Id.*

[41] BBPLC Recission Offer (Aug. 1, 2022) ("BBPLC Recission Offer"), at S-6, available at www.sec.gov/Archives/edgar/data/312070/000119312522207620/d386666d424b5.htm.

[42] *Id.*

[43] *Id.*

## CLASS ACTION ALLEGATIONS

101.    Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased or otherwise acquired Barclays ADRs on a U.S. open market during the class period February 18, 2021 through March 25, 2022, both dates inclusive (the "Class"). Excluded from the Class are Defendants in this action, the officers and directors of the Company during the Class Period (the Excluded D&Os), members of Defendants' and Excluded D&Os' immediate families, legal representatives, heirs, successors or assigns, and any entity in which Defendants or the Excluded D&Os have or had a controlling interest.

102.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class.

103.    Throughout the Class Period, Barclays ADRs actively traded on the NYSE (an open and efficient market) under the symbol "BCS." Millions of Barclays ADRs were traded publicly during the Class Period on the NYSE.

104.    As of August 12, 2022, the Company had more than 183 million ADRs outstanding. Record owners and other members of the Class may be identified from records maintained by Barclays or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

105.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

106.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests that conflict with those of the Class.

107.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)      whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)      whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders by Defendants during the Class Period misrepresented or omitted material facts about Barclays' internal controls, business, operations, and financial statements, or BBPLC's issuance of unregistered securities;

d)      whether the market price of Barclays ADRs during the Class Period was artificially inflated and/or maintained due to the material misrepresentations or omissions and/or failures to correct the material misrepresentations or omissions complained of herein; and

e)      the extent to which the members of the Class have sustained damages and the proper measure of damages,

108.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

109.    Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members

of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

110.    As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated by Defendants during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

111.    Among other things, the Individual Defendants, and other Barclays' officers and directors who were responsible for creating and overseeing Barclays' internal controls over financial reporting, failed to install "simple" control procedures to ensure that the "entirely avoidable" over-issuance of billions of dollars of unregistered securities above the maximum amount of securities registered under Barclays March 2018 and August 2019 Shelf Registration Statements did not occur. As admitted by Nigel Higgins, Chairman of Barclays, "this is not rocket science."

112.    Given the potential exposure to the securities laws and legal liability from the over-issuance of securities, the failure to have such simple control procedures in place to account for the number of securities issued against the number of securities registered is such an elementary failure of internal control that is so obvious as to be deliberately reckless.

113.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Barclays, their control over, receipt, and/or modification of Barclays' allegedly materially misleading statements and omissions, and/or their

positions with the Company which made them privy to confidential information concerning Barclays, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

114. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

115. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Barclays who knew that the statement was false when made.

## LOSS CAUSATION

116. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiffs and the Class.

117. During the Class Period, as detailed herein, Defendants made untrue statements of material facts or failed to disclose information necessary to make the statements made by Defendants not misleading. This artificially inflated and/or maintained the prices of Barclays ADRs and operated as a fraud or deceit on the Class.

118.   When Defendants' prior material false statements and material omissions, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Barclays ADRs fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

119.   The market for Barclays ADRs was open, well-developed, and efficient at all relevant times.

120.   Further, each Barclays ADR corresponds to four shares of Barclays' common stock, which is listed on the London Stock Exchange and trades under the symbol "BARC" ("Barclays Native Shares"). The market for Barclays' Native Shares was open, well-developed, and efficient at all relevant times.

121.   As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Barclays ADRs traded at artificially inflated and/or maintained prices during the Class Period. Plaintiffs and other members of the Class purchased the Company's ADRs relying upon the integrity of the market price of Barclays ADRs and market information relating to Barclays and have been damaged thereby.

122.   At all times relevant, the market for Barclays ADRs was an efficient market for the following reasons, among others:

a)   Barclays ADRs were listed and actively traded on NYSE, a highly efficient and automated market;

b)   Barclays Native Shares were listed and actively traded on the London Stock Exchange, a highly efficient and automated market.

c)      As a regulated issuer, Barclays filed periodic public reports with the SEC and/or the NYSE;

d)      Barclays regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

e)      Barclays was followed by securities analysts employed by brokerage firms, including UBS, Credit Suisse, Bank of America, Jeffries, Deutsche Bank, JP Morgan, and BNP Paribas, who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

123.    As a result of the foregoing, the market for Barclays ADRs promptly digested current information regarding Barclays from all publicly available sources and reflected such information in the prices of the ADRs. Under these circumstances, all purchasers of Barclays ADRs during the Class Period suffered similar injury through their purchase of Barclays ADRs at artificially inflated and/or maintained prices, and a presumption of reliance applies.

