UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF NORTH MIAMI BEACH POLICE OFFICERS' AND FIREFIGHTERS' RETIREMENT PLAN and CITY OF NORTH MIAMI BEACH GENERAL EMPLOYEES' RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BARCLAYS PLC, JAMES E. STALEY, TUSHAR MORZARIA, and C.S. VENKATAKRISHNAN,<br><br>Defendants. | No. 1:22-cv-08172-KPF-SDA |

**MEMORANDUM OF LAW IN SUPPORT OF THE NORTH MIAMI BEACH FUNDS'
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

PROCEDURAL HISTORY................................................................................................ 5

ARGUMENT .................................................................................................................... 6

I.      THE NORTH MIAMI BEACH FUNDS ARE THE MOST ADEQUATE
        PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF............................... 6

        A.      The Lead Plaintiff Framework Under the PSLRA ................................................. 6

        B.      The North Miami Beach Funds Have Satisfied the PSLRA's Procedural
                Requirements .................................................................................................... 7

        C.      The North Miami Beach Funds Have the "Largest Financial Interest" in the
                Relief Sought by the Class................................................................................... 7

        D.      The North Miami Beach Funds Satisfy the Typicality and Adequacy
                Requirements of Rule 23 ...................................................................................... 9

                1.      The North Miami Beach Funds are Typical of the Class........................... 9

                2.      The North Miami Beach Funds are Adequate Representatives of the
                        Class................................................................................................. 9

        E.      The North Miami Beach Funds Are a Proper Group Lead Plaintiff..................... 10

II.     THE NORTH MIAMI BEACH FUNDS' SELECTION OF COUNSEL SHOULD
        BE APPROVED ...................................................................................................... 12

CONCLUSION................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Bricklayers' & Allied Craftworkers Local #2 v. New Oriental Educ. & Tech. Grp. Inc.*,
   No. 22 Civ. 1014 (VM), 2022 U.S. Dist. LEXIS 87048 (S.D.N.Y. May 13, 2022)..... 7, 8, 9, 12

*Freudenberg v. E\*Trade Financial Corp.,*
   No. 07 Civ. 8538 (RWS), 2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. July 16, 2008) ............... 11

*Gross v. AT&T Inc.,*
   No. 19-cv-2982 (VEC), 2019 U.S. Dist. LEXIS 225777 (S.D.N.Y. June 24, 2019) ............... 11

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2716, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 15, 1997)................................. 7

*Martinek v. AmTrust Financial Services, Inc.*,
   No. 19-cv-08030-KPF 2022 U.S. Dist. LEXIS 209097 (S.D.N.Y. Nov. 16, 2022) ................ 12

*In re Olsten Corp. Securities Litigation*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................... 7

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance
   Corp. I,*
   No. 2:09-cv-01713, ECF No. 230 (E.D.N.Y. July 24, 2014) .................................................... 13

**Statutes**

15 U.S.C. §78j(b)............................................................................................................................. 1

15 U.S.C. §78t(a) ............................................................................................................................. 1

15 U.S.C. §78u-4 ..................................................................................................................... passim

**Regulations**

17 C.F.R. §240.10b-5...................................................................................................................... 1

**PRELIMINARY STATEMENT**

This securities class action is brought on behalf of a "Class" of persons who purchased or otherwise acquired Barclays PLC American Depository Receipts ("ADRs") between February 18, 2021 and March 25, 2022, inclusive ("Class Period"). This action alleges that Defendants Barclays, James E. Staley, Tushar Morzaria, and C.S. Venkatakrishnan[1] made materially false and misleading statements concerning Barclays' internal controls over financial reporting and quarterly and annual financial statements during the Class Period in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

Plaintiffs and Class members City of North Miami Beach Police Officers' and Firefighters' Retirement Plan ("North Miami Beach P&F") and City of North Miami Beach General Employees' Retirement Plan ("North Miami Beach GE," collectively with North Miami Beach P&F, the "North Miami Beach Funds") respectfully seek appointment as Lead Plaintiff in this action. The North Miami Beach Funds meet all the requirements of the Private Securities Litigation Reform Act ("PSLRA") for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). The North Miami Beach Funds filed the initial complaint and timely filed this motion for appointment as Lead Plaintiff; believe they have the largest financial interest in the relief sought by the Class of investors in Barclays American Depository Receipts ("ADRs") during the Class Period, having suffered combined losses of approximately $60,007; and also satisfy the adequacy and typicality requirements of Rule 23.

