**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF NORTH MIAMI BEACH POLICE OFFICERS' AND FIREFIGHTERS' RETIREMENT PLAN AND CITY OF NORTH MIAMI BEACH GENERAL EMPLOYEES' RETIREMENT PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>       v.<br><br>BARCLAYS PLC, JAMES E. STALEY, TUSHAR MORZARIA, and C.S. VENKATAKRISHNAN,<br><br>                 Defendants. | Case No. 1:22-cv-8172<br><br>Hon. Katherine Polk Failla<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
RETIREMENT SYSTEMS FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page(s)**

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    FACTUAL BACKGROUND................................................................................... 3

III.   ARGUMENT........................................................................................................... 5

       A.   The Retirement Systems Should Be Appointed Lead Plaintiff................................. 5

            1.      The PSLRA's Standard for Appointing Lead Plaintiff.............................. 5

            2.      The Retirement Systems Are the "Most Adequate Plaintiff" .................... 6

                    a.    The Retirement Systems Have Timely Filed Their Motion............ 6

                    b.    The Retirement Systems Have the Largest Financial Interest in the
                          Relief Sought by the Class................................................................6

                    c.    The Retirement Systems Satisfy Rule 23's Typicality and
                          Adequacy Requirements .................................................................. 7

                          i.     The Retirement Systems' Claims Are Typical of
                                 Those of the Class.............................................................. 8

                          ii.    The Retirement Systems Will Fairly and
                                 Adequately Protect the Interests of the Class ..................... 9

                    d.    The Retirement Systems Are Precisely the Type of Lead Plaintiff
                          Congress Envisioned When It Enacted the PSLRA ..................... 10

       B.   The Court Should Approve the Retirement Systems' Selection of Counsel ........ 12

IV.    CONCLUSION..................................................................................................... 13

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*,
   No. 2:20-CV-04534, 2020 WL 6710429 (S.D. Ohio Nov. 16, 2020)...................................... 13

*Bristol Cty. Ret. Sys. v. Telefonaktiebolaget LM Ericsson*,
   No. 1:18-cv-03021-RJS, 2018 WL 3546182 (S.D.N.Y. July 24, 2018) ................................... 8

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Credit Suisse Grp.
   AG*, No. 17 Civ. 10014 (RJS),
   2018 WL 1382406 (S.D.N.Y. Mar. 19, 2018) ....................................................... 9, 11

*City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*,
   325 F. Supp. 3d 310 (E.D.N.Y. 2018)................................................................ 8, 9

*In re Gildan Activewear Inc. Sec. Litig.*,
   No. 1:08-cv-05048-HB, 2010 WL 11746218 (S.D.N.Y. Sept. 20, 2010)................................. 13

*In re KIT Digital, Inc. Sec. Litig.*,
   293 F.R.D. 441 (S.D.N.Y. 2013)........................................................................ 11

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998)..................................................................... 7

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ........................................... 7

*Ong v. Chipotle Mexican Grill, Inc.*,
   No. 1:16-cv-00141-KPF (S.D.N.Y. Apr. 18, 2016).................................................... 11

*Vega v. Energy Transfer LP*,
   No. 1:22-CV-04614-AKH, 2022 WL 3228209 (S.D.N.Y. Aug. 10, 2022)................................... 8

**Statutes**

15 U.S.C. § 78j(b) .......................................................................................... 3
15 U.S.C. § 78t(a) .......................................................................................... 3
15 U.S.C. § 78u-4(a) ...............................................................................*passim*

**Rules**

Rule 23 of the Federal Rules of Civil Procedure ....................................................*passim*

**Regulations**

17 C.F.R. § 240.10b-5.......................................................................................................... 3

**Other Authorities**

S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679....................................... 10

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730733................ 10

Proposed Lead Plaintiff the City of Birmingham Retirement and Relief System ("Birmingham") and the City of Hialeah Employees' Retirement System ("Hialeah ERS," and together with Birmingham, the "Retirement Systems") respectfully move this Court for entry of an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) appointing the Retirement Systems as Lead Plaintiff on behalf of a class of all persons who purchased or otherwise acquired American Depositary Receipts ("ADRs") of Barclays PLC ("Barclays" or the "Bank") on a U.S. open market (the "Class") from February 18, 2021 through March 25, 2022, inclusive (the "Class Period"); (2) approving their selection of Saxena White P.A. ("Saxena White") to serve as Lead Counsel for the Class; and (3) granting any such other and further relief as the Court may deem just and proper.

