**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CITY OF NORTH MIAMI BEACH POLICE OFFICERS' AND FIREFIGHTERS' RETIREMENT PLAN and CITY OF NORTH MIAMI BEACH GENERAL EMPLOYEES' RETIREMENT PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS PLC, JAMES E. STALEY, TUSHAR MORZARIA, and C.S. VENKATAKRISHNAN,<br>Defendants. | Case No. 1:22-CV-08172-KPF |

**MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL NO. 710 PENSION FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND** <u>**APPROVAL OF SELECTION OF LEAD COUNSEL**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................2

ARGUMENT.....................................................................................................................5

    I.       TEAMSTERS LOCAL 710 SHOULD BE APPOINTED LEAD
            PLAINTIFF ...........................................................................................5

           A.      The PSLRA's Standard for Appointing Lead Plaintiff ...........................5

           B.      Teamsters Local 710 is the "Most Adequate Plaintiff"..........................6

                 1.      Teamsters Local 710's Motion is Timely .....................................6

                 2.      Teamsters Local 710 Has the Largest Financial Interest ...............7

                 3.      Teamsters Local 710  is Precisely the Type of Lead
                      Plaintiff Envisioned by the PSLRA .............................................7

                 4.      Teamsters Local 710 Satisfies Rule 23's Requirements.................8

    II.      THE COURT SHOULD APPROVE TEAMSTERS LOCAL 710
            SELECTION OF COUNSEL...................................................................11

III.    CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*In re Braskem S.A. Sec. Litig.*,
    No. 15-CV-5132 (PAE), 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015)..................................11

*Chahal v. Credit Suisse Grp. AG*,
    No. 18-CV-02268, 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ........................................11

*Chisholm v. TranSouth Fin. Corp.*,
    184 F.R.D. 556 (E.D. Va. 1999) .......................................................................................9

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
    No. 18-cv-3608 (VSB), 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019)......................................6

*In re Crayfish Co. Sec. Litig.*,
    No. 00-CV-6766 (DAB), 2002 WL 1268013 (S.D.N.Y. June 6, 2002)..................................9

*In re Evolus Inc. Sec. Litig.*,
    No. 20-cv-8647 (PGG), 2021 WL 4251957 (S.D.N.Y. Sept. 17, 2021) .................................7

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) .....................................9

*Fields v. Biomatrix, Inc.*,
    198 F.R.D. 451 (D.N.J. 2000)..........................................................................................9

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y.2006) .......................................................................................8

*In re Millennial Media, Inc. Sec. Litig.*,
    87 F. Supp. 3d 563 (S.D.N.Y. 2015)..................................................................................8

*Mustafin v. GreenSky, Inc.*,
    No. 18-CV-11071 (PAE), 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ...........................11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998)...............................................................................9, 10

*Owen v. Elastos Foundation*,
    No. 19-cv-5462 (GHW), 2020 WL 2824624 (S.D.N.Y. May 26, 2020) ................................8

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)................................................................................8

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................................8

*Simco v. Aegean Marine Petroleum Network Inc.*,
     18-cv-4993 (NRB), 2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018) .......................................7

*Topping v. Deloitte Tocuhe Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607 (S.D.N.Y.
     2015) .................................................................................................................................11

*Weltz v. Lee*,
     199 F.R.D 129 (S.D.N.Y. 2001) ................................................................................... 9, 10

**Statutes**

15 U.S.C. § 78u-4(a)(1) ..........................................................................................................5

15 U.S.C. § 78u-4(a)(3) ..................................................................................................*passim*

Private Securities Litigation Reform Act of 1995 (PSLRA) .................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................................*passim*

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ................ 7, 10

Movant International Brotherhood of Teamsters Local No. 710 Pension Fund ("Teamsters Local 710") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an Order: (i) appointing Teamsters Local 710 as Lead Plaintiff on behalf of itself and all persons or entities that purchased or otherwise acquired Barclays PLC ("Barclays") American Depositary Receipts ("ADRs") between February 18, 2021 and March 25, 2022, both dates inclusive (the "Class Period"); (ii) approving Teamsters Local 710's selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the proposed Class; and (iii) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Teamsters Local 710 respectfully submits that it should be appointed Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired Barclays ADRs during the Class Period (the "Class"). The above-captioned action (the "Action") brought against Barclays and current and former executives James E. Staley ("Staley"), Tushar Morzaria ("Morzaria"), and C.S. Venkatakrishnan ("Venkatakrishnan") (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

The PSRLA provides that the person or persons who files a motion within the prescribed PSLRA deadlines, possesses the largest financial interest in the case, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure should be appointed as lead plaintiff.

