UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BARCLAYS PLC
SECURITIES LITIGATION

Case No. 1:22-cv-08172-KPF

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Jeffrey T. Scott *(scottj@sullcrom.com)*
Matthew J. Porpora *(porporam@sullcrom.com)*
Julia A. Malkina *(malkinaj@sullcrom.com)*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Attorneys for Defendants*

August 21, 2023

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT .................................................................................................. 3

I.     PLAINTIFF HAS NOT PLED A STRONG INFERENCE OF SCIENTER ................. 3

     A.     Plaintiff has abandoned its claim that Barclays' statements after it discovered the over-issuance mistake were made with scienter ................................................ 4

     B.     Plaintiff fails to plead "conscious recklessness" for the statements made before Barclays discovered the over-issuance mistake ......................................... 4

          1.     Barclays' remedial measures ..................................................... 6

          2.     "Magnitude" of the over-issuance mistake ................................. 6

          3.     Assumptions based on corporate role ........................................ 8

          4.     The supposed "admissions" ..................................................... 10

          5.     Knowledge of non-WKSI status ............................................... 11

          6.     Compensation adjustments ..................................................... 11

          7.     The "core operations" doctrine ............................................... 12

     C.     The opposing inference of non-fraudulent intent is more compelling ................. 12

II.     PLAINTIFF HAS NOT PLED AN ACTIONABLE MISSTATEMENT ..................... 14

     A.     Defendants made no misstatements regarding Barclays' internal controls ........ 14

          1.     General statements regarding internal controls ....................................... 14

          2.     SOX certifications ................................................................. 15

     B.     Defendants did not misrepresent Barclays' "best estimate" of the financial exposure from the over-issuance mistake ......................................... 15

          1.     The "best estimate" statements ............................................... 15

          2.     Barclays Bank's financial restatement ..................................... 17

          3.     Barclays' announcement of the results of the independent review ......... 17

III.      PLAINTIFF FAILS TO PLEAD LOSS CAUSATION  ..................................................  18

CONCLUSION  ..........................................................................................................................  20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Acito* v. *IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ................................................................................ 11

*Algarin* v. *NYC Health + Hosps. Corp.*,
   2023 WL 4157164 (S.D.N.Y. June 23, 2023) ................................................. 4

*Bristol Cnty.* v. *Adient PLC*,
   2022 WL 2824260 (2d Cir. July 20, 2022) ..................................................... 10

*Cent. States* v. *Fed. Home Loan Mortg. Corp.*,
   543 F. App'x 72 (2d Cir. 2013) ................................................................. 19, 20

*City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008) .............................................................. 1

*City of N. Miami* v. *Nat'l Gen. Holdings Corp.*,
   2021 WL 212337 (S.D.N.Y. Jan. 21, 2021) .................................................... 3

*City of Pontiac* v. *UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ...................................................................... 7, 15

*City of Warren* v. *World Wrestling Ent. Inc.*,
   477 F. Supp. 3d 123 (S.D.N.Y. 2020) ............................................................ 10

*Dalberth* v. *Xerox Corp.*,
   766 F.3d 172 (2d Cir. 2014) ............................................................... 2, 17, 18

*Gamm* v. *Sanderson Farms, Inc.*,
   944 F.3d 455 (2d Cir. 2019) ............................................................................ 1

*Gillis* v. *QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016) ........................................................ 7, 11

*Hart* v. *Internet Wire, Inc.*,
   145 F. Supp. 2d 360 (S.D.N.Y. 2001) .......................................................... 4, 8

*In re Adient plc Sec. Litig.*,
   2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ................................................... 4

*In re AOL Time Warner, Inc.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004) ............................................................. 8

*In re Aphria, Inc. Sec. Litig.*,
   2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020) ....................................................... 9

*In re Barrick Gold Sec. Litig.*,
   2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015) ........................................................ 19

*In re Bear Stearns Cos.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................................. 7

*In re Citigroup Sec. Litig.*,
   2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ............................................ 14, 15

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
   2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ................................................... 12

*In re Donna Karan Int'l Sec. Litig.*,
   1998 WL 637547 (E.D.N.Y. Aug. 14, 1998) .................................................... 11

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
   2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ....................................................... 9

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014) ........................................................... 19, 20

*In re ProShares Tr. Sec. Litig.*,
   728 F.3d 96 (2d Cir. 2013) ................................................................................ 18

*In re PXRE Grp., Ltd., Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ................................................................. 8

*In re Renewable Energy Grp. Sec. Litig.*,
   2022 WL 14206678 (2d Cir. Oct. 25, 2022) ................................... 2, 8, 12, 13

*In re Salix Pharms., Ltd.*,
   2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ................................................... 12

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
   2023 WL 3628244 (E.D.N.Y. May 24, 2023) ..................................... 4, 6, 13, 15

*Jackson* v. *Abernathy*,
   960 F.3d 94 (2d Cir. 2020) ................................................................................. 3

*Johnson* v. *Siemens AG*,
   2011 WL 1304267 (E.D.N.Y. Mar. 31, 2011) ............................................ 11, 16

*Katz* v. *Image Innovations Holdings, Inc.*,
   542 F. Supp. 2d 269 (S.D.N.Y. 2008) ................................................................. 7

*Kleinman* v. *Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) ............................................... 16

*Lattanzio* v. *Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007) ............................................... 19

*Liu* v. *Intercept Pharms., Inc.*,
2022 WL 2165621 (2d Cir. June 16, 2022) ............................ 10

*Menora Mivtachim Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*,
2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) .......................... 2

*Meyer* v. *Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) ............................................... 14

*Midwest Operating Eng'rs* v. *Alkermes Pub. Co.*,
2021 WL 5782079 (2d Cir. Dec. 7, 2021) ............................. 20

*N. Collier Fire Control* v. *MDC Partners, Inc.*,
2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ........................ 11

