**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BARCLAYS PLC SECURITIES LITIGATION | Case No. 1:22-cv-08172-KPF |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL RECONSIDERATION OF ORDER DENYING IN PART
DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR
<u>CERTIFICATION OF AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...............................................................................................ii

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO RECONSIDER........... 4

     A.    Standard On a Motion for Reconsideration Pursuant to Local Rule 6.3 ................ 4

     B.    The Court Applied the Correct Legal Standard For Assessing the
           Materiality of Defendants' Statements ..................................................... 6

     C.    The Court Applied the Correct Legal Standard for Assessing the Falsity of
           Defendants' Statements ...................................................................... 8

III.  THE COURT SHOULD DENY DEFENDANTS' MOTION FOR
     CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28
     U.S.C. § 1292(b) ..................................................................................... 10

     A.    Defendants' Prospective Appeal Does Not Concern a Controlling
           Question of Law............................................................................... 11

     B.    Defendants Have Not Shown Substantial Grounds for Disagreement ................. 12

     C.    Defendants' Prospective Appeal Would Not Advance Termination of the
           Litigation...................................................................................... 13

IV.   CONCLUSION.................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abortion Rts. Mobilization, Inc. v. Regan*,
  552 F. Supp. 364 (S.D.N.Y. 1982).........................................................................11

*In re Adelphia Commc'ns Corp.*,
  2008 WL 361082 (S.D.N.Y. Feb. 7, 2008)............................................................11

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
  693 F. Supp. 2d 241 (S.D.N.Y. 2010)..............................................................10, 12

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  77 F.4th 74 (2d Cir. 2023) ......................................................................................8

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)......................................................................6

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................................7

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004).....................................................................................11

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014).....................................................................................7

*In re CRM Holdings, Ltd. Sec. Litig.*,
  2013 WL 787970 (S.D.N.Y. Mar. 4, 2013) .............................................................5

*Degulis v. LXR Biotechnology, Inc.*,
  1997 WL 20832 (S.D.N.Y. Jan. 21, 1997) ............................................................13

*Dill v. JPMorgan Chase Bank, N.A.*,
  2021 WL 3406192 (S.D.N.Y. Aug. 4, 2021)....................................................12, 13

*Dietrich v. Bauer*,
  198 F.R.D. 397 (S.D.N.Y. 2001) .............................................................................4

*In re Enron Corp.*,
  2007 WL 2780394 (S.D.N.Y. Sept. 24, 2007)................................................... 12-13

*In re Enron Corp.*,
  316 B.R. 767 (S.D.N.Y. 2004)...............................................................................11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014)..................................................................4, 12, 13

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
    986 F. Supp. 2d 428 (S.D.N.Y. 2013)..................................................................10

*Fogarazzo v. Lehman Bros., Inc.*,
    2004 WL 1555136 (S.D.N.Y. July 9, 2004) ..........................................................13

*Fogel v. Wal-Mart de Mexico SAB de CV*,
    2018 WL 1033227 (S.D.N.Y. Feb. 21, 2018), *aff'd sub nom. Fogel v. Vega*,
    759 F. App'x 18 (2d Cir. 2018) .............................................................................6

*Gottesman v. Gen. Motors Corp.*,
    268 F.2d 194 (2d Cir. 1959)..................................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    399 F. Supp. 2d 298 (S.D.N.Y. 2005)....................................................................4

*Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*,
    973 F. Supp. 2d 459 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 138 (2d Cir. 2014).........................2

*Klinghoffer v. S.N.C. Achille Laura Ed Altri-Gestione Motonave Achille Lauro in
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990)....................................................................................11

*Lesch v. United States*,
    372 F. App'x 182 (2d Cir. 2010) ...........................................................................5

*In re Liberty Tax, Inc. Sec. Litig.*,
    828 F. App'x 747 (2d Cir. 2020) ...........................................................................7

*Lloyd v. J.P. Morgan Chase & Co.*,
    2014 WL 2109903 (S.D.N.Y. Apr. 1, 2014)..........................................................10

*In re Manhattan Inv. Fund Ltd.*,
    288 B.R. 52 (S.D.N.Y. 2002)........................................................................... 10-11

