**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE BARCLAYS PLC SECURITIES LITIGATION | Case No. 1:22-cv-08172-KPF<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL RECONSIDERATION OR, ALTERNATIVELY,
CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Jeffrey T. Scott
Matthew J. Porpora
Julia A. Malkina
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588

*Attorneys for Defendants*

March 29, 2024

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT.........................................................................................................................3

I.      Plaintiff Ignores Material Errors of Law Supporting Reconsideration of the Order ...........3

II.     Defendants Have Satisfied the Requirements for Interlocutory Appeal..............................8

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ark. Tchr. Ret. Sys.* v. *Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) ................................................................................................6

*Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014)........................................................................................1, 4, 5

*City of Pontiac* v. *UBS AG*,
   752 F.3d 173 (2d Cir. 2014)............................................................................................2, 5

*Gelboim* v. *Bank of Am. Corp.*,
   823 F.3d 759 (2d Cir. 2016)................................................................................................4

*Goldman Sachs Grp., Inc.* v. *Ark. Tchr. Ret. Sys.*,
   594 U.S. 113 (2021)............................................................................................................6

*In re Banco Bradesco S.A. Sec. Litig.*,
   277 F. Supp. 3d 600 (S.D.N.Y. 2017)................................................................................7

*In re Braskem S.A. Sec. Litig.*,
   246 F. Supp. 3d 731 (S.D.N.Y. 2017)................................................................................6

*In re Facebook, Inc.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014)................................................................................9

*In re Liberty Tax, Inc. Sec. Litig.*,
   828 F. App'x 747 (2d Cir. 2020) ....................................................................................2, 5

*In re Petrobras Sec. Litig.*,
   116 F. Supp. 3d 368 (S.D.N.Y. 2015)................................................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
   389 F. Supp. 3d 221 (S.D.N.Y. 2019)................................................................................6

*Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016)..................................................................................................5

*Klinghoffer* v. *S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990)..................................................................................................8

*Meyer* v. *Jinkosolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014)................................................................................................7

*Mohawk Indus., Inc.* v. *Carpenter*,
  558 U.S. 100 (2009).........................................................................................................3

*Monsanto* v. *United States*,
  348 F.3d 345 (2d Cir. 2003)...........................................................................................7

*Plumber & Steamfitters* v. *Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...........................................................................................2, 7

*Raymond* v. *Mid-Bronx Haulage Corp.*,
  2017 WL 9882601 (S.D.N.Y. June 10, 2017) ...........................................................3

*RVC Floor Decor, Ltd.* v. *Floor & Decor Outlets of Am., Inc.*,
  2023 WL 3092918 (E.D.N.Y. Apr. 26, 2023) ...........................................................2

*SEC* v. *Rio Tinto PLC*,
  2021 WL 1893165 (S.D.N.Y. May 11, 2021) ...........................................................8

*Shrader* v. *CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995)...........................................................................................3

*Singh* v. *Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019)...........................................................................................2, 7

*TSC Indus., Inc.* v. *Northway, Inc.*,
  426 U.S. 438 (1976).......................................................................................................7

**Statute**

28 U.S.C. § 1292(b) .................................................................................................................3, 8

**Other Authority**

Emily Strauss, *Is Everything Securities Fraud?*,
  12 UC Irvine L. Rev. 1331 (2022)...............................................................................8

**PRELIMINARY STATEMENT**

Plaintiff's Opposition confirms that the Court should reconsider its Order denying, in part, Defendants' motion to dismiss or, alternatively, certify the Order for interlocutory review. Because the Order contravenes numerous Second Circuit decisions on a controlling question of law regarding the falsity and materiality of generic statements about internal controls that the Court overlooked, the Court should grant Defendants' motion for reconsideration and dismiss Plaintiff's claims.[1]

*Falsity.*  Plaintiff does not dispute that it is impossible to reconcile this Court's reasoning that Barclays' generic statements about its internal controls across all of its operations around the world were false because one business activity at one subsidiary in one country "failed to implement . . . any internal controls" to track issuances of two types of securities (structured notes and ETNs) (Order at 30), with controlling Second Circuit precedent dismissing nearly identical statements by Barclays.  There too, the plaintiffs alleged that "Barclays had *no* specific systems or controls" related to one business activity (its LIBOR submissions process), but the Second Circuit held that Barclays' generic statements about internal controls were not false as a matter of law because those statements did "not mention LIBOR, nor . . . say that Barclays had established specific systems or controls relating to LIBOR submission rates." *Carpenters Pension Trust Fund of St. Louis* v. *Barclays PLC*, 750 F.3d 227, 231, 236 (2d Cir. 2014) (emphasis added).  Plaintiff ignores entirely the Second Circuit's decision in *Carpenters*, presumably because it has no response to it.  Under *Carpenters*, the fact that none of the Pre-Revelation Disclosures promised shareholders that Barclays had implemented internal controls to track Barclays Bank's issuance of structured notes and ETNs in the U.S. is determinative.  Tellingly, although Plaintiff asserts that

