**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BARCLAYS PLC SECURITIES LITIGATION | Case No. 1:22-cv-08172-KPF |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................... 2

I.      PROCEDURAL HISTORY............................................................................................. 2

II.     DISCOVERY AND CLASS CERTIFICATION ............................................................. 4

III.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE
        PROPOSED SETTLEMENT .......................................................................................... 5

ARGUMENT.......................................................................................................................... 6

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................. 6

        A.      Standards for Preliminary Approval of a Proposed Class Action
                Settlement ............................................................................................................ 6

        B.      Rule 23(e)(2)(A): Adequate Representation.......................................................... 8

        C.      Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith,
                Informed, and Arm's-Length Negotiations by Experienced Counsel .................... 9

        D.      Rule 23(e)(2)(C): The Settlement Provides Significant and Certain
                Benefits .............................................................................................................. 11

                1.      Despite Strong Claims, Many Risks to Recovery Remained ................... 11

                2.      The Effective Process for Distributing Relief to the Settlement
                        Class ...................................................................................................... 14

                3.      The Settlement Does Not Excessively Compensate Lead Counsel .......... 15

        E.      Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably
                Relative to One Another ...................................................................................... 16

        F.      The Remaining *Grinnell* Factors Support Preliminary Approval......................... 17

II.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS......................... 18

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................... 20

IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........................... 22

CONCLUSION...................................................................................................................... 23

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Advanced Battery Tech. Inc. Sec. Litig.*,
    298 F.R.D 171 (S.D.N.Y. 2014) .......................................................................................11

*Cavalieri v. Gen. Elec. Co.*,
    No. 06 cv 315, 2009 WL 2426001 (N.D.N.Y. Aug. 6, 2009).......................................18

*Christine Asia Co. Ltd. v. Yun Ma*,
    No. 15-cv-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)......................................8

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    No. 12-cv-01203-VEC, 2015 WL 13639234 (S.D.N.Y. Oct. 19, 2015) .......................15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) , *abrogated on other grounds by Goldberger v.
    Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...........................................8, 17, 18

*City of Providence v. Aeropostale Inc.*,
    No. 11-cv-07132-CM-GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub. nom. Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015)............................10, 15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)............................................................................................18

*In re Deutsche Bank AG Sec. Litig.*,
    No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980 (S.D.N.Y. June 11, 2020)....................15

*Hicks v. Stanley*,
    No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...................................13

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................17, 20

*In re Initial Pub. Offering Sec. Litig.*,
    260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................................21

*In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*,
    No. 02-cv-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ......................................13

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................................16, 17

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ....................................................................................7, 8, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..................................................................................................20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................10

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x. 760 (2d Cir. 2020) .............................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................................8

*In re Prothena Sec. Litig.*,
   No. 18- cv-06425, 2019 U.S. Dist. LEXIS 212085 (S.D.N.Y. Dec. 4, 2019) .........15

*Rodriguez v. CPI Aerostructures, Inc.*,
   No. 20-cv-0982, 2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) ..............................21

*Schutter v. Tarena Int'l, Inc.*,
   No. 21-CV-3502 (PKC), 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ...................17

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........11

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................18

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................6, 20

*Yang v. Focus Media Holding Ltd.*,
   No. 11-cv-09051-CM-GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............6

**Statutes**

15 U.S.C. §78j(b) ..............................................................................................................2

15 U.S.C. §78t(a) ..............................................................................................................2

15 U.S.C. § 78u-4(a)(4) ..................................................................................................16

15 U.S.C. §78u-4(a)(7)(A)-(F) .......................................................................................21

17 C.F.R. § 240.10b-5................................................................................................................2

**Rules**

Fed. R. Civ. P. 23....................................................................................................2, 6, 21

Fed. R. Civ. P.23(a) .......................................................................................................18. 19

Fed. R. Civ. P.23(b)(3).........................................................................................................19

Fed. R. Civ. P.23(c)(2)(B) ...................................................................................................20

Fed. R. Civ. P.23(e) ......................................................................................................1, 7, 8

Fed. R. Civ. P.23(e)(1)......................................................................................................7, 20

Fed. R. Civ. P.23(e)(1)(B) ...............................................................................................7, 20

Fed. R. Civ. P.23(e)(2)......................................................................................................7, 8

