**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE BARCLAYS PLC
SECURITIES LITIGATION

Case No. 1:22-cv-08172-KPF

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL OF PROPOSED**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT................................................................................................................... 4

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE, AND WARRANTS FINAL APPROVAL.................................... 4

A. The Law Favors and Encourages Settlement of Class Action Litigation ........... 4

B. The Standards for Final Approval....................................................................... 4

     1. Lead Plaintiff and Lead Counsel Have Adequately Represented the
Settlement Class................................................................................ 6

     2. The Settlement Was Reached After Arm's-Length Negotiations........... 8

     3. The Relief Provided by the Settlement Is Adequate ............................. 8

         (a) The Complexity, Costs, Risks, and Likely Duration of the
Litigation Support Approval of the Settlement........................... 9

         (b) Risks Related to Proving Liability: Material Falsity ................ 10

         (c) Risks to Proving Scienter..................................................... 11

         (d) Risks Related to Damages ..................................................... 12

         (e) The Risks of Achieving and Maintaining Class Certification .................. 14

         (f) The Effective Process for Distributing Relief to the Settlement
Class........................................................................................ 14

         (g) The Requested Attorneys' Fees and Expenses Are Reasonable.............. 16

         (h) The Relief Provided in the Settlement Is Adequate Taking Into
Account all Agreements Related to the Settlement ................... 16

     4. Application of the Remaining *Grinnell* Factors Supports Approval .................... 17

         (a) The Ability of Defendants to Withstand a Greater Judgment................... 17

         (b) The Reaction of the Settlement Class to Date ......................... 17

         (c) The Stage of the Proceedings and the Amount of Information
Available to Counsel Support Approval of the Settlement...................... 18

(d)  The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement .......................................... 19

II.  THE PROPOSED PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY AND SHOULD BE APPROVED BY THE COURT ........................................................................................ 21

III.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS .............. 22

IV.  NOTICE SATISFIED RULE 23 AND DUE PROCESS ................................................. 22

CONCLUSION ..................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................................................19

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .........................................................................................12, 13

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...........................................................................................................14

*In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..........................................................................9, 17, 21

*Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................................12

*Christine Asia Co. Ltd. v. Yun Ma, et. al*,
No. 15-cv-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)........................................16, 17

*In re Citigroup Inc. Sec. Litig.*,
No. 09-7359, 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ....................................................4

*City of Pontiac v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)...............................................................................................10

*City of Providence v. Aeropostale Inc. et al.*,
No. 05-1695, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v.
Pierson*, 607 F. App'x. 73 (2d Cir. 2015)..............................................................................7

*Ebbert v. Nassau Cnty.*,
No. 05-5445, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011)...................................................14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd sub
nom. In re Facebook, Inc.*, 674 F. App'x. 37 (2d Cir. 2016).....................................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............................................19, 21

*Giant Interactive Grp. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................................22

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................19, 21

iii

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................................9, 21

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ..................................8

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................23

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ...............................................................................................5, 6

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)...................................................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...............................20, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................................5, 8, 9

*Pearlstein v. BlackBerry Ltd.*,
   No. 13 Civ. 7060 (CM), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) .............................9, 20

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ...............................................................................................6

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022).........................................................6

*Puddu v. 6D Global Tech., Inc.*,
   No. 15-8061, 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ....................................................18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..............................................................................................12

*Rodriguez v. CPI Aerostructures, Inc.*,
   No. 20-982, 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) ......................................................22

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16-cv-6728, 2020 WL 4196468 (S.D.N.Y. July 21, 2010).......................................7, 9, 18

*Tchrs. Ret. Sys. of La. v. A.C.L.N. Ltd.*,
   No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................................................19

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................................10, 13

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 15-1695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..................................................7, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................................4, 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06-11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009)............................................17, 18

**Statutes**

28 U.S.C. §1292(b) ........................................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................3, 4, 5

Fed. R. Civ. P. 23(a) .....................................................................................................................22

Fed. R. Civ. P. 23(b)(3)................................................................................................................22

Fed. R. Civ. P. 23(c)(1)(C) ..........................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................................23

