**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BARCLAYS PLC SECURITIES LITIGATION | Case No. 1:22-cv-08172-KPF |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND PAYMENT OF EXPENSES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT.................................................................................................................3

I.     THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE
       PERCENTAGE OR LODESTAR METHOD ................................................................3

       A.     The Requested Attorneys' Fee Would Be Reasonable Under the
              Percentage-of-the-Fund Method ...............................................................4

       B.     Fees Awarded in Comparable Cases Within This District .......................4

       C.     The Requested Attorneys' Fee Would Be Reasonable Under
              the Lodestar Method ..................................................................................6

II.    THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
       THE SECOND CIRCUIT'S FACTORS ....................................................................9

       A.     Lead Counsel Has Devoted Significant Time and Labor to the Action .................9

       B.     The Magnitude and Complexity of the Action Support the Requested Fee ..........10

       C.     The Risks of the Litigation Support the Requested Fee ........................10

       D.     The Quality of Lead Counsel's Representation Supports
              the Requested Fee .....................................................................................13

       E.     The Requested Fee in Relation to the Settlement ..................................14

       F.     Public Policy Considerations Support the Requested Fee......................15

III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
       NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................16

IV.    LEAD PLAINTIFF'S REQUESTED REIMBURSEMENT UNDER 15 U.S.C.
       §78u-4(a)(4) IS REASONABLE .........................................................................17

V.     THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
       REQUESTED FEES AND EXPENSES ....................................................................18

CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
*aff'd*, 272 F. App'x. 9 (2d Cir. 2008) ....................................................................14

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ..................................................................................................3

*In re Bayer AG Sec. Litig.*,
No. 03-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ..................................12

*In re BHP Billiton Sec. Litig.*,
No. 1:16-cv-01445-NRB, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ..............5, 6

*In re BRF S.A. Sec. Litig.*,
No. 1:18-CV-02213-PKC, 2020 WL 10618214 (S.D.N.Y. Oct. 23, 2020)............18

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005) ......................................................................6

*In re China Sunergy Sec. Litig.*,
No. 07-cv-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ..............................16

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
No.17-CV-1580, 2022 WL 3220783 (S.D.N.Y. Aug. 5, 2022) ................................6

*City of Birmingham Ret. Sys. v. Davis*,
No. 19-1378, 2020 U.S. App. LEXIS 8686 (2d Cir. Mar. 17, 2020); ..................5, 6

*City of Providence v. Aeropostale Inc.*,
No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ............................4, 10

*City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
No. 20-cv-02031, 2021 WL 2736135 (S.D.N.Y. June 30, 2021)............................18

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)....................6, 10, 14

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................6, 13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................................13

*Goldberger v. Integrated Res, Inc.*,
    209 F.3d 43 (2d Cir. 2000).............................................................................................3, 4, 9

*Hicks v. Morgan Stanley*, *et al.*,
    No 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)........................................3, 16

*Lea v. Tal Educ. Grp.*,
    No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)...............................14

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997).....................................................................................................7

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)......................................................................................................3

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)..................................................................................................................7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x. 760 (2d Cir. 2020) ..........................................................................................14

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999) .....................................................................................................4

*Shapiro v. J.P. Morgan Chase & Co*
    No. 11-8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................15. 16

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......................................10, 11

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................................4, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................................3

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017).............................14

*In re Veeco Instruments Inc. Sec. Litig.*,
    MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..............................13, 14, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................4, 6, 8

**Docketed Cases**

*In re Akari Therapeutics PLC Sec. Litig.*,
    No. 17 Civ. 3577, slip op. (S.D.N.Y. Nov. 28, 2018) ...............................................5

*Ali Karimi v. Deutsche Bank Aktiengesellschaft*,
    No. 1:22-cv-02854, slip op. (S.D.N.Y. Feb. 6, 2023)...............................................5

*In re Celestica Inc. Sec. Litig.*,
    No. 07-cv-00312-GBD, slip op. (S.D.N.Y. July 28, 2015) .......................................6

*City of St. Clair Shores Police and Fire Ret. Sys. v. Credit Suisse Grp. AG*,
    No. 1:21-cv-03385, ECF Nos. 79, 94 (S.D.N.Y. May 11, 2023) .........................7, 8