124.    Therefore, Plaintiffs and the Class are entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

125.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' omissions of material facts necessary to make the statements made by Defendants not misleading, including but not limited to the fact that BBPLC was selling unregistered securities in excess of the maximum amount of

securities registered under the August 2019 Shelf Registration Statement and Barclays' internal controls over financial reporting were ineffective and did not stop the over-issuance.

126.    Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects - information that Defendants were obligated to disclose during the Class Period but did not - positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## CAUSES OF ACTION

### COUNT I
**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

127.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

128.    This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

129.    Based upon the facts alleged herein, during the Class Period, Defendants violated Section 10(b) and Rule 10b-5 in that they, in connection with the purchase of Barclays ADRs by the Plaintiffs and the Class, (a) used or employed manipulative and deceptive devices or contrivances in contravention of rules and regulations set forth by the SEC; (b) employed devices, schemes, and artifices to defraud; (c) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; and/or (d) engaged in acts,

practices, and a course of conduct that operated as a fraud and deceit upon the Plaintiffs and the Class.

130.    Defendants engaged in a plan, scheme, and course of conduct, that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and/or maintain the market price of Barclays ADRs; and (iii) cause Plaintiffs and other members of the Class to purchase Barclays ADRs at artificially inflated and/or maintained prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

131.    Pursuant to the above, plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, quarterly results announcements, SEC filings, press releases, and other statements and documents described above.  Such reports, filings, releases and statements contained untrue statements of material facts of failed to disclose material information necessary to make the statements made not misleading.

132.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Barclays' business, operations, and prospects, as specified herein.

133.    Defendants, individually and in concert, directly and indirectly,  employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Barclays' business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material

facts necessary in order to make the statements made about Barclays and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's ADRs during the Class Period.

134.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Barclays' operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of Barclays ADRs.

135.    As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, then they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading, or by being reckless in failing to install the most basic of internal controls necessary to insure that only the registered amount of securities were issued.

136.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Barclays ADRs was artificially inflated and/or maintained, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the ADRs

trade, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class purchased Barclays ADRs during the Class Period at artificially inflated and/or maintained prices and were damaged thereby.

137.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiffs and the other members of the Class and the marketplace known of the truth regarding the over-issuance of securities by BBPLC and the failure of Barclays' internal controls, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased their Barclays ADRs, or, if they had purchased such ADRs during the Class Period, they would not have done so at the artificially inflated and/or maintained prices that they paid.

138.     By virtue of the foregoing, Barclays and the Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

139.     Defendants are liable both directly and indirectly for their violations of Section 10(b) and Rule 10b-5 and the wrongs complained of herein.

140.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their purchases of the Company's ADRs during the Class Period.

## COUNT II
### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

141.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

142.    The Individual Defendants acted as controlling persons of Barclays within the meaning of Section 20(a) of the Exchange Act as alleged herein.

143.    By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading.

144.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

145.    The Individual Defendants were also responsible for creating and overseeing Barclays' internal controls over financial reporting, and failed to install controls that Defendants have admitted were "simple" and "not rocket science" that would have prevented the over-issuance.

146.    Further, the Individual Defendants signed the Form 20-Fs and certifications, and authorized the filing or dissemination of the Form 20-Fs, Form 6-Ks, and press releases that are alleged herein to contain materially false and misleading statements or material omissions.

147.    In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

148.    As set forth above, Barclays and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons of Barclays, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

149.    As a direct and proximate result of these Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's ADRs during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for relief and judgment as follows:

A.    Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B.    Awarding Plaintiffs and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

C.    Awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

D.    Awarding such other relief as this Court deems appropriate.

**[remainder of page left blank]**

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated:  September  23, 2022
        New York, NY

<div style="margin-left: 3em;">

**WOLF POPPER LLP**

By: _____
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Adam Savett (*Pro Hac Vice application to be filed*)
asavett@wolfpopper.com
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 759-4600

*Counsel for Plaintiffs City of North Miami Beach Police
Officers' and Firefighters' Retirement Plan and City of
North Miami Beach General Employees' Retirement Plan*

</div>