---

[1] Staley was CEO of Barclays from the beginning of the Class Period until October 31, 2021. Venkatakrishnan was CEO of Barclays from November 1, 2021 through the end of the Class Period. Morzaria was the Group Finance Director of Barclays throughout the Class Period.

The North Miami Beach Funds further request that the Court approve their selection of Wolf Popper LLP to serve as Lead Counsel for the Class. Wolf Popper is a nationally recognized securities litigation firm with a consistent record of achieving substantial recoveries for the benefit of injured investor classes, and has the expertise and resources necessary to provide high quality legal representation to the Class.

**FACTUAL BACKGROUND**

Barclays is a British universal bank and offers consumer banking and payments services in the United Kingdom, United States, and Europe, as well as global corporate and investment banking services. ¶¶2, 31.[2] Barclays ordinary shares trade on the London Stock Exchange under the symbol "BARC." ¶120. Barclays ADRs are listed and trade on the New York Stock Exchange under the symbol "BCS." ¶20. Each ADR corresponds to four shares of Barclays ordinary shares. ¶120.

Barclays 2020 Annual Report on Form 20-F, filed with the SEC on February 18, 2021 ("2020 Barclays 20-F"), and 2021 Annual Report on Form 20-F, filed with the SEC on February 23, 2022 ("2021 Barclays 20-F"), informed investors that Barclays' internal controls over financial reporting were effective. ¶¶3, 47-51, 64-69. These statements are alleged to be materially false and misleading in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5. ¶¶54, 72 As Barclays has since admitted, during the Class Period, Barclays internal controls over financial reporting were not effective, and there was a material weakness in those controls, due to the fact that Barclays Bank PLC ("BBPLC"), a wholly owned subsidiary of Barclays, issued and sold approximately $17.64 billion in unregistered securities over and above the maximum amount of securities registered in two BBPLC shelf registration statements, and the fact that the over-issuance

---

[2] References to "¶_" refer to the paragraphs of the complaint filed in this action ("Complaint," ECF No. 1).

was not immediately discovered.  ¶¶5, 72-100.  The over-issuance and sale of these unregistered securities was also a violation of U.S. securities laws and/or SEC regulations, and subjected Barclays to legal liability and claims of rescission.  ¶¶6, 54, 72.

In addition, Barclays' 2021 quarterly earnings releases and the 2021 Barclays 20-F are also alleged to be materially false and misleading, because, among other reasons, (a) they failed to disclose the over-issuance, and that BBPLC was violating U.S. securities laws and/or SEC regulations, subjecting Barclays to legal liability and claims of rescission, and (b) as a result, Barclays' reported litigation and conduct expenses and total operating expenses were understated, and Barclays' reported net profit was overstated.  ¶¶8, 55-63, 72.

The truth concerning Defendants materially false and misleading statements was first revealed to the market on March 28, 2022 when, before the trading market for Barclays ADRs opened for the day, Barclays announced the over-issuance for the first time, that BBPLC had issued approximately $15.2 billion in unregistered securities under an August 2019 shelf registration statement, that BBPLC would commence a rescission offer for those unregistered securities, and that Barclays expected the rescission losses to be c.£450m. ¶¶9, 72.  This disclosure revealed to the market not only the fact of the over-issuance and Barclays liability for claims of rescission, but that Barclays did not have adequate internal controls to account for issued securities and prevent such an over-issuance of unregistered securities tied to a shelf registration statement.  ¶¶9, 75-76. In response to this news, on March 28, 2022, the price of Barclays ADRs declined 10.61%, or $0.96 per ADR, from a closing price on Friday March 25, 2022 of $9.05 per ADR to a closing price of $8.09 per ADR on Monday March 28, 2022, the next trading day.  ¶¶10, 77.

3

On May 23, 2022, Barclays filed amendments to the 2021 Barclays 20-F, which amended Barclays' disclosures to state that its internal controls over financial reporting were not effective due to the fact that the over-issuance occurred and was not immediately identified, and restated Barclay's financial statements, recording a provision and contingent liability related to the over-issuance. ¶91.