## I.     **PRELIMINARY STATEMENT**

The Retirement Systems—sophisticated fiduciaries with significant experience representing investor classes—respectfully submit that they are the "most adequate plaintiff" under the PSLRA and readily satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Retirement Systems together incurred a loss of $488,288 on their Class Period purchases of Barclays ADRs under the prevailing last-in-first-out ("LIFO") accounting method.[1]  Further, the Retirement Systems' claims are typical of the Class's claims because they suffered a loss on their Barclays investments as a result of Defendants' allegedly false and misleading statements.  The Retirement Systems have no

---

[1] The Retirement Systems' transactions in Barclays ADRs during the Class Period are set forth in the certifications attached as Exhibit A to the Declaration of Steven B. Singer in Support of the Retirement Systems' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Singer Decl."), filed currently herewith.  Charts setting forth the Retirement Systems' losses are attached as Exhibit B to the Singer Decl.

conflicts with the Class and will adequately protect the Class's interests given their significant financial stake in the claims and their status as institutional investors.

Moreover, both Birmingham and Hialeah have significant experience prosecuting complex securities litigation as lead or co-lead plaintiff. Indeed, the Retirement Systems, which collectively manage approximately $1.8 billion in assets, are precisely the type of lead plaintiff envisioned by Congress when enacting the PSLRA: sophisticated institutional investors that are committed to the vigorous prosecution of the claims in this action, understand the obligations and responsibilities of a lead plaintiff, and have the incentive, ability, and experience to effectively oversee counsel and supervise the prosecution of this action in the best interests of the Class. In addition, the Retirement Systems have demonstrated their ability to oversee this litigation and their commitment to working cohesively to efficiently prosecute this litigation by conferring before this motion was filed to establish a coordinated strategy for overseeing the prosecution of this matter. *See* Joint Declaration of Jay P. Turner and Robert Williams III in Support of the Motion of the Retirement Systems for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Joint Decl."), Singer Decl., Ex. C.

The Retirement Systems have further demonstrated their adequacy through their selection of Saxena White to serve as Lead Counsel. Saxena White has substantial experience and success prosecuting securities class actions in this District and throughout the nation.

Accordingly, the Retirement Systems respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

2

## II.    FACTUAL BACKGROUND

Pending before the Court is a securities class action brought against: (1) Barclays, a global financial services company;[2] (2) James E. Staley, who served as the Chief Executive Officer ("CEO") of Barclays and as a Director on Barclays' Board of Directors ("Barclays Board") from December 2015 through October 31, 2021, and as CEO of Barclays' wholly owned subsidiary Barclays Bank PLC ("BBPLC") and a director on BBPLC's Board of Directors ("BBPLC Board") from March 2019 through October 31, 2021; (3) Tushar Morzaria, who served as Barclays' Group Finance Director, as a director on the Barclays Board, and as a director on the BBPLC Board during all times relevant hereto; and (4) C.S. Venkatakrishnan, who has served as the CEO of Barclays, a director on the Barclays Board, as CEO of BBPLC, and as a Director on the BBPLC Board since November 1, 2021 (collectively, "Defendants").   The action asserts claims for violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Barclays is a consumer and wholesale bank that offers products and services across personal, corporate, and investment banking, credit cards, and wealth management.  The Bank's wholly owned subsidiary, BBPLC, consists of, among other things, a corporate and investment banking division that issues securities.

On July 18, 2016, BBPLC filed a shelf registration statement with the SEC, amended and declared effective on March 30, 2018, consisting of debt securities, warrants, preference shares, and American Depositary Shares (the "March 2018 Shelf Registration Statement").  On June 14, 2019, BBPLC filed another shelf registration statement with the SEC, which registered

---

[2] Barclays is headquartered in London, England.  The Bank's ADRs trade on the New York Stock Exchange under the ticker symbol "BCS."

$20.76 billion of debt securities, consisting of structured notes and exchange-traded notes (the "August 2019 Shelf Registration Statement").