Under these standards, Teamsters Local 710 should be appointed. The instant motion is timely, as it is filed within 60 days of the notice published pursuant to the PSLRA. Teamsters

Local 710 suffered losses of approximately $562,586 as a result of the alleged misconduct and is unaware at this time of any other movant with a greater loss. Teamsters Local 710 otherwise satisfies Rule 23. Thus, under Section 21D of the Exchange Act, Teamsters Local 710 is presumptively the "most adequate plaintiff" and should be appointed as lead plaintiff because it has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Additionally, Teamsters Local 710's selection of Cohen Milstein Sellers & Toll PLLC should be approved. Cohen Milstein is highly qualified to prosecute securities class actions such as this one and has successfully done so many times before.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Barclays is a British universal bank. Barclays Bank PLC ("BBPLC") is a wholly owned subsidiary of Barclays that consists of a corporate and investment banking division, a consumer, cards and payments division, and a private bank. On July 18, 2016, BBPLC filed a shelf registration statement with the U.S. Securities and Exchange Commission ("SEC"), which was amended on March 30, 2018 (the "March 2018 Shelf Registration Statement"). Then on July 14, 2019, BBPLC filed another shelf registration statement with the SEC, which registered $20.8 billion of debt securities (the "August 2019 Shelf Registration Statement").

In March 2022, investors learned that Barclays's subsidiary BBPLC had sold $15.2 billion of unregistered securities in excess of the maximum $20.8 billion of securities registered under an August 2019 Shelf Registration Statement; that BBPLC would conduct a rescission offer; and that Barclays expected those rescission losses to be approximately £450 million. Then in July 2022, Barclays informed investors that BBPLC sold unregistered securities under both the March 2018 Shelf Registration Statement and the August 19 Shelf Registration Statement, and that it would

---

[1] Allegations are based on the Complaint filed in this Action. *See* ECF No. 1.

begin a recission of approximately $17.6 billion of relevant securities. As a result of the over-issuance, Barclays and BBPLC both restated their financial statements included on the Annual Report on Form 20-F for the year ended December 31, 2021 ("2021 Annual Report") and Barclays, and BBPLC, admitted that they had a "material weakness" in their internal controls.

Throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material information about the improper over-issuance of securities by BBPLC; the strength of Barclays internal controls and procedures; and Barclays reported financial statements. Specifically, on February 18, 2021 Barclays filed Form 20-F for the annual year 2020 ("2020 Form 20-F"), which described the Company's "robust internal controls," specifically stating that Company had recently "successfully completed" a three-year program, known as the Barclays Internal Control Environment Programme or "BICEP," that "was focus[ed] on strengthening the internal control environment across the Group," and had left the Company's internal controls environment "in a much stronger position." These and similar statements by Defendants during the Class Period were false and misleading because Defendants knew, but concealed from investors, that the Company had material weaknesses in its internal control environment, BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement, BBPLC was violating U.S. securities laws and/or SEC regulations, and BBPLC was required to conduct a recission offer for those unregistered securities.

These materially false and misleading statements, and omissions, continued throughout the class period, such as on April 30, 2021 when Barclays issued its Q1 2021 Results Announcement and Form 6-K; on July 28, 2021 when Barclays issued its Interim 2021 Financial Results and Form 6-K; on October 21, 2021, when Barclays issued its Q3 2021 Results Announcement and Form 6-

K; and finally on February 23, 2022 when Barclays filed the Barclays 2021 20-F.  Examples of these misstatements include in the Barclays 2021 20-F a statement that the Audit Committee is "[k]eenly focused on the Group's internal control environment" and "continued to oversee the ongoing evolution and enhancement of the internal control environment." Additionally, the Barclays 2021 20-F stated that "[m]anagement has assessed the internal control . . . and concluded that . . . the internal control over financial reporting was effective." The statements were untrue statements of material facts or failed to state material facts necessary since Barclays had a material weakness in its internal control environment, given the over-issuance that had occurred, and failed to disclose that BBPLC had and was selling unregistered securities in excess of the amounts registered by the August 2019 Shelf Registration Statement; BBPLC was violating U.S. securities laws and/or SEC regulations; and BBPLC was required to conduct a recission offer for those unregistered securities.

The truth began to be revealed on March 28, 2022, before the market for Barclays ADRs opened for the day, when Barclays issued a press release announcing that BBPLC had sold $15.2 billion of unregistered securities in excess of the maximum $20.8 billion of securities registered under the August 2019 Shelf Registration Statement. The press release further disclosed that BBPLC would conduct a rescission offer and that Barclays expected the rescission losses to be £450 million. On this news, Barclays ADRs  declined from $9.05 to $8.09, representing a decline of approximately 10.61%.