*Nandkumar* v. *AstraZeneca PLC*,
2023 WL 3477164 (2d Cir. May 16, 2023) ......................... 6, 13

*Ok. F'fighters* v. *Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019) ...................................... 7

*Onel* v. *Top Ships, Inc.*,
806 F. App'x 64 (2d Cir. 2020) .......................................... 18

*Ong* v. *Chipotle Mex. Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018) ................................... 16

*Plymouth Cnty. Ret. Ass'n* v. *Array Techs., Inc.*,
2023 WL 3569068 (S.D.N.Y. May 19, 2023) ......................... 18

*Rotunno* v. *Wood*,
2022 WL 14997930 (2d Cir. Oct. 27, 2022) ............................ 3

*Salim* v. *Mobile Telesystems PJSC*,
2021 WL 796088 (E.D.N.Y. Mar. 1, 2021) .............................. 7

*Saraf* v. *Ebix, Inc.*,
2023 WL 4561655 (S.D.N.Y. July 17, 2023) .......................... 10

*Silsby* v. *Icahn*,
17 F. Supp. 3d 348 (S.D.N.Y. 2014) .................................... 18

*Singh* v. *Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019) ................................................................. 14

*Stratte-McClure* v. *Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015) .............................................................. 2, 3

*Town of Davie* v. *Nat'l Gen. Holdings Corp.*,
  2021 WL 5142702 (2d Cir. Nov. 5, 2021) ....................................... 2, 5

*Villare* v. *Abiomed, Inc.*,
  2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ..................................... 8

*Wang* v. *Cloopen Grp. Holding Ltd.*,
  2023 WL 2534599 (S.D.N.Y. Mar. 16, 2023) ................................. 9, 15

## PRELIMINARY STATEMENT

Plaintiff's Opposition confirms that this case is precisely the kind of "strike suit" Congress sought to eliminate by enacting the PSLRA, "wherein opportunistic private plaintiffs file securities fraud claims . . . whenever there is a significant change in an issuer's stock price, *without regard to any underlying culpability of the issuer*." *Gamm* v. *Sanderson Farms, Inc.*, 944 F.3d 455, 464 (2d Cir. 2019) (emphasis added).  The over-issuance of Barclays Bank securities was a mistake: it was not a fraud on the purchasers of the over-issued securities, and certainly not a fraud on Barclays' shareholders.  Even the SEC Order the Opposition cites nine times concluded that the over-issuance of Barclays Bank securities was a mistake—one not even warranting a negligence-based, much less a scienter-based, violation.

Try as it might, nothing in Plaintiff's Opposition transforms an acknowledged mistake into securities fraud perpetrated against Barclays' shareholders.  As shown in Barclays' opening brief, scores of cases have rejected the same kinds of allegations Plaintiff makes here, including in other cases against Barclays challenging the same general statements about controls based on a control deficiency in one particular facet of Barclays' business.  Plaintiff tries to wave away every case Barclays cites as containing "factual distinctions that set this case apart," but the only distinction Plaintiff identifies is that those cases did not involve "issuing unregistered securities."  (Opp. 3, 18.)  That is a distinction without a difference.  Whether the mistake involves over-issuing securities or something else, the point remains the same:  "a mistake . . . does 'not constitute fraud.'"  *City of Brockton Ret. Sys.* v. *Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008).  None of Plaintiff's other arguments hits the mark.

*First*, the Opposition concedes that Barclays had no motive to defraud its shareholders.  (Opp. 24 n.7.)  Plaintiff therefore tries to convert the alternative "conscious recklessness" requirement, which is "a state of mind approximating actual intent," into simple negligence.

*Stratte-McClure* v. *Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015).  But no matter how many times Plaintiff says the word "reckless," it presents nothing more than "conditional allegations" that "a defendant would have learned the truth about [the alleged] fraud through due diligence," which "are generally insufficient to plead scienter." *Town of Davie* v. *Nat'l Gen. Holdings Corp.*, 2021 WL 5142702, at *2 (2d Cir. Nov. 5, 2021) (alteration and quotations omitted).  Because Plaintiff has not pled facts supporting a strong inference that the Individual Defendants knew that Barclays Bank failed to track in real-time the amount of securities issued from the non-WKSI shelf, Plaintiff shifts to arguing that it has pled that the Individual Defendants knew the basic fact that Barclays Bank lost its WKSI status.  But that is no more relevant than alleging that an oil refinery CEO knew the basic fact that refining oil requires blending chemicals, as opposed to knowing that one of the company's plants had blended chemicals improperly, *see In re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at *3-4 (2d Cir. Oct. 25, 2022), or that a perfume company CEO knew the basic fact that the company sold perfume in Ukraine, as opposed to knowing that the company had bribed Ukrainian officials to do so, *see Menora Mivtachim Ins. Ltd.* v. *Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *25 (S.D.N.Y. Mar. 30, 2021).

     *Second*, the Opposition cannot explain how general statements about the existence of internal controls at "Barclays Group" (*i.e.*, the holding company and all of its subsidiaries around the world) are rendered false merely because there was a lapse in tracking ETNs and structured notes issued by a single trading desk at a single Barclays subsidiary in the United States.  (Opp. 3-4.)  Plaintiff also continues to nitpick the statements Barclays made after it discovered the over-issuance mistake, but its criticisms boil down to a "wish that *more* was said, perhaps in more evocative language," which does not give rise to a securities fraud claim.  *Dalberth* v. *Xerox Corp.*, 766 F.3d 172, 187 (2d Cir. 2014) (emphasis in original).

*Third*, Plaintiff cannot plead loss causation for the July 28, 2022 and February 15, 2023 alleged "corrective disclosures."   Although the Opposition identifies supposedly new "facts" revealed on those dates (Opp. 38), Plaintiff makes no effort to explain how those insignificant embellishments of previously disclosed information revealed the falsity of any prior statement.