*Now-Casting Econs, Ltd. v. Econ. Alchemy LLC*,
    2023 WL 3724155 (S.D.N.Y. May 30, 2023) .......................................................2

*Ong v. Chipotle Mexican Grill, Inc.*,
    329 F.R.D. 43 (S.D.N.Y. 2018) (Failla, J.)..........................................................2, 5

*In re Petrobras Sec. Litig.*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015)....................................................................6

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) ...................................................................................................8

*Ret. Bd. of the Policemen's Annuity v. Bank of N.Y. Mellon*,
    2016 WL 2744831 (S.D.N.Y. May 9, 2016) ........................................................................11

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015)..............................................................................3, 5

*Rosenberg v. Educ. Credit. Mgmt. Corp.*,
    2023 WL 6162940 (S.D.N.Y. Sept. 20, 2023)................................................................ 11-12

*SEC v. Rio Tinto PLC*,
    2021 WL 818745 (S.D.N.Y. Mar. 3, 2021), *aff'd*, 41 F.4th 47 (2d Cir. 2022) .........................4

*Shrader v. CSX Transp. Inc.*,
    70 F.3d 255 (2d Cir. 1995)................................................................................................ 4-5

*In re Signet Jewelers Ltd. Sec. Litig.*,
    389 F. Supp. 3d 221 (S.D.N.Y. 2019)..........................................................................6, 7, 8

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)...................................................................................................8

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    2024 WL 1208778 (S.D.N.Y. Mar. 21, 2024) .................................................................. 5-6

*In re Tenaris S.A. Sec. Litig.*,
    2021 WL 2843204 (E.D.N.Y. July 1, 2021).................................................................10, 12

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976).............................................................................................................7

*United States v. Huron Consulting Grp., Inc.*,
    2011 WL 2017322 (S.D.N.Y. May 16, 2011) ....................................................................10

*Van Buskirk v. United Grp. of Cos.*,
    935 F.3d 49 (2d Cir. 2019)...................................................................................................4

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)..............................................................................................5

*Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*,
    2011 WL 1347001 (S.D.N.Y. Apr. 4, 2011), *aff'd*, 495 F. App'x 129 (2d Cir.
    2012) .....................................................................................................................................5

*Younger v. Virtus Inv. Partners Inc.*,
    228 F. Supp. 3d 295 (S.D.N.Y. 2017)................................................................................11

**Statutes & Rules**

28 U.S.C. § 1292(b) .................................................................................................... *passim*

Local Rule 6.3 .................................................................................................................2, 3, 4

Court-appointed Lead Plaintiff Boston Retirement System ("Plaintiff") hereby submits this Opposition to Defendants' Memorandum of Law in Support of Their Motion for Partial Reconsideration or, Alternatively, Certification of an Interlocutory Appeal Under 28 U.S.C. § 1292(b), ECF No. 67 ("Motion" or "Mot."). [1]

## I.  PRELIMINARY STATEMENT

On February 23, 2024, the Court denied Defendants' motion to dismiss in part (ECF No. 61, the "MTD Order" or the "Opinion"), finding that Plaintiff had adequately alleged material falsity, scienter, and loss causation as to the statements Defendants made regarding their internal controls and SOX certifications prior to March 28, 2022, when Defendants disclosed that Barclays had been issuing unregistered securities for more than thirteen (13) months, causing losses for investors.  Eventually, Barclays discovered that these over-issuances amounted to $17.7 billion, engaged in a rescission offer to buy back the unregistered securities from its customers, and clawed back over $1 million in compensation from certain of the Individual Defendants.

On March 8, 2024, Defendants filed this Motion, which is nothing more than an improper attempt to rehash arguments already made, considered, and rightly rejected by this Court.  The Court should deny the Motion, as Defendants fail to identify a single change of fact or law, or a manifest showing that the Court failed to consider material presented to it in sustaining Plaintiff's claims.  Instead, Defendants submit misleading interpretations of case law and invent a rule out of whole cloth that, as a matter of law, companies' statements about their internal controls over

---

[1] Defendants are: (i) Barclays PLC ("Barclays" or "BPLC"); (ii) James E. Staley; (iii) C.S. Venkatakrishnan; (iv) Tushar Morzaria; and (v) Anna Cross.  Staley, Venkatakrishnan, Morzaria, and Cross are collectively referred to as the "Individual Defendants."  The Amended Class Action Complaint is referred to herein as the "Complaint."  ECF No. 46 (cited as "¶__").  All capitalized terms have the same meaning as in the Complaint.  All internal citations are omitted and emphasis is added, unless otherwise noted.

financial reporting are *per se* inactionable.  As the Court made perfectly clear in its judicious, fifty-seven (57) page Opinion on the motion to dismiss, Defendants' alternative facts and misapprehensions of Second Circuit precedent should not be given a shred of credibility.