---

[1] Unless otherwise stated, all internal citations and quotation marks are omitted.  Defined terms have the same meanings as those used in the Motion for Reconsideration ("Motion" or "Mot.").

the Order "applied the correct legal standard for assessing [] falsity," Plaintiff does not cite a single case—not one—that supports the Order's conclusion that a single control lapse renders Barclays' generic statements false. (Opp. 8-10 (capitalization omitted).)

*Materiality.* Plaintiff has no response to the many decisions from the Second Circuit reiterating that materiality requires a showing that the statements are "detailed and specific." *Plumber & Steamfitters* v. *Danske Bank A/S*, 11 F.4th 90, 103-04 (2d Cir. 2021). As a result, allegations that generic "statements were knowingly and verifiably false when made does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *City of Pontiac* v. *UBS AG*, 752 F.3d 173, 183, 185 (2d Cir. 2014). This Court's reasoning that Barclays' generic Pre-Revelation Disclosures describing its internal controls worldwide were material because of one control failure in one part of one subsidiary in one country is incompatible with this controlling Second Circuit authority. In case after case ignored by Plaintiff, the Second Circuit has held that indistinguishable statements about controls are immaterial as a matter of law, despite allegations that a control process was a sham (*In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747 (2d Cir. 2020)), or that senior management affirmatively directed illegal activity (*UBS*), or that management took no steps to implement controls after a merger (*Singh* v. *Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019), and *Danske Bank*). (*See* Mot. 11-16.)

Instead of addressing controlling precedent, Plaintiff dwells on the "extraordinary" nature of reconsideration and claims that Defendants merely "reiterat[e] arguments" that the Court rejected in the Order. (Opp. 2.) But this case is precisely the circumstance where reconsideration is warranted. Where, as here, "controlling decisions [] were initially overlooked by the Court," *RVC Floor Decor, Ltd.* v. *Floor & Decor Outlets of Am., Inc.*, 2023 WL 3092918, at *3 (E.D.N.Y.

Apr. 26, 2023), reconsideration "saves the parties' (and the Circuit's) time by avoiding a second, unnecessary battle in the Court of Appeals," *Raymond* v. *Mid-Bronx Haulage Corp.*, 2017 WL 9882601, at *2 (S.D.N.Y. June 10, 2017).

If the Court does not reconsider its Order, it should certify the Order for interlocutory review. Despite its protestations, Plaintiff cannot dispute that the Court's Order readily satisfies all three statutory criteria for certification under Section 1292(b): it involves two (i) "controlling question[s] of law" (materiality and falsity), (ii) "as to which there is substantial ground for difference of opinion," (iii) whose resolution "may materially advance the ultimate termination of the litigation." Because "[t]he preconditions for § 1292(b) review" are "satisfied," the Court "should not hesitate to certify an interlocutory appeal." *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 110-11 (2009).

### ARGUMENT

### I.    Plaintiff Ignores Material Errors of Law Supporting Reconsideration of the Order.

Reconsideration should be granted where a party "point[s] to controlling decisions or data that the court overlooked." *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Plaintiff is wrong that Defendants merely seek "another bite at the apple" or have "advance[d] new theories . . . in response to the court's rulings." (Opp. 3, 5.) Respectfully, Defendants have identified controlling authority overlooked by the Order that "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.[2]

---

[2] Plaintiff misleadingly implies that granting reconsideration would not result in dismissal of the entire action, noting that Defendants do not challenge the Court's Order regarding "the false statements after March 28, 2022." (Opp. 3.) But the Court *dismissed those statements* (Order 34-39), leaving only the Pre-Revelation Disclosures, which are the focus of Defendants' Motion. Plaintiff also observes that Defendants do not seek reconsideration of the Court's "scienter and loss causation" determinations. (Opp. 3.) Although Defendants respectfully disagree with the Court's decision on scienter and loss causation, Defendants do not believe the criteria for reconsideration are met as to those elements; but, in any event, if the Court were to correct its