Fed. R. Civ. P.23(e)(2)(A) ....................................................................................................8

Fed. R. Civ. P.23(e)(2)(B) ....................................................................................................9

Fed. R. Civ. P.23(e)(2)(C) ..................................................................................................11

Fed. R. Civ. P.23(e)(2)(C)(i)...............................................................................................11

Fed. R. Civ. P.23(e)(2)(C)(iv)...............................................................................................8

Fed. R. Civ. P.23(e)(2)(D) ..................................................................................................16

Fed. R. Civ. P.23(e)(3)...........................................................................................................8

**PRELIMINARY STATEMENT**

Lead Plaintiff Boston Retirement System ("BRS" or "Lead Plaintiff"), on behalf of itself and all other members of the proposed Settlement Class,[1] submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned class action (the "Action"). If approved, the Settlement will provide a recovery of $19,500,000 in cash to resolve this proposed securities class action, pending against defendants Barclays PLC ("Barclays" or the "Company"), James E. Staley, C.S. Venkatakrishnan, and Tushar Morzaria (collectively, "Defendants"). The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of November 27, 2024, which was entered into by Lead Plaintiff and Defendants.

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval by the Court given that it is the result of vigorous arm's-length negotiations, based upon adequate information after consultation with experienced legal counsel, a favorable recovery that falls well within the range of approval and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) ("Rule 23"), and Second Circuit precedent. If the Court grants preliminary approval, Lead Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential Settlement Class Members. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of November 27, 2024 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Christine M. Fox ("Fox Decl."), filed herewith.

proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel, for purposes of the Settlement only; (iii) approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release form ("Claim Form"), and Summary Notice, attached as Exhibits 1, 2, and 3, to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Fed. R. Civ. P. 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement of costs and expenses to Lead Plaintiff pursuant to the PSLRA; and (vi) appoint Verita Global, LLC ("Verita" or "Claims Administrator"), which was selected after a competitive bidding process, to administer the Settlement process.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

**I.      PROCEDURAL HISTORY**

On September 23, 2022, the Action was commenced by the filing of an initial complaint in the United States District Court for the Southern District of New York alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of a class of all persons and

entities who purchased or otherwise acquired Barclays American Depository Receipts ("ADRs"). ECF No. 1. After the filing of competing lead plaintiff motions, on December 21, 2022, pursuant to the PSLRA, Judge Katherine Polk Failla: (i) appointed BRS as Lead Plaintiff; (ii) approved Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) ("Labaton") as Lead Counsel; and (iii) renamed the Action *In re Barclays Securities Litigation*, No. 1:22-cv-08172-KPF. ECF No. 39.

Lead Plaintiff engaged in a thorough investigation of its claims for the purpose of drafting a comprehensive consolidated complaint, which included the review and analysis of: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) publicly available materials related to the September 29, 2022 Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("SEC Order"); and (v) other publicly available documents. Additionally, Lead Plaintiff, through Lead Counsel, contacted and interviewed former employees of Barclays, financial industry journalists who covered Barclays during the Class Period, and legal experts and professors in the field of securities regulation to discuss the issues related to the Action.

On March 6, 2023, Lead Plaintiff filed the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act against Barclays, Barclays Bank PLC, James E. Staley, C.S. Venkatakrishnan, Tushar Morzaria, Nigel Higgins, and Anna Cross. ECF No. 46. The

Complaint alleged that, during the Class Period of February 18, 2021 through February 14, 2023, inclusive, the price of Barclays American Depository Shares ("ADSs"), typically represented by ADRs, was artificially inflated as a result of the then-named defendants' allegedly false and misleading statements and omissions, and declined when the truth was allegedly revealed through a series of partial corrective disclosures.

On May 5, 2023, the defendants filed a motion to dismiss the Complaint, which Lead Plaintiff opposed. ECF Nos. 53-55, 58-59. On February 23, 2024, the Court entered its Opinion and Order granting, in part, and denying, in part, defendants' motion to dismiss ("MTD Order"). ECF No. 61. As a result of the MTD Order, the Court dismissed certain alleged misstatements, ended the class period on March 28, 2022, and dismissed claims against defendants Barclays Bank PLC and Nigel Higgins.[2]

On March 8, 2024, defendants filed a motion for reconsideration of the Court's MTD Order, which Lead Plaintiff opposed. ECF Nos. 66-69.