Fed. R. Civ. P. 23(e) ..................................................................................................4, 5, 22, 23

Fed. R. Civ. P. 23(e)(2).........................................................................................................4, 5, 6

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................................6

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................................8

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii)......................................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iv).....................................................................................................16

Fed. R. Civ. P. 23(e)(3)...................................................................................................................5

Lead Plaintiff Boston Retirement System ("BRS" or "Lead Plaintiff"), on behalf of itself and all other members of the proposed Settlement Class,[1] respectfully submits this memorandum of law in support of its motion for: (i) final approval of the proposed Settlement of the above-captioned class action (the "Action"); (ii) approval of the proposed Plan of Allocation for distribution of the Net Settlement Fund; and (iii) final certification of the Settlement Class.

## PRELIMINARY STATEMENT

If approved, the Settlement will provide a recovery of $19,500,000 in cash to resolve this proposed securities class action, pending against defendants Barclays PLC ("Barclays" or the "Company"), James E. Staley, C.S. Venkatakrishnan, and Tushar Morzaria (collectively, "Defendants"). The terms of the proposed Settlement are set forth in the Stipulation, which was entered into by Lead Plaintiff and Defendants. ECF No. 96-1.

As described below and in the accompanying Declaration of Lauren A. Ormsbee in Support of (i) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Ormsbee Declaration" or "Ormsbee Decl."), the decision to settle was well-informed by complex litigation efforts that included, among other things: (i) a rigorous investigation of the claims at issue, including contacting and interviewing former employees of Barclays, financial industry journalists who covered Barclays during the Class Period, and professors in the field of securities regulation to discuss the issues related to the Action; (ii) preparing and filing a detailed Complaint, which expanded the scope of the initial complaint by adding additional misrepresentations,

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as defined in the Stipulation and Agreement of Settlement, dated as of November 27, 2024 ("Stipulation"). ECF No. 96-1. Unless otherwise noted, citations and internal quotations have been omitted.

disclosures, and other allegations in support of the claims at issue; (iii) defeating, in part, defendants' motion to dismiss the Complaint; (iv) opposing defendants' motion to reconsider the Court's motion to dismiss opinion; (v) moving for class certification; (vi) researching, drafting, and propounding discovery requests on defendants; (vii) reviewing over 23,000 pages of documents produced by defendants and third parties; (viii) preparing for and participating in a formal in-person arms' length settlement meeting; and (ix) engaging and consulting with accounting, causation and damages experts. *See generally* Ormsbee Decl. at §§III.-V.[2]

While Lead Plaintiff believes the Settlement Class's claims are meritorious and strong, it recognizes there were substantial risks to continued litigation and trial. As discussed in detail in the Ormsbee Declaration and below, defendants' Motion for Partial Reconsideration or, Alternatively, Certification of an Interlocutory Appeal Under 28 U.S.C. §1292(b) (the "Reconsideration Motion") was *sub judice* and Lead Plaintiff faced the risk that the Court may decide to reconsider its order denying, in part, the motion to dismiss ("MTD Order") and dismiss the Complaint. Additionally, even if the Reconsideration Motion were denied, Lead Plaintiff faced obstacles with respect to establishing, at summary judgment or at trial, falsity, materiality, scienter, and/or loss causation. Additionally, Defendants would undoubtedly put forward facts and several highly qualified experts in support of numerous affirmative defenses that could potentially absolve Defendants from liability or drastically reduce the size of the class and the amount of recoverable

---

[2] The Ormsbee Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Ormsbee Declaration.

All exhibits are annexed to the Ormsbee Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Ormsbee Declaration and the second reference is to the exhibit designation within the exhibit itself.

damages. The Settlement avoids these risks (and others), as well as further delay and the expense of continued litigation – while providing a substantial and certain benefit to the Settlement Class.

Furthermore, Lead Plaintiff was actively involved throughout the litigation, diligently representing the Settlement Class, and has approved the Settlement. *See* Declaration of Timothy J. Smyth, Esq. on behalf of Boston Retirement System, Ex. 1. The Settlement Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to the Settlement Class beginning on December 23, 2024. *See* Declaration of Lance Cavallo Regarding (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; (C) Establishment of Telephone Hotline and Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Mailing Decl."), Ex. 3 at ¶¶2-8. While the February 25, 2025 deadline for objecting or seeking exclusion from the Settlement Class has not yet passed, to date, no objections have been received by Lead Counsel or docketed, and no requests for exclusion have been received.