*In re Cnova N.V. Sec. Litig.*,
    No. 1:16-cv-00444-LTS-OTW, slip op. (S.D.N.Y. Mar. 20, 2018) .........................5

*Flatscher v. The Manhattan School of Music*,
    No. 20-cv-4496, slip op. (S.D.N.Y. Sept. 8, 2023) ................................................13

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
    No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) ....................................5

*Landmen Partners, Inc. v. Blackstone Grp. L.P.*,
    No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) .................................6

*In re Silvercorp Metals Inc. Sec. Litig.*,
    No. 12-cv-09456-JSR, slip op. (S.D.N.Y. Feb. 13, 2015).....................................18

*Stein v. Eagle Bancorp, Inc., et al.*,
    Case No. 1:19-cv-06873-LGS, slip op. (S.D.N.Y. Feb 10, 2022) .........................18

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
    No. 1:23-cv-00431-AS, ECF Nos. 63, 69 (S.D.N.Y. Oct. 29, 2024) ..................5, 7

**Statutes**

15 U.S.C. §78u-4(a)(4) .................................................................................................17

Court-appointed Lead Counsel, Labaton Keller Sucharow LLP ("Labaton"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 29% of the Settlement Fund. Lead Counsel also seeks payment of $238,001.30 in Litigation Expenses that Lead Counsel reasonably incurred in prosecuting the Action, as well as $2,123.00 in reimbursement to Lead Plaintiff Boston Retirement System ("Lead Plaintiff" or "BRS") directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, the proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $19.5 million cash payment. The recovery represents an excellent result for the Settlement Class as it provides substantial, near-term compensation to Settlement Class Members, while avoiding the risks associated with pursing the Action through a decision on Defendants' pending motion for reconsideration, as well as further dispositive motion practice, trial, and the inevitable appeals that would follow. The Settlement eliminates these risks, among others, while providing a very favorable recovery to the Settlement Class.

---

[1] Lead Counsel is simultaneously submitting the Declaration of Lauren A. Ormsbee in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (the "Ormsbee Declaration") (cited as "¶"). Capitalized terms have the meanings given to them in the Ormsbee Declaration or the Stipulation and Agreement of Settlement (ECF No. 96-1) (the "Stipulation").

All exhibits referenced below are attached to the Ormsbee Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

At significant contingency risk—Lead Counsel devoted substantial resources to prosecuting the Action against highly skilled opposing counsel. Among the other work detailed in the Ormsbee Declaration, Lead Counsel: (i) conducted a rigorous investigation of the claims at issue, including contacting and interviewing former employees of Barclays, financial industry journalists who covered Barclays during the Class Period, and professors in the field of securities regulation; (ii) prepared and filed a detailed amended Complaint; (iii) defeated, in part, defendants' motion to dismiss the Complaint; (iv) opposed defendants' motion to reconsider the Court's motion to dismiss opinion ("Reconsideration Motion"); (v) moved for class certification; (vi) researched, drafted, and propounded discovery requests; (vii) reviewed over 23,000 pages of documents produced by defendants and third parties; (viii) prepared for and participated in a formal in-person arms' length settlement meeting; and (ix) engaged and consulted with accounting, damages and causation experts. *See generally* Ormsbee Decl. at §§ III-IV.

Against this backdrop, Lead Counsel requests a fee of 29% of the Settlement Fund, payment of Lead Counsel's Litigation Expenses in the amount of $238,001.30, plus accrued interest, and reimbursement of $2,123.00 to Lead Plaintiff for the time and resources it dedicated to representing the class. As demonstrated below, the fee request is within the range of attorneys' fees typically awarded in securities class actions of this size, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Lead Counsel respectfully submits that its efforts and the results achieved in this Action justify the requested fees and expenses.

## ARGUMENT

### I. THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement" of the securities laws and are "a necessary supplement to [SEC] action"). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, *et al.*, No 01-cv-10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").[2]

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—29% of the Settlement Fund—is well supported under either the "percentage" or "lodestar" method.