Then, on July 28, 2022, before the trading market for Barclays ADRs opened for the day, Barclays issued interim financial results for the quarter ending June 30, 2022, and announced for the first time that BBPLC had also over-issued unregistered securities under a second BBPLC shelf registration statement. ¶¶11, 94-96. The July 28, 2022 financial results announcement also informed investors that Barclays had provisioned "£1,592m [approximately $1.940 billion] (December 2021: £220m) related to the overissuance of structured notes and £165m [approximately $201 million] (December 2021: nil) related to liabilities that could be incurred arising out of ongoing discussions in respect of a potential SEC resolution." *Id.* In response to this news, on July 28, 2022, the price of Barclays ADRs declined $0.41 per ADR, or 5.2%, from a closing price of $7.89 per ADR on July 27, 2022 to a closing price of $7.48 per ADR on July 28, 2022. ¶¶12, 97.

On or about September 29, 2022, Barclays entered into a Cease and Desist Order ("SEC Order") with the SEC, in which Barclays and BBPLC agreed to pay $361 million to the SEC, made up of a $200 million civil penalty, and disgorgement and prejudgment interest of more than $161 million.[3] In the SEC Order, the SEC made findings that:

---

[3] Order Instituting Cease-And-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, And Imposing a Cease-And-Desist Order, *In the Matter of Barclays PLC and Barclays Bank PLC* (SEC Sept. 29, 2022), available at www.sec.gov/litigation/admin/2022/33-11110.pdf.

- "certain BBPLC personnel recognized the need to accurately record relevant information about securities that were offered or sold so as to be able to track the aggregate amount of securities that were cumulatively offered and sold from each respective Shelf on a real-time basis, thereby ensuring that BBPLC did not offer or sell any securities in excess of what had been registered."  SEC Order ¶5; *see also id.*  ¶24

- "No internal control was established to address this issue, and the amount of securities that were offered and sold was not tracked."  SEC Order ¶5; *see also id.*  ¶¶24, 28.

As alleged in the Complaint, "given the potential exposure to the securities laws and legal liability from the over-issuance of securities, the failure to have controls in place to account for the number of securities issued against the number of securities registered is such an elementary failure of internal control that is so obvious as to be deliberately reckless."  ¶7.

## PROCEDURAL HISTORY

On September 23, 2022, this Action was filed alleging violations of the Exchange Act (as stated above) on behalf of the Class.  Also on September 23, 2022, pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(3), Plaintiffs, through their counsel, caused to be published via Newsfile Corp., a national wire service, a press release announcing the pendency of the Action, the claims asserted in the Action, the purported class period alleged in the Action, and that any member of the purported class may move the court to serve as lead plaintiff in the Action no later than November 22, 2022, 60 days after the date the Notice was published (the "PSLRA Notice").  A copy of the PLSRA Notice was filed with the Court on October 4, 2022.  *See* ECF No. 7.[4]

On October 5, 2022, the Court issued an Order (ECF No. 8) that motions for appointment as lead plaintiff in the action be filed and served on or before November 22, 2022, and any opposition to lead plaintiff motions be filed or served on or before December 7, 2022.  The Court

---

[4] A copy of the PSLRA Notice is also attached as Exhibit 1 to the Declaration of Joshua W. Ruthizer, Esq., in Support of the North Miami Beach Funds' Motion for Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("Ruthizer Declaration"), dated November 22, 2022, and filed herewith.

5

also scheduled a hearing for December 15, 2022 to consider the motions for appointment as lead plaintiff.

**ARGUMENT**

**I.    THE NORTH MIAMI BEACH FUNDS ARE THE MOST ADEQUATE PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

### A.    The Lead Plaintiff Framework Under the PSLRA

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')." 15 U.S.C. §78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that has either filed the complaint or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Satisfying each requirement of the PSLRA, the North Miami Beach Funds respectfully submit that they are the presumptive "most adequate plaintiff."  The North Miami Beach Funds have complied with the PSLRA procedural requirements, hold the largest financial interest of any known movant, and satisfy Rule 23's typicality and adequacy requirements.

6

B.       **The North Miami Beach Funds Have Satisfied the PSLRA's Procedural Requirements**

The North Miami Beach Funds filed the Complaint and attached sworn certifications attesting to their willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. *See* ECF Nos. 1-1 (North Miami Beach GE) and 1-2 (North Miami Beach P&F).[5] The North Miami Beach Funds also, through their counsel, issued the PSLRA Notice. The North Miami Beach Funds also timely filed the instant motion seeking appointment as Lead Plaintiff for the Class and approval of their selection of counsel for the Class. The North Miami Beach Funds therefore satisfy the first criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa).