Throughout the Class Period, the Bank's quarterly and annual filings with the SEC informed investors that the Bank's internal controls over financial reporting were effective. The action alleges that Defendants made materially false and/or misleading statements and/or failed to disclose material information necessary to make statements in the Bank's SEC filings not misleading, specifically, that: (1) Barclays' internal controls over financial reporting were not effective, and there was a material weakness in those controls due to the fact that BBPLC issued and sold approximately $17.64 billion in unregistered securities over and above the maximum amount of securities registered in the two shelf registration statements, in violation of U.S. securities laws and/or SEC regulations; (2) Barclays' failure to disclose the over-issuance subjected Barclays to legal liability and claims of rescission; and (3) as a result, Barclays' reported litigation and conduct expenses and total operating expenses were understated, and Barclays' reported net profit was overstated.

On March 28, 2022, before the markets opened, Barclays revealed that BBPLC had issued approximately $15.2 billion of unregistered securities in excess of the $20.76 billion maximum amount allowable under the August 2019 Shelf Registration Statement, and BBPLC would commence a rescission offer for those unregistered securities. In response to this news, on March 28, 2022, the price of Barclays ADRs fell 10.61%, or $0.96 per ADR, to close at $8.09 per ADR.

Four months following the end of the Class Period, on July 28, 2022, before the markets opened, Barclays announced that BBPLC had also overissued unregistered securities under the March 2018 Shelf Registration Statement. Further, Barclays informed investors that it had provisioned approximately $1.940 billion "related to the overissuance of structured notes" and

approximately $201 million "related to liabilities that could be incurred arising out of ongoing discussions in respect of a potential SEC resolution."  In response to this news, on July 28, 2022, the price of Barclays ADRs declined $0.41 per ADR, or 5.2%, to close at $7.48 per ADR.

Defendants' material misrepresentations and omissions and the revelations thereof have caused the Retirement Systems and the Class to incur substantial losses.

## III.    ARGUMENT

### A.    The Retirement Systems Should Be Appointed Lead Plaintiff

#### 1.    The PSLRA's Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff class—
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    That, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or filed a motion to serve as

5

lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 2.    The Retirement Systems Are the "Most Adequate Plaintiff"

The Retirement Systems respectfully submit that they should be appointed Lead Plaintiff because they (1) filed a timely motion for appointment as Lead Plaintiff; (2) hold the largest financial interest of any movant; and (3) satisfy Rule 23's typicality and adequacy requirements. In addition, as sophisticated institutional investors with a substantial financial stake in this action, the Retirement Systems are precisely the type of lead plaintiff that Congress envisioned when enacting the PSLRA.

### a.    The Retirement Systems Have Timely Filed Their Motion

The Retirement Systems have timely filed this motion to serve as Lead Plaintiff.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiffs who filed the complaint in this action caused notice regarding the pending nature of this case to be published on *Newsfile*, a widely circulated, national, business-oriented wire service, on September 23, 2022.  *See* Singer Decl. Ex. D.  Thus, pursuant to the PSLRA, any member of the proposed Class may apply for appointment as Lead Plaintiff within 60 days of the publication of the notice, *i.e.*, on or before July 22, 2022.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  The Retirement Systems have filed their motion within the required timeframe.

### b.    The Retirement Systems Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs courts to adopt the presumption that "the most adequate plaintiff" is the "person or group of persons that . . . has the largest financial interest in the relief sought by the class" so long as that movant meets the requirements of Rule 23.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  To determine the largest financial interest, courts in this District utilize the four-factor test set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), and adopted in *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (the "*Lax/Olsten* factors").  The four *Lax/Olsten* factors are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the losses suffered. *Id.*

As evidenced in their certifications and loss chart, during the Class Period, the Retirement Systems together purchased a total of 223,864 Barclays ADRs, purchased 208,627 Barclays ADRs on a net basis, expended $2,130,162 in net funds, and suffered a combined loss of $488,288 calculated on a last-in, first-out ("LIFO") basis.  *See* Singer Decl., Exs. A, B.  The Retirement Systems are unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the action and also satisfies the adequacy and typicality requirements of Rule 23.  Accordingly, the Retirement Systems have the largest financial interest of any qualified movant seeking Lead Plaintiff status and, because they satisfy the applicable requirements of Rule 23, as discussed below, are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