Then on July 25, 2022, Barclays issued a press release announcing that BBPLC was going to commence a rescission offer for approximately $17.6 billion of securities issued in "excess of amounts registered by BBPLC under its U.S. shelf registration statements." Further, on July 28, 2022, Barclays issued interim financial results for the six-month period ending June 30, 2022 ("Q2

2022 RA"), where Barclays informed investors that BBPLC had also over-issued unregistered securities under a second shelf registration statement: "while the vast majority of the over-issuance occurred under the [August 2019 Shelf Registration Statement], a small portion of the over-issuance also occurred under the Predecessor Shelf [the March 2018 Shelf Registration Statement]." This led to the price of Barclays ADRs declining from $7.89 to $7.48, representing a decline of approximately 5.2%.

On August 1, 2022, BBPLC filed a Form 424B5 with the SEC and commenced a recission offer for $17.6 billion overissued securities that were sold pursuant to the March 2018 Shelf Registration Statement and August 2019 Shelf Registration Statement.

As a result of Defendants' false and misleading statements, and the precipitous decline in the value of Barclays ADRs as the truth was revealed, Teamsters Local 710 and other Class members suffered significant losses and damages.

## ARGUMENT

### I.    TEAMSTERS LOCAL 710 SHOULD BE APPOINTED LEAD PLAINTIFF

As discussed below, Teamsters Local 710 satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as lead plaintiff. Additionally, Teamsters Local 710 seeks appointment of Cohen Milstein as lead counsel.

### A.    The PSLRA's Standard for Appointing Lead Plaintiff

The PSLRA established a procedure for selecting a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

First, within twenty days of filing the action, the plaintiff who files the initial action must publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff within sixty days of publication of that notice. 15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, a court is to consider any motion made by class members and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, the "most adequate plaintiff" is presumed to be the entity, person, or group that (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-cv-3608 (VSB), 2019 WL 364570, at *6 (S.D.N.Y. Jan. 30, 2019) (movant's "substantial financial interest in the litigation provides the ability and incentive to vigorously represent the class' claims."). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### B.  Teamsters Local 710 is the "Most Adequate Plaintiff"

#### 1.  Teamsters Local 710's Motion is Timely

Under the PSLRA, within 60 days "after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). On September 23, 2022, Plaintiffs City of North Miami Beach Police Officers' and Firefighters' Retirement Plan and City of North Miami Beach General Employees' Retirement Plan filed the Action against Defendants in this District. *See* ECF No. 1. On September 23, 2022, counsel for City of North Miami Beach Police Officers' and Firefighters' Retirement Plan and City of North Miami Beach General Employees' Retirement Plan published on *Newsfile* a press release announcing the pendency of the Action (the "PSLRA Notice"). *See* Declaration of Michael Eisenkraft in Support of the Motion of International Brotherhood of Teamsters Local No. 710 Pension Fund for Appointment as Lead Plaintiff and Approval of

Selection of Lead Counsel ("Eisenkraft Decl."), Ex. A. The PSLRA Notice identified the deadline to seek Lead Plaintiff appointment as November 22, 2022. *See id.* Accordingly, Teamster's Local 710 has timely moved for appointment as Lead Plaintiff through the filing of this motion.

> 2.    <u>Teamsters Local 710 Has the Largest Financial Interest</u>

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the movant with the largest financial interest in the relief sought by the class, as long as that movant otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Teamsters Local 710 incurred substantial losses of approximately $562,586 on its purchases of 297,179 shares of Barclays ADRs during the Class Period. *See* Eisenkraft Decl. Exs. B, C. Teamsters Local 710 is unaware of any other movant with a larger financial interest in the outcome of the Action. Accordingly, as a qualified movant with the largest financial interest, Teamsters Local 710 is the presumptive "most adequate plaintiff." *See In re Evolus Inc. Sec. Litig.*, No. 20-cv-8647 (PGG), 2021 WL 4251957, at *2 (S.D.N.Y. Sept. 17, 2021) (appointing as lead plaintiff the movant with the largest potential recoverable loss); *Simco v. Aegean Marine Petroleum Network Inc.*, 18-cv-4993 (NRB), 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (same).

> 3.    <u>Teamsters Local 710  is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA</u>

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, Teamsters Local 710 is precisely the type of investor Congress sought through the enactment of the PSLRA to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class

actions."). Courts have recognized a preference for institutional investors to be appointed as lead plaintiffs in securities class actions. *See, e.g.*, *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs").

As explained in further detail its certification, attached as Exhibit B to the Eisenkraft Decl., Teamsters Local 710, is willing to actively participate in the leadership of this litigation. Teamsters local 710 is a sophisticated institutional investor, which is "the type of investor Congress prefers as lead plaintiffs" in securities class actions. *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015); *see also Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y.2006) (Lead Plaintiff candidate was the only institutional investor and this was "significant because the PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one."). Indeed, Teamsters Local 710 is the type of "single sophisticated entity" that best exemplifies the "client-driven litigation" contemplated by the PSLRA. *See, e.g. In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001) (holding that because the proposed lead plaintiff group had "no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity").