## ARGUMENT

### I.   PLAINTIFF HAS NOT PLED A STRONG INFERENCE OF SCIENTER.

Because Plaintiff concedes that it does not allege that Defendants had a motive to defraud (Opp. 24 n.7), its "uphill battle to plead a strong inference of scienter becomes that much steeper." *City of N. Miami* v. *Nat'l Gen. Holdings Corp.*, 2021 WL 212337, at *11 (S.D.N.Y. Jan. 21, 2021). To try to clear the "higher standard" for pleading "circumstantial allegations" of "conscious behavior," Plaintiff misconstrues the applicable legal standard in two ways.  *Rotunno* v. *Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022).

*First*, Plaintiff cites abrogated cases to suggest that the scienter of any "management-level employee" can be imputed to Barclays.  (Opp. 24.)  The Second Circuit has clarified that an employee's scienter can be imputed to the corporation only if the employee "made," "craft[ed]," or "review[ed]" the alleged misstatements or otherwise was "involved in the[ir] dissemination." *Jackson* v. *Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020).  Here, the Individual Defendants are the only employees for whom Plaintiff makes such allegations.

*Second*, Plaintiff incorrectly conflates the applicable requirement of "conscious recklessness" with mere negligence.  (Opp. 24.)  "[C]onscious recklessness" means "a state of mind approximating actual intent, and not merely a heightened form of negligence."  *Stratte-McClure*, 776 F.3d at 106.  The word "conscious" in the legal standard is meaningful—it requires actual awareness of contradictory information:  "[i]f recklessness means something more culpable than negligence, as it must, then an allegation that a defendant merely 'ought to have known' is

not sufficient to allege recklessness." *Hart* v. *Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001). "Rather, 'to withstand a motion to dismiss plaintiff[] must detail specific contemporaneous data or information known to the defendants that was inconsistent with the representation in question.'" *Id.*; *see In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *26 (S.D.N.Y. Apr. 2, 2020) ("[R]ecklessness may be sufficiently pleaded where there are '[p]lausible allegations that a defendant had facts at his disposal contradicting material public statements, but then ignor[ed] such facts or proceed[ed] despite them.'"). Plaintiff pleads nothing of the sort. As Judge Kuntz recently held in rejecting the same kind of "scattershot" scienter allegations made by this same Plaintiff, "BRS's allegations do not support a 'powerful or cogent' inference that the Individual Defendants 'harbored thoughts of fraud,'" as required to plead "conscious recklessness." *In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 2023 WL 3628244, at *15 (E.D.N.Y. May 24, 2023).

### A. Plaintiff has abandoned its claim that Barclays' statements after it discovered the over-issuance mistake were made with scienter.

Barclays pointed out in its opening brief that Plaintiff does not even try to allege scienter for the challenged statements that Barclays made beginning in March 2022, after it discovered the over-issuance mistake. (Opening Br. 17-18.) Because the Opposition does not "provide any response at all," the "claim is deemed waived." *Algarin* v. *NYC Health + Hosps. Corp.*, 2023 WL 4157164, at *10 n.7 (S.D.N.Y. June 23, 2023). As a result, the Court should dismiss Plaintiff's claims based on the challenged statements made after Barclays discovered the over-issuance mistake for failure to even try to plead scienter.

### B. Plaintiff fails to plead "conscious recklessness" for the statements made before Barclays discovered the over-issuance mistake.

The first step in the scienter analysis—and where Plaintiff immediately goes astray—is identifying *what* defendants needed to know to support an inference of fraudulent intent. Rather

-4-

than plead that the Individual Defendants knew Barclays Bank was not tracking its ETN and structured note issuances, Plaintiff contends that its allegations support an inference that the Individual Defendants knew that the loss of WKSI status in 2017 was significant for Barclays Bank (*i.e.*, they "were aware of the impact of Barclays' not having WKSI status on the bank's process to issue securities in the United States"). (Opp. 27.) Barclays does not contest that the Individual Defendants knew that losing WKSI status required changes to the way Barclays Bank issued securities, but that is not the relevant question for scienter. Nor does the Amended Complaint contain any factual allegations that the Individual Defendants "recklessly turned a blind eye" to that issue. (Opp. 24.) On the contrary, Plaintiff acknowledges that Barclays recognized the significance of Barclays Bank losing WKSI status and "assembled a Working Group" to "navigate this fundamental shift." (Opp. 1.)

As Plaintiff ultimately concedes, the relevant question for scienter is whether the Individual Defendants knew that the Working Group failed in its task to "establish[] an internal control to track actual offers and sales of securities on a real-time basis." (Opp. 7.) "[T]he Amended Complaint does not allege that any [Defendant] *was confronted with* information about" the lack of real-time tracking of Barclays Bank securities and chose to do nothing about it, as required to plead scienter. *Nat'l Gen. Holdings*, 2021 WL 5142702, at *2 (emphasis added). In fact, Plaintiff pleads the opposite. As the Amended Complaint makes clear, once Barclays discovered the over-issuance mistake, it sprang into action: it halted issuance of securities from Barclays Bank's non-WKSI shelf, it self-reported to the SEC, it launched an independent investigation, it made contemporaneous public disclosures to its shareholders, and it commenced a rescission offer of unprecedented scope. (AC ¶¶ 81-86.)

In an attempt to transform a mistake into something sinister, the Opposition claims that the SEC Order states that the over-issuances mistake was "'elementary' and 'so obvious as to be deliberately reckless.'"  (Opp. 19 (purportedly quoting SEC Order at 12).)  But those words—or anything like them—never appear in the SEC Order.  Indeed, the SEC Order does not allege that Barclays or Barclays Bank violated any fraud-based or even negligence-based provisions of the securities laws in connection with the over-issuance mistake.  (*See* Opening Br. Ex. 1.)