Unabashedly, Defendants' motion for "partial" reconsideration of the Court's Order employs the "obviously inappropriate" strategy of merely "reiterat[ing] arguments made previously, and unsuccessfully, in [their] prior motion to dismiss." *Ong v. Chipotle Mexican Grill, Inc.*, 329 F.R.D. 43, 51 (S.D.N.Y. 2018) (Failla, J.).  But mere disagreement with the Court's lengthy, thoughtful rulings on certain issues that the Parties briefed extensively—while ignoring others—cannot justify the "extraordinary remedy" of reconsideration.  *Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 973 F. Supp. 2d 459, 462-63 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 138 (2d Cir. 2014); *Now-Casting Econs, Ltd. v. Econ. Alchemy LLC*, 2023 WL 3724155, at *2 (S.D.N.Y. May 30, 2023).  Indeed, during the motion to dismiss briefing, Defendants submitted fifty-seven (57) pages of legal briefing, two (2) declarations, and 150 pages of exhibits, and were unable to convince the Court to dismiss this case in its entirety.  In an astounding display of arrogance toward the Court, and with complete disregard of the Court's detailed analysis, finding that Plaintiff plausibly alleged violations of the federal securities laws against Barclays and its executives—a group whom Defendants point out in the motion dismiss briefing, and again in the instant Motion, is well acquainted with being accused of violating securities laws—submitted a further twenty-four (24) pages of briefing and seemingly improper[2] five-page appendix circumventing this District's page limits, in an attempt to attack the Court's Opinion.

---

[2] Local Rule 6.3 directs that "[n]o affidavits shall be filed by any party unless directed by the Court."  While an affidavit is not identical to an appendix, the Local Rules appear to contemplate that a motion for reconsideration will stand on its own on the law.

In their Motion, Defendants only challenge the Court's finding with respect to material falsity of the statements prior to March 28, 2022, raising no challenge to the Court's findings with respect to scienter and loss causation (or the alleged false statements after March 28, 2022). The Court should find that none of the arguments Defendants make in their Motion come close to justifying reconsideration.

Defendants first argue (mistakenly) that this Court overlooked controlling Second Circuit precedent rendering their statements prior to March 28, 2022 immaterial as a matter of law. Defendants then argue (again, mistakenly) that this Court overlooked controlling Second Circuit precedent in deciding that their statements prior to March 28, 2022 were false and misleading. Like Icarus flying too close the sun, Defendants ignore the Court's Opinion and instead regurgitate the same arguments they raised in their motion to dismiss briefing that the Court made clear it had considered thoroughly (*see* Opinion at 25-33), along with a smattering of new, improper arguments. Despite nearly thirty (30) pages of extraneous, frivolous argumentation in the Motion, Defendants fail to raise any fact or controlling authority that the Court overlooked with respect to the findings Defendants challenge, and the Court should reject Defendants' attempt "to take another bite at the apple" with respect to their own motion to dismiss. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (denying reconsideration where movant "repackage[ed] arguments that this Court has already rejected, and improperly s[ought] to advance new—and unconvincing—theories").

In a tacit acknowledgement that their Local Rule 6.3 motion for reconsideration is doomed from the start, Defendants simultaneously lodge a desperate plea in the Motion for the Court to certify this standard securities fraud class action for interlocutory review by the Second Circuit pursuant to 28 U.S.C. § 1292(b). *See* Mot. 21-24. Yet, interlocutory appeal ***is an extraordinary***

*remedy* not necessary or warranted under the present circumstances. Indeed, questions concerning the sufficiency of securities fraud pleadings are inappropriate for interlocutory review because "[s]ecurities actions in the motion to dismiss stage often cannot be resolved by pure questions of law, and resolution of pure questions of law by the appellate court does not obviate subsequent applications of fact to the determined law." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014) ("*Facebook II*"). This case is no different, and the Court should deny Defendants' request for certification of an immediate appeal of the MTD Order.