***The Pre-Revelation Disclosures are not false or misleading.***  Defendants identified a clear error of law in this Court's Order finding that the Pre-Revelation Disclosures—which described Barclays' global system of controls across its operations—were false because one control relating to one business activity in one country (*i.e.*, tracking issuance of structured notes and ETNs) "did not exist."  (Order 30; *see* Mot. 17-18.)  The Second Circuit rejected this exact reasoning in *Carpenters*, holding that Barclays' indistinguishable generic statements about internal controls were not materially false or misleading even though "Barclays had ***no*** specific systems or controls for its LIBOR submissions process."  750 F.3d at 231, 236 (emphasis added).

Plaintiff does not try to distinguish *Carpenters*—in fact, it curiously avoids mentioning it at all.  Rather than try to square the Order with *Carpenters*, Plaintiff tries to avoid it by observing that issuing securities was a "central business operation in the United States" for Barclays and claiming that Defendants are trying to "downplay the colossal extent" of the over-issuance mistake. (Opp. 9-10.)  The plaintiffs in *Carpenters* made this exact same argument, claiming that Barclays was "attempt[ing] to minimize Barclays' admitted false LIBOR and EURIBOR submissions," Pls. CA2 Reply Br. at 14, 2013 WL 5716858, and the Second Circuit rejected it.  It was thus inconsequential that the plaintiffs in *Carpenters* alleged that:

- Barclays had "no formal monitoring, no spot checking, . . . and no 'adequate systems and controls in place,'" regarding LIBOR submissions,

- the misconduct was "widespread and extended over a number of years,"

- the LIBOR misconduct impacted "[t]he integrity of benchmark reference rates" that are "of fundamental importance to both UK and international financial markets,"[3] and

- the misconduct resulted in "nearly half a billion dollars in fines."  *Id.* at 1, 14-15, 19.

decision on either falsity or materiality—each of which are indispensable elements of Plaintiff's claim—the entire case would be dismissed.

[3] The Second Circuit has described LIBOR as "the world's most important number."  *Gelboim* v. *Bank of Am. Corp.*, 823 F.3d 759, 765 (2d Cir. 2016).

None of that mattered to the Second Circuit's analysis. The only fact of consequence was that the statements did not "say that Barclays had established specific systems or controls relating to LIBOR submission rates." *Carpenters*, 750 F.3d at 236.[4]

**The Pre-Revelation Disclosures are not material.** As the Motion demonstrates, the Court's finding of materiality on the basis that Barclays' statements were "knowingly and verifiably false when made" conflicts with controlling authority because that "does not cure their generality, which is what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *UBS*, 752 F.3d at 183. Plaintiff bizarrely contends that this direct quote from *UBS*'s holding is something Defendants "invent[ed] . . . out of whole cloth." (Opp. 1.) That is incorrect. Rather, Plaintiff is the one who seeks to lead the Court further off course through "misapprehensions of Second Circuit precedent." (*Id.* at 2.)

*First*, Plaintiff observes (Opp. 6) that the Second Circuit once stated in *dicta* that some general statements "may in some circumstances violate the securities laws" if they "are clearly designed to distinguish the company from other specified companies in the same industry," *Ind. Pub. Ret. Sys.* v. *SAIC, Inc.*, 818 F.3d 85, 98 (2d Cir. 2016). But Plaintiff does not and cannot allege that Barclays' generic statements about its global system of controls expressly "distinguish[ed] [Barclays] from other specified" banks. *Id.* The statements did not refer to other banks at all, let alone tout Barclays' controls as better than its competitors' controls.

*Second*, Plaintiff suggests that the Second Circuit held in *Liberty Tax*, 828 F. App'x at 751, that inactionable generic statements can transform into actionable statements when combined with other more specific statements made elsewhere. (Opp. 7.) The Court never said that. And if it

---

[4] Plaintiff agrees that Barclays' SOX certifications are actionable only if other challenged statements are actionable. (Opp. 8.) Accordingly, the claims based on Barclays' SOX certifications also should be dismissed on reconsideration. (*See* Mot. 21 n.3.)