On April 15, 2024, defendants filed their Answer to the Complaint. ECF No. 71.

## II.   DISCOVERY AND CLASS CERTIFICATION

On April 17, 2024, the Court issued a Civil Case Management Plan and Scheduling Order that set a schedule requiring class certification to be fully briefed by November 26, 2024; fact discovery to close on February 28, 2025; and expert discovery to close on June 30, 2025. ECF No. 74.

On August 12, 2024, Lead Plaintiff filed its motion for class certification, and for the appointment of Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel ("Class

---

[2] On September 26, 2024, defendant Anna Cross was voluntarily dismissed as a defendant given that she did not make any alleged misstatements with respect to the claims sustained in the MTD Order. ECF No. 91.

Certification Motion"). ECF Nos. 83-86.

Beginning in May 2024, the Parties engaged in discovery efforts, including exchanging initial disclosures, serving requests for production of documents and interrogatories, as well as subpoenas on third parties. The Parties responded to each other's discovery demands. The Parties engaged in numerous meet-and-confer conferences regarding the scope of discovery and began their production of documents, as negotiations over the scope of discovery continued. By mid-September 2024, defendants produced over 23,000 pages of documents and Lead Plaintiff produced over 2,000 pages of documents.

### III.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT

In mid-July 2024, as fact discovery was underway, the Parties began exploring the possibility of a negotiated resolution of the Action through telephonic conferences and written correspondence, ultimately agreeing that the Parties' counsel would meet in person to discuss a potential resolution. Following an in-person settlement meeting held on September 13, 2024, the Parties agreed in principle to settle the Action for $19,500,000.00 in cash (the "Settlement Amount"). The Parties memorialized their agreement in a term sheet that was executed on September 20, 2024 (the "Term Sheet"), subject to the execution of a formal settlement agreement, related papers, and approval by the Court. On September 17, 2024, the Parties informed the Court of their agreement to settle the Action and, on September 18, 2024, the Court granted the Parties' request for a sixty day stay of the case pending the filing of the motion for preliminary approval of the Settlement. On November 19, 2024, the Court granted the Parties request for an additional sixteen day stay of the case.

On November 27, 2024, the Parties executed the Stipulation. In exchange for payment of the Settlement Amount, on the Effective Date of the Settlement, Lead Plaintiff and the Settlement

Class will release the Released Defendant Parties from all of Plaintiff's Released Claims, and Defendants will release the Released Plaintiff Parties from all Released Defendants' Claims. *See* Stipulation ¶¶1(aa)-(ee), 5, and 6. In order to provide the Released Defendant Parties with "complete peace" with respect to the claims in the Action, the Settlement Class covers all purchases of Barclays ADSs during the period from February 18, 2021 through February 14, 2023, both dates inclusive. *See* Stipulation ¶1(hh). The Released Claims have been tailored to relate only to the facts and allegations in the Action and the claims in *May v. Barclays PLC, et al.*, Case No. 1:23-cv-02583-LJL (S.D.N.Y.), and *Puchtler v. Barclays PLC, et al.*, Case No. 1:24-cv-01872-LJL (S.D.N.Y.) are not released. *See* Stipulation ¶1(dd). The Settlement is not "claims-made" and there is no reversion of unclaimed funds. *See* Stipulation ¶13.

**ARGUMENT**

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation. *See Yang v. Focus Media Holding Ltd.,* No. 11-cv-09051-CM-GWG, 2014 WL 4401280, at \*3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements[.]"[3] This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23 requires court approval of any settlement of a class action. A district court's review of a proposed class action settlement is a two-step process. First, the court performs a review of

---

[3] All internal quotations and citations are omitted, unless otherwise noted.

6

the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing, and certify the class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B). By this motion, Lead Plaintiff requests that the Court take this first step: preliminary approval of the Settlement.

Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the *likelihood* that the court will be able to finally approve the settlement, after considering "the four factors outlined in Rule 23(e)(2) holistically." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *see also* Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

> (A)    class representatives and counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)     the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3)[4]; and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in the Second Circuit may also consider the factors enumerated in

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), many of which overlap with the

Rule 23(e) factors. *See Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional

*Grinnell* factors, which remain a useful framework for considering the substantive fairness of a

settlement.").[5] Applying the standards set forth above, it is respectfully submitted that the

Settlement should be preliminarily approved. *See, e.g., In re Payment Card Interchange Fee &*

*Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

### B.    Rule 23(e)(2)(A): Adequate Representation

Lead Plaintiff and Lead Counsel have adequately prosecuted this Action on behalf of the

class since its inception and will continue to do so throughout the administration of the Settlement

---

[4] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. Here, on September 20, 2024, the Parties entered into the Term Sheet.  In addition to the Stipulation, as of November 27, 2024, they entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). Stipulation ¶42(a). The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual payment. *Christine Asia Co. Ltd. v. Yun Ma*, No. 15-cv-2631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

[5] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit*, 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

to secure and deliver its benefits to the Settlement Class. As demonstrated in its declaration in support of the Class Certification Motion filed on August 12, 2024, Lead Plaintiff BRS, a sophisticated institutional investor, has been an active and informed participant in the litigation, regularly communicating with Lead Counsel and reviewing significant pleadings and orders. ECF No. 85-2. Faithfully executing its duties, Lead Plaintiff was engaged in each step of the litigation.

Likewise, Lead Counsel, highly experienced in securities class action litigation, diligently prosecuted the Action and considered the benefits of a resolution before agreeing to a settlement. Lead Counsel has developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation; (ii) engaging a securities regulation expert and a damages and causation expert; (iii) defeating, in part, defendants' motion to dismiss; (iv) commencing and participating in discovery; (v) preparing the Class Certification Motion; and (vi) engaging in arm's-length negotiations between experienced counsel. Lead Plaintiff and Lead Counsel evaluated the potential risks in the case and negotiated vigorously to secure the $19.5 million recovery. Accordingly, the Settlement Class has been, and remains, well represented.

### C.    Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). An "arm's-length negotiation [is] one of two procedural factors (the other being the adequacy of class representatives and counsel) – and one of four core factors that courts must consider when approving a proposed settlement[.]" *Moses*, 79 F.4th at 243.

The Settlement was achieved by Lead Plaintiff's and Lead Counsel's vigorous arm's-

length negotiations with Defendants over the course of several months while diligently prosecuting the Action.[6] Specifically, beginning in mid-July 2024, the Parties began exploring the possibility of a negotiated resolution of the Action through telephonic conferences and written correspondence. The Parties ultimately agreed to schedule a settlement meeting in person. After an in-person settlement meeting on September 13, 2024, the Parties agreed to a settlement in principle. On September 20, 2024, after further discussions, the Parties executed the Term Sheet and on November 27, 2024, they executed the Stipulation.

As noted above, Lead Counsel, which has extensive experience prosecuting complex securities class actions (*see* Fox Decl., Ex. 2) and conducted a rigorous investigation, believes that the Settlement is not only fair, reasonable, and adequate, but is a very good result for Lead Plaintiff and the Settlement Class. This opinion is entitled to "great weight." *See City of Providence v. Aeropostale Inc.*, No. 11-cv-07132-CM-GWG, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub. nom. Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]").

Finally, the settlement was also negotiated with the oversight of Lead Plaintiff, a sophisticated institutional investor with billions of dollars in assets under management for the benefit of more than 34,000 active and retired members and beneficiaries. *See* ECF No. 85-2. This also supports the fairness of the Settlement. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'").

---

[6] During the course of the litigation, Defendants' Counsel was Sullivan & Cromwell LLP.

**D.      Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits**

**1.      Despite Strong Claims, Many Risks to Recovery Remained**

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of the costs, risks, and delay of trial and appeal." To determine whether the proposed Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they acknowledge that Defendants could advance several substantial arguments that could have reduced, or altogether eliminated, any recovery for Barclays investors. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery Tech. Inc. Sec. Litig.*, 298 F.R.D 171, 177 (S.D.N.Y. 2014); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that [s]ecurities class actions are generally complex and expensive to prosecute.").

First, although the Court denied, in part, defendants' motion to dismiss, Lead Plaintiff and the class would have faced significant hurdles at summary judgment and at trial in connection with ultimately proving falsity and materiality, which are necessary for their Exchange Act claims. Defendants currently have a pending motion for reconsideration or, alternatively, certification of an interlocutory appeal, which has been fully briefed before the Court since March 29, 2024. *See* ECF Nos. 66-69. This motion contests the Court's rulings in the MTD Order (ECF No. 61) and argues that controlling precedent was overlooked concerning the falsity and materiality of the alleged misstatements.