In addition, the proposed Plan of Allocation for the distribution of the proceeds of the Settlement, which was developed by Lead Counsel with the assistance of Lead Plaintiff's damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to eligible Claimants.

Given the foregoing considerations and the factors addressed below, Lead Plaintiff respectfully submits that: (i) the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class; and (ii) the proposed Plan of Allocation is a fair and reasonable method for allocating the Net Settlement Fund to Settlement Class Members who submit valid Claim Forms. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and finally certify the Settlement Class, and approve the proposed Plan of Allocation.

3

**ARGUMENT**

**I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL**

**A.    The Law Favors and Encourages Settlement of Class Action Litigation**

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). This policy would be well-served by approval of the Settlement of this complex securities class action, which, absent resolution, could consume years of additional resources of this Court and, likely, the Court of Appeals for the Second Circuit.

**B.    The Standards for Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement and the settlement's substantive terms. *See Wal-Mart Stores*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09-7359, 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014).

Pursuant to the 2018 amendments to Fed. R. Civ. P. 23 ("Rule 23"), a court may approve a class settlement as "fair, reasonable, and adequate" after considering the following factors delineated in Rule 23(e)(2):

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

4

i.    the costs, risks, and delay of trial and appeal;

ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

In *City of Detroit v. Grinnell Corp.*, which predates the Rule 23 amendments, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The Advisory Committee Notes to the 2018 amendments to Rule 23 indicate that the Rule 23(e) factors are not intended to "displace" any factor previously adopted by the Second Circuit, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendments. Indeed, "[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the [Second Circuit] factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) ("Rule 23(e)(2) does not displace our traditional

5

*Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement.); *In re PPDAI Grp. Inc. Sec. Litig.,* No. 18-6716, 2022 WL 198491, at *8 n.10 (E.D.N.Y. Jan. 21, 2022) (noting the significant overlap between the relevant Second Circuit case law and the Rule 23(e)(2) factors).

Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the Rule 23(e)(2) factors and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, a court must consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). Here, Lead Plaintiff, like all other members of the Settlement Class, purchased or otherwise acquired American Depository Shares ("ADSs") of Barclays during the period from February 18, 2021 through February 14, 2023, both dates inclusive, and was allegedly damaged thereby. Thus, the claims of the Settlement Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

In pursuing these objectives, Lead Plaintiff was an active and informed participant in the litigation and, among other things: (i) regularly communicated with counsel regarding the posture and progress of the Action; (ii) received and reviewed material filings in the Action; (iii) completed certifications and declarations in support of filings; (iii) gathered trade documentation and assisted

with responding to discovery requests; and (iv) participated in settlement discussions and evaluated and approved the proposed Settlement. *See* Ex. 1 at ¶¶5-6. Additionally, Lead Plaintiff is a sophisticated institutional investor that took an active role in supervising the litigation, as envisioned by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and endorses the Settlement. Ex. 1 at ¶¶1-3, 7. A settlement reached "with the endorsement of a sophisticated institutional investor … is entitled to an even greater presumption of reasonableness." *In re Veeco Instruments Inc. Sec. Litig.*, No. 15-1695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation. Labaton Keller Sucharow LLP ("Labaton") is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 4-C) and was able to conduct the litigation successfully against skilled opposing counsel.[3] During the course of the litigation, Lead Plaintiff and Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims. *See generally*, Ormsbee Declaration. The judgment of Lead Counsel—a law firm with deep expertise in the field of securities class action litigation—that the Settlement is in the best interests of the Settlement Class is also entitled to "great weight." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2010); *City of Providence v. Aeropostale Inc. et al.*, No. 05-1695, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

Accordingly, the Settlement Class has been, and remains, well represented.

---

[3] During the course of the litigation, defendants have been ably represented by one of the most well-regarded defense firms, Sullivan & Cromwell LLP.