---

[2] All internal quotations and citations are omitted unless otherwise stated.

### A.    The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund obtained. Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale Inc.*, No. 11-7132, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) *aff'd*, *Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit has approved the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger,* 209 F.3d at 48-50 (either percentage of fund method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

### B.    Fees Awarded in Comparable Cases Within This District

The 29% fee requested by Lead Counsel would be within the range of percentage fees awarded within the Second Circuit in securities class actions of a similar size. *See, e.g., In re*

*Romeo Power Inc. Sec. Litig.*, No. 1:21-cv-03362-LGS, 2024 WL 5319107, at *1-2 (S.D.N.Y. Aug. 1, 2024) (awarding 29% of $14.9 million settlement); *Martinek v. Amtrust Fin. Servs., Inc.,* No. 19 Civ. 8030 (J. Failla), 2022 WL 16960903, at *1-2 (S.D.N.Y. Nov. 16, 2022) (awarding 33.33% of $13 million settlement); *In re Y-mAbs Therapeutics, Inc. Sec. Litig.,* No. 1:23-cv-00431-AS (S.D.N.Y. Oct. 29, 2024) (awarding 33 1/3% of $19.65 million settlement) (Ex. 6);[3] *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, ECF No. 230 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million settlement) (Ex. 6); *Ali Karimi v. Deutsche Bank Aktiengesellschaft,* No. 1:22-cv-02854 (S.D.N.Y. Feb. 6, 2023) (awarding 30% of $26.25 million settlement) (Ex. 6); *In re Deutsche Bank AG Sec. Litig.,* No. 1:09-cv-01714-GHW-RWL, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding 33 1/3% of $18.5 million settlement); *City of Providence*, 2014 WL 1883494, at *20 (awarding 33% of $15 million settlement); *In re Prothena Sec. Litig.*, No. 18-cv-06425, 2019 WL 6528672, at *1(S.D.N.Y. Dec. 4, 2019) (awarding 30% of $15,750,000 settlement); *In re Cnova N.V. Sec. Litig.*, Master File No. 1:16-cv-00444-LTS-OTW, slip op. at 5 (S.D.N.Y. Mar. 20, 2018) (awarding 33.3% of $28.5 million settlement) (Ex. 6).[4]

Awards of 29% or more are also regularly awarded in cases with larger settlements in courts within the Second Circuit. *See, e.g., Pearlstein v. Blackberry Ltd.,* No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *10-11 (S.D.N.Y. Sept. 29, 2022) (awarding 33 1/3% of $165 million settlement); *In re BHP Billiton Sec. Litig.*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding fees of 30% of $50 million recovery), *aff'd City of*

---

[3] All unreported slip opinions and cited hearing transcripts are submitted in a compendium, which is Exhibit 6 to the Ormsbee Declaration.

[4] *See also In re Akari Therapeutics PLC Sec. Litig.*, No. 17 Civ. 3577, slip op. at 1-2 (S.D.N.Y. Nov. 28, 2018) (J. Failla) (awarding 1/3 of $2.7 million settlement) (Ex. 6).

*Birmingham Ret. Sys. v. Davis*, No. 19-1378, 2020 U.S. App. LEXIS 8686 (2d Cir. Mar. 17, 2020); *Landmen Partners, Inc. v. Blackstone Grp. L.P*., No. 08-cv-03601-HB-FM, slip op. at 5 (S.D.N.Y. Dec. 18, 2013) (awarding 33.3% of $85 million settlement) (Ex. 6); *In re Chi. Bridge & Iron Co. N.V. Sec. Litig*., No.17-CV-1580, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (awarding 33 1-3% of $44 million settlement); *In re Celestica Inc. Sec. Litig*., No. 07-cv-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million settlement) (Ex. 6).

Accordingly, the requested fee would be comparable to fees awarded within this District.

## C.    The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal–Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."). Fees representing multiples above a lodestar are frequently awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Here, Lead Counsel spent more than 2,453 hours of attorney and other professional staff time litigating and settling the case. *See* Ex. 4-A. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their standard current hourly rates, is $1,778,912.00. *Id*. [5] Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience, and reputation. "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Telik*, 576 F. Supp. 2d at 589; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Lead Counsel's rates here range from $1,100 to $1,375 for partners, $750 to $975 for of counsels, $350 to $675 for associates and other attorneys. *See* ¶108; Ex. 4-A. Sample defense firm rates in 2024, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. ¶108; Ex. 5.