C.       **The North Miami Beach Funds Have the "Largest Financial Interest" in the Relief Sought by the Class**

The PSLRA offers no statutory guidance for determining which plaintiff has the largest financial interest. "To determine which movant has the largest financial interest, courts in this District overwhelmingly rely on the four factors derived from *In re Olsten Corp. Securities Litigation*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), and *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2716, 1997 U.S. Dist. LEXIS 12432, at *18 (N.D. Ill. Aug. 15, 1997)." *Bricklayers' & Allied Craftworkers Local #2 v. New Oriental Educ. & Tech. Grp. Inc.*, No. 22 Civ. 1014, 2022 U.S. Dist. LEXIS 87048, at *8 (S.D.N.Y. May 13, 2022) (Marrero, J.).

> Under Lax/Olsten, a court trying to determine which defendant has the largest financial interest looks at (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount

---

[5] Copies of the certifications of North Miami Beach GE and North Miami Beach P&F are also attached as Exhibits 2 and 3, respectively, to the Ruthizer Declaration.

received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Id.* at *9 (citation and quotation omitted). "Financial loss is the most important element of the test, as the factors are commonly treated in ascending order of importance." *Id.*

As of the time of the filing of this motion, the North Miami Beach Funds believe that they have the largest financial interest, based on the Lax/Olsten factors, of any class member seeking appointment as Lead Plaintiff for the Class Period alleged in this action of September 18, 2021 through March 25, 2022, inclusive. During the Class Period, the North Miami Beach Funds collectively purchased 37,359 Barclays ADRs, sold 5,107 Barclays ADRs, retained 32,252 Barclays ADRs at the end of the Class Period (when the truth concerning the over-issuance was disclosed), expended $300,711 net funds during the Class Period, and suffered a total loss of approximately $60,007. North Miami Beach P&F purchased 23,157 Barclays ADRs, sold 3,166 Barclays ADRs, retained 19,991 Barclays ADRs at the end of the Class Period, expended $186,391 net funds during the Class Period, and suffered a total loss of approximately $37,194. North Miami Beach GE purchased 14,202 Barclays ADRs, sold 1,941 Barclays ADRs, retained 12,261 Barclays ADRs at the end of the Class Period, expended $114,319 net funds during the Class Period, and suffered a total loss of approximately $22,813. Ruthizer Decl., Ex. 5 (Estimated Loss Chart). The NMB Funds also held all of their 32,252 retained Barclays ADRs on March 28, 2022 and July 28, 2022, the dates when the Complaint alleges the truth concerning the over-issuance was disclosed by Barclays and the price of Barclays ADRs declined in response to those disclosures. Accordingly, the North Miami Beach Funds satisfy the second criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

**D.      The North Miami Beach Funds Satisfy the Typicality and Adequacy Requirements of Rule 23**

"As for the Rule 23 requirements, at the lead plaintiff stage, movants need only make a preliminary, prima facie showing that adequacy and typicality are satisfied." *New Oriental Educ.*, 2022 U.S. Dist. LEXIS 87048, at *9. "[A] wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." *Id.* (quotation and citation omitted, modification in original).

**1.      The North Miami Beach Funds are Typical of the Class**

"Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation and quotation omitted). The North Miami Beach Funds' claims are typical of those of the purported Class. The North Miami Beach Funds purchased Barclays ADRs during the Class Period, at prices alleged to be artificially inflated as a result of the defendants' alleged materially false and misleading statements concerning Barclays' internal controls and financial results. The North Miami Beach Funds suffered damages when the truth was revealed, and possesses claims against Defendants under the federal securities laws. Because the North Miami Beach Funds' claims arise from the same events and course of conduct as the Class's claims, they satisfy the typicality requirement of Rule 23(a)(3).

**2.      The North Miami Beach Funds are Adequate Representatives of the Class**

"The adequacy requirement is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

9

The North Miami Beach Funds are an adequate representative. The North Miami Beach Funds' claims are not antagonistic or in conflict with those of the Class. The North Miami Beach Funds are not subject to any unique defenses. Further, the North Miami Beach Funds' $60,007 loss means they have sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, whose interests align directly with their own. As described below, the North Miami Beach Funds have retained Wolf Popper to act as Lead Counsel, and Wolf Popper is experienced in securities litigation. The North Miami Beach Funds have submitted sworn certifications attesting to their willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. *See* ECF Nos. 1-1 (North Miami Beach GE) and 1-2 (North Miami Beach P&F). The North Miami Beach Funds have also submitted a joint declaration attesting to, among other things, their understanding of the obligations of a lead plaintiff and commitment to zealously prosecute this litigation. *See* Ruthizer Decl., Ex. 4 (Joint Declaration of Captain Mohammad Asim and Eloine Cox-Haughton in Support of the North Miami Beach Funds' Motion for Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("North Miami Beach Funds Joint Declaration")).