###     c.      The Retirement Systems Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the litigation, the Retirement Systems satisfy the applicable requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

7

Rule 23(a) provides that a party may serve as a class representative if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. However, at this stage of the proceedings, lead plaintiff movants are only required to make a "preliminary showing" that they satisfy the typicality and adequacy requirements of Rule 23. *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 316 (E.D.N.Y. 2018); *see also Bristol Cty. Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, No. 1:18-cv-03021-RJS, 2018 WL 3546182, at *2 (S.D.N.Y. July 24, 2018) (noting that at this stage, courts have required only a *prima facie* showing that the typicality and adequacy requirements of Rule 23 are met).

### i.     The Retirement Systems' Claims Are Typical of Those of the Class

The typicality requirement of Rule 23(a)(3) is satisfied where the claims "arise[ ] from the same course of events," and the lead plaintiff will make "similar legal arguments to prove [Defendants'] liability." *See Vega v. Energy Transfer LP*, No. 1:22-CV-04614-AKH, 2022 WL 3228209, at *2 (S.D.N.Y. Aug. 10, 2022) (finding typicality requirement satisfied when movant, "like all other class members . . . purchased [Defendant company's] shares during the Class Period; were adversely affected by Defendants' false and misleading statements and omissions; and suffered damages thereby.") (citation omitted).

Typicality does not require that there be no factual differences between the class representatives and the class members; rather, it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014 (RJS),

2018 WL 1382406, at *2 (S.D.N.Y. Mar. 19, 2018) ("[T]he lead plaintiff's claims need not be identical to the claims of the class to satisfy the preliminary showing of typicality.") (citation omitted).

Here, the Retirement Systems satisfy the typicality requirement. Like all other Class members, the Retirement Systems: (1) purchased Barclays ADRs during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. *Id.*, at *2 (discussing typicality requirement). These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirements of Rule 23(a)(3).

### ii. The Retirement Systems Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class's interests to be fairly and adequately represented, a proposed lead plaintiff must show that "'(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Foot Locker*, 325 F. Supp. 3d at 316 (citation omitted).

The Retirement Systems' interests are aligned with those of the other Class members and are not antagonistic in any way. The Retirement Systems incurred substantial financial harm due to Defendants' misrepresentations and omissions during the Class Period and, therefore, have a sufficient interest in the outcome of the litigation to ensure vigorous prosecution of the litigation. There are no facts to suggest an actual or potential conflict of interest between the Retirement Systems and the other Class members. Moreover, as institutional investors with a substantial

financial interest in the litigation, the Retirement Systems have the resources, experience, and incentive to vigorously represent the Class and successfully prosecute this action against Defendants.

The Retirement Systems have further demonstrated their adequacy through their selection of Saxena White as proposed Lead Counsel for the Class. Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to effectively prosecute complex securities class actions and other forms of shareholder litigation.

Thus, in addition to having the largest financial interest, the Retirement Systems also satisfy the typicality and adequacy requirements of Rule 23.

### d. The Retirement Systems Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, the Retirement Systems are the paradigmatic lead plaintiff envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a substantial financial stake in the litigation and the resources, experience, and incentive to vigorously represent the Class and oversee lead counsel's prosecution of the case. *See* S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs . . . ."); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs").

The Retirement Systems are sophisticated institutional investors that have combined assets under management of approximately $1.8 billion. The Retirement Systems have significant resources and substantial financial interest in this litigation. In addition, the Retirement Systems have the ability and incentive to vigorously represent the claims of the Class based on their past experience as serving as lead and co-lead plaintiff in securities class actions and understand very well the duties of a Lead Plaintiff pursuant to the PSLRA. *See* Joint Decl., ¶¶ 4-5.