### 4.    Teamsters Local 710 Satisfies Rule 23's Requirements

In addition to possessing a significant financial interest, the PSLRA requires that the lead plaintiff must "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also Owen v. Elastos Foundation*, No. 19-cv-5462 (GHW), 2020 WL 2824624, at *2-3 (S.D.N.Y. May 26, 2020).

- 8 -

Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00-CV-6766 (DAB), 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) and *Weltz v. Lee*, 199 F.R.D 129, 133 (S.D.N.Y. 2001)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to prove the defendants' liability.'" *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court has noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563-64 (E.D. Va. 1999) (internal citation omitted).

Here, Teamsters Local 710 seeks the same relief and advances the same legal theories as all class members. Because the claims asserted by Teamsters Local 710 are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the

claims of other class members," Teamsters Local 710 meets the requirements of the typicality requirement of Rule 23.

The "adequacy" requirement of Rule 23(a)(4) is satisfied when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Here, Teamsters Local 710 is an adequate representative for the Class. First, as noted above, it is a sophisticated institutional investor, which is preferred under the PSLRA. *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf.Rep.) ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Second, Teamsters Local 710 does not have interests adverse to those of the Class and purchased Barclay's ADRs during the Class Period. Like other putative class members, Teamsters local 710 suffered losses in the form of diminution of the value of its Barclay's ADRs upon disclosure of the fraud. Furthermore, as a result of Teamsters Local 710's significant financial stake in this action, it will vigorously advocate on behalf of the class. Finally, Teamsters Local 710 has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see* Eisenkraft Decl. Ex. D, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

All of these factors demonstrate that Teamsters Local 710's claims are typical of the claims of the class within the meaning of Rule 23(a)(3), and that Teamsters Local 710 will fairly and

adequately represent the interests of the class under Rule 23(a)(4). Teamsters Local 710 should therefore be appointed lead plaintiff.

## II.    THE COURT SHOULD APPROVE TEAMSTERS LOCAL 710 SELECTION OF COUNSEL

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Teamsters Local 710 has selected Cohen Milstein to serve as Lead Counsel for the class. Teamsters Local 710's selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). As detailed in its firm resume, Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions across the country and has obtained excellent recoveries on behalf of defrauded investors. Eisenkraft Decl. Ex. D; *see also Mustafin v. GreenSky, Inc.*, No. 18-CV-11071 (PAE), 2019 WL 1428594, at *6 (S.D.N.Y. Mar. 29, 2019) (approving Cohen Milstein as co-lead counsel and noting the firm's "experience litigating securities class actions"); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268, 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (approving the selection of Cohen Milstein as co-lead counsel and noting that the firm is "highly experienced in prosecuting securities class actions"); *In re Braskem S.A. Sec. Litig.*, No. 15-CV-5132 (PAE), 2015 WL 5244735, at *6 (S.D.N.Y. Sept. 8, 2015) (approving Cohen Milstein to serve as lead counsel on the basis of the firm's "experience litigating securities class actions"); *Topping v. Deloitte Tocuhe Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 624 (S.D.N.Y. 2015) (selecting Cohen Milstein as lead counsel because it "has successfully prosecuted numerous securities fraud class actions"). Indeed, in this Circuit, Cohen Milstein has recovered hundreds of millions of dollars for investors,

including a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.)); and a $90 million settlement in a class action against MF Global (*Rubin v. MF Global, Ltd.*, No. 08-cv-2233 (VM) (S.D.N.Y.)), among others.

Thus, the Court may be assured that that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Teamsters Local 710 selection of Cohen Milstein as Lead Counsel for the Class.

## III.    CONCLUSION

For the foregoing reasons, Teamsters Local 710 respectfully requests that the Court enter an Order: (i) appointing it as Lead Plaintiff; (ii) approving its selection of Cohen Milstein as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated:   November 22, 2022                      */s/ Michael Eisenkraft*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Michael Eisenkraft (ME-6974)
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: (212) 828-7797
Facsimile: (212) 838-7745
meisenkraft@cohenmilstein.com

Carol V. Gilden (*pro hac* forthcoming)
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Telephone: (312) 357-0370
Facsimile: (312) 357-0369
cgilden@cohenmilstein.com

- 12 -

Steven J. Toll (*pro hac* forthcoming)
1100 New York Avenue, N.W., Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com

*Counsel for Proposed Lead Plaintiff International Brotherhood of Teamsters Local No. 710 Pension Fund, and Proposed Lead Counsel for the Class*

- 13 -

- 14 -

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 22, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Michael Eisenkraft*
Michael Eisenkraft