          1.     ***Barclays' remedial measures.***  Plaintiff argues that the Court should infer that the Individual Defendants knew Barclays Bank had no controls to track non-WKSI securities and intended to defraud Barclays shareholders by concealing that information, because after Barclays discovered the over-issuance mistake, it undertook extensive "remedial efforts," including self-reporting the issue to the SEC, conducting an internal investigation, promptly disclosing the issue to its shareholders, and conducting a rescission offer of "historic scope."  (Opp. 25-26.)[1]  The Opposition cites no authority for that counterintuitive argument.  Plaintiff "has it backwards . . . .  Rather than supporting an inference of scienter, [Barclays'] efforts to investigate and remediate noncompliance undermine such an inference."  *Telefonaktiebolaget*, 2023 WL 3628244, at *17 (quotations omitted); *see Nandkumar* v. *AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023) ("divulging [negative] information" to regulators "weakens the inference that there was conscious misbehavior or recklessness").

          2.     ***"Magnitude" of the over-issuance mistake.***  Plaintiff is wrong that scienter can be inferred merely because the impact of the alleged misstatement was of a large "magnitude."

---

[1] Plaintiff asserts that the rescission offer was not voluntary because it claims the SEC Order states that Barclays was "required to conduct a rescission offer."  (Opp. 25 n.8 (purportedly quoting SEC Order at 15, a page that does not exist).)  Those words also do not appear in the SEC Order.  Rather, the SEC Order states that, "[o]n March 28, 2022, [Barclays Bank] announced its intent to conduct a rescission offer with respect to the over-issuance."  (Opening Br. Ex. 1 at 8.)

(Opp. 26.)  That argument collapses scienter with loss causation, which are distinct elements that Plaintiff must plead.  Thus, in the very case the Opposition cites, the court made clear that "the size of the fraud alone does not create an inference of scienter."  *Ok. F'fighters* v. *Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019).  Instead, the court held that plaintiff adequately pled that a company's senior executives knew their "public statements about 'flat channel inventory levels'" were false because they attended "monthly CEO Calls" where "spiraling inventory levels" were discussed.  *Id.* at 37.  Unlike here, plaintiff "pointed to specific [contradictory] numbers in CEO Call slide decks . . . and alleged that [d]efendants reviewed them."  *Id.*  The "magnitude" of the spiraling inventory levels merely "buttressed" the allegations of actual knowledge, which are entirely absent here.  *Id.* at 37-38.  The other cases Plaintiff cites are to the same effect.[2]

Courts in this Circuit routinely dismiss securities fraud claims on scienter grounds where the magnitude and consequences of the challenged conduct were more severe than the over-issuance of securities and resulting SEC fine in this case.  For example:

- *City of Pontiac* v. *UBS AG*, 752 F.3d 173 (2d Cir. 2014):  No scienter despite failure to manage risks of mortgage securities, resulting in a $48 billion loss.  *Id.* at 178, 185-86.

- *Salim* v. *Mobile Telesystems PJSC*, 2021 WL 796088 (E.D.N.Y. Mar. 1, 2021):  No scienter despite vast foreign bribery scheme, resulting in a deferred prosecution agreement with Department of Justice and an $850 million penalty.  *Id.* at *2, 12-14.

- *Gillis* v. *QRX Pharma Ltd.*, 197 F. Supp. 3d 557 (S.D.N.Y. 2016):  No scienter despite FDA's denial of approval of company's lead pharmaceutical product, resulting in the company's bankruptcy.  *Id.* at 573-75, 603-06.

_____

[2] *See Katz* v. *Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 273 (S.D.N.Y. 2008) (company's chief operating officer knew "the vast majority of the [company's] purported sales in 2004 were fictitious" because he "supplied the information used to generate invoices for the fictitious sales"); *In re Bear Stearns Cos.*, 763 F. Supp. 2d 423, 513-18 (S.D.N.Y. 2011) (auditor acted with scienter where it disregarded its duty to examine "the largest balance sheet line item in Bear Stearns' financial statements" and ignored deficiencies specifically identified by the SEC).

- *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009):  No scienter despite massively understating insurance loss estimates, resulting in credit downgrades, cancellation of 82% of client contracts, and a rescue merger.  *Id.* at 522-23, 545-46.

      **3.**      ***Assumptions based on corporate role.***  It is well established that "generalized allegations predicated on what the Defendants must have known '[b]y virtue of their responsibilities and activities as a senior officer,' are precisely the kind of conclusory allegations that fail to satisfy the PSLRA's heightened pleading standard." *Renewable Energy*, 2022 WL 14206678, at *3 (citation omitted).  Plaintiff's contention that the court in *In re AOL Time Warner, Inc.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004), inferred scienter based on defendant's senior position is incorrect.  (Opp. 31.)  The court expressly disclaimed any such holding:  "had plaintiff only alleged that [defendant] was a senior executive, actively involved in [c]ompany management, such an allegation would be insufficient." *AOL*, 381 F. Supp. 2d at 222 n.30.  The court actually held that plaintiff adequately pled that defendant "knew facts or had access to information" contradicting his public statements about strong advertising growth because he authorized "AOL's major advertising deals" and attended "weekly" meetings where he learned that the seismic bursting of the dot-com bubble led to a "downturn in AOL's advertising business." *Id.* at 221-22.

      Nor can the Court infer scienter based on the notion that the Individual Defendants might have had "access" to raw data that would have allowed them to count the number of ETNs and structured notes Barclays Bank issued and then piece together that there was an over-issuance mistake.  (Opp. 24.)  "[S]imply asserting that executives had access to extensive raw data that reflected problems . . . is insufficient to raise an inference of scienter," because "scienter requires that a defendant be specifically informed of contrary information." *Villare* v. *Abiomed, Inc.*, 2021 WL 4311749, at *23 (S.D.N.Y. Sept. 21, 2021); *see Hart*, 145 F. Supp. 2d at 368-69 ("[E]ven an 'egregious' failure to gather information will not establish 10b-5 liability as long as the defendants did not 'deliberately shut their eyes to the facts.'").