## II.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO RECONSIDER

### A.    Standard On a Motion for Reconsideration Pursuant to Local Rule 6.3

Local Rule 6.3 provides that a "notice of motion for reconsideration or reargument of a court order determining a motion . . . shall be served . . . with . . . a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Thus, "to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001). Local Rule 6.3 is to be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *SEC v. Rio Tinto PLC*, 2021 WL 818745, at *2 (S.D.N.Y. Mar. 3, 2021), *aff'd*, 41 F.4th 47 (2d Cir. 2022).

The Second Circuit has held that "[a] motion for reconsideration is an *extraordinary* request that is granted *only in rare circumstances*, such as where the court failed to consider evidence or binding authority." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019). Indeed, reconsideration is so extraordinary that it is "be employed sparingly in the interest of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005). The standard on a motion for reconsideration "is strict,

and reconsideration will generally be denied unless the moving party can point to ***controlling decisions or data that the court overlooked***—matters, in other words, that might reasonably expected to alter the conclusion reached by the court." *See Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." *Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, 2011 WL 1347001, at *1 (S.D.N.Y. Apr. 4, 2011), *aff'd*, 495 F. App'x 129 (2d Cir. 2012). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

A motion for reconsideration is not an opportunity for a disappointed litigant to manufacture a second chance to argue the same points the Court already rejected. *See Lesch v. United States*, 372 F. App'x 182, 183 (2d Cir. 2010). "A party making a motion for reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings, much less rehash arguments already made and rejected." *Robinson*, 152 F. Supp. 3d at 185 (citing *Pfizer, Inc. v. Stryker Corp.*, 2005 WL 383702, at *1 (S.D.N.Y. Feb. 17, 2005)). Consequently, "[a] court should deny such motion where the moving party is solely attempting to relitigate an issue that already has been decided, and must remain vigilant to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Ong v. Chipotle Mexican Grill, Inc.*, 329 F.R.D. 43, 50 (S.D.N.Y. 2018) (Failla, J.). *Accord In re CRM Holdings, Ltd. Sec. Litig.*, 2013 WL 787970, at *3 (S.D.N.Y. Mar. 4, 2013). This is especially so where a court has "addressed, and rejected, [defendants'] arguments" in its

opinion, as the Court did here. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 2024 WL 1208778, at *1 (S.D.N.Y. Mar. 21, 2024) (where court "swiftly rejected" defendants' arguments on reconsideration "[i]n light of [Local Rule 6.3's] strict standard" because, "contrary to [d]efendants' breathless assertions, the [c]ourt did not neglect[ ], let alone fail to appreciate or understand, their arguments").

### B. The Court Applied the Correct Legal Standard For Assessing the Materiality of Defendants' Statements

Contrary to Defendants' argument that "specificity" is the touchstone of the materiality analysis, "***[m]ateriality depends upon a number of context-specific factors***, including specificity, emphasis, and whether certain statements are designed to distinguish the company in some fashion that is meaningful to the investing public." *See In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 230 (S.D.N.Y. 2019) (citing *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 98 (2d Cir. 2016)); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 647 (S.D.N.Y. 2017) ("[i]t is possible . . . that while challenged statements are mere puffery when viewed in isolation, the context in which they were made could lead a reasonable investor to rely on them"); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) ("Whether a representation is 'mere puffery' depends, in part, on the context in which it is made.").[3] Because "[c]ontext

---

[3] Defendants' citation to this Court's decision in *Fogel v. Wal-Mart de Mexico SAB de CV* (Mot. at 3) underscores this Court's understanding of the difference between immaterial statements and the material statements sustained in this case. *See* 2018 WL 1033227, at *6 (S.D.N.Y. Feb. 21, 2018), *aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) (finding it is "well-established that ***general statements about reputation, integrity, and compliance with ethical norms***—such as the alleged misstatements above regarding Wal-Mex's 'honesty and integrity' or abstention from 'bribery, corruption or unethical practices of any kind'—are inactionable puffery"). As the Opinion makes clear, the statements at issue in this case are a far cry from the "general statements about reputation, integrity and compliance with ethical norms" examined in *Fogel* and do not "fall neatly within the reasoning of [] prior cases." *See* Opinion at 30.