had adopted such a rule, the Court would not have affirmed dismissal of virtually identical generic statements.  (*See* Mot. 12-13.)  Indeed, Plaintiff omits that the Second Circuit has rejected the argument that generic statements can "piggyback[] off" more specific statements because, "by that logic, an exceedingly generic statement could always withstand, for example, motions to dismiss or for summary judgment by seeking shelter under a more specific statement, so long as the more specific statement implicates broad topics. . . .  Securities law provides no such cover." *Ark. Tchr. Ret. Sys.* v. *Goldman Sachs Grp., Inc.*, 77 F.4th 74, 94-95 (2d Cir. 2023) ("*GS III*").[5]

*Third*, Plaintiff cites *In re Signet Jewelers Ltd. Sec. Litig.*, 389 F. Supp. 3d 221, 230-31 (S.D.N.Y. 2019) (Opp. 6), for the point that "context" matters, but Plaintiff ignores that, unlike here, the defendants' statements denying allegations in a lawsuit were made in the context of "reassur[ing] the investing public that Signet did not, in fact, have a toxic workplace" following highly-publicized allegations of sexual harassment.  Here, by contrast, the generic Pre-Revelation Disclosures are inactionable as a matter of law because they were made in the "context" of annual reports published "in the ordinary course of business," and not "in a defensive maneuver to fend off inquiries about wrongdoing."  *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 757

---

[5] Plaintiff tries to dismiss *GS III* as irrelevant because it addressed the issue of price impact at class certification.  (Opp. 8.)  In doing so, Plaintiff misleadingly quotes the Court's statement that "[c]lass certification litigation provides no forum to relitigate materiality," while omitting the very next sentence:  "But the Supreme Court's guidance in [*Goldman Sachs Grp., Inc.* v. *Ark. Tchr. Ret. Sys.*, 594 U.S. 113 (2021),] directs courts to consider issues bearing on materiality to the extent those issues overlap with the price impact analysis, and with respect to genericness concerns, the overlap is substantial," *GS III*, 77 F.4th 102.  Thus, in following the Supreme Court's directive to consider the "generic nature" of the alleged misstatements, *Goldman*, 594 U.S. at 122, the Second Circuit synthesized its prior case-law on the materiality of generic statements to make clear that the focus is on "the level of detail in the disclosure," and the question is "whether the disclosure as written is specific enough to evoke investor reliance," *GS III*, 77 F.4th at 101-02.

(S.D.N.Y. 2017); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017) (same; cited by Plaintiff at Opp. 6).[6]

*Lastly*, Plaintiff asserts that, in *Singh*, 918 F.3d at 63-64, the Second Circuit distinguished the generic statements about controls at issue in that case—which are virtually identical to Barclays' statements here—from statements Plaintiff characterizes as "discuss[ing] the mechanisms of compliance" that the Second Circuit held were sufficiently specific in *Meyer* v. *Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014). (Opp. 8.)  But the Second Circuit did not hold that the statements in *Meyer* were actionable merely because they "discussed mechanisms of compliance" at a high level of generality. (Opp. 8.)  Rather, the company there (i) "described its compliance mechanisms in confident detail, including references to 24-hour monitoring teams[] [and] specific compliance equipment," and (ii) emphasized "its clean compliance record" by averring to have never been fined for regulatory violations.  *Singh*, 918 F.3d at 63-64 (quoting *Meyer*, 761 F.3d at 247-48).  "Such detailed descriptions stand in sharp contrast to [Defendants'] simple and generic assertions about having 'policies and procedures' and allocating 'significant resources.'"  *Id.*; *see Danske Bank*, 11 F.4th at 103-04 (distinguishing *Meyer*).

---

[6] The other case Plaintiff cites, *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380 (S.D.N.Y. 2015) (Opp. 6), made a similar legal error as the Order, holding that generic statements about controls were materially misleading because defendants allegedly were "aware" that controls had been circumvented.  The Second Circuit has since reiterated numerous times that such reasoning is legal error.  (*See* Mot. 11-14.)  Plaintiff also mentions that almost 50 years ago the Supreme Court defined materiality under Section 10(b) as a context-specific inquiry, *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449-50 (1976), and thus suggests that dismissal at the pleading stage is never appropriate (Opp. 7 n.4).  But, stating the obvious, a 50-year-old decision adopting the governing legal standard for materiality does nothing to call into question the many subsequent, controlling Second Circuit decisions applying the *TSC* standard to hold that indistinguishable generic statements are immaterial as a matter of law.  (*See* Mot. 22-23.)  *See Monsanto* v. *United States*, 348 F.3d 345, 351 (2d Cir. 2003) (Second Circuit decisions are "binding precedent" "unless and until that case is . . . rejected *by a later* Supreme Court decision.") (emphasis added).