Second, Lead Plaintiff would have to succeed on its pending Class Certification Motion and overcome anticipated summary judgment motions. While Defendants had not yet submitted their opposition to Lead Plaintiff's Class Certification Motion, Lead Plaintiff anticipated a full

11

opposition to the motion, likely on several grounds. Summary judgment would also provide Defendants with another chance to contest elements of Lead Plaintiff's claims as a matter of law, including, falsity, materiality, and scienter. For example, Defendants would likely reargue that the over-issuance of Barclays securities was an "oversight" that resulted from mismanagement, from which, they would argue, scienter cannot be established.

Furthermore, even if the hurdles to establishing liability were overcome, Lead Plaintiff would have likely confronted challenges in proving loss causation and damages. In order to recover, Lead Plaintiff would need to prove that the allegedly corrective information in Barclays' March 28, 2022 press release, filed with the SEC on Form 6-K, caused the price of the ADSs to decline, as opposed to other information regarding the Company that was unrelated to the alleged misstatements. Defendants may have argued, for example, that confounding information released during the trading day on March 28, 2022 significantly reduced recoverable damages.

Lead Plaintiff consulted with an expert in damages and loss causation who analyzed class-wide damages in light of the facts and circumstances presented in the case and developed through the discovery process to date. Lead Plaintiff's consulting damages expert has estimated that maximum damages attributable to the sole remaining corrective disclosure in the sustained class period (February 18, 2021 through March 27, 2022) were between approximately $92 million and $111 million depending on the trading model and assumptions used.  In addition, if disaggregation of confounding information was required, damages could have been reduced by approximately 40%. Accordingly, the Settlement recovers a range of approximately 17.5% to 35% of these estimated damages.[7]

---

[7] With respect to the Class Period in the Settlement, which is the originally pled class period of February 18, 2021 through February 14, 2023, both dates inclusive, Lead Plaintiff's consulting

Although the Settlement and release provisions cover the entire Class Period as originally pled, in order to provide the Defendants with "complete peace," the Plan of Allocation, discussed below, factors in the strengths and weaknesses of the sustained and dismissed claims, and applies 95% discounts to the recognized loss amounts for purchases during the time period from March 28, 2022 through February 14, 2023.

The recovery provided by the Settlement is a very favorable result for the Settlement Class in the face of the Action's litigation risks. Indeed, courts within this District have regularly approved settlements that recover much lower percentages of maximum damages. *See, e.g., In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of $6.5 million settlement representing 6.1% of the class's maximum potentially recoverable damages); *see also In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*, No. 02-cv-1484, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving $40.3 million settlement representing approximately 6.25% of estimated damages and noting was at the "higher end of the range of reasonableness of recovery in class actions securities litigations"); *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (finding $10 million settlement representing 3.8% of plaintiffs' estimated damages within range of reasonableness).

The $19.5 million Settlement also exceeds the median reported settlement amount in securities class actions in 2023, which was $15 million, and during the period from 2018 through 2022, which was $11.7 million. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class*

---

damages expert has estimated that maximum damages were approximately $190 million, depending on the trading model and assumptions used, in which case the Settlement would represent approximately 10% of such maximum estimated damages. However, as discussed above, in the MTD Order the Court shortened the class period to end on March 27, 2022.

The alleged corrective disclosure dates in the originally pled Class Period were: (i) March 28, 2022; (ii) July 28, 2022; and (iii) February 15, 2023.  Only the March 28, 2022 disclosure date remains in the case.

*Action Settlements – 2023 Review and Analysis*, at 1 (Cornerstone Research 2024), attached as Exhibit 3 to the Fox Declaration.

Thus, the Settlement is a very favorable outcome for the Settlement Class.

### 2.    The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a Claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation ¶25. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶31. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶¶27, 40) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. If there are unclaimed funds, Lead Plaintiff designates the Council

14

of Institutional Investors as *cy pres* beneficiary, or such other non-sectarian, not-for-profit charitable organization approved by the Court. *Id*. at ¶28.[8]

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 29% of the Settlement Fund, an amount that is within the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g., In re Deutsche Bank AG Sec. Litig.,* No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding 33 1/3% of $18.5 million settlement); *City of Providence*, 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement); *In re Prothena Sec. Litig*., No. 18- cv-06425, 2019 U.S. Dist. LEXIS 212085, at *3 (S.D.N.Y. Dec. 4, 2019) (awarding 30% of $15,750,000 settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp*., No. 12-cv-01203-VEC, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 19, 2015) (awarding 30% of $33 million settlement).