## 2.    The Settlement Was Reached After Arm's-Length Negotiations

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

"[A] District Court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel ... possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Lea v. Tal Educ. Grp.,* No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). As discussed in the Ormsbee Declaration, the Parties and their counsel had well-honed understandings of the strengths and weaknesses of the case before agreeing to settle. *See* Ormsbee Decl. at §§III.-VI. The proposed Settlement was achieved in connection with thorough arm's-length negotiations that included an in-person settlement meeting held on September 13, 2024, where the Parties agreed to a resolution of the Action. ¶54. Prior to the September 13, 2024 settlement meeting, in connection with discovery requested from defendants, defendants produced, and Lead Counsel, reviewed over 23,000 pages of documents. ¶¶37, 44. On September 17, 2024, the Parties informed the Court of their agreement to settle the Action. ¶55. A Term Sheet followed on September 20, 2024 and the Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement. *Id*.

## 3.    The Relief Provided by the Settlement Is Adequate

The Court must consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In*

*re Payment Card Interchange Fee*, 330 F.R.D. at 36.

> **(a)    The Complexity, Costs, Risks, and Likely Duration of the Litigation Support Approval of the Settlement**

Securities class actions like this one are by their nature highly complex, and district courts have long recognized that "[a]s a general rule, securities class actions are notably difficult and notoriously uncertain to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x. 37 (2d Cir. 2016); *In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *4 ("[I]n evaluating the settlement of a securities class action, federal courts, have long recognized that such litigation is notably difficult and notoriously uncertain."). "Accordingly, '[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022).

As detailed in the Ormsbee Declaration, and discussed below, completing discovery, prevailing on defendants' Reconsideration Motion, certifying a class, prevailing in connection with summary judgment challenges, and then achieving a litigated verdict (and sustaining any such verdict on appeal) would have been difficult and uncertain undertakings. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable"). Trial of the claims would have required extensive expert testimony on issues related to proving damages, as well as standards regarding internal controls over financial reporting, among other things. ¶¶73-78. Courts regularly observe that these sorts of disputes—requiring

dueling testimony from experts—are particularly difficult for plaintiffs to litigate. *See*, *e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited …").

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. In most cases, this will be the most important factor for a court to consider in its analysis of a proposed settlement. *See Id*. at 455 ("The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement."). Although the Court denied, in part, defendants' Motion to Dismiss, there is a possibility that the Court would grant defendants' pending Reconsideration Motion in full. If that were the case, then Lead Plaintiff and the Settlement Class might not recover anything without pursuing, and prevailing on, an appeal. And even if the Reconsideration Motion were denied, as discussed below, Lead Plaintiff faced risks in establishing falsity, materiality, scienter, and/or loss causation—to sustain the remaining securities fraud claims through class certification, summary judgment, and trial.

### (b)     Risks Related to Proving Liability: Material Falsity

At summary judgment and trial, defendants would have likely maintained that Lead Plaintiff could not establish that Defendants' statements were materially false and misleading. ¶¶64-68. For example, in the Reconsideration Motion, defendants argued that the purported generic nature of the misstatements alleged in the Complaint regarding Barclays' internal controls are typically the sort of statements that are inactionable and the Court's MTD Order conflicted with prevailing Second Circuit precedent, such as *City of Pontiac v. UBS AG*, 752 F.3d 173, 183, 185 (2d Cir. 2014). Specifically, defendants argued that, like in *UBS*, the Court should have held that the misstatements at issue regarding Barclays' internal controls were not "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or

outcome." ECF No. 67 at 2-3 (citing *UBS*, 752 F.3d at 183, 185); ¶65.

Additionally, there was a risk that a jury could have found the statements too generic to hold Defendants liable—especially given anticipated evidence undercutting the particular aspects of the internal control statements that the Court originally credited. Defendants would likely rely on evidence purportedly demonstrating that Barclays had internal controls and procedures in place that were comparable to other corporations, and that the issuance of unregistered securities did not reflect an internal control error but rather a human error that did not reflect systemic issues within the Company. Defendants would therefore likely argue that Lead Plaintiff could not prove that Defendants concealed any material negative information about the lack of any internal controls, presenting a real risk to establishing the theory of fraud that the Court credited in upholding the alleged misstatements made between February 18, 2021 through March 14, 2022. ¶68.