The requested fee of 29% of the Settlement Fund, *i.e.,* $5,655,000, would represent a multiplier of 3.2 of the total lodestar of Lead Counsel. Such a multiplier is within the parameters used throughout district courts in the Second Circuit and, as discussed herein, has been well-earned. *See, e.g.*, *In re Y-mAbs Therapeutics, Inc. Sec. Litig.,* No. 1:23-cv-00431-AS (S.D.N.Y. Oct. 29, 2024) (awarding fees in $19.65 million settlement representing a multiplier of 3.8 as noted in the fee brief at ECF No. 63 at 14) (Ex. 6); *City of St. Clair Shores Police and Fire Ret.*

---

[5] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

*Sys. v. Credit Suisse Grp.* AG, No. 1:21-cv-03385, ECF No. 94 at 1 (S.D.N.Y. May 11, 2023) (Ex. 6) (awarding fees in $32.5 million settlement representing a multiplier of 5.6 as referenced in the fee brief at ECF No. 79 at 29); *In re BRF S.A. Sec. Litig.*, No. 1:18-cv-02213, ECF No. 181 at 16-19, Tr. of Hr'g., Oct. 23, 2020 (S.D.N.Y. Oct. 23, 2020) (Ex. 6) (awarding fees in $40 million settlement representing a lodestar multiplier of 5.57); *see also Walmart Stores Inc. v. Visa USA Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d at 590 ) ("[L]odestar multiples of over 4 are routinely awarded."); *Maley* 186 F. Supp. 2d at 369) (noting that multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country").

Here, Lead Counsel carefully and efficiently staffed the Action and litigated the case with two main partners, Lauren A. Ormsbee and Christine Fox. Other partners were involved, but only at particular stages of the case, such as lead plaintiff appointment or settlement. Ormsbee Decl. ¶106; Ex. 4-A. The result of this staffing was that associates and of counsel with lower hourly rates handled the case on a day-to-day basis, as opposed to more expensive partners.

Additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Lead Counsel will not seek payment for this additional work.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

\*　　\*　　\*

8

In sum, Lead Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## II. THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Lead Counsel's requested fee would be reasonable.

### A.    <u>Lead Counsel Has Devoted Significant Time and Labor to the Action</u>

The time and effort expended by Lead Counsel to prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Ormsbee Declaration, Lead Counsel, among other things: (i) conducted a rigorous investigation of the claims at issue, including contacting former employees of Barclays, financial industry journalists who covered Barclays during the Class Period, and professors in the field of securities regulation to discuss the issues related to the Action; (ii) prepared and filed a detailed Complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations; (iii) defeated, in part, defendants' motion to dismiss the Complaint; (iv) opposed defendants' Reconsideration Motion; (v) moved for class certification; (vi) researched, drafted, and propounded discovery requests on defendants; (vii) reviewed over 23,000 pages of documents produced by defendants and third parties; (viii) prepared for and participated in a

formal in-person arms' length settlement meeting; and (ix) engaged and consulted with accounting, damages and causation experts. *See generally* Ormsbee Decl. at §§ III-V.

Lead Counsel expended more than 2,453 hours prosecuting the Action with a lodestar value of $1,778,912.00. *See* Ex. 4-A. At all times, Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

### B.    The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the fee request. Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re Signet Jewelers Ltd. Sec. Litig.,* No. 16 cv 06728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute"). Here, prevailing on defendants' Reconsideration Motion, certifying a class, completing discovery, prevailing in connection with summary judgment challenges, and then achieving a litigated verdict at trial, would have been difficult, complex, and uncertain. Prosecuting the class's claims required expertise, skill and dedication, including extensive expert analysis across multiple fields including damages, as well as standards regarding internal controls over financial reporting. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### C.    The Risks of the Litigation Support the Requested Fee

The risks associated with this contingency fee case also support the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5; *see also In re Signet*, 2020 WL 4196468, at *19 ("The Second Circuit has recognized that the risks associated with a case

undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

The Parties were deeply divided on virtually every issue in the litigation, as detailed in the Ormsbee Declaration at Section VI and the accompanying Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation ("Settlement Memorandum"), and there was no guarantee Lead Plaintiff's position would prevail. If Defendants had succeeded with respect to any of their defenses, Lead Plaintiff and the class could have recovered nothing or far less than the Settlement Amount.