Because the North Miami Beach Funds' claims are typical of those of the Class and the North Miami Beach Funds' will adequately represent the Class, they satisfy the third criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

**E.      The North Miami Beach Funds Are a Proper Group Lead Plaintiff**

The North Miami Beach Funds are also a proper grouping of investors, and as such should be considered jointly for appointment as lead plaintiff. North Miami Beach P&F and North Miami Beach GE are sophisticated institutional investors who jointly filed the Complaint in this Action. North Miami Beach P&F and North Miami Beach GE have also previously worked together and

10

sought joint appointment as lead plaintiff.[6]  Further, North Miami Beach P&F and North Miami Beach GE have a pre-litigation relationship.  They are both public pension plans that provide benefits to current and retired employees of the City of North Miami Beach, Florida.  They share the same pension administration staff and the same office space, and use the same custodian bank and the same outside investment consultant.  North Miami Beach P&F and North Miami Beach GE also have the same outside general counsel, Sugarman Susskind Braswell & Herrera, who will provide additional guidance and representation to the North Miami Beach Funds during this litigation.  *See* Ruthizer Decl., Ex. 4 (North Miami Beach Funds Joint Decl.) ¶¶3-4, 9, 14. Therefore, they are a proper grouping of lead plaintiff movants.  *See, e.g., Gross v. AT&T Inc.,* No. 19-cv-2982, 2019 U.S. Dist. LEXIS 225777, at *6-7 (S.D.N.Y. June 24, 2019) (Caproni, J.) (appointing a group as lead plaintiff because "two of its three members have previously litigated a securities class action together, and all three are sophisticated institutional investors who have worked together to select outside counsel."); *Freudenberg v. E\*Trade Financial Corp.,* No. 07 Civ. 8538, 2008 U.S. Dist. LEXIS 62767, at *12 (S.D.N.Y. July 16, 2008) (Sweet, J.) (permitting proposed group whose members "submit that they have a longstanding prelitigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation").

*      *      *

In sum, the North Miami Beach Funds are the presumptively most adequate plaintiff and should be appointed Lead Plaintiff.  They filed the Complaint, issued the PSLRA Notice, timely filed a motion seeking appointment as Lead Plaintiff, have the largest financial interest in the relief

---

[6] *See Das v. Unity Software Inc.*, No. 5:22-cv-03962-EJD, ECF No. 34 (N.D. Cal. Sept. 6, 2022).

sought by the Class, and satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

## II.    THE NORTH MIAMI BEACH FUNDS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). "The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *New Oriental Educ.*, 2022 U.S. Dist. LEXIS 87048, at *15-16 (citation and quotation omitted).

The North Miami Beach Funds have selected Wolf Popper to act as Lead Counsel and will have the additional guidance of their outside general counsel, Sugarman Susskind Braswell & Herrera, in this litigation.

The North Miami Beach Funds respectfully request that Wolf Popper be appointed as Lead Counsel. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. *See* Ruthizer Decl., Ex. 6. For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), this Court appointed Wolf Popper to serve as lead counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, this Court entered an order finally approving a $13 million cash settlement for the *Martinek* class. *Martinek*, ECF No. 111 (Final Judgement). The Court also stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…." *Martinek*, 2022 U.S. Dist. LEXIS 209097, at *4 (S.D.N.Y. Nov. 16, 2022).

12

Also, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as Lead Plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp.  On July 24, 2014, Hon. Pamela K. Chen of the Eastern District of New York entered an order approving the settlement.  The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." *J.P. Morgan Acceptance Corp. I*, ECF No. 230 (Transcript) at 19:14-17.  "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *Id.* at 22:5-18.

As a result of Wolf Popper's extensive experience in litigation involving issues similar to those raised in this action, it has the skill and knowledge to prosecute this action effectively and expeditiously.  The Court may be assured that by approving the North Miami Beach Funds' selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the North Miami Beach Funds respectfully requests that this Court issue an Order appointing the North Miami Beach Funds as Lead Plaintiff and approving Wolf Popper as Lead Counsel.

Dated: November 22, 2022
      New York, New York

Respectfully submitted,

**WOLF POPPER LLP**

*/s/ Joshua W. Ruthizer*
Robert C. Finkel
rfinkel@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

*Attorneys for Movants and Proposed Lead Counsel for the Class*

14