The Retirement Systems' collaboration in this litigation follows from their roles as fiduciaries to their respective municipal employee members and their shared goals and interests in protecting and maximizing retirement systems' assets. *Id.* ¶ 6. The Retirement Systems are committed to cooperating in the prosecution of this case and have put in place protocols to ensure informed decision-making. *Id.* ¶ 10. Moreover, before filing this motion, representatives of the Retirement Systems discussed, among other things, the lead plaintiff process, the merits of the claims, and the Retirement Systems' common goals and strategy for the joint prosecution of this action (including making logistical arrangements to ensure seamless and efficient joint prosecution of this action and engaged oversight of counsel). *Id.* ¶¶ 9-10; *see also Credit Suisse*, 2018 WL 1382406, at *2 (appointing group of institutional investors that jointly moved for lead plaintiff status and attested to their commitment to work together cohesively); *Ong v. Chipotle Mexican Grill, Inc.*, No. 1:16-cv-00141-KPF (S.D.N.Y. Apr. 18, 2016), ECF Nos. 23 and 43 (Order appointing pair of institutions that filed a joint declaration attesting that each understood the requirements of serving as lead plaintiff, would work together in overseeing the litigation, and were committed to representing the best interests of the class). Recognizing that this litigation will be best guided by institutional investors that are familiar with the requirements attendant upon a

11

fiduciary, the Retirement Systems determined to join together to seek appointment as Lead Plaintiff. *See* Joint Decl., ¶¶ 7-8.

Accordingly, the Retirement Systems have already demonstrated their ability to act collaboratively, their understanding of a lead plaintiff's obligations under the PSLRA, and their willingness and ability to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this litigation.

**B.       The Court Should Approve the Retirement Systems' Selection of Counsel**

Pursuant to the PSLRA, the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class.   15 U.S.C. § 78u-4(a)(3)(B)(v).   The Retirement Systems respectfully submit that their selection of Saxena White as Lead Counsel should be approved. *See* Firm Resume, Singer Decl., Ex. E.

Saxena White, which has an office in White Plains, New York, has achieved substantial recoveries on behalf of investor classes when serving as lead or co-lead counsel in securities class actions in this District and throughout the country  This includes the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 1:10-cv- 00990-ER (D. Del.); the $135 million recovery in *Peace Officers Annuity and Benefit Fund of Ga. v. DaVita Inc.*, No. 1:17-cv-00304-WJM-NRN (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-01395-TJC-JBT (M.D. Fla.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-cv-02587-ELR (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*, No. 2:19-cv-5530 (GRB)(RLM) (E.D.N.Y.); and the $31.9 million recovery in *In re Perrigo Company plc Securities Litigation*, No. 1:19-cv-00070-DLC (S.D.N.Y.).  Moreover, Saxena White achieved a settlement valued at $320 million in a derivative action on behalf of Wells Fargo & Company, including a

$240 million monetary component that represents the largest insurer-funded monetary recovery in a derivative settlement in history. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.).

By approving the Retirement Systems' choice of Lead Counsel, this Court will also advance the important goal of increasing diversity among class counsel. *See In re Gildan Activewear Inc. Sec. Litig.*, No. 1:08-cv-05048-HB, 2010 WL 11746218, at *1 (S.D.N.Y. Sept. 20, 2010) (because "proposed class includes thousands of participants, both male and female, arguably from diverse backgrounds, . . . it is therefore important to all concerned that there is evidence of diversity, in terms of race and gender, in the class counsel I appoint"). As a federally certified woman- and minority-owned firm specializing in representing institutional investors as plaintiffs in securities litigation, Saxena White is committed to diversity. For example, Saxena White was selected by the Chief Judge of the Northern District of Ohio as Co-Lead Counsel in an important shareholder derivative action involving a corruption and bribery scheme, not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-CV-04534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020).

Accordingly, the Court should approve the Retirement Systems' selection of Saxena White as Lead Counsel for the Class.

## IV.    CONCLUSION

For the reasons discussed above, the Retirement Systems respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff for the Class; (2) approve their selection of

Saxena White as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem

just and proper.

Dated: November 22, 2022

Respectfully submitted,

**SAXENA WHITE P.A.**

By: */s/ Steven B. Singer*
Steven B. Singer
Rachel A. Avan
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
ravan@saxenawhite.com

**SAXENA WHITE P.A.**
Joseph E. White, III
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for the Retirement Systems, and*
*Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 22, 2022, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all

registered users.


/s/ *Steven B. Singer*
Steven B. Singer

15