At most, Plaintiff cites cases for the proposition that senior company officials are "presumed" to know "basic facts" about the business (Opp. 30-31), such as (i) the fact that the company was a sham and had "ceased operations for several years," making the reported "sudden rise in revenues" obviously fraudulent, *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *2, 4 (S.D.N.Y. Jan. 27, 2014); or (ii) the fact that a small internet company had incurred a "massive liability" just before its IPO that by itself "contributed to a staggering 466.9% increase in net loss," *Wang* v. *Cloopen Grp. Holding Ltd.*, 2023 WL 2534599, at *8, 15-16 (S.D.N.Y. Mar. 16, 2023).  None of that helps Plaintiff.  Indeed, by Plaintiff's own account, the only inference the Court may draw from the Individual Defendants' position is that they "kn[ew] the 'basic fact[]'" that Barclays Bank had "los[t] [its] WKSI status."  (Opp. 31.)  But, again, that is irrelevant to scienter.  The relevant question is whether the Individual Defendants—the most senior executives at Barclays—knew that the Working Group established to address the loss of WKSI status failed to put in place controls to track the issuance of securities by a single trading desk at a single Barclays subsidiary in the United States.  The Amended Complaint is devoid of any factual allegations suggesting they did.

To try to compensate for its failure to allege that the Individual Defendants received any "reports or statements containing contrary facts" (Opp. 32 (brackets omitted)), Plaintiff observes that "such facts 'may also be learned in other ways'" (*id.*), such as the "site visit[]" to a merger partner's facility in *In re Aphria, Inc. Securities Litigation*, 2020 WL 5819548, at *9 (S.D.N.Y. Sept. 30, 2020), where defendants learned that the business was a "sham" and "not operational."

But Plaintiff does not allege that the Individual Defendants learned of the over-issuance mistake from *any source*, which is fatal under established law.[3]

      **4.**     ***The supposed "admissions."***  Plaintiff has no response to the overwhelming authority that an alleged "admission of a weakness in internal controls after the class period" says "'nothing about the knowledge (or lack thereof) of [the Individual Defendants]' at the relevant time." *Saraf*, 2023 WL 4561655, at *7.  Although the Opposition points to *City of Warren* v. *World Wrestling Entertainment Inc.*, 477 F. Supp. 3d 123, 136 (S.D.N.Y. 2020) (Opp. 27), the admission there was not the type of present-sense understanding of a past event that courts reject for pleading scienter.  Instead, the court held that plaintiff adequately alleged that company executives knew their statements that the company was actively negotiating to "renew" an important contract were untrue because the company later admitted that the contract not only had been terminated at that time, but that the company itself had agreed to terminate it. *Id.*  In addition, unlike here, the CEO had a clear "motive" to lie about the contract in order to profit from "stock sales" before the truth came out. *Id.* at 136-37.

      Without case law to support its position, Plaintiff proclaims "'it would be absurd' to suggest that Defendants did not have [] knowledge" that Barclays Bank was not tracking securities issuances in real time.  (Opp. 28.)  If anything is "absurd," it is Plaintiff's theory—that Barclays Bank knew it had no system to track securities issuances and deliberately issued billions of dollars

---

[3] *See Bristol Cnty.* v. *Adient PLC*, 2022 WL 2824260, at *3 (2d Cir. July 20, 2022) ("[T]he complaint does not allege what, exactly, defendants learned at [] meetings that rendered their statements knowingly false."); *Liu* v. *Intercept Pharms., Inc.*, 2022 WL 2165621, at *3 (2d Cir. June 16, 2022) (Plaintiff "does not allege with any specificity at all when the Individual Defendants reviewed internal data, or even should have reviewed internal data," and "speculative allegations concerning data that Individual Defendants 'must have reviewed' or were 'already aware [of]' are insufficient to carry Plaintiffs' pleading burden."); *Saraf* v. *Ebix, Inc.*, 2023 WL 4561655, at *8 (S.D.N.Y. July 17, 2023) (Plaintiff "fails to point to any document, report, or oral statement showing that the Individual Defendants knew at the time that their statements regarding the effectiveness of Ebix's internal control were false or misleading.").

of securities beyond what it had registered; and then, years later, decided to disclose the issue by pretending it had made a mistake, immediately self-report the matter to the SEC, launch an independent investigation, and commence a rescission offer of unprecedented size.   "Courts regularly 'refuse to infer scienter when confronted with such illogical allegations.'"   *Gillis*, 197 F. Supp. 3d at 600-01 (alterations omitted).

           5.      ***Knowledge of non-WKSI status.***  Rather than defend the *non sequitur* alleged in the Amended Complaint that the Individual Defendants must have known about the over-issuance mistake because Barclays Bank disclosed that it lost WKSI status, Plaintiff shifts to a mismanagement theory that is not cognizable under the securities laws.   *See Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("well settled 'that section 10(b) was not designed to regulate corporate mismanagement'").   Plaintiff now claims that the loss of WKSI status was "of such a high level of importance" that the Individual Defendants acted "recklessly in failing to implement effective internal controls" for tracking securities.   (Opp. 29-30.)   That is irrelevant to whether the Individual Defendants acted with "'reckless disregard for the truth' of [their] public statements," and instead tries to plead an "'oversight failure of management' [which] d[oes] not support [a] securities fraud claim."   *N. Collier Fire Control* v. *MDC Partners, Inc.*, 2016 WL 5794774, at *22 (S.D.N.Y. Sept. 30, 2016); *see Johnson* v. *Siemens AG*, 2011 WL 1304267, at *20 (E.D.N.Y. Mar. 31, 2011) ("failing to better monitor the progress of [] risky contracts" is non-actionable "mismanagement"); *In re Donna Karan Int'l Sec. Litig.*, 1998 WL 637547, at *10 (E.D.N.Y. Aug. 14, 1998) (claims that "assail the conduct, judgment, and abilities" of management not actionable).