matters," any brightline rule on materiality "would plainly violate the Supreme Court's seminal decisions in *TSC Industries* and *Basic*." *Signet*, 389 F. Supp. 3d at 230-31.[4]

Defendants' own proffered authorities—square pegs Defendants haplessly try to jam into a round hole—undercut their arguments. For example, Defendants' reliance on *In re Liberty Tax, Inc. Securities Litigation* is woefully misplaced since the Second Circuit unequivocally held: "We conclude, **only**, that the alleged statement in this case lacks the specificity required to elevate it beyond mere puffery to an actionable, material misrepresentation." 828 F. App'x 747, 751 (2d Cir. 2020). Based on this holding, it is obvious that *Liberty Tax* is not controlling precedent the Court overlooked when it found clearly and correctly:

> At the pleading stage, a plaintiff need not establish that each of the alleged misstatements or omissions "is [materially] misleading in and of itself"; rather, **a plaintiff must only allege that "the defendants' representations, taken together and in context, would have misled a reasonable investor."**

Opinion at 25 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 250 (2d Cir. 2016)).

Defendants' other purported case law suffers from fatal defects as well. For example, while Defendants claim that *City of Pontiac v. UBS* stands for the proposition that "materiality focuses on the specificity of the statement at issue and not whether it was false or misleading" (Mot. at 10), a full review of the Second Circuit's opinion in that case reveals that the decision reviewed "explicitly aspirational" statements about "reputation, integrity, and compliance with ethical norms." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). Additionally, as during the motion to dismiss briefing, Defendants misapprehend the

---

[4] *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449-50 (1976) (an omission is material if "the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information" and this "determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts"); *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 248 (1988) (adopting the *TSC* "total mix" standard for materiality for Section 10(b) claims and rejecting "bright-line" rules).

holding of *Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019). In *Singh*, defendants made only generic statements "about having 'policies and procedures' and allocating 'significant resources[,]'" with the *Singh* court distinguishing cases where, as here, defendants discussed the mechanisms of compliance. 918 F.3d at 64.[5] Further, Defendants' reliance upon *Plumber & Steamfitters v. Danske Bank* is even more afield, as that case involved "[c]orporate [r]esponsibility [s]tatements" regarding corruption that the court noted were inactionable puffery, "especially when expressed in aspirational terms." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021). Lastly, Defendants' reliance upon *Deutsche Bank* fails because a trial court's decision— much less a trial court's footnote—is not controlling authority. *See* Mot. at 14 (citing *In re Deutsche Bank Anktiengesellschaft Sec. Litig.*, 2017 WL 4049253, at *2, 6 n.4 (S.D.N.Y. June 28, 2017)).

Perhaps most perplexingly of all, Defendants discuss a fact-specific class certification decision in their motion to reconsider this Court's well-reasoned motion to dismiss opinion. *See* Mot. at 3, 5-6, 15-16, 22-24 (citing *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023)). The cited case explicitly states that "[c]lass certification litigation provides no forum to relitigate materiality[,]" underscoring the impropriety of its citation in this case at this stage. *See Goldman*, 77 F.4th at 102.

## C.    The Court Applied the Correct Legal Standard for Assessing the Falsity of Defendants' Statements

As with their materiality arguments, Defendants recycle the same failed falsity arguments they presented during the motion to dismiss briefing. *See* Mot. at 16-21. Further, none of the arguments Defendants advance show that the Court failed to consider controlling authority in finding that their statements before March 28, 2022 were false and misleading and that, as a result, the Defendants SOX certifications prior to March 28, 2022 were false and misleading as well. In

---

[5] At least one court has described Cigna's code of conduct statement as "exceptionally vague and aspirational." *Signet*, 389 F. Supp. 3d at 231.

making their argument, Defendants conveniently omit that that Barclays' status as a WKSI was made clear on the front page of its Form 20-F filed with the SEC, underscoring the importance of this status to both the bank and the SEC, since whether Barclays was or was not a WKSI had a material impact on its ability to perform a central business operation in the United States—issuing securities.