## II.     Defendants Have Satisfied the Requirements for Interlocutory Appeal.

If the Court will not reconsider the Order, it should certify it for interlocutory appeal. Defendants' Motion demonstrates that each requirement for certification has been met:  the Order (i) involves a "controlling question of law," (ii) on which there is "substantial ground for difference of opinion," (iii) and "immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

***Controlling Question of Law.***  Defendants' Motion identified clear, controlling questions of law:  whether Barclays' generic statements about internal controls are false and material for purposes of a putative securities fraud claim brought under Section 10(b) of the Securities Exchange Act.  These questions are "controlling" for two reasons.  *First*, because if the answer to this question is "no," the case would be dismissed.  *Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  *Second*, the issue presented here "has precedential value for a large number of cases," *SEC* v. *Rio Tinto PLC*, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021), because all public companies make statements describing their system of controls and any control lapse could be characterized as a failure to implement a specific mechanism to detect or monitor a particular act that ultimately occurred to the company's detriment.  Thus, the Order creates a blueprint for plaintiffs to try to evade the Second Circuit's case-law on the actionability of generic statements in event-driven securities cases, which are on the rise.[7]

---

[7] Unlike traditional securities fraud suits based on direct harm to shareholders like "doctoring the firm's financials," "event-driven" lawsuits are those brought in the wake of a corporate event "that more directly harms a different set of constituents," such as a data breach, an oil spill, or a manufacturing defect, which the plaintiff's bar tries to transform into securities fraud by pointing to generic statements touching on the subject of the bad event.  Emily Strauss, *Is Everything Securities Fraud?*, 12 UC Irvine L. Rev. 1331, 1333-34 (2022) (observing the "rise in event-driven securities class actions in recent years").

To try to escape interlocutory review, Plaintiff contends that these issues are not "controlling" because they are not "pure question[s] of law that the reviewing court could decide quickly and cleanly without having to study the record." (Opp. 11.) But the Second Circuit need not "study the record" (*id.*); it can simply apply its settled precedent holding that generic statements are not actionable as a matter of law. In some securities cases, of course, the issue the defendants present for interlocutory review "cannot be resolved by pure questions of law" (Opp. 4), like in the case that Plaintiff cites where the defendants sought interlocutory review to challenge the "sufficiency of [those] Plaintiffs' pleadings" regarding whether the defendants "knew" of a particular trend, which involved a fact-bound question, an appeal of which "at most [would] lead only to a remand for repleading." *In re Facebook, Inc.*, 986 F. Supp. 2d 524, 530-31, 533 (S.D.N.Y. 2014). Here, by contrast, the actionability of generic statements is a pure question of law—one that the Second Circuit has decided more than a dozen times as a matter of law in reviewing motions to dismiss. (*See* Mot. 22-23 (collecting cases).) Nor could there be a remand for leave to replead here, because no amendment could change the generic nature of the Pre-Revelation Disclosures, which is what prevents the statements from being actionable.

***Substantial Ground for Difference of Opinion.*** In light of many decisions holding that virtually identical generic statements about internal controls are not actionable, there are plainly "reasonable grounds for divergence of opinion from the Court's holding." (Mot. 22-23.) Plaintiff's sole response that Defendants have identified a "disagreement between cases," but not "conflicting authority on the issue," as required for interlocutory review (Opp. 12-13), is a distinction without a difference—a "disagreement" and a "conflict" are the same thing.

***Immediate Appeal May Materially Advance the Litigation.*** There can be no question that immediate appeal may materially advance the litigation. Plaintiff speculates that, were it to lose

on these issues on appeal, the litigation would proceed because it would be given the "opportunity to amend [its] Complaint." (Opp. 13.) But, again, no amendment could change the generic nature of the Pre-Revelation Disclosures, which is why dismissal with prejudice is required here.

### CONCLUSION

The Court should reconsider the portions of its Order with respect to whether the Pre-Revelation Disclosures were material and whether they were false or misleading. Alternatively, the Court should certify the Order for interlocutory appeal.

Dated: March 29, 2024

Respectfully Submitted,

/s/ *Jeffrey T. Scott*
Jeffrey T. Scott
Matthew J. Porpora
Julia A. Malkina
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants*

-10-