---

[8] The Council of Institutional Investors ("CII") is a 501(c) nonprofit, nonpartisan association of pension funds and other employee benefit funds, foundations, and endowments with combined assets that exceed $5 trillion that seeks to educate its members, policymakers, and the public about corporate governance, shareowner rights, and related investment issues.  www.cii.org. Members of CII influence regulators, hold discussions with companies, and participate in litigation where necessary to effect change on these issues. CII has developed an extensive body of corporate governance best practices that many U.S. companies embrace and is vocal in endorsing policies on many investment-related issues through correspondence, amicus briefs and reports and publications. CII has been approved as a *cy pres* beneficiary in several securities class actions, such as *Royal Ahold* (D. Md.), *Hewlett-Packard* (C.D. Cal), and *MRV Communications* (C.D. Cal).

Lead Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action, including an award to Lead Plaintiff pursuant to the PSLRA, of no more than $300,000.

### E.     Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[9] The proposed plan was created by Lead Plaintiff's consulting damages expert and is consistent with Lead Plaintiff's theories of damages under the Exchange Act and the Court's rulings in the case. The Settlement and release cover the entire class period as originally pled in order to provide the Defendants with "complete peace." Accordingly, the Plan of Allocation considers the strengths and weaknesses of the sustained and dismissed statements and applies discounts of 95% to the recognized loss amounts for purchases during the time period from March 28, 2022 to February 14, 2023, given the Court's dismissal of these claims.

Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that

---

[9] Lead Plaintiff may seek reimbursement of its reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

16

calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

F.    **The Remaining *Grinnell* Factors Support Preliminary Approval**[10]

*Grinnell* **Factor 3 (the stage of the proceedings and the amount of discovery completed):** The fact that the Parties have not completed discovery does not weigh against preliminary approval. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). As stated above, prior to agreeing to a settlement, Lead Plaintiff conducted a thorough and informed investigation, engaged in extensive motion practice including briefing on defendants' motion to dismiss and motion for reconsideration, filed its motion for class certification, engaged in discovery efforts including requests for production of documents and interrogatories, consulted with a loss causation and damages expert, and participated in arm's-length settlement negotiations over the course of months. Accordingly, Lead Plaintiff and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factor 7 (the ability of the defendants to withstand a greater judgment):** This factor is "typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement," which is not the case here. *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *12 (E.D.N.Y. Sept. 9, 2024). Although it is likely Defendants could withstand a greater judgment, "this factor, standing alone, does not suggest the settlement is unfair," especially where, as here,

---

[10] The second *Grinnell* factor (the reaction of the class to the settlement) will be addressed in Lead Plaintiff's reply papers in connection with their motion for final approval, after notice of the Settlement is disseminated, which will address any objections and requests for exclusion.

the "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *see also Cavalieri v. Gen. Elec. Co.*, No. 06cv315 (GLS/DRH), 2009 WL 2426001, at *2 (N.D.N.Y. Aug. 6, 2009) ("The court also notes that although neither party contends that defendants are incapable of withstanding greater judgment, that does not 'indicate that the settlement is unreasonable or inadequate.'"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate").

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

In preliminarily approving the proposed Settlement, the Court must consider whether it will be able to certify the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). On August 12, 2024, Lead Plaintiff filed the Class Certification Motion. ECF Nos. 83-86. Although the Class Certification Motion was not fully briefed by the Parties, it involved a shorter class period, and the Court has not had the opportunity to rule on that motion, many of the arguments Lead Plaintiff asserted there apply to this instant motion. Accordingly, Lead Plaintiff respectfully refers the Court to the Memorandum of Law in Support of its Motion for Class Certification, Appointment as Class Representative, and Appointment of Class Counsel (ECF No. 84) for a more detailed analysis of the factors.

Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement only. The proposed Settlement Class, which has been stipulated to by the Parties, consists of "all persons and entities who or which purchased or otherwise acquired American Depositary Shares of Barclays PLC during the period from February 18, 2021 through

18

February 14, 2023, both dates inclusive, and were allegedly damaged thereby."[11] Stipulation ¶1(hh).

Pursuant to Rule 23(a): (1) the Settlement Class is so numerous that joinder of all members is impracticable (ECF No. 84 at 9-10); (2) there are questions of law or fact common to the Settlement Class (*id*. at 10-11); (3) the claims or defenses of Lead Plaintiff are typical of the claims or defenses of the Settlement Class (*id*. at 11); and (4) Lead Plaintiff and Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 11-13).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at 2. The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate (ECF No. 84 at 13-24); and (ii) a class action would

---

[11] Excluded from the Settlement Class are: (i) Defendants and former defendants in the Action; (ii) members of the immediate family of any Defendant or former defendant who is an individual; (iii) any person who was an officer, director, and/or control person of Barclays during the Class Period; (iv) any firm, trust, corporation, or other entity in which any excluded person or entity has or had a controlling interest and/or beneficial interest; and (v) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity. Notwithstanding the foregoing exclusions, no "Investment Vehicle" is excluded from the Settlement Class by definition.

Investment Vehicles are, "any investment company or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange traded funds, fund of funds, private equity funds, real estate funds, and hedge funds, in which Barclays or any affiliate of Barclays has or may have a direct or indirect interest, or as to which Barclays or any affiliate of Barclays may act as an investment advisor, but in which Barclays alone, or together with its respective affiliates, is not a majority owner or does not hold a majority beneficial interest, and (ii) Employee Benefit Plans as to which a Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary. Notwithstanding the foregoing, no excluded Person will be eligible to recover through any Employee Benefit Plan as to which a Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary." Stipulation ¶1(n).

Also excluded from the Settlement Class will be any person or entity who or which excludes themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 24-25).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *IMAX,* 283 F.R.D. at 186. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of a class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d at 114.

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Lead Counsel proposes to provide notice of the Settlement by (i) mailing a copy of the long-form Notice and Claim Form to all potential Settlement Class Members who can reasonably be identified and located, using information provided by Barclays' transfer agent, as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases; (ii) publication of the Summary Notice in *The Wall Street Journal*;

20

and (iii) dissemination of the Summary Notice on the internet using *PR Newswire*. The Notice and Claim Form will also be posted on both the case website and Lead Counsel's website. Sending the Notice by first-class mail, combined with the publication of the Summary Notice in a major publication, and posting the Notice on a website, is the "gold standard" in securities class actions and satisfies the requirements of Rule 23 and due process. *See, e.g., Rodriguez v. CPI Aerostructures, Inc.*, No. 20-cv-0982, 2021 WL 9032223, at *13 (E.D.N.Y. Nov. 10, 2021) (finding notice plan similar to that proposed here "reasonable and adequate," and the proposed methods, including publishing in the *Wall Street Journal* and using a national newswire, practical and likely to be effective); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 119-20 (S.D.N.Y. 2009) (same).

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time, and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The long form Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia,* stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages that would be recoverable in the event Lead Plaintiff prevailed; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per ADS basis); (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F).

Lead Plaintiff also requests that the Court appoint Verita as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. Verita is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* veritaglobal.com; Fox Decl. Ex. 4. Verita was chosen after a competitive bidding process and will be administering a related SEC Fair Fund for Barclays investors.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Lead Plaintiff requests be approximately 100 days from entry of the Preliminary Approval Order in order for the notices to be disseminated and to allow recipients of the notices sufficient time to act.

| Event | Proposed Timing |
|---|---|
| Deadline for commencement of mailing the Notice and Claim Form to Settlement Class Members and nominees (the "Notice Date") | *No later than 12 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *Five (5) calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order. The hearing can be held* |

|  | *either in-person or remotely, in the discretion of the Court. Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |
|---|---|

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Verita Global, LLC as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED: December 3, 2024

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

 */s/ Christine M. Fox*
Lauren A. Ormsbee
Christine M. Fox
James M. Fee
Lisa Strejlau
Charles J. Stiene
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
cfox@labaton.com
jfee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Counsel for Lead Plaintiff Boston Retirement System and Lead Counsel for the Proposed Settlement Class*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*/s/ Christine M. Fox*
Christine M. Fox

24