Additionally, Defendants would likely argue that the alleged misstatements regarding Barclays' "robust internal controls" were overly generic in comparison to the very specific corrective disclosure—a press release that announced Barclays had sold $15.2 billion of unregistered securities and would conduct a rescission offer for those unregistered securities. These anticipated arguments would allow Defendants to challenge the purported generic nature of the alleged misstatements at issue. *See* ECF No. 73 (citing *In re Kirkland Lake Gold Ltd.*, 2024 WL 1342800, at *10 (S.D.N.Y. Mar. 3, 2024) for the proposition that the defendants carried their burden of establishing a lack of price impact and rebutting the presumption of reliance with respect to the "generic statements about the company's growth strategy"); ¶67.

### (c)    Risks to Proving Scienter

Defendants would have likely argued, *inter alia*, that Lead Plaintiff could not establish that the Individual Defendants acted with the requisite fraudulent intent because they did not know that Barclays had failed to establish "an internal control to track actual offers and sales of securities on

11

a real-time basis." ¶70. Moreover, Defendants would likely seek to prove that the oversight failure constituted an innocent mistake and "mismanagement," not recklessness in the context of securities fraud. *Id.*

Accordingly, Defendants would likely seek to establish the theme that this was not severely reckless securities fraud, but rather an inadvertent mistake that was subsequently disclosed to investors once Barclays discovered the Over-Issuances. ¶71.

While Lead Plaintiff and Lead Counsel believe their counter arguments with respect to Defendants' positions were strong, even if Lead Plaintiff prevailed at summary judgment and then trial, it is virtually certain that appeals would be taken, which would have, at best, delayed any recovery. *See, e.g., Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."). At worst, there was of course the possibility that even a favorable verdict could be reversed by the Court or on appeal. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

### (d)    Risks Related to Damages

Another principal challenge in continuing the litigation was the difficulty of proving damages and overcoming Defendants' anticipated arguments regarding loss causation. ¶¶73-78. To prevail, Lead Plaintiff would need to prove that the allegedly corrective information in Barclays' March 28, 2022 press release, filed with the SEC on Form 6-K prior to market open, caused the prices of the ADSs to decline, as opposed to other information about the Company that

was unrelated to the alleged misstatements. ¶74. Defendants would likely argue that the evidence did not establish that the specific disclosures in the March 28, 2022 press release revealed the falsity of the "generic" misstatements concerning Barclays' internal control policies and protections, and therefore did not support loss causation. ¶75. Additionally, Defendants would likely argue that news released several hours following the alleged March 28, 2022 corrective disclosure concerning a large block trade sale of approximately 575 million common shares of Barclays stock by an unnamed significant shareholder was the cause of a significant amount of the decrease in Barclays' share price on March 28, 2022. ¶76.

According to Lead Plaintiff's damages expert, estimated maximum damages attributable to the sole remaining corrective disclosure in the sustained class period (February 18, 2021 through March 27, 2022) were between approximately $92 million and $111 million depending on the trading model and assumptions used. [4] ¶77. If, however, disaggregation of confounding information was required, damages could have been reduced by approximately 40%. *Id*. Defendants would have put forth well-qualified experts of their own. As courts have long recognized, the substantial uncertainty as to which side's experts might be credited by a jury presents a serious litigation risk. *See Telik,* 576 F. Supp. 2d at 579-80 (in this "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…").

---

[4] With respect to the Class Period in the Settlement, which is the originally pled class period of February 18, 2021 through February 14, 2023, both dates inclusive, Lead Plaintiff's damages expert has estimated that maximum damages, without any disaggregation, were approximately $190 million, depending on the trading model and assumptions used. However, as discussed herein, the MTD Order shortened the class period to end on March 27, 2022. ¶9 fn. 6.