Although Lead Plaintiff and Lead Counsel believe that the alleged misstatements supported strong claims of securities fraud, and although the Court denied, in part, defendants' Motion to Dismiss, defendants' Reconsideration Motion was *sub judice*, and there is a possibility that the Court would grant Defendants' pending Motion for Reconsideration, resulting in a dismissal of the case. If the Motion for Reconsideration were denied, Lead Plaintiff faced the ongoing burdens of supporting its liability claims in connection with summary judgment and prevailing at trial, as well as in likely appeals – a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. ¶¶64-65.

Summary judgment would provide Defendants with another chance to contest elements of Lead Plaintiff's claims as a matter of law, including, falsity, materiality, and scienter. With respect to falsity, Defendants would likely cite to evidence purportedly demonstrating that Barclays had internal controls and procedures in place that were comparable to other corporations and would likely argue that Lead Plaintiff could not prove that Defendants

concealed any material negative information about the lack of any internal controls, presenting a real risk to establishing the theory of fraud that the Court credited in upholding the alleged misstatements made between February 18, 2021 through March 14, 2022. ¶¶66-68.

Regarding scienter, Defendants would have likely argued, *inter alia*, that Lead Plaintiff could not establish that the Individual Defendants acted with the requisite fraudulent intent at all, given that they purportedly did not know that Barclays failed to establish "an internal control to track actual offers and sales of securities on a real-time basis." ¶¶69-72.

Even if Lead Plaintiff was successful in proving falsity and scienter with respect to the remaining misstatements alleged in the Complaint, it faced significant challenges and uncertainty with respect to proving loss causation and damages. Defendants would have likely argued, for example, that confounding information released during the trading day on March 28, 2022 significantly reduced recoverable damages. ¶¶73-78. The contours of the ultimate class and actionable misstatements could have compromised Lead Plaintiff's ability to succeed at trial and obtain a larger judgment for the class. *See In re Bayer AG Sec. Litig.*, No. 03-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of establishing loss causation [] and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards").

Additionally, while defendants had not yet submitted their opposition to Lead Plaintiff's Class Certification Motion, Lead Plaintiff anticipated a robust opposition to the motion, likely on several grounds that are the subject of fluid caselaw, including price impact arguments. ¶¶66-67.

In the face of many uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation. ¶¶96-101. Lead Counsel's assumption of this

contingency fee risk strongly supports the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at \*27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

### D.    The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel respectfully submits that the quality of its representation is best evidenced by the progress of the litigation and the quality of the result achieved. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at \*7 (S.D.N.Y. Nov. 7, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Furthermore, Lead Counsel is a nationally recognized leader in the field of securities class action litigation and has substantial experience litigating and trying securities class actions in courts throughout the country. ¶103; Ex. 4-C. The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement sophisticated strategies to overcome myriad obstacles raised by Defendants throughout the litigation.

The result obtained for the Settlement Class in this case is very favorable, particularly when viewed in light of the serious risks of continued litigation. The Settlement recovers a range of approximately 17.5% to 35% of estimated damages, depending on the trading model and assumptions used. If the Settlement Class's claims survived the Reconsideration Motion, class certification, summary judgment, trial, post-trial motions, and appeals completely intact, then maximum aggregate damages under the sustained class period were estimated to be between approximately $92 million and $111 million. If disaggregation of confounding information was required, damages could have been reduced by approximately 40%. *See* Ormsbee Decl. ¶77.

Since the passage of the PSLRA, courts have regularly approved settlements that recover smaller percentages of damages. *See, e.g., Lea v. Tal Educ. Grp.,* No. 18-CV-5480 (KHP), 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving $7.5 million settlement representing 5.3% of maximum estimated damages); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions").