           6.      ***Compensation adjustments.***  Plaintiff agrees that a compensation clawback might support an inference of scienter only if the "clawbacks were tied directly to [participation

in] the fraud at issue." (Opp. 32-33.) That is why in the only case Plaintiff cites, the clawback was based on a "Board determination that the Individual Defendants 'intentionally engaged in wrongdoing.'" *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016).

But Plaintiff does not allege that Barclays adjusted the Individual Defendants' compensation based on any finding of culpability. On the contrary, the Opposition's selective quotation from Barclays' 2022 Form 20-F (Opp. 33) omits Barclays' explanation that it found it "appropriate" to "reduc[e] the Executive Directors' incentive outcomes via the financial performance metrics" despite the "conclu[sion] that the occurrence of the over-issuance was not the result of a general lack of attention to controls by Barclays" (Supp. Ex. 1 at 124). Because the compensation adjustments were expressly *not* based on a finding of intentional wrongdoing, they cannot contribute to an inference of scienter.

7.   ***The "core operations" doctrine.*** Putting aside the doctrine's questionable vitality (*see* Opening Br. 22), Plaintiff concedes that, at most, the "core operations" doctrine can "bolster[]" other sufficiently pled allegations of scienter, which are absent here (Opp. 34 n.12). In other words, "the core operations doctrine can only be a buoy, not a life raft." *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021). At any rate, although the Opposition contends that Barclays Bank would have preferred to retain WKSI status (Opp. 34), Plaintiff pleads no facts to suggest that the issuance of ETNs and structured notes by a single trading desk at a single Barclays subsidiary in the United States is a "core operation" of Barclays as a whole. Thus, "the allegations in the Complaint do not implicate [Barclays'] core operations." *Renewable Energy*, 2022 WL 14206678, at *3 n.4.

**C.   The opposing inference of non-fraudulent intent is more compelling.**

Barclays explained in its opening brief that any inference of scienter is fatally undermined by Barclays' prompt disclosure to its regulators and the market of the over-issuance mistake,

commencement of a voluntary independent review, continued contemporaneous public disclosures about the scope and impact of the over-issuance mistake, and decision to conduct a rescission offer of historic scope.

In an attempt to explain away Barclays' actions as somehow consistent with an intent to defraud its shareholders, Plaintiff speculates that, during the two-week period between self-reporting the over-issuance mistake to the SEC on March 14, 2022 and publicly disclosing it to shareholders on March 28, 2022, Barclays may have "benefit[ted]" by continuing to sell unregistered "structured note[s]" in order to retain "market share." (Opp. 35-36.) That theory fails because Plaintiff concedes that, on March 9, 2022—the day Barclays discovered the over-issuance mistake—Barclays "halted new offers and sales of securities from that shelf, effectively suspending its structured note business." (AC ¶ 81.) Thus, "[a] more plausible explanation for the timing of the press release is that [Barclays] . . . took time to investigate and develop a plan for remedial action, and then divulged the problem." *Renewable Energy*, 2022 WL 14206678, at *2.

The Opposition makes a few other bizarre arguments about Barclays' remediation efforts. Plaintiff contends that self-remediation undermines an inference of scienter only if the matter involves a formal "accounting error," rather than a failure to account for the amount of securities being issued. (Opp. 36.) The Second Circuit has never drawn a distinction between remediation of formal accounting errors and other matters.[4] Plaintiff also argues that an internal investigation counts for nothing in the scienter analysis if the investigation is completed before "the end of the Class Period." (Opp. 36-37.) Plaintiff cites no case supporting that novel proposition, nor explains why resolving things quickly is somehow a bad thing for a company and its shareholders.

---

[4] *See, e.g.*, *Nandkumar*, 2023 WL 3477164, at *4 (scienter undermined by disclosure to regulators about pharmaceutical "clinical trials"); *Telefonaktiebolaget*, 2023 WL 3628244, at *17 (scienter undermined by internal investigation of illegal payments to foreign government officials).

Because Plaintiff fails to adequately plead any inference of scienter—let alone the requisite strong inference—and because the opposing inference of non-fraudulent intent outweighs any inference of scienter, the Court need go no further to dismiss all of Plaintiff's claims.

## II.   PLAINTIFF HAS NOT PLED AN ACTIONABLE MISSTATEMENT.

### A.   Defendants made no misstatements regarding Barclays' internal controls.

**1.   *General statements regarding internal controls.*** Plaintiff makes no effort to explain how Barclays' general statements that it was "focus[ed] on strengthening the internal control environment across the Group" (*i.e.*, all Barclays subsidiaries worldwide) were false because of a lapse in tracking a single class of securities issued by a single trading desk at a single Barclays subsidiary in the United States.  (Opp. 14.)  Nor could it, because Plaintiff fails to "allege facts showing that [Barclays] did not, in fact, make the described" efforts to strengthen its overall control environment, much less allege that Barclays' overall "systems were so deficient that any reference to or description of them was misleading."  *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *16-17 (S.D.N.Y. Mar. 24, 2023).  That alone is fatal.