Specifically, as alleged in the Complaint, in its 2020 Form 20-F Barclays detailed the results of the Barclays Internal Control Environment Programme ("BICEP") and declared that because of BICEP, which "focus[ed] on strengthening the internal control environment across the Group," Barclays' "control environment [was] now in a much stronger position."  ¶136. Additionally, the 2020 Form 20-F stated that the Board Audit Committee had "reached the conclusion that there are no control issues that are considered to be a material weakness and which merit specific disclosure[,]" and that the Board Audit Committee reached this conclusion after, among other things, receiving "regular reports from the Chief Controls Officer[.]"  ¶138. Additionally, the Board Audit Committee report in the 2020 Form 20-F declared that Barclays "has operated a sound system of internal control that provides reasonable assurance of financial and operational controls and compliance with laws and regulations."  *Id.*  The 2020 Form 20-F included an attached certification signed by Defendants Staley and Morzaria.  ¶141.

In the MTD Order, in light of the foregoing, the Court correctly found that "the critical difference" between this case and cases alleging failures of internal control systems "is that the Company's system for tracking the securities it sold off of the Shelves did not just underperform — it did not exist."  Opinion at 30.  Despite Defendants' repeated attempts to downplay the colossal extent of this failure, the Court wrote in its Opinion: "Lest there be any confusion about the seriousness of this error, ***the absence of a tracking system meant that Barclays was blindly***

9

*issuing unregistered securities to the degree that the Company had an obligation, upon discovery, to buy back $17.7 billion worth of securities*." *Id.* Thus, as the Court properly found, "Defendants' statements were materially misleading because they omitted the Company's failure in the first instance to create a means of tracking the issuance of securities from the Shelves." *Id.* at 31. None of Defendants' rehashed arguments should persuade the Court otherwise.

Thus, the Court should deny Defendants' motion for partial reconsideration of the February 23, 2024 MTD Order.

### III. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

"[I]nterlocutory appeals are strongly disfavored in federal practice." *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010). "Appeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *United States v. Huron Consulting Grp., Inc.*, 2011 WL 2017322, at *1 (S.D.N.Y. May 16, 2011). Certification of an interlocutory appeal under 28 U.S.C § 1292(b) should only be granted in "exceptional circumstances." *Lloyd v. J.P. Morgan Chase & Co.*, 2014 WL 2109903, at *3 (S.D.N.Y. Apr. 1, 2014) *report and recommendation adopted*, 2014 WL 3537808 (S.D.N.Y. July 16, 2014). Moreover, there is a history in the Second Circuit that 28 U.S.C. § 1292(b) motions are routinely denied, both at preliminary stages, and in federal securities class actions. *See In re Tenaris S.A. Sec. Litig.*, 2021 WL 2843204, at *3 (E.D.N.Y. July 1, 2021); *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 986 F. Supp. 2d 428, 475-76 (S.D.N.Y. 2013) ("*Facebook I*").

The Second Circuit has held that challenges to a pleading's sufficiency are generally inappropriate subjects of interlocutory review, "as a reversal [on interlocutory appeal] at most

could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter." *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002).  An appropriate interlocutory appeal is one that presents a "pure" question of law that an appellate court can "decide quickly and cleanly without having to study the record." *Younger v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017).  "Movants cannot invoke [28 U.S.C. § 1292(b)] as a vehicle to provide early review of difficult rulings in hard cases." *In re Adelphia Commc'ns Corp.*, 2008 WL 361082, at *1 (S.D.N.Y. Feb. 7, 2008).  "Nor is it appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts." *Abortion Rts. Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982).

### A.     Defendants' Prospective Appeal Does Not Concern a Controlling Question of Law

An interlocutory appeal is only warranted where it concerns a "controlling" question of law.  28 U.S.C. § 1292(b).  "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Laura Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).  However, a question of law is not controlling where it would leave unaffected an alternative ground for the lower court's ruling. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004); *In re Enron Corp.*, 316 B.R. 767, 772 (S.D.N.Y. 2004).