(e)    **The Risks of Achieving and Maintaining Class Certification**

Lead Plaintiff's motion for class certification was pending, and not fully briefed, when the Parties agreed to settle. ¶¶34, 66. Defendants had not yet submitted their opposition to Lead Plaintiff's motion. However, Lead Plaintiff anticipated that Defendants would likely raise materiality and price impact arguments and were likely to attempt to "rebut the presumption" of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to defeat class certification by demonstrating, by a preponderance of the evidence, that the misrepresentations did not actually effect, or impact, the market price of Barclays ADSs. ¶66.

Additionally, class certification can be reviewed and modified at any time by a court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). The Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification through trial and on appeal. *See Ebbert v. Nassau Cnty.*, No. 05-5445, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement).

(f)    **The Effective Process for Distributing Relief to the Settlement Class**

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, Verita Global, LLC ("Verita" or "Claims Administrator").[5] The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, class members can submit, either by mail or online using the Claims Administrator's website, the Court-approved

---

[5] Verita was formerly known as KCC Class Action Services, LLC.

14

Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation,[6] and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶25; Ex. 3-A at ¶¶56-74. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. Stipulation at ¶31(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶40) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Thereafter, Lead Plaintiff recommends that any *de minimis* balance that still remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses, be contributed to the Council of Institutional Investors, a non-sectarian, not-for-profit charitable organization serving the public interest, or such other nonsectarian, not-for-profit charitable organization designated by Lead Plaintiff and approved by the Court. *Id*. at ¶28.[7]

---

[6] Approval of the Plan of Allocation is discussed in Section II, below.

[7] The Council of Institutional Investors is ("CII") is a 501(c) nonprofit, nonpartisan association of pension funds and other employee benefit funds, foundations, and endowments with combined assets that exceed $5 trillion that seeks to educate its members, policymakers, and the

(g)    **The Requested Attorneys' Fees and Expenses Are Reasonable**

As discussed in the accompanying Fee Memorandum, the requested attorneys' fees of 29% of the Settlement Fund, payable as ordered by the Court, and Litigation Expenses incurred by Lead Counsel are reasonable in light of Lead Counsel's efforts and the risks in the litigation. Most importantly, with respect to the Court's consideration of the fairness of the Settlement, approval of the attorneys' fees request is not part of the Settlement, *i.e.,* neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or litigation expenses.

(h)    **The Relief Provided in the Settlement Is Adequate Taking Into Account all Agreements Related to the Settlement**

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On September 20, 2024, the Parties executed a settlement Term Sheet, and on November 27, 2024, they executed the Stipulation and the confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual payment. *Christine Asia*

---

public about corporate governance, shareowner rights, and related investment issues. *See* www.cii.org.    Members of CII influence regulators, hold discussions with companies, and participate in litigation where necessary to effect change on these issues. CII has developed an extensive body of corporate governance best practices that many U.S. companies embrace and is vocal in endorsing policies on many investment-related issues through correspondence, amicus briefs and reports and publications. CII has been approved as a *cy pres* beneficiary in several securities class actions, such as *Royal Ahold* (D. Md.), *Hewlett-Packard* (C.D. Cal), and *MRV Communications* (C.D. Cal).

16

*Co. Ltd. v. Yun Ma, et. al*, No. 15-cv-2631, 2019 WL 5257534, at \*15 (S.D.N.Y. Oct. 16, 2019).

Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

### 4.    Application of the Remaining *Grinnell* Factors Supports Approval

#### (a)    The Ability of Defendants to Withstand a Greater Judgment

While it is Lead Plaintiff's understanding that Defendants could withstand a judgment in excess of $19.5 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment when the other factors favor the settlement. *See, e.g., Veeco*, 2007 WL 4115809, at \*11 ("this factor alone does not prevent the Court from approving the Settlement where the other Grinnell factors are satisfied").

#### (b)    The Reaction of the Settlement Class to Date

The reaction of a class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy. *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67.

Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Verita, mailed or emailed copies of the Notice and Claim Form (the "Notice Packet") to potential Settlement Class Members and their nominees. *See* Ex. 3 at ¶¶2-8. As of February 9, 2025, 142,575 copies of the Notice Packet have been mailed or emailed to potential Settlement Class Members and their nominees. *Id*. at ¶8. In addition, on January 6, 2025 the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PRNewswire*. *Id*. at ¶9.