The quality of Lead Counsel's representation is further demonstrated by the fact that this substantial recovery was obtained after opposing an aggressive defense by highly skilled attorneys at Sullivan & Cromwell LLP. Courts recognize that the strength of Lead Counsel's opposition should be considered in assessing its performance. *See, e.g., Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### E.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in Section I, *supra*, the requested fee is within the range of percentage fees that this Court and other courts

14

have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F.    Public Policy Considerations Support the Requested Fee

As mentioned above, courts within the Second Circuit have long held that public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"). "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. Sept. 21, 2005). This Court has noted, in *Flatscher v. Manhattan School of Music*, 20 Civ. 4496, ECF No. 103 (S.D.N.Y. Sept. 8, 2023), in approving attorneys' fees, that "Courts are to consider here the social and economic value of the class action, the need to encourage experience[d] and able counsel to undertake such litigation, and class actions are a safeguard for public rights." *See* Ex. 6, Tr. of Hr'g., Sept. 8, 2023, at 17.

Judge McMahon has noted the importance of "private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis" in *Shapiro v. J.P. Morgan Chase & Co*:

> [C]lass actions serve as private enforcement tools when . . . regulatory entities fail to adequately protect investors . . . . [P]laintiffs' attorneys need to be sufficiently incentivized to commence such actions in order to ensure that defendants who engage in misconduct will suffer serious financial consequences . . . . [A]warding counsel a fee that is too low would therefore be detrimental to this system of private enforcement.

No. 11-8331, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) (citing, *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515-16 (S.D.N.Y. 2009)); *see also Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

Accordingly, this factor supports Lead Counsel's fee and expense application.

## III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's fee application includes a request for payment of Lead Counsel's Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. Lead Counsel incurred $238,001.30 in Litigation Expenses. *See* Ex. 4-B. This amount is below the $300,000 cap that the Notice informed potential Settlement Class Members that counsel may apply for, and which—to date—there has been no objection to. It is respectfully submitted that the expenses are properly recoverable by counsel. *See In re China Sunergy Sec. Litig.*, No. 07-cv-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

The amount of Litigation Expenses is consistent with the stage of the litigation. Lead Counsel incurred expenses related to, among other things, expert and consultant fees, and litigation support fees related to electronic discovery. A complete breakdown by category of the expenses incurred is set forth in Exhibit B to the Declaration of Lauren A. Ormsbee on behalf of Labaton Keller Sucharow. These expense items are reported separately by Lead Counsel, and such costs are not duplicated in the firm's hourly rates.

The largest expense relates to the retention of Lead Plaintiff's testifying and consulting experts. These fees total $194,419.40, or approximately 82% of the total Litigation Expenses.

¶115; Ex. 4-B. Principally, Lead Plaintiff retained a market efficiency/loss causation/and damages expert who contributed to the prosecution of the Action by, among other things, preparing an expert report concerning market efficiency and common damages methodologies in connection with Lead Plaintiff's class certification motion; analyzing loss causation and damages issues, including in connection with the Parties' settlement discussions; and developing the proposed Plan of Allocation. *Id.* Lead Plaintiff also consulted with an accounting expert who provided expertise related to rules and regulations governing a company's internal controls over financial reporting and disclosure controls and procedures.

Litigation support costs, primarily related to electronic discovery, total $27,710.53, or approximately 12% of all expenses. ¶116; Ex. 4-B.

The remainder of the expenses sought are the types that are necessarily incurred in complex litigation and routinely charged to clients who pay by the hour.