Moreover, the statements Plaintiff challenges are far less detailed than those in *Meyer* v. *Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014) (Opp. 14), in which "the company described its compliance mechanisms in confident detail, including references to 24-hour monitoring teams, specific compliance equipment, and its clean compliance record," *Singh* v. *Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019) (discussing *Meyer*, 761 F.3d at 247-48).  "Such detailed descriptions stand in sharp contrast to [Barclays'] simple and generic assertions about having 'policies and

procedures' and allocating 'significant resources.'" *Id.*; *see Citigroup*, 2023 WL 2632258, at *15 (collecting cases distinguishing *Meyer*).[5]

Nor does it matter that the general statements were made after the SEC "remov[ed] Barclays' WKSI status." (Opp. 14, 15 n.5.) That the "statements came against the backdrop of a 'highly publicized . . . SEC investigation' . . . does not change the 'milquetoast corporate-speak' nature of Defendants' [general] statements." *Telefonaktiebolaget*, 2023 WL 3628244, at *11. "[I]mportance and materiality are not synonymous," and "[t]o be 'material' within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome." *UBS*, 752 F.3d at 185.

2. ***SOX certifications.*** The Opposition concedes that the SOX certifications "do not constitute a standalone basis for liability." (Opp. 17.) Thus, the Court need not address that claim.

**B.     Defendants did not misrepresent Barclays' "best estimate" of the financial exposure from the over-issuance mistake.**

Because Plaintiff does not plead scienter for the statements made after Barclays discovered the over-issuance mistake, the Court need go no further to dismiss claims based on them. Nonetheless, those statements are inactionable for the additional reason that they are not false.

1. ***The "best estimate" statements.*** The Opposition has no response to Barclays' argument that its March 28 to May 23, 2022 statements regarding its "best estimate" of the financial exposure from the over-issuance mistake could not have been materially false or misleading when made because (i) Barclays expressly warned that its investigation was ongoing, and (ii) the small over-issuance from the 2018 Shelf that Barclays later discovered in June 2022

---

[5] The other case Plaintiff cites did not involve general statements. (Opp. 16.) Instead, the company stated that its "dollar-based net customer retention rate will remain stable at a relatively high level," when, in fact, it had "plunged . . . over 30%." *Wang*, 2023 WL 2534599, at *3, 11.

had no material effect on Barclays' financial statements. (Opening Br. 28-30.) Plaintiff merely contends that it would have liked to know that the "other issuance programmes" Barclays disclosed it was continuing to investigate "specifically" included the "2018 Shelf." (Opp. 20-21.) But "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Kleinman* v. *Elan Corp.*, 706 F.3d 145, 152-53 (2d Cir. 2013). As Plaintiff acknowledges, additional disclosure is required only if what is disclosed "create[s] a materially misleading impression." (Opp. 12.) Barclays' statement that it was continuing to investigate whether the over-issuance mistake affected "other issuance programmes" did not paint a misleading picture about the scope of Barclays' investigation simply because it did not identify by name the specific shelves being investigated. "Having addressed the[] issue[] in general terms, Defendants did not omit material facts by failing to address[] [it] in more granular terms." *Ong* v. *Chipotle Mex. Grill, Inc.*, 294 F. Supp. 3d 199, 234 (S.D.N.Y. 2018).

Plaintiff also contends that tracking securities was "not a complex task," and, as a result, Barclays should have discovered the problem with the 2018 Shelf sooner. (Opp. 20-21.) But that has nothing to do with whether Barclays misled its shareholders by disclosing what it knew about the over-issuance mistake in near real-time while cautioning that it was continuing to investigate. Plaintiff's disappointment that Barclays did not get to the bottom of things with the speed Plaintiff would have liked is not securities fraud. *See Johnson*, 2011 WL 1304267, at *18 ("announcing costs as they were discovered and understood" is not fraud). But, again, the Court need not address this issue because Plaintiff never attempts to allege scienter. *See id.* at *19 ("The amended complaint suggests no reason for Siemens management to have concealed the costs of the legacy projects in November 2007, and to have fraudulently announced only a fraction of those costs in January 2008, only to disclose their full magnitude just several weeks later in March 2008.").

2.      ***Barclays Bank's financial restatement.***   Barclays explained in its opening brief that the Amended Complaint never says what was misleading about Barclays' statement on October 26, 2022, that "[Barclays Bank] would Restate the financial statements included in its [2021] Annual Report on Form 20-F." (Opening Br. 31 (quoting AC ¶ 171).)  Plaintiff claims that Paragraph 162 of the Amended Complaint gives the reason.  (Opp. 22.)  But all Paragraph 162 says is that the initial Form 20-F "understated" Barclays Bank's operating expenses because of the over-issuance mistake, and therefore a restatement was warranted.  (AC ¶ 162.)  The disclosure announcing the restatement did not omit that a restatement was occurring.

3.      ***Barclays' announcement of the results of the independent review.*** Plaintiff continues to insist that it was misled by Barclays' October 26, 2022 statement regarding the independent review of the over-issuance mistake.  (Opp. 22.)  None of its arguments holds water.

*First*, the Opposition asserts that Barclays' disclosure that it "may [make] adjustments to remuneration" (Opening Br. Ex. 8 at 3) was inadequate because Plaintiff wanted to know whether Barclays was considering adjusting the compensation of "Venkatakrishnan, Cross, and Morzaria" in particular (Opp. 22).  Plaintiff fails to explain how the omission of that detail rendered Barclays' disclosure misleading.  On the contrary, because Barclays did not purport to limit its compensation review to any particular person, reasonable investors would have understood that compensation adjustments were on the table for everyone.  "While Plaintiffs may have desired more detailed or nuanced language, that is not what the law requires."  *Dalberth*, 766 F.3d at 186-87.

*Second*, Plaintiff claims Barclays should have disclosed later that it ultimately "determined that . . . Venkatakrishnan, Morzaria and Cross were deserving of 'individual accountabilities' in relation to the over-issuances."  (Opp. 22.)  But Plaintiff concedes that Barclays did exactly that in

its Form 20-F for 2022.  (*See* AC ¶ 199 ("Barclays' 2022 Form 20-F also revealed . . . the Company was clawing back compensation from . . . Venkatakrishnan, . . . Morzaria, and Cross.").)