This Court's findings that Defendants' statements were material and false does not present a controlling question of law because the Court applied well-settled legal standards to this case's particular facts. *See* Opinion at 25-33.  The question to be certified must be one a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Ret. Bd. of the Policemen's Annuity v. Bank of N.Y. Mellon*, 2016 WL 2744831, at *1 (S.D.N.Y. May 9, 2016) (citing *Facebook II*, 986 F. Supp. 2d at 536).  Such "[f]act dependent

11

matters that are within the [trial] court's discretion . . . do not involve a controlling issue of law under § 1292(b)." *Rosenberg v. Educ. Credit. Mgmt. Corp.*, 2023 WL 6162940, at \*3 (S.D.N.Y. Sept. 20, 2023) (citing *Convole, Inc. v. Compaq Comput. Corp.*, 2006 WL 2788234, at \*2 (S.D.N.Y. Sept. 27, 2006)).

As numerous courts have specifically held, a determination of a statement's materiality for the purposes of Section 10(b) is not a "controlling question of law." *See, e.g., Tenaris*, 2021 WL 2843204, at \*3 ("The materiality of the alleged misstatements is a mixed question of both law and fact, rendering it inappropriate for interlocutory review."); *Facebook II*, 986 F. Supp. 2d at 536-37 (materiality of omissions is "intensely fact-specific" and not a controlling question of law); *Ambac*, 693 F. Supp. 2d at 285 ("Defendants' final argument, while artfully phrased, is at bottom simply a disagreement with our conclusion as to the materiality of Ambac's alleged omission. The materiality of Ambac's nondisclosure . . . is a mixed question of law and fact, rendering it inappropriate for interlocutory review.").

The Court's February 23, 2024 Opinion makes clear that "[b]ecause materiality is a mixed question of law and fact," the Court must engage in a "fact-specific inquiry" to determine whether "reasonable minds could not differ on the question of [the statements'] importance." Opinion at 25-26. Defendants' long-winded and tortured argument that the Court's "fact-specific" materiality analysis is, in fact, a "pure" legal question, fails.

## B.    Defendants Have Not Shown Substantial Grounds for Disagreement

Further, an interlocutory appeal is only warranted where a court's order presents "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Showing such disagreement required Defendants to establish either "there is conflicting authority on the issue," or "the issue is particularly difficult and of first impression for the Second Circuit." *Dill v. JPMorgan Chase Bank, N.A.*, 2021 WL 3406192, at \*7 (S.D.N.Y. Aug. 4, 2021) (Failla, J.); *In re Enron Corp.*, 2007

12

WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007).  However, "[m]ere disagreement between cases is not sufficient" to justify interlocutory appeal.  *Facebook II*, 986 F. Supp. 2d at 539.  By contending "there clearly are reasonable grounds for divergence of opinion" (Mot.at 22), Defendants expose their misapprehension of the "substantial grounds for disagreement" standard for certification, especially given the context-specific materiality analysis at issue, and therefore fail to satisfy this prong of 28 U.S.C. § 1292(b)'s requirements as well.

C.     **Defendants' Prospective Appeal Would Not Advance Termination of the Litigation**

An interlocutory appeal is only appropriate if an "immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).  "An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial."  *Dill*, 2021 WL 3406192, at *8 (citing *Transp. Workers Union of Am., Loc. 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)).  Defendants' appeal should not be certified because even if, assuming *arguendo*, the Second Circuit accepted Defendants' arguments, Plaintiff would still have an opportunity to amend the Complaint.  *Degulis v. LXR Biotechnology, Inc.*, 1997 WL 20832, at *7 (S.D.N.Y. Jan. 21, 1997).  "It would seem axiomatic that appeals challenging pre-trial rulings upholding pleadings against demurrer could not be effective in bringing nearer the termination of litigation; on the contrary, they only stimulate the parties to more and greater pre-trial sparring apart from the merits."  *Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959); *accord Fogarazzo v. Lehman Bros., Inc.*, 2004 WL 1555136, at *2 (S.D.N.Y. July 9, 2004); *Degulis*, 1997 WL 20832, at *3.  This case is no different and therefore Defendants fail to satisfy the third and final requirement of 28 U.S.C. § 1292(b) too.

13

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Dated:  March 22, 2024                    Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By:  _Christine M. Fox_____
CHRISTINE M. FOX
JAMES M. FEE
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
cfox@labaton.com
jfee@labaton.com

*Lead Counsel for Lead Plaintiff Boston*
*Retirement System and the Proposed Class*

14