While the deadline set by the Court (February 25, 2025) has not yet passed, to date, no objections to the Settlement or Plan of Allocation have been received and no request for exclusion has been received. ¶¶12, 83, 90; Ex. 3 at ¶¶13-14; *see In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-11515, 2009 WL 2025160, at \*2 (S.D.N.Y. July 10, 2009) (no class member objections since

17

preliminary approval supported final approval). As provided in the Preliminary Approval Order, Lead Plaintiff will file its reply papers no later than March 11, 2025, addressing any objections and any requests for exclusion.

### (c) The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

"[A] sufficient factual investigation must have been conducted to afford the Court the opportunity to 'intelligently make … an appraisal of the settlement.'" *Puddu v. 6D Global Tech., Inc.*, No. 15-8061, 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021); *see also In re Signet Jewelers*, 2020 WL 4196468, at *7 ("When considering this *Grinnell* factor, the question is whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.").

Here, prior to agreeing to settle, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation that involved contacting former employees of Barclays, financial industry journalists who covered Barclays during the Class Period, and professors in the field of securities regulation to discuss the issues related to the Action; (ii) preparing a detailed Complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations in support of the claims at issue; (iii) defeating, in part, defendants' motion to dismiss the Complaint; (iv) opposing defendants' motion to reconsider the Court's MTD Order; (v) moving for class certification; (vi) researching, drafting, and propounding discovery requests on defendants; (vii) reviewing over 23,000 pages of documents; (viii) preparing for and participating in a formal in-person arms' length settlement meeting; and (ix) engaging and consulting with accounting, damages and causation experts. Lead Plaintiff and Lead Counsel were fully informed about the

Action's strengths and weaknesses. *See* Ormsbee Decl. at §§III.-VI.

Armed with this substantial base of knowledge, Lead Plaintiff was in a position to balance the proposed Settlement with a well-educated assessment of the likelihood of overcoming the risks of litigation. The fact that the Parties have not completed discovery does not weigh against preliminary approval. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425–26 (S.D.N.Y. 2001) ("To approve a proposed settlement, however, the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make. . . an appraisal of the Settlement."); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial. *Tchrs. Ret. Sys. of La. v. A.C.L.N. Ltd.*, No. 01-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). Accordingly, this factor also supports approval.

### (d)    The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement

Courts typically analyze the last two *Grinnell* factors together, "consider[ing] and weigh[ing] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010). Courts agree that the determination of a "reasonable" settlement "is not susceptible

19

[to] a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement. . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As discussed above and in the Ormsbee Declaration, the Settlement represents approximately 17.5% to 35% of estimated damages, depending on the trading model and assumptions used. If the Settlement Class's claims survived the Reconsideration Motion, class certification, summary judgment, trial, post-trial motions, and appeals completely intact, then maximum aggregate damages under the sustained class period were estimated to be between approximately $92 million and $111 million. If disaggregation of confounding information was required, damages could have been reduced by approximately 40%. ¶77. Courts regularly approve settlements with comparable or lower percentage recoveries than obtained here. *See, e.g.*, *Pearlstein* 2022 WL 4554858, at \*6 (approving settlement that represents approximately 13.75% of plaintiffs' estimated maximum recoverable damages and noting that it is "well within the range of reasonableness and, in fact, considerably above the high end of historical averages").

Moreover, the Settlement Amount is above industry trends. It exceeds the median reported settlement amount in securities class actions in 2023, which was $15 million. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024), Ex. 2, at 1; ¶8. For the period from 2018 through 2022, the median settlement value was $11.7 million, and in 2022 it was $13.5 million. *Id.* The Settlement is also well above the $8.9 million median recovery for securities class actions prosecuted and settled within the Second Circuit from 2014 through 2023. *Id.* at 1, 20.

20

In light of the circumstances before the Court, and all of the delay and uncertainty that would be inherent in continued litigation, the Settlement falls well within the range of possible recovery considered fair, reasonable, and adequate.

## II.    THE PROPOSED PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY AND SHOULD BE APPROVED BY THE COURT

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation with a "rational basis" satisfies this requirement. *FLAG Telecom*, 2010 WL 4537550, at *21; *Initial Pub. Offering*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision." *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. at 133.

Here, the proposed Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid claims. The Plan is set forth in full in the long-form Notice. *See* Ex. 3-A at ¶¶56-74. Verita, as the Court-approved Claims Administrator, will determine each Claimant's Recognized Claim, calculated according to the formulas in the Plan of Allocation. The Plan provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their calculated Recognized Claim. *Id*. ¶¶58, 66. Each *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id*. The proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of the Settlement among the Settlement Class.

21

Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See Giant Interactive Grp. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"). To date, no objections to the proposed plan have been received. ¶90.

## III.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

Lead Plaintiff's Preliminary Approval Motion and motion seeking certification of a class set forth the bases for the certification of the Settlement Class. *See* ECF. Nos. 84-85, 95 at 20-21. In connection with the Preliminary Approval Motion, the Court found that the Settlement Class satisfied the requirements of Rule 23(a) and (b)(3) and issued its Order preliminarily certifying a class for settlement purposes. ECF No. 98. Nothing has happened since preliminary approval was granted that would alter the Court's findings. Lead Plaintiff now requests that the Court finally certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes only, and appoint Lead Plaintiff as Class Representatives and Labaton as Class Counsel. *See Rodriguez v. CPI Aerostructures, Inc.*, No. 20-982, 2023 WL 2184496, at *5 (E.D.N.Y. Feb. 16, 2023) (recommending final certification of the settlement class, noting that there had been no objections or opt-outs from class members, and no other material information had emerged that would alter the court's findings since its preliminary approval order).

## IV.    NOTICE SATISFIED RULE 23 AND DUE PROCESS

Lead Plaintiff provided the Settlement Class with notice of the proposed Settlement that satisfied all the requirements of Rule 23(e), the PSLRA, and due process. Notice of a settlement must be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores*, 396 F.3d at 114—and be the best notice practicable under the

22

circumstances. Fed. R. Civ. P. 23(e). Both the substance of the notice program here and the methods of dissemination satisfied these standards.

Collectively, the forms of notice describe, among other things: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a Claim Form; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing. *See* Ex. 3.

In addition to mailing (and emailing to the extent emails were provided) the long-form Notice, Verita caused the Summary Notice to be published in *The Wall Street Journal* and to be released over the internet using *PR Newswire.* Ex. 3 at ¶9. Verita also established a website for the Settlement, www.BarclaysSecuritiesSettlement.com, which provides information about the Settlement, including important dates and downloadable copies of the Notice, the Claim Form, Stipulation, and the Preliminary Approval Order. *Id.* at ¶11. The website also provides a portal for submitting claims electronically. Lead Counsel also posted copies of the Notice and Claim Form on its website. ¶82.

This combination of individual mailed notice to those who could be identified with reasonable effort, supplemented by publication and internet notice, was "the best notice … practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, approve the proposed Plan of Allocation, and finally certify the Settlement Class for purposes of the Settlement only. Proposed orders will be submitted with

Lead Plaintiff's reply papers, after the deadline for objecting or seeking exclusion has passed.

Dated: February 11, 2025

**LABATON KELLER SUCHAROW LLP**

*/s/ Lauren A. Ormsbee*
Lauren A. Ormsbee
Christine M. Fox
James M. Fee
Lisa Strejlau
Charles J. Stiene
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
cfox@labaton.com
jfee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Counsel for Lead Plaintiff Boston
Retirement System and Lead Counsel for the
Proposed Settlement Class*

24

## <u>CERTIFICATION OF WORD-COUNT COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c). The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 7,391 words according to the word-processing system used to prepare the document.

Dated: February 11, 2025

/s/ <u>*Lauren A. Ormsbee*</u>
LAUREN A. ORMSBEE

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

Dated: February 11, 2025

/s/ *Lauren A. Ormsbee*
LAUREN A. ORMSBEE

2