## IV.    LEAD PLAINTIFF'S REQUESTED REIMBURSEMENT UNDER 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Lead Counsel also seeks reimbursement of $2,123.00 on behalf of Lead Plaintiff, BRS, directly related to its representation of the class. *See* Declaration of Timothy J. Smyth on Behalf of Boston Retirement System, dated January 31, 2025, submitted herewith as Ex. 1 at ¶¶3, 5-6, 9-11. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, as described more fully in the Declaration of Timothy J. Smyth, Esq., submitted on behalf of BRS, Lead Plaintiff has been committed to pursuing the class's claims—and has taken an active role in so doing. Among other things, Lead Plaintiff, through Mr. Smyth and others: (i) assisted Lead Counsel in the collection and retention of relevant documents in the possession,

17

custody and control of BRS related to the Action; (ii) completed certifications and declarations in support of case filings; (iii) received and reviewed material court filings, in both draft and final form, including complaints, the briefing for defendants' motion to dismiss, and the motion to certify the class; and (iv) assisted with responding to discovery requests, including producing documents. Additionally, Lead Plaintiff BRS, through Mr. Smyth and General Counsel Natacha Thomas, was consulted over the course of the settlement discussions with defendants and ultimately gave counsel settlement authority, and approved the Settlement. Ex. 1 at ¶¶5-6.

These efforts required representatives of Lead Plaintiff to dedicate time and resources to the Action that they would have otherwise devoted to their regular duties. Lead Plaintiff seeks $2,123.00 in connection with the approximately 23 hours dedicated to the litigation. *See Id*. at ¶10.

Courts within this District have approved payments to compensate representative plaintiffs under similar circumstances. *See, e.g., In re BRF S.A. Sec. Litig.,* No. 1:18-cv-02213, 2020 WL 10618214, at *2 (S.D.N.Y. Oct. 23, 2020) (awarding lead plaintiff $2,889.15 for time spent directly related to its representation of the class); *Stein v. Eagle Bancorp, Inc., et al.,* Case No. 1:19-cv-06873-LGS, slip op. at 3 (S.D.N.Y. Feb 10, 2022) (awarding individual lead plaintiff $7,500) (Ex. 6); *City of Warren Police and Fire Ret. Sys. v. World Wrestling Ent.*, *Inc.,* No. 20-cv-02031, 2021 WL 2736135, at *1 (S.D.N.Y. June 30, 2021) (awarding $6,286.40 to lead plaintiff pension fund); *In re Silvercorp Metals Inc. Sec. Litig.,* No. 12-cv-09456-JSR, slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding two individual lead plaintiffs $12,500 each) (Ex. 6).

## V.    THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEES AND EXPENSES

The reaction of the Settlement Class to date also supports the fee and expense request. Through February 9, 2025, the Claims Administrator has emailed or mailed 142,575 copies of

the Notice Packet to potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 29% of the Settlement Fund and up to $300,000 in Litigation Expenses. *See* Declaration of Lance Cavallo Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of Summary Notice; (C) Establishment of Telephone Hotline and Settlement Website, and (D) Report on Requests for Exclusion Received to Date (the "Mailing Declaration" or "Mailing Decl."), dated February 10, 2025, Ex. 3 at ¶¶2-8 and Ex. A thereto. While the time to object to the Fee and Expense Application does not expire until February 25, 2025, to date no objections have been received. Lead Counsel will address any that are submitted in its reply papers, which will be filed on or before March 11, 2025.

Additionally, the requested fee of 29% is made with the full support of the Lead Plaintiff. *See* Ex. 1. Lead Plaintiff's endorsement of the fee supports its approval. *See Veeco*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request[.]").

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 29% of the Settlement Fund, which includes accrued interest; $238,001.30 in Litigation Expenses incurred by Lead Counsel, plus accrued interest; and $2,123.00 as reimbursement to Lead Plaintiff pursuant to the PSLRA. A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated: February 11, 2025              **LABATON KELLER SUCHAROW LLP**

                                       */s/ Lauren A. Ormsbee*

Lauren A. Ormsbee
Christine M. Fox
James M. Fee
Lisa Strejlau
Charles J. Stiene
140 Broadway

New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
cfox@labaton.com
jfee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Counsel for Lead Plaintiff Boston*
*Retirement System and Lead Counsel for the*
*Proposed Settlement Class*

## <u>CERTIFICATION OF WORD-COUNT COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c). The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 6,476 words according to the word-processing system used to prepare the document.

Dated: February 11, 2025

/s/ *Lauren A. Ormsbee*
LAUREN A. ORMSBEE

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

Dated: February 11, 2025

/s/ *Lauren A. Ormsbee*
LAUREN A. ORMSBEE