*Third*, Plaintiff says Barclays tricked it into holding out hope that the over-issuance mistake would have no impact on Barclays' reputation—despite the SEC fine, restatement, unprecedented rescission offer, double-digit stock price decline, press coverage, and "torrent of bad news" (Opp. 9; AC ¶¶ 160-67, 182-91)—because Barclays warned only that its reputation "could" be harmed, rather than making a more emphatic statement (Opp. 23).  The objective of disclosure is not to "address reasonable investors as if they were children in kindergarten," *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (brackets omitted), and Plaintiff's "wish" for "more evocative language" does not give rise to a securities fraud claim, *Dalberth*, 766 F.3d at 187.  Rather, it was up to investors to "draw their own conclusions" about the obvious implications of the over-issuance mistake.  *Silsby* v. *Icahn*, 17 F. Supp. 3d 348, 362 (S.D.N.Y. 2014); *see Onel* v. *Top Ships, Inc.*, 806 F. App'x 64, 68 (2d Cir. 2020) ("risk disclaimer" not inadequate because it used the "indefinite" word "may"); *Plymouth Cnty. Ret. Ass'n* v. *Array Techs., Inc.*, 2023 WL 3569068, at *12 (S.D.N.Y. May 19, 2023) (rejecting argument that "use of 'may' 'could' or 'if' expresses only the possibility of risk").

## III.   PLAINTIFF FAILS TO PLEAD LOSS CAUSATION.

The Opposition confirms that the Amended Complaint's inclusion of the July 28, 2022 and February 15, 2023 purported "corrective disclosures" is a transparent and improper attempt to extend the class period by nearly a full year.

*July 28, 2022 "corrective disclosure."*  The Opposition claims that, until the July 28, 2022 disclosure that Barclays had discovered during its ongoing independent review that "a small portion of the over-issuance also occurred under [the 2018 Shelf]" (Opening Br. Ex. 3 at 9-10), "investors were not aware that there may have been an over-issuance from the 2018 Shelf" (Opp.

38).  Plaintiff ignores that Barclays disclosed two months earlier (on May 23) that its investigation of "other issuance programmes" besides the 2019 Shelf remained ongoing.  (Opening Br. Ex. 7 at 18.)  Thus, Barclays' subsequent disclosure that it uncovered a small over-issuance relating to the 2018 Shelf "cannot be regarded as [a] 'corrective disclosure[],'" because Barclays "specifically warned investors [earlier] that it 'may identify additional material weaknesses.'"  *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 300 (S.D.N.Y. 2014).

Plaintiff complains that the earlier disclosures lacked details to enable it to "accurately weigh that risk" (Opp. 38), but the Second Circuit has rejected this exact argument.  In *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147, 157-58 (2d Cir. 2007), the Court held that loss causation was not pled because shareholders had already been "made aware of the risk" of the company's potential bankruptcy, notwithstanding plaintiff's allegation that it was unable "to evaluate [the] precise gravity" of the company's problems until the alleged corrective disclosure.  That fact also distinguishes the case Plaintiff cites (Opp. 38) where, unlike here, defendant's only prior disclosure on the relevant topic misleadingly suggested that the risk was "remote or highly unlikely," *In re Barrick Gold Sec. Litig.*, 2015 WL 1514597, at *13 (S.D.N.Y. Apr. 1, 2015).

***February 15, 2023 "corrective disclosure."***  The Opposition contends that the market learned two facts on February 15, 2023:  (i) Barclays made compensation adjustments for "three of the Defendants"; and (ii) "Barclays' 2022 full year revenue decreased 19% due to costs related to the over-issuance and rescission offer."  (Opp. 38.)  But Plaintiff never explains how those purportedly new facts "revealed the falsity of [Barclays'] own statements and caused 'the decline in stock value that [P]laintiff[] claim[s] as [its] loss.'"  *Cent. States* v. *Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (emphasis omitted).

-19-

*First*, Plaintiff makes no effort to explain how the announcement of compensation adjustments that were expressly *not* based on a finding of culpability (*supra* at 12) revealed that any of Barclays' statements about the over-issuance mistake were untrue, especially given that Barclays already had disclosed that it may make compensation adjustments.  *See Magnum Hunter*, 26 F. Supp. 3d at 300.

*Second*, Plaintiff does not and cannot contend that the February 15, 2023 disclosure revealed any new information about the "costs related to the over-issuance and rescission offer." (Opp. 38.)  On the contrary, that disclosure—that the 19% decline in revenue was attributable to "a net attributable loss of £0.6bn in the year ended 31 December 2022 in relation to the Over-issuance of Securities"—was "materially in line with the anticipated financial impact disclosed in [the Q1 2022] results announcements."  (Supp. Ex. 1 at 101.)  *See Cent. States*, 543 F. App'x at 74 (plaintiff's "pleadings do not plausibly allege that they were not on notice of the true gravity of Freddie's situation until corrective disclosures").[6]

### CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.[7]

---

[6] The control-person claim should be dismissed for failure to allege any primary violation and for the reasons explained in Barclays' opening brief.  (*See* Opening Br. 36-37.)

[7] The Court should deny Plaintiff's perfunctory request for leave to amend.  (Opp. 40 n.19.)  As in *Midwest Operating Engineers* v. *Alkermes Public Co.*, 2021 WL 5782079, at *5 (2d Cir. Dec. 7, 2021), Plaintiff "requested leave to amend in a footnote attached to the last line of its memorandum in opposition" without "suggest[ing] any tangible amendments," and Plaintiff was already "permitted to file an amended complaint [nearly six] months after initiating this litigation," which "added [nearly] seventy pages of pleadings."  Nor could any amendment cure the fatal flaw underlying Plaintiff's lawsuit that a mistake is not securities fraud.

Dated: August 21, 2023

Respectfully Submitted,

/s/ *Jeffrey T. Scott*
Jeffrey T. Scott
Matthew J. Porpora
Julia A. Malkina
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants*