# Exhibit 6

# Compendium of Unreported Cases

*In re Akari Therapeutics PLC Sec. Litig.*,
   No. 17 Civ. 3577, slip op. (S.D.N.Y. Nov. 28, 2018) ..................................................................1

*Ali Karimi v. Deutsche Bank Aktiengesellschaft,*
   No. 1:22-cv-02854, slip op. (S.D.N.Y. Feb. 6, 2023)...................................................................2

*In re Celestica Inc. Sec. Litig.*,
    No. 07-cv-00312, slip op. (S.D.N.Y. July 28, 2015) ...................................................................3

*City of Birmingham Ret. and Relief Sys. v. BRF S.A.*
   No. 18 Civ. 2213, Transcript (S.D.N.Y. Oct. 23, 2020) .............................................................4

*City of St. Clair Shores Police and Fire Ret. Sys. v. Credit Suisse Grp.* AG,
   No. 1:21-cv-03385, ECF Nos. 79, 94 (S.D.N.Y. May 11, 2023) ...............................................5

*In re Cnova N.V. Sec. Litig.*,
   No. 1:16-cv-00444-LTS-OTW, slip op. (S.D.N.Y. Mar. 20, 2018**)** .........................................6

*Flatscher v. The Manhattan School of Music*
      No. 20-cv-4496, slip op. (S.D.N.Y. Sept. 8, 2023) ..................................................................7

*Flatscher v. The Manhattan School of Music*
      No. 20-cv-4496, Transcript (S.D.N.Y. Sept. 8, 2023) .............................................................8

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
   No. 1:18-cv-00299-AJN, slip op. (S.D.N.Y. Feb. 14, 2022) .....................................................9

*Landmen Partners, Inc. v. Blackstone Grp. L.P.*,
   No. 08-cv-03601-HB-FM, slip op. (S.D.N.Y. Dec. 18, 2013) ................................................10

*In re Silvercorp Metals Inc. Sec. Litig.,*
    No. 12-cv-09456-JSR, slip op. (S.D.N.Y. Feb. 13, 2015).......................................................11

*Stein v. Eagle Bancorp, Inc., et al.,*
   Case No. 1:19-cv-06873-LGS, slip op. (S.D.N.Y. Feb 10, 2022) ..........................................12

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.,*
   No. 1:23-cv-00431-AS, ECF Nos. 63, 69 (S.D.N.Y. Oct. 29, 2024) ......................................13

# TAB 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:November 28, 2018

IN RE AKARI THERAPEUTICS PLC
SECURITIES LITIGATION

17 Civ. 3577 (KPF)

ORDER AWARDING PLAINTIFFS'
COUNSEL'S ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES,
AND AWARD TO LEAD PLAINTIFFS

KATHERINE POLK FAILLA, District Judge:

WHEREAS, the Court has granted final approval to the Settlement of the above-referenced class action;

WHEREAS, Plaintiffs' Counsel have petitioned the Court for the award of attorneys' fees in compensation for the services provided to Lead Plaintiffs and the Class along with reimbursement of expenses incurred in connection with the prosecution of this action, and an award to Lead Plaintiffs, to be paid out of the Gross Settlement Fund established pursuant to the Settlement;

WHEREAS, capitalized terms used herein having the meanings defined in the Stipulation and Agreement of Settlement, filed with the Court on August 3, 2018 (the "Stipulation") (Dkt. No. 90); and

WHEREAS, the Court has reviewed the fee application and the supporting materials filed therewith, and has heard the presentation made by Plaintiffs' Counsel during the final approval hearing on November 28, 2018, and due consideration having been had thereon.

NOW, THEREFORE, it is hereby ordered:

1.      Plaintiffs' Counsel is awarded one-third of the Gross Settlement Fund, or $900,000, as attorneys' fees in this action, together with a

proportionate share of the interest earned on the fund, at the same rate as earned by the balance of the fund, from the date of the establishment of the fund to the date of payment.

2.     Plaintiffs' Counsel shall be reimbursed out of the Gross Settlement Fund in the amount of $39,339.14 for its expenses and costs. The Court finds that the amount of fees awarded is fair and reasonable in light of the time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class.

3.     Lead Plaintiffs Dima Alghazzy and Shamcy Alghazzy shall be awarded $4,000 in total, or $2,000 each, for reimbursement for their lost time in connection with their prosecution of this action.

4.     Except as otherwise provided herein, the attorneys' fees, reimbursement of expenses, and award to Lead Plaintiffs shall be paid in the manner and procedure provided for in the Stipulation.

SO ORDERED.

Dated:   November 28, 2018
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

2

# TAB 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALI KARIMI, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiffs, | **Case No. 1:22-cv-02854-JSR** |
| v. | |
| DEUTSCHE BANK AKTIENGESELLSCHAFT, JOHN CRYAN, AND CHRISTIAN SEWING, | |
| Defendants. | |

## [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

WHEREAS, an action is pending before this Court entitled *Karimi v. Deutsche Bank Aktiengesellschaft, et al.*, Case No. 1:22-cv-02854-JSR (S.D.N.Y.) ("Litigation");

WHEREAS, (a) Lead Plaintiff Yun Wang ("Wang" or "Lead Plaintiff") and Named Plaintiff Ali Karimi ("Karimi" or "Named Plaintiff," and, with Wang, "Plaintiffs"), individually and on behalf of all Settlement Class Members (defined below); and (b) Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or the "Company"), and John Cryan and Christian Sewing (collectively, the "Individual Defendants," and, together with Deutsche Bank, "Defendants," and together with Plaintiffs, the "Settling Parties") have determined to fully, finally and forever compromise, settle, release, resolve, relinquish, waive and discharge each and every Released Claim on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated September 23, 2022 (ECF No. 101-1 (the "Stipulation")) subject to the approval of this Court (the "Settlement");

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated October 20, 2022 (ECF No. 102 (the "Preliminary Approval Order")), this Court: (a) preliminarily approved the Settlement; (b) certified the Settlement Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on January 31, 2023 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. **Incorporation of Settlement Documents** – This Judgment incorporates by reference the definitions in the Stipulation, and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation annexed as Exhibit 1 hereto, unless otherwise set forth herein.

2. **Jurisdiction** – This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Settlement Class Members.

2

3.     **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the "Settlement Class" consisting of all persons or entities that purchased or otherwise acquired Deutsche Bank common stock between March 14, 2017 and September 18, 2020, both dates inclusive (the "Settlement Class Period"), (i) on any stock exchanges located in the United States, (ii) on any alternative trading systems located in the United States, or (iii) pursuant to other domestic transactions, and who were allegedly damaged thereby. Excluded from the Settlement Class are (i) Defendants; (ii) current or former officers and directors of Deutsche Bank; (iii) members of the immediate family of current or former officers and directors of Deutsche Bank; (iv) all subsidiaries and affiliates of Deutsche Bank and the directors and officers of the respective subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any Defendant has or had a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties. Also excluded from the Settlement Class are the persons and entities listed on Exhibit 2 hereto who or which are excluded from the Settlement Class pursuant to request.

4.     **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Plaintiffs as class representatives for the Settlement Class and appointing Lead Counsel as class counsel for the Settlement Class. Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Litigation and for purposes of entering into and implementing the Settlement, and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5.       **Final Settlement Approval and Dismissal of Claims** – Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the Settlement set forth in the Stipulation and finds that:

a.       the Stipulation and the Settlement described therein are, in all respects, fair, reasonable, and adequate, and in the best interest of the Settlement Class;

b.       there was no collusion in connection with the Stipulation;

c.       the Stipulation was the product of informed, arm's-length negotiations among competent, able counsel; and

d.       the record is sufficiently developed and complete to have enabled Plaintiffs and Defendants to adequately evaluate and consider their positions.

6.       Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof. The Litigation and all claims contained therein are dismissed with prejudice. The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation.

7.       The finality of this Final Judgment and Order shall not be affected, in any manner, by rulings that the Court may make on Lead Counsel's application for an award of attorneys' fees and expenses or an award to Plaintiffs.

8.       **Notice** – In accordance with the Court's Preliminary Approval Order, the Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons and entities entitled to such notice. No Settlement Class Member is relieved from the terms and conditions of the

Settlement, including the releases provided for in the Stipulation, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the hearing thereon. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged. Thus, it is hereby determined that all Settlement Class Members are bound by this Final Judgment and Order except those persons listed on Exhibit 2 to this Final Judgment and Order.

9.     **Plan of Allocation** – The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members, and Lead Counsel and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Stipulation.

10.    **Releases** – Upon the Effective Date, Plaintiffs shall, and each of the Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Stipulation, of law, and of this Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants' Releasees, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release or shares in the Settlement Fund. Claims to enforce the terms of the Stipulation are not released.

11.    Upon the Effective Date, all Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, and anyone claiming through or on behalf of any of them, will be permanently and forever barred and enjoined from, and shall be deemed to permanently covenant to refrain

from, commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any capacity in any court of law or equity, arbitration tribunal, administrative forum, or any other forum, asserting the Released Plaintiffs' Claims against any of the Defendants' Releasees.

12.     Upon the Effective Date, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of the Stipulation, of law, and of this Judgment shall have, compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiffs' Releasees. Claims to enforce the terms of the Stipulation are not released.

13.     The Settling Parties may file the Stipulation and/or this Order and Final Judgment in any proceedings that may be necessary to consummate or enforce the Stipulation, the Settlement, or this Order and Final Judgment.

14.     **No Admissions** – Neither the Stipulation, including the exhibits thereto and the Plan of Allocation, this Judgment, the Supplemental Agreement, the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation or approval of the Settlement (including any arguments proffered in connection therewith):

a.     shall be (i) offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to (a) the truth of any fact alleged by Plaintiffs; (b) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (c) the deficiency of any defense that has been or could have been

asserted in this Action or in any other litigation; or (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees; or (ii) in any way referred to for any other reason against any of the Defendants' Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of the Stipulation and the Settlement referred to therein;

      b.     shall be (i) offered against any of the Plaintiffs' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Releasees (a) that any of their claims are without merit, that any of the Defendants had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of the Stipulation or the Settlement referred to therein; or

      c.     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration given in connection with the Settlement represents the amount which could be or would have been recovered after trial; provided, however, that the Settling Parties and the Releasees and their respective counsel may refer to the Stipulation and this Judgment to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

15.     **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (i) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (ii) disposition of the Settlement Fund; (iii) hearing and determining applications for attorneys' fees, expenses, and interest in the Litigation; and (iv) all parties herein for the purpose of construing, enforcing, and administering the Stipulation.

16.     **Rule 11 Findings** – The Court finds that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

17.     **Attorney's Fees** – Lead Counsel is awarded attorneys' fees in the amount of $ *7,875,000.⁰⁰*, and expenses in the amount of $ __689,613.60__, plus any applicable interest. 50% of the awarded attorneys' fees and 100% of all expenses shall be payable upon entry of this Order, with the remaining 50% of attorneys' fees to be payable after substantially all of the recognized Claims have been paid from the Settlement Fund upon application to the Court.

18.     **Plaintiff Award** – Each of the Plaintiffs is awarded $ __20,000__, as a compensatory award for reasonable costs and expenses directly relating to the representation of the Settlement Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from the Settlement Fund upon the Effective Date of the Settlement.

19.     **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Plaintiffs, the other

Settlement Class Members and Defendants, and the Settling Parties shall revert to their respective pre-mediation positions in the Litigation, as provided in the Stipulation.

20.    **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

21.    **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.


IT IS SO ORDERED.


SO ORDERED this ___4th___ day of ___February___, 2023

_____
THE HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

# TAB 3

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED JUL 2 8 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                         :    Civil Action No.:  07-CV-00312-GBD
                                         :
IN RE CELESTICA INC. SEC. LITIG.         :    (ECF CASE)
                                         :
                                         :    Hon. George B. Daniels
                                         :
———————————————————— x

## ORDER AWARDING ATTORNEYS' FEES AND EXPENSES

THIS MATTER having come before the Court on July 28, 2015 for a hearing to

determine, among other things, whether and in what amount to award Class Counsel in the

above-captioned consolidated securities class action (the "Action") attorneys' fees and litigation

expenses and Class Representative New Orleans Employees' Retirement System ("New

Orleans") expenses relating to its representation of the Class.  All capitalized terms used herein

have the meanings as set forth and defined in the Stipulation and Agreement of Settlement, dated

as of April 17, 2015 (the "Stipulation").  The Court having considered all matters submitted to it

at the hearing and otherwise; and it appearing that a notice of the hearing, substantially in the

form approved by the Court (the "Notice"), was mailed to all reasonably identified Class

Members; and that a summary notice of the hearing (the "Summary Notice"), substantially in the

form approved by the Court, was published in *The Wall Street Journal* and transmitted over *PR

Newswire*; and the Court having considered and determined the fairness and reasonableness of

the award of attorneys' fees and expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.      The Court has jurisdiction over the subject matter of this Action and over all

parties to the Action, including all Class Members and the Claims Administrator.

1

2.      Notice of Class Counsel's motion for attorneys' fees and payment of expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for attorneys' fees and expenses met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

3.      Class Counsel is hereby awarded attorneys' fees in the amount of $9,000,000 plus interest at the same rate earned by the Settlement Fund (or 30% of the Settlement Fund, which includes interest earned thereon) and payment of litigation expenses in the amount of $1,392,450.33, plus interest at the same rate earned by the Settlement Fund, which sums the Court finds to be fair and reasonable.

4.      In accordance with 15 U.S.C. §78u-4(a)(4), for its representation of the Class, the Court hereby awards New Orleans reimbursement of its reasonable lost wages and expenses directly related to its representation of the Class in the amount of $3,645.18.

5.      The award of attorneys' fees and expenses may be paid to Class Counsel from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

6.      In making the award to Class Counsel of attorneys' fees and litigation expenses to be paid from the Settlement Fund, the Court has considered and found that:

        (a)     The Settlement has created a common fund of $30 million in cash and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the

2

Settlement created by the efforts of plaintiffs' counsel;

(b)     The requested attorneys' fees and payment of litigation expenses have been reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors that have been directly involved in the prosecution and resolution of the Action and which have a substantial interest in ensuring that any fees paid to Class Counsel are duly earned and not excessive;

(c)     Notice was disseminated to putative Class Members stating that Class Counsel would be moving for attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus accrued interest, and payment of litigation expenses, and the expenses of Class Representatives for reimbursement of their reasonable lost wages and costs directly related to their representation of the Class, in an amount not to exceed $2 million, plus accrued interest;

(d)     There were no objections to the requested litigation expenses or to the expense request by New Orleans. The Court has received one objection to the fee request, which was submitted by Jeff M. Brown. The Court finds and concludes that Mr. Brown has not established that he is a Class Member with standing to bring the objection and it is overruled on that basis. The Court has also considered the issues raised in the objection and finds that, even if Mr. Brown were to have standing to object, the objection is without merit. The objection is therefore overruled in its entirety;

(e)     Plaintiffs' counsel have expended substantial time and effort pursuing the Action on behalf of the Class;

(f)     The Action involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(g)     Plaintiffs' counsel pursued the Action on a contingent basis, having

received no compensation during the Action, and any fee award has been contingent on the result achieved;

(h)     Plaintiffs' counsel conducted the Action and achieved the Settlement with skillful and diligent advocacy;

(i)     Public policy concerns favor the award of reasonable attorneys' fees in securities class action litigation;

(j)     The amount of attorneys' fees awarded are fair and reasonable and consistent with awards in similar cases; and

(k)     Plaintiffs' counsel have devoted more than 28,130.35 hours, with a lodestar value of $14,324,709.25 to achieve the Settlement.

7.     Any appeal or any challenge affecting this Court's approval of any attorneys' fee and expense application shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

8.     Exclusive jurisdiction is hereby retained over the subject matter of this Action and over all parties to the Action, including the administration and distribution of the Net Settlement Fund to Class Members.

9.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

IT IS SO ORDERED.

JUL 28 2015

Dated: _____, 2015

_____
Honorable George B. Daniels
UNITED STATES DISTRICT JUDGE

4

# TAB 4

KANLBRFC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CITY OF BIRMINGHAM RETIREMENT
and RELIEF SYSTEM, *et al*,

               Plaintiffs,

       v.                  18 Civ. 2213 (PKC)

BRF S.A., *et al*,

                          **Settlement Teleconference**

               Defendants.

------------------------------x

                          New York, N.Y.
                          October 23, 2020
                          2:00 p.m.

Before:

                HON. P. KEVIN CASTEL,

                     District Judge

                   APPEARANCES

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiffs
BY:  ELLEN ANNE GUSIKOFF STEWART
     DAVID AVI ROSENFELD

SKADDEN ARPS SLATE MESKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     Attorneys for Defendant BRF
BY:  SCOTT MUSOFF
     THANIA CHARMANI

HOGAN LOVELLS US LLP
     Attorney for Defendant Rubens
BY:  DENNIS H. TRACEY, III

KANLBRFC

APPEARANCES CONT'D

DEBEVOISE & PLIMPTON, LLP
     Attorneys for Defendant Diniz
BY: ANDREW LEVINE
     ADA FERNANDEZ JOHNSON


CLEARY GOTTLIEB
     Attorneys for Defendant Faria
BY:  ELIZABETH VICENS
     SU LEE

THE COURT:  Good afternoon.

I am advised that everyone is on the line and ready, so I propose to call the case.

This is In Re:BRF BRF securities Class Action, 18 Civ. 2213.

Is the plaintiff ready?

MS. GUSIKOFF STEWART:  We are, your Honor.

Good afternoon.  This is Ellen Gusikoff Stewart of Robbins Geller.  And my partner, David Rosenfeld, is also on the line.

THE COURT:  All right.  Good afternoon.

MR. ROSENFELD:  Good afternoon, your Honor.

THE COURT:  Is anyone else appearing on the behalf of the plaintiff?

MS. GUSIKOFF STEWART:  No, your Honor.

THE COURT:  All right.  And on behalf of the defendants, first starting with BRF S.A.?

MR. MUSOFF:  Good afternoon, Judge Castell.

It's Scott Musoff, from Skadden Arps, along with my colleague, Thania Charmani.

THE COURT:  All right.  Good afternoon Mr. Musoff.

And good afternoon -- your colleague's name again is?

MR. MUSOFF:  Charmani, C-h-a-r-m-a-n-i.

And we apologize that she didn't have a notice of appearance entered already.

KANLBRFC

THE COURT:  That's all right.

Ms. Charmani, welcome.

MS. CHARMANI:  Thank you, your Honor.  Good afternoon.

THE COURT:  And for the individual defendants?

MR. TRACEY:  This is Dennis Tracey from Hogan Lovells, for defendant, Helio Rubens.

THE COURT:  All right.  Mr. Tracey.

MR. LEVINE:  Good afternoon, your Honor.

This is Andrew Levine from Debevoise & Plimpton, here with my colleague, Ada Fernandez Johnson, on behalf of Abilio Diniz.

THE COURT:  Okay.

MS. VICENS:  Good afternoon, your Honor.

Lisa Vicens, Cleary Gottlieb, along with my colleague, Su Lee, here on behalf of Pedro Faria.

THE COURT:  Good afternoon to all.

Anyone else appearing in this matter?

All right.  First of all, I want to go through the role of defendants again with regard to the question of whether they have any opposition -- in whole, in part -- to any aspect of lead plaintiffs' motion for final approval of the class action settlement.

I'll begin with Mr. Musoff.

MR. MUSOFF:  We do not, your Honor.  Thank you.

THE COURT:  All right.

And, Ms. Vicens?

MS. VICENS:  We do not, your Honor.

THE COURT:  Mr. Tracey?

MR. TRABISH:  We have no objection, your Honor.

THE COURT:  All right.  And if you'll forgive me, the balance of those representing defendants?

MR. LEVINE:  Sure.  Your Honor, this is Andrew Levine again, on behalf of Mr. Diniz.  We have no objection either.

THE COURT:  All right.  Anyone else?

Okay.  Now let me turn to plaintiffs' counsel.  And please identify yourself by name before you speak.  I would like to hear two subjects:  Number one, what is the plaintiffs' position with regard to the filing of Frederick Hay, filed on or about October 15, 2020, in which he explains that he received late notice.  He apparently doesn't want to object, doesn't want to opt out, but wants his claim to be considered.

What is the position of the plaintiff on that?

MS. STEWART:  Your Honor, so we got Mr. Hays's letter on the 19th and yesterday late in the day -- and I apologize -- we filed a letter response to Mr. Hay, and it is document 177.

But in a nutshell, here's what the letter says:  Once we got Mr. Hayes's letter, I immediately got in touch with Gilardi (phonetic), the claims administrator, to find out, you know, what happened.  Mr. Hay's notice -- well, let me start at -- Mr. Hay's name and address were not on the transfer records

that BRF provided to the claims administrator. And as your Honor knows having done a lot of these cases, very few people actually hold their stock certificates, and so very few individuals or entities appear on those transfer records.

THE COURT: To make sure that we provide adequate notice, the claims administrator, including Gilardi, Have a practice. They have compiled lists of banks and brokerages and other institutions who hold securities in street name or on behalf of the beneficial holders. They're called nominees. And Gilardi sends out -- and all the claims administrators send out the claims package to all of these brokers.

THE COURT: Ms. Gusikoff Stewart, I don't mean to cut you off, but could you cut to the bottom line here? You're going to oppose his application or you're going to --

MS. GUSIKOFF STEWART: No. I'm sorry. I was just trying to give you some background. But here's what happened:

Charles Schwab is Mr. Hay's broker. Charles Schwab got the notice that was mailed on June 5th and didn't give Gilardi any names of its customers until September 11th. And Gilardi sent Schwab reminders saying, you know, you haven't responded. And they sent those updates, or reminders, in July and August. Once Gilardi got Schwab's file of 3900 names and addresses, they immediately sent out notice to those people. Mr. Hay's notice went to the address that was given to Gilardi to -- he's a retired Debevoise partner, which is irrelevant,

but his mail from Schwab goes to Debevoise's New York office --

THE COURT:  Ms. Gusikoff Stewart, I'm sorry to interrupt for a second time.  I think this would go better if you said:  Your Honor, we're going to oppose his application and here is why; or, your Honor, we're going to consent to his application, here is why.  I'm still being kept in suspense.

MS. GUSIKOFF STEWART:  I'm sorry.

We have communicated with him, and he's happy.  His claim has been submitted and it will be accepted by the claims administrator, as it was timely submitted.

And the reason -- and I apologize.  I don't mean to prattle on, I just want the Court to understand that we've done -- lead counsel and the claims administrator fulfilled our obligations under the preliminary approval order, and this delay falls on Schwab and not anybody who's on this call today.  And that's all I'm trying to establish to the Court.

But the bottom line is, Mr. Hay is satisfied.  He heard from Mr. Rosenfeld and me.  He and I have exchanged e-mails.  I submitted a letter yesterday which explains the situation.  I attached a copy of Mr. Hay's e-mail to me.  And we consider the matter done.  He's not objecting.  He's not seeking to opt out.  He just wanted to submit his claim form, and he has done so.

THE COURT:  All right.  Excellent.

And do you anticipate or have you heard word of any

KANLBRFC

other similarly situated Schwab customers as to whom this may arise?

MS. GUSIKOFF STEWART:  We have not.  But as you'll see when you look at my letter, we have informed Gilardi.  And any Schwab customer who does contact us or Gilardi in the next few weeks, we will inform them that we will accept their claim, subject, of course, to being valid on its merits.  But we will not consider it to have been submitted in an untimely manner.

THE COURT:  All right.  Excellent.  Thank you.

Now, can you generally describe the notice methodology and process in this case to the extent you haven't already covered it by describing what you do with -- and street name.

MS. GUSIKOFF STEWART:  Sure.  And I will be brief, your Honor.

Following the preliminary approval order, Gilardi mailed a total of 66,500 copies of the claims package to individuals, institutions, brokers, nominees.  They responded to requests for additional notices.  And when brokers and nominees sent names, Gilardi sent those immediately out to those class members.

We also submitted -- in the declaration of Ross Murray, the summary notice was published in the *Wall Street Journal* and over the business wire.  We submitted -- we set up a settlement website and a toll free number for class members to have their questions answered or to submit their claims

online.  And as of this date, over 26,000 claim forms have been submitted.  It's an over 40 percent claims rate, which is a really, really good result in these cases.

THE COURT:  Very good.  Thank you.

All right.  Is there anything further that the plaintiffs want to add to their submission or anything they feel they want to highlight?

MS. GUSIKOFF STEWART:  No.  I just do want to just confirm for the Court that we received no objections or any requests for exclusion from the class.

THE COURT:  Thank you.  Excellent.

All right.  And there are no objectors on this call that I am aware of?  Speak now or forever hold your peace.

I hear none.

So this is the Court's ruling on the motion of the City of Birmingham Retirement and Relief System, the lead plaintiff, for final approval of a class action settlement in the amount of $40 million:

Plaintiff's claims are brought under the Exchange Act on behalf of persons or entities who purchased ADRs of defendant BRF S.A. between April 24, 2013, and March 5, 2018.  Plaintiff alleges that BRF, a meat-processing company based in Brazil, engaged in a scheme to conceal unsanitary practices at its meat-packing plants, including the falsification of test results, use of improper chemicals and additives, and the

bribery of Brazilian regulators and politicians. Defendants, including the corporation itself and certain persons in a control position, allegedly failed to disclose the actions of BRF while making false public statements to investors, it is alleged, that emphasized BRF growth and product quality. The price of BRF's ADRs later declined after investigation by Brazilian authorities revealed the company's activities.

In addition to approval of the $40 million class action settlement, lead counsel moves for an award of $11 million which is 27.5 of the settlement fund and reimbursement of $94,821.84 in expenses.

City of Birmingham, the lead plaintiff, applies for expenses of $2,889.15. Claims administrator reports that as of October, it has received no request for exclusion. And there are no objections other than -- if you want to call it an objection -- Mr. Hay, which has been resolved.

To be certified, the settlement must satisfy and the settlement class must satisfy the requirements of Rule 23(a) which consists of numerosity, commonality, and typicality, and adequacy of representation. The Court finds that those requirements are satisfied. On numerosity, the claims administrator has stated that it sent out 66,509 notice and proof of claims forms to potential class members. And as the Court has heard today, there's about a 40 percent return rate on claims filings. And the Court finds that the class is so

KANLBRFC

numerous that joinder of all members is impracticable.

The commonality requirement is satisfied because all class members purchased ADRs at allegedly inflated prices and were allegedly injured when the value of those ADRs dropped after the market learned the truth about BRF.  Common questions include whether defendants violated the securities laws and any resulting injury to plaintiffs.

The claim of Birmingham is typical of the claims that would be raised by other members of the class.  Its alleged injury as a result of material misstatements and omissions about BRF's complying with health and sanitary laws and injury when the market learned the truth about BRF's practices are these typical claims.  Also, lead plaintiff would fairly and adequately protect the interests of the class.  J. Turner, the assistant city attorney of Birmingham has filed a declaration stating that the city's attorneys have actively participated in the prosecution of the case, including the drafting of pleadings and brief and opposition of motion to dismiss, and participation in the mediation.  So there is adequacy met here.

In addition to satisfying 23(a), the class action must satisfy one of the requirements of Rule 23(b).  Here, it's that it satisfies Rule 23(b)(3) because resolution of plaintiffs' claims can be satisfied with generalized proof, and these generalized issues are more substantial than any individualized proof.

The Court concludes that common questions of fact and law predominate over individual questions in that a class action is superior to other methods of adjudication. The settlement class is therefore certified.

Rule 23(e) provides that, in the case of a certified class and settlement, it can only be settled or compromised with the Court's approval. And 23(e)(2) sets forth a series of factors. Now, many of these factors were subsumed within the Second Circuit's *Grinnell* test. And I will talk about the Rule 23 factors and then any supplemental factors in the *Grinnell* test.

So I must consider in terms of the fairness, reasonableness and adequacy of the settlement, whether the class representatives and class counsel have adequately represented the class. And here I find they have. The work of lead counsel has included drafting five iterations of a complaint through the fourth amended complaint. It included expensive briefing and opposition of the third and fourth amended complaints and factual investigation of the relevant facts in Brazil, including Brazilian regulatory and criminal proceedings. At times, translations from Portuguese to English complicated the litigation, including determining the correct translation of the word "diretoria," the correction which caused Birmingham to file a third amended complaint.

The facts and issues are complex. Lead counsel has

KANLBRFC

been sophisticated and experienced.  And defense counsel are also sophisticated and experienced lawyers, which makes the challenge even greater.  And so lead counsel and lead plaintiff have also participated in settlement negotiations.  I find that the lead counsel and lead plaintiff have adequately represented the class.

I've also considered whether the settlement was negotiated at arm's length.  The parties retained Judge Layn Phillips as a private mediator.  They met March 4, 2019, exchanged statements, did not resolve their differences.  They met on March 20 during the pendency of the motion to dismiss; that was a Zoom meeting.  They exchanged additional materials and ideas, but no agreement was reached.  After the second session, the parties agreed on a March 27th, 2020, agreement in principal to settle for 40 million.  The Court concludes that the settlement was negotiated at arm's length with the assistance of a mediator, which is a factor weighing in favor of approval of the settlement.

The Court's considered whether the relief is adequate and there I've considered the costs, risks and delay of trial and appeal.  Assuming Birmingham survived the motion to dismiss, discovery would have been costly and protracted with complexities made more pronounced by COVID-19 and the fact that the witnesses and evidence are located in Brazil.  Plaintiff's claims also turned on the investigation of Brazilian

authorities, which are ongoing.  Discovery in this case would likely have been uniquely expensive and prolonged.  And at the conclusion of discovery, plaintiff would have faced the additional hurdles of a likely summary judgment motion, and assuming it survived proving the claims -- or surviving claims to the satisfaction of a jury, this all too would have been expensive and time consuming with no guarantee of recovery to plaintiffs.  This certainly weighs in favor of the settlement.

In terms of the effectiveness of the proposed method of distribution, the proceeds will be distributed pro rata to class members who submit eligible claims forms to Gilardi & Company, the claim administrator.  The damages paid account for the inflation of the ADR price relative to alleged collective disclosures in 2017 and 2018.  A table contained in the notice to prospective class members reflects average price inflation in the value of the ADRs in connection with purported corrected disclosures.  Class members are eligible for distribution only if they suffered a net overall loss in the class period.

Distributions will be made after all claims have been processed.  If there's a remaining balance six months after the date of distribution, then the claims administrator is to reallocate the balance among the claimants.  The Court find's the plaintiff allocation is designed to be fair to class members, consistent with the methods for allocating damages in many security class actions.

The terms of the proposed fees, including the timing of payment, I've noted what the amount of fees are. Birmingham supports the fee application, and I'll discuss the fee application later in my ruling.

With regard to any agreement required to be identified under Rule 23(e)(3), lead counsel says that the parties have entered into a standard supplemental agreement, providing that defendants may have the option to opt out of the settlement in the event that class members with an aggregate amount of valid claims request to be excluded. As noted, the claims administrator has received no request for exclusion, and plaintiffs states the parties have entered into no additional agreements.

I've considered whether the proposal treats class members equitably relative to each other and conclude that it does because it's a pro rata form of allocation. And in terms of the remaining *Grinnell* factors, the reaction to the class has been favorable. The absence of objections to the terms of the settlement and the absence of requests for exclusion weigh strongly in favor of the proposed settlement. The size of the settlement in terms of the range of possible recovery, it represents somewhere between 14.2 percent and 103 percent of plaintiff's range of potential recovery. And the damage estimates reflect the uncertainty about the class's potential recovery. But the 40 million-dollar figure represents a very

KANLBRFC

favorable result for the class for the reasons that I've already discussed.

Also, there's the risk of maintaining the class action through trial, and I've really reviewed this already.  The ability of the defendants to withstand the greater judgment, BRF could withstand a greater judgment, and that's just a factor but one of little weight reviewing the settlement.  Also with regard to the notice to the class, it was the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

And I've received a report on Gilardi's claims packages.  I mentioned how many they were malled out to.  They also published a summary notice in the *Wall Street Journal* and maintained a toll free number to field inquiries.  They have a website which includes copies of the class notice stipulation of settlement, proof of claim, etc.  The Court concludes that the notice to the class satisfies 23(c)(2)(B).  Having reviewed the factors set forth in 23(e)(2) and the additional *Grinnell* factors, the Court concludes that the settlement is fair, reasonable and adequate, and it is approved.

As mentioned, lead counsel seeks an attorney's fee award of 27 and a half percent of the 40 million settlement, for a total amount of $11 million.  Lead counsel also seeks 94,821.84 in costs and expenses and also interests on both

amounts.  Separately, Birmingham seeks 2,889.15 as compensation for it's 51 hours of attorney's time spent on the prosecution of the action.

So in reviewing the fee application, the Court is to act as a fiduciary who must serve as a guardian of the rights of absent class members.  The award must reflect the actual effort made by the attorney to benefit the class.  I have the benefit of the guidance in the Second Circuit's opinion in *Goldberger*, including the factors of time and labor expended, magnitude and complexities, risks, quality of representation, and the requested fee in relation to the settlement, and any public policy considerations.

I've considered the time and labor expended by counsel.  The lodestar is about $1.8 million, representing about 3,260 hours of attorney and professional time.  And Mr. Rosenfeld represents that the hour figure represents a downward adjustment in the exercise of fulfilling judgment to reflect reasonableness and necessity.  And I've reviewed the work that's been done and I must say, in this case, I think it's very important from a public policy standpoint, from the interests of class members, the public, and the administration of justice, that a plaintiff's counsel not be penalized because their lodestar is perhaps lower than other people's lodestars because they did not take the case through the motion practice, through the discovery, etc.  It would really not be a very

KANLBRFC

difficult task for a plaintiff's counsel to just prolong the process to run up a lodestar, which would serve no useful purpose other than to justify fees and would impose burdens on other parties.  So I do not believe the plaintiffs should, in any way, be penalized for the multiple of the lodestar on the facts of this particular case.  So in terms of the magnitude, complexities and risks of the litigation, I've already taken that into account.

There is a contingency risk here.  It could be that the plaintiffs could have walked away with nothing.  In terms of the quality of the representation, it was excellent.  The experience of counsel is also a factor.  Robbins Geller certainly has the extensive experience and they were litigating against national powerhouses, Skadden, Hogan Lovells, Debevoise, and Cleary Gottlieb.

In terms of the relationship of the fee of the settlement, it's 25 percent of the total recovery.  And they cite to my attention fee awards above 25 percent.  There is no magic number and there is no cap or ceiling as such.  And Birmingham has supported the fee application.  The Court concludes that a very minor adjustment in the fee application is appropriate, reducing it from 27 and a half percent to 25 percent, for a total attorney's fee recovery of 10 million, which will appropriately compensate plaintiffs for their work in prosecuting this action and in enforcing the public policies

KANLBRFC

to the federal securities laws.  Again, no class member has objected.

So that's what I'm going to do.  The lodestar multiplier is 5.57 times the lodestar.  That's a 10 million-dollar award.  And I'm going to also approve the expenses of $94,821.84, of which 55,000 go to the fees of the mediator -- in my view, very well deserved; and approximately 16,000 to investigators and consultants; about 13,000 to Brazilian counsel; and 10,000 towards legal research, travel, filing fees and other routine expenses.  I also find that it is appropriate to award Birmingham 2,889.15 based on 51 hours of work at the modest rate of $56.65, and that's awarded.

The plaintiff may submit a judgment, unless you have a final judgment with fill-ins.

Have you done that?

MS. GUSIKOFF STEWART:  Your Honor, this is Ellen Gusikoff Stewart.

We have submitted three separate orders to the Court. One is the final judgment that has been negotiated by the parties, an order approving the plan of allocation, and an order approving the fees and expenses.

THE COURT:  All right.  So there's no objection to those, and I will see that the three of those are entered.

Is there anything further from the plaintiffs?

MS. GUSIKOFF STEWART:  No.  Thank you for your time

KANLBRFC

during the course of the litigation.  And we hope you're staying healthy and safe.

THE COURT:  Thank you.

And I am not only healthy and safe, but I've now completed two jury trials, one a civil trial that began on September 29th, and one two-defendant criminal trial that began on October 14th.  So let the word go out:  Jury trials are returning to the Southern District of New York.

Anything further from the defendant?

MR. MUSOFF:  Your Honor, nothing from defendants.

And we will spread the word, even for those trials that have two terabytes of data trials.

THE COURT:  You know, there were many a day where I sort of wished that you had demanded a jury in that case.  I spent quite a summer several years ago with my law clerk, Jeff Eldridge, occupied with findings of fact.  And I'm very pleased that that case is finally over.  My best to you and the members of your team.

MR. MUSOFF:  Likewise.

THE COURT:  Anything from any of the other defendants?

MR. TRACEY:  This is Dennis Tracey.  No, your Honor.

MS. VICENS:  No, your Honor.  Thank you.

MR. LEVINE:  Nothing here either, your Honor.  Thanks.  Have a great weekend.

THE COURT:  All right.  Well, thank you to you all.

KANLBRFC

Stay safe.

And thank you especially to our court reporter, Lisa.

******

# TAB 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CITY OF ST. CLAIR SHORES POLICE AND : Civil Action No. 1:21-cv-03385-NRB
FIRE RETIREMENT SYSTEM, Individually :
and on Behalf of All Others Similarly Situated, : CLASS ACTION
                          :
                    Plaintiff, : MEMORANDUM OF LAW IN SUPPORT
                          : OF LEAD PLAINTIFF'S MOTION FOR
     vs. : FINAL APPROVAL OF SETTLEMENT
                           : AND APPROVAL OF PLAN OF
CREDIT SUISSE GROUP AG, THOMAS : ALLOCATION AND FOR AN AWARD OF
GOTTSTEIN, DAVID R. MATHERS, LARA : ATTORNEYS' FEES AND EXPENSES AND
J. WARNER and BRIAN CHIN, : AN AWARD TO LEAD PLAINTIFF
                           : PURSUANT TO 15 U.S.C. §78u-4(a)(4)
                    Defendants. :
                           :

———————————————————— x

4889-0011-4516.v2

Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."). Accordingly, public policy favors granting the fee and expense application here.

### 7. Lead Plaintiff's Approval and the Class's Reaction Support the Requested Fee

Lead Plaintiff Sheet Metal Workers Pension Plan of Northern California was actively involved in the prosecution and settlement of this Litigation and has considered and approved the requested fee and expense award. *See* O'Donoghue Decl., ¶¶8, 10. The reaction of the Class also supports the requested fee. As of March 24, 2023, the Claims Administrator has sent over 53,000 copies of the Notice to potential Class Members and their nominees (Murray Decl., ¶11), informing them that, among other things, Lead Counsel intended to apply for an award of attorneys' fees in an amount not to exceed 27.5% of the Settlement Amount and expenses in an amount not to exceed $50,000 (plus interest thereon for both). *Id.*, Ex. A (Notice at 3). While the time to object does not expire until April 20, 2023, to date, not a single objection has been received.

### E. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'");

- 28 -

4889-0011-4516.v2

*Comverse*, 2010 WL 2653354, at *5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Accordingly, in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six," *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012), and even higher, particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012).

Here, if the Court decides to consider it, a lodestar cross-check would support the requested fee. Lead Counsel devoted 2,123.20 hours of attorney and staff time in prosecuting this Litigation, and its lodestar – derived by multiplying the hours each person worked by their current hourly rates – is $1,605,128.00.[12] *See* Robbins Geller Decl., ¶4. The requested fee of 27.5% of the Settlement Amount represents a multiplier of 5.6 of lodestar.

The multiplier here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere and is fully justified given the effort required, the risks faced and overcome, and the results achieved. *See, e.g.*, *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving 6.16 multiplier); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving a lodestar multiple of "just over 6"); *Davis*, 827 F. Supp. 2d at 185 (multiplier of 5.3 was "not atypical" in similar

---

[12]   The Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate lodestar as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Jenkins*, 491 U.S. at 284.

- 29 -

cases); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (lodestar multiplier of 5 found "not unreasonable"); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding fee that amounts to 5.65 multiplier, noting that counsel "should be rewarded for having reached a substantial and beneficial result prior to the Court ruling on a motion to dismiss"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, ECF 107 at 5 (¶9(f)) (S.D.N.Y. July 17, 2007) (awarding "a reasonable multiplier of 10.26"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (4.3 multiplier appropriate in light of contingency risk and quality of result); *Maley*, 186 F. Supp. 2d at 369 (4.65 multiplier was "well within the range awarded by courts in this Circuit" and elsewhere); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *8 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of six).

The multiplier is amply supported by the outstanding nature of the recovery, among other factors. This contingent action was litigated for nearly two years and the recovery is roughly 37% of estimated recoverable class-wide damages. As the court noted in *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990): "There should be no arbitrary ceiling on multipliers." This is especially true when a lodestar/multiplier analysis is used merely as a cross-check on reasonableness. To find otherwise, undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 196 (E.D. Pa. May 9, 2000) ("The court will not reduce the

- 30 -

4889-0011-4516.v2

requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent.").

Thus, the multiplier and 27.5% fee are within the acceptable range awarded in cases of this type.

## VI.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Lead Counsel's application includes a request for charges and expenses reasonably incurred in pursuing the claims on behalf of the Class. Lead Counsel's expenses and certain in-house charges are properly recoverable. *See, e.g., In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "'for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation"'"); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

As detailed in counsel's fee and expense declaration, Lead Counsel requests $19,656.48 in expenses for prosecuting this Litigation for the benefit of the Class. Robbins Geller Decl., ¶5. These expenses are of a type necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses and other charges include consultant fees, filing fees, online factual and legal research, among others.

The Notice informed Class Members that Lead Counsel would apply for expenses in an amount not to exceed $50,000 to be paid from the Settlement Fund. Murray Decl., Ex. A (Notice at 3). The expenses requested, $19,656.48, are well below that amount. To date, no Class Member has objected to Lead Counsel's request for expenses.

- 31 -

4889-0011-4516.v2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

CITY OF ST. CLAIR SHORES POLICE AND :    Civil Action No. 1:21-cv-03385-NRB
FIRE RETIREMENT SYSTEM, Individually :
and on Behalf of All Others Similarly Situated, :    CLASS ACTION
                                  :
                Plaintiff,      :    [PROPOSED] ORDER AWARDING
                                    :    ATTORNEYS' FEES AND EXPENSES AND
    vs.                               :    AN AWARD TO LEAD PLAINTIFF
                                    :    PURSUANT TO 15 U.S.C. §78u-4(a)(4)
CREDIT SUISSE GROUP AG, THOMAS      :
GOTTSTEIN, DAVID R. MATHERS, LARA :
J. WARNER and BRIAN CHIN,            :
                                    :
               Defendants.     :
                                    :

——————————————————————— x

This matter having come before the Court on May 11, 2023, on the motion of Lead Counsel for an award of attorneys' fees and expenses and an award to Lead Plaintiff (the "Fee Motion"), the Court, having considered all papers filed and proceedings conducted herein, having found the Settlement of this Litigation to be fair, reasonable and adequate, and otherwise being fully informed of the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Order incorporates by reference the definitions in the Stipulation of Settlement dated as of September 12, 2022 (the "Stipulation"), and all capitalized terms used, but not defined herein, shall have the same meanings as set forth in the Stipulation.

2. This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all members of the Class who have not timely and validly requested exclusion.

3. Notice of Lead Counsel's Fee Motion was given to all Class Members who could be located with reasonable effort. The form and method of notifying the Class of the Fee Motion met the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4(a)(7)), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. The Court hereby awards Lead Counsel attorneys' fees of 27.5% of the Settlement Amount, plus expenses in the amount of $19,656.48, together with the interest earned on both amounts for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is fair, reasonable, and appropriate under the "percentage-of-recovery" method.

- 1 -

5. The awarded attorneys' fees and expenses and interest earned thereon, shall be paid to Lead Counsel immediately upon execution of the Final Judgment and this Order and subject to the terms, conditions, and obligations of the Stipulation, and in particular, ¶7.2 thereof, which terms, conditions, and obligations are incorporated herein.

6. In making this award of fees and expenses to Lead Counsel, the Court has considered and found that:

(a) the Settlement has created a fund of $32,500,000 in cash that is already on deposit, and numerous Class Members who submit, or have submitted, valid Proof of Claim and Release forms will benefit from the Settlement created by Lead Counsel;

(b) over 53,000 copies of the Notice were disseminated to potential Class Members indicating that Lead Counsel would move for attorneys' fees in an amount not to exceed 27.5% of the Settlement Amount and for expenses in an amount not to exceed $50,000, plus interest on both amounts, and no objections to the fees or expenses were filed by Class Members;

(c) Lead Counsel expended substantial time and effort pursuing the Litigation on behalf of the Class;

(d) Lead Counsel pursued the Litigation entirely on a contingent basis;

(e) the Litigation involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(f) had Lead Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from the Defendants;

(g) public policy concerns favor the award of reasonable attorneys' fees and expenses in securities class action litigation; and

(h) the attorneys' fees and expenses awarded are fair and reasonable.

- 2 -

7.      Pursuant to 15 U.S.C. §78u-4(a)(4), the Court awards $1,290 to Lead Plaintiff Sheet Metal Workers Pension Plan of Northern California for the time it spent directly related to its representation of the Class.

8.      Any appeal or any challenge affecting this Court's approval regarding the Fee Motion shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9.      In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided in the Stipulation and shall be vacated in accordance with the Stipulation.

IT IS SO ORDERED.

DATED: _May 11, 2023_

THE HONORABLE NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 27, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Theodore J. Pintar
THEODORE J. PINTAR

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

# TAB 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CNOVA N.V. SECURITIES
LITIGATION

MASTER FILE
16 CV 444-LTS

This Document Relates To:  All Actions

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-20-2018

## [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter came before the Court for hearing pursuant to this Court's Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, and Providing for Notice dated October 11, 2017 ("Preliminary Approval Order"), and the Court having received declarations attesting to the mailing of the Notice and the publication of the Publication Notice in accordance with the Preliminary Approval Order, on the application of Lead Plaintiffs and Defendants for approval of the settlement ("Settlement") set forth in the Stipulation and Agreement of Settlement dated as of September 20, 2017 ("Stipulation"), the proposed Plan of Allocation of the Settlement proceeds, Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses, and interim reimbursement of notice and administration expenses and, following a hearing on March 15, 2018 before this Court to consider the applications, all supporting papers and arguments of Lead Plaintiffs and Defendants, and other proceedings held herein, as well as for the reasons stated on the record by the Court at the hearing before the Court on March 15, 2018, and good cause appearing therefore,

**IT IS HEREBY ADJUDGED, DECREED AND ORDERED:**

1.      This Final Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein defined in the Stipulation shall have the same meanings as set forth in

the Stipulation unless specifically set forth differently herein. The terms of the Stipulation are fully incorporated in this Final Judgment as if set forth fully herein.

2. The Court has jurisdiction over the subject matter of this Action and all parties to the Action, including all Class Members.

3. This Court finds that due and adequate notice was given of the Settlement, the Plan of Allocation of the Settlement proceeds, and Lead Counsel's application for an award of attorneys' fees and/or reimbursement of expenses, as directed by this Court's Preliminary Approval Order, and that the forms and methods for providing such notice to Class Members:

(a) constituted the best notice practicable under the circumstances, including individual notice to all Class Members who could be identified through reasonable effort;

(b) was reasonably calculated, under the circumstances, to apprise Class Members of: (i) the proposed Settlement of this class action and the right to exclude themselves from the Class; (ii) their right to object to any aspect of the proposed Settlement, including the terms of the Stipulation and the Plan of Allocation; (iii) their right to appear at the Settlement Hearing, either on their own or through counsel hired at their own expense, if they are not excluded from the Class; and (iv) the binding effect of the proceedings, rulings, orders and judgments in this Action, whether favorable or unfavorable, on all Persons and entities who are not excluded from the Class;

(c) was reasonable and constituted due, adequate, and sufficient notice to all Persons and entities entitled to be provided with notice; and

(d) fully satisfied all the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, due process, and all other applicable laws.

4.        Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, the Court hereby grants final certification of the Class consisting of all Persons that purchased Cnova N.V. ordinary shares from November 19, 2014 through February 23, 2016, inclusive (the "Class Period"), issued pursuant and/or traceable to Cnova's Registration Statement, which incorporated the Prospectus that was filed pursuant to Rule 424(b)(4) on November 21, 2014, in connection with Cnova N.V's initial public offering on or about November 19, 2014. Excluded from the Class are (i) Defendants; (ii) the officers and directors of Defendants; (iii) Casino Guichard Perrachon SA; (iv) the officers and directors of any excluded Person; (v) members of the immediate family of any excluded Person; the legal representatives, agents, heirs, successors, subsidiaries, affiliates or assigns of any excluded Person; and (vi) any other Person in which any excluded Person has a beneficial ownership interest and had contractual control over the operations and/or management of such other Person during the Class Period to the extent of the excluded Person's beneficial ownership interest in such Person.

5.  With respect to the Class, the Court finds that:

(a)     the Class satisfies all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure because:

i.        the members of the Class are so numerous that joinder of all members is impracticable;

ii.       there are questions of law and fact common to the Class;

iii.      the claims and defenses of the representative parties are typical of the Class; and

iv.      the representative parties will fairly and adequately protect the interests of the Class.

3

(b)    In addition, the Court finds that the Action satisfies the requirement of Rule 23(b)(3) of the Federal Rules of Civil Procedure in that there are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy; and

(c)    The Court finds that Lead Plaintiffs Michael Schwabe and Jaideep Khanna have claims that are typical of the claims of other Class Members and that they have and will adequately represent the interest of Class Members and appoints them as the representatives of the Class, and appoints Plaintiffs' Lead Counsel, Brower Piven, A Professional Corporation, as Class Counsel.

6.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement set forth in the Stipulation and finds that said Settlement, and all transactions preparatory and incident thereto, is, in all respects, fair, reasonable, and adequate to, and is in the best interests of, Lead Plaintiffs and all Class Members based on, among other things: the Settlement resulted from arm's-length negotiations between the Lead Plaintiffs and Defendants and/or their counsel; the amount of the recovery for Class Members being well within the range of reasonableness given the strengths and weaknesses of the claims and defenses thereto and the risks of non-recovery and/or recovery of a lesser amount than is represented through the Settlement by continued litigation through all pretrial, trial and appellate procedures; and the recommendation of the Lead Plaintiffs and Defendants, in particular experienced Plaintiffs' Lead Counsel. Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with its terms and

4

conditions. The parties are hereby directed to perform the terms of the Stipulation, and the Clerk of the Court is directed to enter and docket this Final Judgment in this Action.

7. This Court hereby approves the Plan of Allocation as set forth in the Notice as fair and equitable. The Court directs the Claims Administrator, under the supervision of Lead Counsel, to proceed with the processing of Proofs of Claim and the administration of the Settlement pursuant to the terms of the Plan of Allocation and, upon completion of the claims processing procedure, to present to this Court a proposed final distribution order for the distribution of the Net Settlement Fund to eligible Class Members, as provided in the Stipulation and Plan of Allocation.

8. This Court hereby awards and directs payment as provided in the Stipulation to Plaintiffs' Lead Counsel reimbursement of their out-of-pocket litigation expenses in the amount of $163,778.44, and attorneys' fees equal to thirty-three and one-third percent (33 1/3 %) of the Settlement Fund, with interest to accrue on all such amounts at the same rate and for the same periods as has accrued by the Settlement Fund from the date of this Final Judgment to the date of actual payment of said attorneys' fees and expenses to Plaintiffs' Lead Counsel as provided in the Stipulation. The Court finds the amount of attorneys' fees awarded herein are fair and reasonable based on: (a) the work performed and costs incurred by Plaintiffs' Lead Counsel; (b) the complexity of the case; (c) the risks undertaken by Plaintiffs' Lead Counsel and the contingent nature of their employment; (d) the quality of the work performed by Plaintiffs' Lead Counsel in this Action and their standing and experience in prosecuting similar class action securities litigation; (e) awards to successful plaintiffs' counsel in other, similar litigation; and (f) the very substantial benefits achieved for Class Members through the Settlement. The Court also finds that the requested reimbursement of expenses is proper as the expenses incurred by

Plaintiffs' Lead Counsel, including the costs of experts, were reasonable and necessary in the prosecution of this Action on behalf of Class Members.

9. Plaintiffs' Lead Counsel may apply, from time to time, for any fees and/or expenses incurred by them solely in connection with the administration of the Settlement and distribution of the Net Settlement Fund to Class Members to the extent any such application combined with the award of attorneys' fees granted in paragraph 9 above does not exceed thirty-three and one-third (33 1/3) percent of the Settlement Fund.

10. All payments of attorneys' fees and reimbursement of expenses to Plaintiffs' Lead Counsel in the Action shall be made from the Settlement Fund, and the Released Parties shall have no liability or responsibility for the payment of any of Plaintiffs' Lead Counsel's attorneys' fees or expenses except as expressly provided in the Stipulation with respect to the cost of Notice and administration of the Settlement.

11. Pursuant to the Preliminary Approval Order, any putative Class Member had the right to request exclusion from the Class or object to any aspect of the Settlement, Plan of Allocation and/or Plaintiffs' Lead Counsel's application for an award of attorneys' fees equal to one-third of the settlement Fund and reimbursement of expenses not to exceed $400,000, by requesting such exclusion from the Class or asserting such objection(s), in writing, in the manner provided for by the Preliminary Approval Order. Over 9,600 copies of the Notice were sent to prospective Class Members. In response, not a single putative Class Member has, timely or untimely, requested exclusion from the Class or objected to any aspect of the Settlement, Plan of Allocation and/or Plaintiffs' Lead Counsel's application for an award of attorneys' fees or reimbursement of expenses as set forth in the Notice. Accordingly, pursuant to Rule 23(c)(3) of

the Federal Rules of Civil Procedure, all Class Members are bound by this Final Judgment and by the terms of the Stipulation.

12. The Releasing Parties, whether or not such Person executes and delivers a Proof of Claim or otherwise shares in the Settlement Fund, (a) shall be deemed by operation of law to have fully, finally and forever, released, relinquished, waived, dismissed and forever discharged each and every Released Claim against the Released Parties, and (b) shall forever be enjoined from prosecuting, commencing, or instituting, either directly or indirectly, or assisting in the commencement or prosecution of, whether in the United States or elsewhere, any Released Claim against any Released Party. The Released Parties are deemed to fully, finally and forever release, relinquish and discharge the Released Defendants' Claims against Lead Plaintiffs and/or Plaintiffs' Lead Counsel.

13. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), as codified at 15 U.S.C. § 78u-4(f)(7)(A), every Person is permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively, or in any other capacity, in this Court, or in any other federal, foreign, state or local court, forum or tribunal, any claim, counterclaim, cross-claim, third-party claim or other actions based upon, relating to, or arising out of the Released Claims and/or the transactions and occurrences referred to in the Complaint, or in any other pleadings filed in the Action (including, without limitation, any claim or action seeking indemnification and/or contribution, however denominated) against any of the Released Parties, whether such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or are asserted under federal, foreign, state, local or common law.

14.     The Court hereby dismisses with prejudice the Action and all Released Claims against each and all Released Parties and without costs to any of the parties as against the others.

15.     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be offered, received or deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties with respect to the truth of any fact asserted in this Action or the validity of any claim that had been or could have been asserted in this Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Released Parties; or (b) is or may be offered, received or deemed to be or may be used as an admission of, or evidence of, any fault, negligence, wrongdoing or omission of any of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; (c) may be offered, received or is admissible in any proceeding except an action to enforce or interpret the terms of the Stipulation, the Settlement contained therein, and any other documents executed in connection with the performance of the agreements embodied therein; or (d) may be construed against the Released Parties or any Class Member as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial. Defendants and/or the other Released Parties may file the Stipulation and/or this Final Judgment and Order in any action that may be brought against them in order to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Court finds that

during the course of the Action, Lead Plaintiffs, Defendants and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

16.     The Court finds that, pursuant to the Class Action Fairness Act of 2005, the Defendants provided timely and adequate notice of this Settlement to the appropriate state and federal officials.

17.     Without affecting the finality of this Final Judgment in any way, this Court hereby reserves and retains continuing jurisdiction over: (a) implementation and enforcement of any award or distribution from the Settlement Fund or Net Settlement Fund; (b) disposition of the Settlement Fund or Net Settlement Fund; (c) determining applications for payment of attorneys' fees and/or expenses incurred by Plaintiffs' Lead Counsel in connection with administration and distribution of the Net Settlement Fund; (d) payment of taxes by the Settlement Fund; (e) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation; and (f) any other matters related to finalizing the Settlement and distribution of the proceeds of the Settlement.

18.     Neither appellate review nor modification of the Plan of Allocation set forth in the Notice, nor any action in regard to the award of attorneys' fees and/or reimbursement of expenses to Plaintiffs' Lead Counsel and/or the award of costs and expenses to Lead Plaintiffs, shall affect the finality of any other portion of this Final Judgment, and each shall be considered separate for the purposes of appellate review of this Final Judgment.

19.     In the event that the Settlement does not become Final in accordance with the terms of the Stipulation, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all

orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

20.    This Final Judgment and Order is a final judgment in the Action as to all claims asserted. This Court finds, for purposes of Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay and expressly directs entry of judgment as set forth herein.


Dated: March 9 , 2018



HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

10

# TAB 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALINA FLATSCHER, Individually And On
Behalf Of All Others Similarly Situated,

Plaintiff,

v.

THE MANHATTAN SCHOOL OF MUSIC,

Defendant.

20 Civ. 4496 (KPF)

---

### ORDER AWARDING ATTORNEYS' FEES
### AND EXPENSES AND A SERVICE AWARD TO NAMED PLAINTIFF

The Court has considered Plaintiff's Motion For Attorneys' Fees, Costs, Expenses, and Service Award for Named Plaintiff, as well as the supporting memorandum of law and the Declaration of Gregory M. Egleston (ECF Nos. 91-93), and adjudges that the payment of attorneys' fees and costs in the amount of $142,873.52 is reasonable in light of the multi-factor test used to evaluate fee awards in the Second Circuit. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). This award includes Class Counsel's unreimbursed litigation costs and expenses of $11,203.52. Such payment shall be made pursuant to and in the manner provided by the terms of the Stipulation of Settlement (ECF No. 86-1).

The Court has also considered Plaintiff's Motion, Memorandum of Law, and supporting Declaration of Alina Flatscher for a service award to the Class Representative, Alina Flatscher (ECF No. 93-2). The Court adjudges that the

1

payment of a service award in the amount of $10,000 to Ms. Flatscher to compensate her for her efforts and commitment on behalf of the Settlement Class is fair, reasonable, and justified under the circumstances of this case. Such payment shall be made pursuant to and in the manner provided by the terms of the Stipulation of Settlement (ECF No. 86-1).

IT IS SO ORDERED, this eighth day of September, 2023, in New York, New York.

_____
HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

# TAB 8

N984FLAH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALINA FLATSCHER,

                Plaintiff,

           v.                          20 Civ. 4496 (KPF)(SDA)

THE MANHATTAN SCHOOL OF MUSIC,

                                       Decision

                Defendant.

------------------------------x

                                       New York, N.Y.
                                       September 8, 2023
                                       11:10 a.m.

Before:

                HON. KATHERINE P. FAILLA,

                                       District Judge

                       APPEARANCES

GAINEY & McKENNA
     Attorneys for Plaintiff
BY:  GREGORY M. EGLESTON


BOND, SCHOENEK & KING
     Attorneys for Defendant
BY:  GREGORY BERTRAM REILLY III

N984FLAH

(Case called)

MR. EGLESTON:  Good evening, Greg Egleston from Gainey & McKenna LLC.

THE COURT:  Good morning.  Thank you.

And representing the defendant?

MR. REILLY:  Greg Reilly from Bond, Schoenek & King.

THE COURT:  All right.  Thank you as well.

Most often when I have fairness hearings of this type of I have the attorneys and no one else.  There was one hearing I had years ago when it was a full courtroom of objectors.  I always happen to walk out and not see anyone so thank you.

I do appreciate your patience.  I was consulting with another judge on another matter a moment ago.  I appreciate your patience.

I want to make sure I have the appropriate documents. I have a motion for final approval of a class action settlement, memorandum of law, a declaration and proposed final judgment, and relatedly, I have a motion for attorneys' fees, a memorandum of law, a declaration, a proposed order, and then I have a defendant letter indicating a lack of opposition.

Mr. Egleston, from your perspective, sir, is there anything else I should have?

MR. EGLESTON:  No, your Honor.  That's everything.  I think my office sent you everything by mail.

THE COURT:  All right.  There you have it.

N984FLAH

Mr. Reilly, is there anything else I should have?

MR. REILLY:  No, your Honor.

THE COURT:  Thank you.

Just one other question, my recollection of the papers that I reviewed, was that there were no objectors and that there was one opt out.  That was as of the date of the materials I have.

Has there been any change in that?

MR. EGLESTON:  I spoke to the claims' administrator. It's only one exclusion.  I also emailed Mr. Reilly yesterday. He hasn't received anything.  We haven't received anything. There's 951 class members, and we have one exclusion and no objections to the settlement or the motion for the attorney fees and expenses of the case contribution award.  Notice went out.  802 members were emailed the short form notice and 149 class members were mailed the short form notice.  There were only 13 email bounce backs out of the 802, and they were then sent by mail, and those were delivered.  Out of the 149, there were only nine undeliverable mailings where the claims administrator did an advanced search to see if they could find their addresses, and they could not.  I spoke with Mr. Reilly earlier --

THE COURT:  I just need you to be a little closer to the microphone, sir.

MR. EGLESTON:  I spoke to Mr. Reilly a little earlier,

and we will do our best to try to locate those nine people that did not receive the notice.

THE COURT:  Thank you.

For the 13 email bounce backs for which there was a subsequent mailing of the notice, were any of those returned as undeliverable?

MR. EGLESTON:  No.

THE COURT:  So we are down to nine people about with whom we have some concern about notice.

MR. EGLESTON:  Yes.

THE COURT:  Understood.  Thank you so much.  All right.  Mr. Reilly, is there anything you want to add to either the notice or objection questions that I've been asking of?

MR. REILLY:  No, your Honor.

THE COURT:  OK.  Thank you.

All right.  Well, I could keep you here all morning, but I will not because there are no objections.

There is an oral decision that I will read into the record, and spoiler alert, I'm finding the settlement to be fair and awarding attorneys' fees as requested.  But I'll just ask you to listen, and I thank you in advance for your indulgence as I read this into the record.

This action stems from an allegation that Defendant Manhattan School of Music's cessation of in-person instruction, restriction of access to school facilities, and transition to

N984FLAH

online learning during the COVID-19 pandemic caused injuries to plaintiff, Alina Flatscher and other students at the school. On March 8th of 2023, the parties notified the Court that they had reached an agreement in principle to settle this action on a class-wide basis.  On May 15 of 2023, after granting two extensions of the deadline to file a motion for preliminary approval of the settlement, this Court certified a settlement class comprised of all students enrolled at the Manhattan School of Music ("MSM") who were assessed and paid spring semester 2020 tuition, except for those students who "withdrew from MSM prior to March 15 of 2020," and any student who "properly executed and files a timely opt-out request to be excluded from the settlement class."  In the same order, the Court granted the plaintiff's motion for preliminary approval of the settlement agreement.

So now before this Court is an unopposed application for final approval of the parties' settlement agreement, which involves principally the creation of a settlement fund totaling $399,999 to compensate each settlement class member for spring 2020 tuition and fees, the settlement the class member paid or had paid on his or her behalf, and as well an unopposed application for attorneys' fees and expenses.  After considering these submissions, the Court approves the settlement agreement and grants the fee petition.

I'm about to give law that I know the parties are

N984FLAH

intimately familiar with.  It's important that I say it, nonetheless.

Federal Rule of Civil Procedure 23(e)(2) provides that where "a proposed settlement" of a class action "would bind class members, the Court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate," that is Rule 23(e)(2) of the Federal Rules of Civil Procedure.  And in determining whether to approve such a class action settlement, "a court must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's length, good faith negotiation between experienced and skilled litigators."  I'm quoting here from Second Circuit's 2013 decision in *Charron v. Weiner*, 731 F.3d 241.

The Court must also evaluate substantive fairness of the settlement, considering the nine factors set forth in *Detroit v. Grinnell Corporation*, 495 F.2d 448, a Second Circuit decision of 1994 that was abrogated on other grounds like *Goldberger v. Integrated Resource Inc.*, 209 F.3d 43 (2d Cir. 2000).

The questions before the Court at this hearing, as presented in plaintiff's briefing are three:  Whether the settlement agreement is procedurally fair, whether it is substantively fair, and whether the class notice was fair.  The history of this case confirms that the settlement agreement is

N984FLAH

procedurally fair.  The Second Circuit recognizes the presumption of fairness, reasonableness, and advocacy as to a settlement where a class settlement is reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.  I'm quoting here from two different cases from the Second Circuit, the 2009 decision in *McReynolds v. Richards-Cantave*, 588 F.3d 790.  And that attorney is quoting *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc. 396 F.3d 96 (2d Cir. 2005).

Here the settlement is non-collusive inclusive and is the result of arm's length negotiations between parties in, I believe at least four, settlement conferences before Magistrate Judge Stewart Aaron.  Judge Aaron's involvement helps to ensure that the proceedings were free from collusion and undue pressure and these negotiations took place following the motion to dismiss and other opportunities for class counsel to investigate plaintiff's claims and to become familiar with their strengths and weaknesses.

Further, the class notices adequately advised the settlement class about the existence of the class action; the terms of the proposed settlement, the benefits to each settlement class member; the proposed fees and costs to class counsel; and each settlement class members' right to object or opt out of the settlement.

And because plaintiff has established that the

N984FLAH

settlement agreement is procedurally fair, and no party provides any reason to think that the presumption of reasonableness should not apply in this case, the Court find that the settlement agreement is procedurally accurate.

We turn now to the *Grinnell* factors in assessing substantive reasonableness.  And they are, the complexity, expense and likely duration of the litigation; the reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the risks of maintaining a class action through the trial; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation.

In finding that the settlement is fair, not every factor must weigh in favor but rather the Court should consider the totality of these factors in light of the particular circumstances.  I'm quoting here from a colleague's decision, *In re Global Crossing Securities and Erisa Litigation*, 225 F.R.D. 436.

So going through these factors and beginning with the complexity, expense, and likely duration of litigation, here plaintiff argues that this would be considerable.

N984FLAH

Specifically, the plaintiff identifies the remaining thresholds of class certification and summary judgment, as well as preparation for what would likely be a multi-week trial and that would have caused this litigation to persist for an extended period of time.  Plaintiff maintains that even if she were to establish liability, she would still have to prove damages on her claim for a partial refund of tuition and to certify litigation class.

The Court also notes plaintiff has already faced mixed results in this litigation -- with respect I say that -- including the dismissal of two of her claims pursuant to defendants' motion to dismiss.  Where this litigation to continue, there is no doubt that plaintiff would face additional hard-fought battles.  And given these facts, the Court finds that when compared to the risk, expenses, and delays associated with future litigation -- we haven't even yet talked about appeal -- the first *Grinnell* factor weighs in favor of settlement approval.

Turning now to the reaction of the class to the settlement.  I just now confirmed with plaintiff's counsel that there has been one opt out and no objectors.  And I'm also confident that all but nine members of the settlement class have been notified of the proposed settlement.  If only a small number of objections are received that fact can be reviewed as indicative of the adequacy of the settlement.  I'm quoting here

N984FLAH

from the *Walmart Stores* case I mentioned earlier.  So this lack of dissent counsels in favor of approval.  That was discussed in one of this Court's own decisions *Oleniak v. Time Warner Cable, Inc*. 2013 WL 12447094 and so that counsels in favor of approval.

In terms of the stage of the proceedings and the amount of discovery completed, this is designed to ensure that counsel for plaintiffs have weighed their position based on full consideration of the possibilities facing them.  I'm quoting here from a colleague's decision *In re Citigroup Inc. Bond Litig*., 296 F.R.D. 147.  It is not the case of formal discovery is required and, in fact, courts in this circuit routinely approve early class settlements so long as the parties have completed enough investigation to agree on a reasonable settlement.  The Court recognizes that the instant settlement was reached only after class counsel reviewed the underlying documents exchanged between the named plaintiff and MSM, which would include the alleged contract documents -- also after named plaintiff drafted multiple separate pleadings, survived in part motion to dismiss, engaged in discovery, engaged in multiple depositions and, their words, not mine, protracted settlement negotiations with defendant, and exchange of nonpublic information regarding the alleged damages.  This factor therefore counsels in favor of approval.

The next would be risk establishing liability,

N984FLAH

establishing damages, or maintaining the class action through trial.  In this setting the Court balances the benefits afforded to members of the class and the immediacy and certainty of a substantial recover for them against the continuing risks of litigation.  I'm quoting from a colleague's decision in *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358.  On the liability damages factors, plaintiff asserts that defendant's intention to continue to contest all elements of named plaintiff surviving claims combined with the language and complexity of the case, make further litigation inherently risky.  Plaintiff notes that even were she to establish liability, she would still have to prove damages on her claim for a partial refund of tuition.  She observes that any effort to establish damages would have relied heavily on expert testimony, likely leading to a battle of the experts at trial and *Daubert* challenge and correctly acknowledges that success in such a battle is uncertain, and were her experts to be restricted or excluded from testifying, her case would become that much more difficult to prove.

Plaintiff also notes that any pay out from a trial would potentially be delayed for years with the appeals process and that the certainty of a prompt pay out is particularly important given the additional hardships imposed by the COVID-19 pandemic.

On this factor plaintiff asserts that had the matter

N984FLAH

not reached a settlement, class certification would have been litigated vigorously.  Defendant would have opposed class certification.  Defendant could still have moved later to decertify the class or trim the class before trial or on appeal.  Therefore, all of these factors weigh in favor of approval.

On the issue of the ability of defendant to withstand a greater judgment, I don't believe I have evidence on that point.  But I also believe that that factor is not one that I would need to consider even if it were demonstrated it would not outweigh the many factors in favor of approval.

Turning to the range of reasonableness of the settlement fund.  In light of the best possible recovery and in light of the attempted risks of litigation.  These are the final two *Grinnell* factors and they are typically combined.  Here the settlement agreement secures monetary compensation for class members whose education was impacted by the COVID-19 pandemic.  The Court recognizes the universe of cases involving similar types of claims identified by plaintiff and benchmarks for recovery that those cases represent.  And the Court finds that this guaranteed recovery for all class members is a reasonable disposition of the claims remaining in this case.  Particularly in light of the fact that it can be difficult to quantify the value of injuries caused by data breaches.

In addition, this Court has already reviewed the

N984FLAH

litigation risks inherent in the case, and it finds that the settlement agreement is a fair resolution in light of those risks.

And therefore for all of these reasons, the Court finds that the unopposed motion for final approval of the settlement is to be granted because the settlement is both substantively and procedurally fair.

We turn now to the issue of fees and costs.  On that front, plaintiff's counsel seeks $142,873.52, in attorney fees and expenses, which includes counsel's unreimbursed litigation costs and expenses of $11,203.52.  Plaintiff's counsel represents that the attorneys' fees requested represent approximately 33 percent of the value of the total settlement, but plaintiff's counsel seeking as well a $10,000 service award for Ms. Flatscher, the lead plaintiff in this action.  As noted, defendant does not oppose either request.

Let me turn then to the evaluation if the attorneys' fees and costs.  Courts may award attorneys' fees in common fund cases under either the lodestar method or the percentage of the fund method.  That's discussed in the Second Circuit's *Walmart* case of earlier.  The trend in this circuit is towards the percentage method, which directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation. Neither the lodestar, nor the percentage of fund approach to

N984FLAH

awarding attorneys' fees in common fund case is without problems, and, accordingly, the Second Circuit has left the decision as to the appropriate method to the district court, which is intimately familiar with the nuances of the case. I'm quoting here from the Second Circuit's decision in the *McDaniel v. County of Schenectady* from 2010. It in turn is quoting the *Goldberger* case I mentioned earlier. Here, plaintiff's counsel advocating for a percentage of the fund method, defendant does not object.

And therefore I'm considering whether this fee is reasonable in light of the *Goldberger* factors. They include the time and labor expended by counsel, the magnitude and complexities of the litigation, the risk of the litigation, the quality of representation, the requested fee in relation to the settlement, and public policy considerations. And there is a degree, as the Court noted, that these factors overlap with the *Grinnell* factors I mentioned earlier.

Speaking first about time and labor expended by counsel, I'm advised by plaintiff's counsel that there is a total of 470.95 attorney and professional hours on this case, and I have been given a record of Mr. Egleston's fee declaration. Defendant does not dispute plaintiff's counsel's representation of the time spent working on this matter, nor have the events of this litigation provided this Court with any reason to believe that plaintiff counsel expended an

unreasonable amount of time litigating this case.  I also considered the Lodestar as well as what my colleagues refer to as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall.  Here, I'm advised that given the lodestar report and the 470.95 attorney and professional hours, plaintiff's counsel incurred approximately $384,522.25 worth of attorney's fees.  Therefore the requested amount is a significant downward departure from the lodestar amount.  I'm also crediting that plaintiff's counsel will be committing significant ongoing time and resource to this litigation after settlement.  And I'm also aware that counsel is here now, and every moment I spend reading this decision, ever so slightly less the amount he is going to receive.

Turning now to the magnitude and complexities of the litigation and the risks of litigation, these also weigh in favor of a significant award.  Plaintiff's counsel notes that the claims and legal theories were novel, complicated, and unsettled, and identified a number of cases in which motions to dismiss were granted by other federal courts across the country.  This Court recognizes those cases.  I've seen them in connection with the motion to dismiss.  And I've seen as well the risks associated with this litigation, plaintiff's success and class certification at trial was far from guaranteed, and plaintiff's counsel assumed these risks by taking the case on contingency.

N984FLAH

Turning to the quality of representation, the Court recognizes the comparable cases identified by plaintiff's counsel in the memorandum of law and supported final approval of the settlement. And those cases indicate that each student's average recovery of $445 in this matter would fall at the high end of the spectrum of recovery in this subject area. And that reflects class counsel's quality representation.

I'm also to consider the experience and background of plaintiff's counsel. I have here the firm is an experienced class action firm with a history of representing plaintiffs in complex cases including a similar tuition refund case involving Columbia University. The submissions reflect their experience in class actions and their expertise in the area. And I credit, as well, plaintiff counsel's observation that this case was litigated against a sophisticated and able opponent in the Bond Schoenek firm. Excuse me for mangling the last name.

Turning now to the requested fee in relation to this settlement. I do consider that to ensure that the percentage awarded does not constitute a windfall. And where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. Here the plaintiff submits that the requested fee award, $131,670 exclusive of expenses represents 33 percent of the settlement fund. The defendant does not contest the value of the settlement, nor the percentage calculation. And this Court

N984FLAH

recognizes that in similar cases brought before sister courts in this district, Judge Furman and Judge Seibel each awarded 33 percent of attorneys' fees to the settlement fund.  For Judge Furman that was Columbia University tuition refund action.  And for Judge Seibel it was an action brought against the University of Tampa.  There is no reason for this Court in this case to merit a different result, and the Court therefore find the requested fee award to be reasonable in relation to this settlement.

The final *Goldberger* factor, public policy considerations also support a substantial attorney's fee. Courts are to consider here the social and economic value of the class action, the need to encourage experience and able counsel to undertake such litigation, and class actions are a safeguard for public rights.  Awarding plaintiff's counsel the requested fee supports the public policy of encouraging meritorious class action suits so that students with low-value individual claims may vindicate their legal rights especially in novel and unprecedented actions such as the one before this Court.  That's discussed at some length in the *Walmart* decision I mentioned earlier.

For all of these reasons and given all of the factors weighing in favor of plaintiff's requested fee, the Court will award fees in the amount of $131,670.  Courts also normally grant expense requests in common fund cases as a matter of

N984FLAH

course.  Here there is a request for $11,203.52 in fees, including deposition transcripts, expert fees, and filing fees. The defendant does not challenge the reasonableness of these fees, and this Court does not either.

And then there is a $10,000 service award for Ms. Flatscher, and the Court recognizes Judge Seibel's similar award of $10,000 to the named plaintiff in the settlement of the University of Tampa case and Judge Furman's even greater awarding of $25,000 in the Columbia University case.  Here the named plaintiff devoted significant hours to this litigation. She subjected herself to deposition and she assumed significant reputational risk by suing her former university and facing potential criticism from peers, professors, future employers, and future alumni.  And therefore the service award for Ms. Flatscher is reasonable and appropriate.

I do have copies of proposed orders regarding the final judgment and regarding the fees, expense, and service award.

Mr. Egleston, if you have not sent them to me in Word, could you do that?

MR. EGLESTON:  I will, your Honor.

THE COURT:  Thank you.

Yes, I've approved the settlement.  I'm approving the fees award.  I will be entering judgment in this case, and I will be entering the award with respect to fees and expenses.

Let me just please ask a couple of questions because I'm just interested. If I'm not supposed to know, you'll tell me I'm not supposed to know.

Mr. Egleston, what happened to Ms. Flatscher? What is she doing now?

MR. EGLESTON: I believe Ms. Flatscher is now -- she was going to graduate school in California. And I think she is back over in Austria at the moment.

THE COURT: OK.

MR. EGLESTON: We were on the phone, you know, I could tell you this, she has this little ski hut in Austria. My wife is German so we go to Austria all the time. I never met her in person. I met her over Zoom. But that's what she doing right now. I think she is finishing up a graduate degree. I'm not really sure if she is back in the States at this moment, but for the summer I think she was in Austria.

THE COURT: She is pursuing a career here?

MR. EGLESTON: She is. And she loves it and she's very happy.

THE COURT: We wish her success. Thank you.

Separately, if I may know the, significance of the settlement fee, one dollar less than $400,000. If I'm not allowed to know, I'm not allowed to know. In my mind it's an insurance issue or something like that. But maybe it's just a number that everyone can stomach.

MR. EGLESTON:  I could speak to that.  That's what Magistrate Aaron proposed.  So it was either that or litigate.

THE COURT:  I talked to Judge Aaron only to know there were conferences.  I don't get to know the gory details.  Maybe some day in the future I'll ask him how he came up with the number.

Mr. Reilly, anything else I should know today, sir?

MR. REILLY:  No, I'll just say, and I think Mr. Egleston agrees, Magistrate Judge Aaron was very helpful.

THE COURT:  He always is.  He is a real benefit to me as colleague and as friend.  I'm glad to hear that and, if I may, I'll pass on your regards to him.

MR. REILLY:  Very patient.

THE COURT:  Yes, with all of us actually.  So yes, thank you very much.

Mr. Egleston, anything else?

MR. EGLESTON:  I will say the same.  It was a pleasure working with Magistrate Aaron, and it always a pleasure to be before you.  I've been before you in other case, not a lot, but it's always a pleasure.

THE COURT:  I thank you both very much.  We are adjourned.  Thanks so much.

(Adjourned)

# TAB 9

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/14/22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HAWAII STRUCTURAL IRONWORKERS PENSION TRUST FUND, Individually and on behalf of all others similarly situated, | : : : : : | Civil Action No. 1:18-cv-00299-AJN (Consolidated for all purposes with Civil Action No. 1:18-cv-00510-AJN) |
| Plaintiff, | : : | |
| v. | : : | |
| AMC ENTERTAINMENT HOLDINGS, INC., *et al.*, | : : : | |
| Defendants. | : : | |

---

**ORDER GRANTING MOTION
FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO PLAINTIFFS PURSUANT
TO THE PSLRA**

---

This matter came for hearing on February 10, 2022 (the "Final Approval Hearing"), on the application of the International Union of Operating Engineers Pension Fund of Eastern Pennsylvania and Delaware ("Operating Engineers") and the Hawaii Iron Workers Pension Trust Fund ("Hawaii Iron Workers," and with Operating Engineers, "Plaintiffs"), to determine whether Plaintiffs' requests for attorneys' fees, payment of litigation expenses, and awards to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) should be approved.

The Court, having considered all matters submitted to it at the Final Approval Hearing and otherwise, **IT IS HEREBY ORDERED:**

1. This Order hereby incorporates by reference the definitions in the Stipulation and Agreement of Settlement ("Stipulation") filed with the Court on November 1, 2021 (ECF No. 214-1), and all capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation.

2.      This Court has jurisdiction to enter this Order.  The Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3.      Class Counsel is awarded attorneys' fees in the amount of $6,000,000.00, and expenses in the amount of $1,290,333.96, plus any applicable interest, such amounts to be paid out of the Settlement Fund immediately following entry of this Order.  The Court finds that Class Counsel's efforts in this litigation and the results achieved on behalf of the Class merit an award of the requested attorneys' fees.  Further, the Court finds that the litigation expenses incurred by Class Counsel were reasonable and necessary in the prosecution of this litigation, such that payment of the requested litigation expenses is warranted.

4.      Class Representative Operating Engineers is awarded $4,625.00 and Class Representative Hawaii Iron Workers is awarded $21,217.79, as compensatory awards for reasonable costs and expenses directly relating to the representation of the Class as provided in  15 U.S.C. § 78u-4(a)(4), such amounts to be paid from the Settlement Fund upon the Effective Date of the Settlement.

5.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is directed.

    **IT IS SO ORDERED.**

DATED: __2/14/22_____

_____
THE HONORABLE ALISON J. NATHAN
UNITED STATES DISTRICT JUDGE

2

# TAB 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

LANDMEN PARTNERS INC., Individually       :   Civil Action No. 08-cv-03601-HB-FM
and On Behalf of All Others Similarly Situated, :

                                          :   CLASS ACTION
                         Plaintiff,       :
                                          :   FINAL JUDGMENT AND ORDER OF
        vs.                               :   DISMISSAL WITH PREJUDICE
                                          :
THE BLACKSTONE GROUP L.P., et al.,        :
                                          :
                         Defendants.      :

_____ x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12 18 13

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Notice to the Class ("Notice Order") dated August 30, 2013, on the unopposed application of Lead Plaintiffs for approval of the Settlement set forth in the Settlement Agreement, dated August 28, 2013 ("Stipulation"), and following a hearing on December 18, 2013. Due and adequate notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.      This Final Judgment incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2.      This Court has jurisdiction over the subject matter of the Action and over all Settling Parties to the Action, including all members of the Class.

3.      For purposes of this Judgment, as certified by the Court's August 13, 2013 Order, the Class is defined as all Persons who purchased the common units of The Blackstone Group L.P. ("Blackstone") in Blackstone's initial public offering ("IPO") or in the open market on the New

- 1 -

York Stock Exchange between June 21, 2007 and March 12, 2008, inclusive, and who sustained compensable damages in connection with any such purchase of Blackstone units pursuant to Sections 11 and 15 of the Securities Act of 1933.

Excluded from the Class are: (i) the persons who submitted valid and timely requests for exclusion from the Class, who are listed on Exhibit A hereto; (ii) Defendants; (iii) members of the immediate family of each of the Defendants; (iv) any Person that acted as an underwriter of the IPO; (v) any natural Person who sold Blackstone common units to the public in the IPO or who serves or served as an officer or director of Blackstone or as a partner of any predecessor to Blackstone, the members of the immediate families of any such persons, and any entity in which any of Defendants have or had a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded Person (collectively, "Excluded Persons").

For the avoidance of doubt, the Excluded Persons are excluded from the Class only to the extent they purchased Blackstone common units in the IPO for their own account and not for or on behalf of a third-party customer or for resale to customers. Further, to the extent that any of the Excluded Persons was a statutory "seller" who resold the Blackstone common units to a third-party customer, client, account, fund, trust, or employee benefit plan that otherwise falls within the Class, or purchased Blackstone common units in a fiduciary capacity or otherwise on behalf of any third-party customer, client, account, fund, trust, or employee benefit plan that falls within the Class, the Excluded Person is excluded from the Class but the third-party customer, client, account, fund, trust, or employee benefit plan is not excluded from the Class with respect to such purchases of Blackstone common units.

4. For purposes of this Judgment, as certified by the Court's August 13, 2013 Order, Lead Plaintiffs Martin Litwin and Francis Brady are Class Representatives, and Lead Counsel

- 2 -

Robbins Geller Rudman & Dowd LLP and Brower Piven, A Professional Corporation, are Class Counsel.

5. Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Class. There are no objections to the proposed Settlement.

6. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Stipulation and Settlement are fair, reasonable, and adequate as to each of the Settling Parties, and that the Stipulation and Settlement are hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.

7. Accordingly, the Court authorizes and directs implementation of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof. The Court hereby dismisses, as to Defendants, the Action and all Released Claims of the Class with prejudice, without costs as to any Settling Party, except as and to the extent provided in the Stipulation and herein.

8. Upon the Effective Date hereof, and as provided in the Stipulation, Lead Plaintiffs shall, and each of the Class Members shall, be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers the Proof of Claim and Release.

9. Upon the Effective Date hereof, and as provided in the Stipulation, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, each and all of the Class Members, Lead Counsel and Abraham Fruchter & Twersky LLP from all claims (including, without

- 3 -

limitation, Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement, or resolution of the Action.

10. Upon the Effective Date hereof, and as provided in the Stipulation, Lead Plaintiffs and each of the Class Members who have not validly opted out of the Class, and their respective predecessors, successors, agents, representatives, attorneys, and affiliates, and the respective heirs, executors, administrators, successors, and assigns of each of them, directly or indirectly, individually, derivatively, representatively, or in any other capacity, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged against the Released Persons (whether or not such Class Members execute and deliver the Proof of Claim and Release forms) any and all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.

11. Upon the Effective Date, Lead Plaintiffs and each of the Class Members who have not validly opted out of the Class, and their respective predecessors, successors, agents, representatives, attorneys, and affiliates, and the respective heirs, executors, administrators, successors, and assigns of each of them, directly or indirectly, individually, derivatively, representatively, or in any other capacity, shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement against any Released Person, in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, of any and all Released Claims (including, without limitation, Unknown Claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement, or resolution of the Action or the Released Claims.

12.    The Notice of Proposed Settlement of Class Action ("Notice") given to the Class in accordance with the Notice Order, entered on August 30, 2013, was the best notice practicable under the circumstances, including the individual notice to all members of the Class who could be identified through reasonable effort, of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation, the proposed Plan of Distribution of the proceeds of the Settlement set forth in the Notice, Lead Counsel's application for attorneys' fees and reimbursement of expenses, and Lead Plaintiffs' request for an award of reasonable costs and expenses relating to their representation of the Class, and said Notice and notice procedures fully satisfied the requirements of Federal Rule of Civil Procedure 23, the Private Securities Litigation Reform Act of 1995, and the requirements of due process. There are no objections to the Notice and/or notice procedures.

13.    The Court hereby approves the Plan of Distribution as set forth in the Notice as fair and equitable. The Court directs Lead Counsel to proceed with processing Proofs of Claim and the administration of the Settlement pursuant to the terms of the Plan of Distribution and, upon completion of the claims processing procedure, to present to this Court a proposed final distribution order for the distribution of the Net Settlement Fund to eligible Class Members, as provided in the Stipulation and the Plan of Distribution. There are no objections to the Plan of Distribution.

14.    The Court hereby awards Lead Counsel attorneys' fees equal to 33.33% percent of the Settlement Fund (including interest accrued thereon), and litigation expenses in the amount of $1,047,005.77, with interest to accrue thereon at the same rate and for the same periods as has accrued by the Settlement Fund from the date of this Judgment to the date of actual payment of said attorneys' fees and expenses to Lead Counsel as provided in the Stipulation. The Court finds the amount of attorneys' fees awarded herein are fair and reasonable based on: (a) the work performed

- 5 -

and costs incurred by Lead Counsel; (b) the complexity of the case; (c) the risks undertaken by Lead Counsel and the contingent nature of their employment; (d) the quality of the work performed by Lead Counsel in this Action and their standing and experience in prosecuting similar class action securities litigation; (e) awards to successful plaintiffs' counsel in other, similar litigation; (f) the benefits achieved for Class Members through the Settlement; and (g) the absence of any objections from any Class Members to either the application for an award of attorneys' fees or expenses to Lead Counsel.

15. The Court also finds that the requested expenses are proper as the expenses incurred by Lead Counsel, including the costs of experts, were reasonable and necessary in the prosecution of this Action on behalf of Class Members. There are no objections to Lead Counsel's application for reimbursement of their expenses.

16. The Court approves payment of $15,000.00 to Lead Plaintiff Martin Litwin for his reasonable time and expenses (including lost wages) relating to their representation of the Class. Such payment shall be paid out of the Settlement Fund. There are no objections to Lead Plaintiff Litwin's application for reimbursement of his costs and expenses.

17. All fees and expenses awarded or allowed in this Judgment shall, except as otherwise expressly provided in the Stipulation, be paid from the Settlement Fund.

18. Lead Counsel may apply, from time to time, for any fees and/or expenses incurred by them solely in connection with the administration of the Settlement and distribution of the Net Settlement Fund to Class Members which, except as expressly provided in the Stipulation, shall be paid from the Settlement Fund.

19. Neither appellate review nor modification of the Plan of Distribution set forth in the Notice, nor any action in regard to the motion by Lead Counsel for attorneys' fees and/or expenses

and the award of costs and expenses to Lead Plaintiffs, shall affect the finality of any other portion of this Judgment, nor delay the Effective Date of the Stipulation, and each shall be considered separate for the purposes of appellate review of this Judgment.

20.     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Persons, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Defendants and/or the Released Persons may file the Stipulation and/or this Judgment from this Action in any other action in which they are parties or that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

21.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing exclusive jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, interest, and expenses in the Action; (d) payment of taxes by the Settlement Fund; (e) all Settling Parties hereto for the purpose of construing, enforcing, and administering the Stipulation; and (f) any other matters related to finalizing the Settlement and distribution of proceeds of the Settlement.

22.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, or in the event that the Settlement

-7-

Fund, or any portion thereof, is returned to Defendants, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

23. Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

24. The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

25. The Court directs immediate entry of this Final Judgment by the Clerk of the Court.

IT IS SO ORDERED.

DATED: Dec 18, 2013

THE HONORABLE HAROLD BAER, JR.
UNITED STATES DISTRICT JUDGE

## EXHIBIT A
## BLACKSTONE: LIST OF EXCLUSIONS

| | Name | City | St | Country | Zip |
|---|---|---|---|---|---|
| 1 | LINA HU | OSHAWA | ON | CA | LIJ 7C6 |
| 2 | ESTATE OF ANTHONY J FABEC | WILLOUGHBY HILLS | OH | US | 44094 |
| 3 | WILLIAM PATTERSON | KINGS MOUNTAIN | NC | US | 28086 |
| 4 | MARY ANN SHOTWELL | VIRGILINA | VA | US | 24598 |
| 5 | RICHARD A LEWIS | BULLARD | TX | US | 75757 |
| 6 | JOHN MERCADENTE, JR. | READING | PA | US | 19606 |
| 7 | DOUGLAS BARHORST | SIDNEY | OH | US | 45365 |
| 8 | PATRICIA G NORMAN | KEARNEY | NE | US | 68845 |
| 9 | ESTATE OF RICHARD A NORMAN | KEARNEY | NE | US | 68845 |
| 10 | ROBERT W DUER | ALTA LOMA | CA | US | 91701 |
| 11 | ANIBAL MARRERO | CORAL GABLES | FL | US | 33134 |
| 12 | RUSS D SONNIER | NEW YORK | NY | US | 10150 |
| 13 | MARCUS E & JOANNE R NORTH | VICTORIA | TX | US | 77905 |
| 14 | SUZANNE EMETAROM | WALNUT CREEK | CA | US | 94595 |
| 15 | WILLIAM W & FRANCES E MAIN | ROBERTS | MT | US | 59070 |
| 16 | ANTHONY BRIENZA | COLD SPRING HARBOR | NY | US | 11724 |
| 17 | SHU HAO HUANG | SNOHOMISH | WA | US | 98296 |
| 18 | KENNETH O PARRIS | ATHENS | GA | US | 30604 |
| 19 | DUFF S MCEVERS | LAGUNA NIGUEL | CA | US | 92677 |
| 20 | SHERRIE L FRANTZ | EUGENE | OR | US | 97404 |
| 21 | DEBBIE CRINK | OMAHA | NE | US | 68138 |
| 22 | MARK A SUMMERS | MINNETRISTA | MN | US | 55364 |
| 23 | PAULINE MEYEROWITZ | FT LAUDERDALE | FL | US | 33308 |
| 24 | ANDREW WAHL | SAN FRANCISCO | CA | US | 94115 |

# TAB 11

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE SILVERCORP METALS, INC. SECURITIES LITIGATION | Case No. 12-cv-9456 (JSR) **CLASS ACTION** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILE
DOC #: _____
DATE FILED: 2/13/15



## [PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL

**WHEREAS:**

(A) This Action[1] was originally commenced on or about December 28, 2012. Plaintiffs Charles A. Burnes and Dale Hachiya were appointed as Lead Plaintiffs on April 15, 2013, and the Court approved their choice of counsel, Pomerantz Grossman Hufford Dahlstrom & Gross, n/k/a Pomerantz LLP. An Amended Complaint was filed June 11, 2013, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5) against Silvercorp, Feng, and Tang.

(B) By order entered August 8, 2013, which the Court reaffirmed in a memorandum entered July 1, 2014, the motion to dismiss Feng and Tang was granted, and Lead Plaintiffs' GAAP claim against Silvercorp was dismissed, but Silvercorp's motion to dismiss was otherwise denied.

---

[1] Capitalized terms herein shall have the same definitions as set forth in the Stipulation and Agreement of Settlement (the "Stipulation").

(C)    On October 23, 2014, Lead Plaintiffs, acting on behalf of themselves and a proposed Settlement Class, entered into a Stipulation with Settling Defendants to settle this Action on the terms provided therein.

(D)    Pursuant to the Preliminary Approval Order entered on November 12/2014, this Court scheduled a Settlement Hearing for February 9, 2015, at 4:00 p.m., to, *inter alia*, determine: (a) whether the proposed Settlement was fair, reasonable, and adequate, and should be approved by the Court; and (b) whether a judgment substantially in the form hereof should be entered herein (the "Final Approval Hearing").

(E)    The Court has received affidavit(s) and/or declaration(s) attesting to compliance with the terms of the Preliminary Approval Order, including the mailing of the Notice and publication of the Publication Notice.

(F)    Due to adequate notice having been given to the Settlement Class as required by the Preliminary Approval Order, and the Court having held a Settlement Hearing on February 9, 2015 and the Court having considered all papers filed and proceedings in this Action and otherwise being fully informed of the matters herein, and good cause appearing,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1.    The provisions of the Stipulation, including definitions of the terms used therein, are hereby incorporated by reference as through fully set forth herein.  All capitalized terms used herein have the meanings set forth and defined in the Stipulation.

2.    This Court has jurisdiction over the subject matter of this Action and over all parties to this Action, including Settlement Class Members.

3.      For purposes of Settlement only, and pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), this Action is certified as a class action on behalf of the following persons (the "Settlement Class" or the "Class"):

All persons or entities that purchased Silvercorp common stock on the NYSE market between May 20, 2009 and September 13, 2011 (both dates inclusive). Excluded from the Settlement Class are Defendants, the current officers and directors of Silvercorp, the former officers and directors of Silvercorp, and members of any of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

4.      Also excluded from the Settlement Class are all persons and/or entities who excluded themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice, their names appearing on Exhibit A hereto. They are not bound by this Order and Final Judgment (the "Judgment"), and may not make any claim with respect to or receive any benefit from the Settlement. Such excluded persons and/or entities may not pursue any Settlement Class Claims on behalf of those who are bound by this Judgment.

5.      The Court affirms its finding that the prerequisites for a class action under Rule 23 (a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied, and certifies the above Settlement Class solely for purposes of this Settlement, finding that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Lead Plaintiffs are typical of the claims of the Settlement Class; (d) Lead Plaintiffs have fairly and adequately represented the interests of the Settlement Class; (e) the questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

6.     Based on the finding that Lead Plaintiffs have fairly and adequately represented the interests of the Settlement Class, the Court affirms its appointment of Lead Plaintiffs as the class representatives for the Settlement Class.  The Court finds that Lead Counsel have fairly and adequately represented the interests of the Settlement Class, and affirms its appointment of Lead Counsel as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

7.     This Court finds that the distribution of the Notice and the publication of the Publication Notice, and the notice methodology, all implemented in accordance with the terms of the Settlement Stipulation and the Court's Preliminary Approval Order:

(a)     Constituted the best practicable notice to Settlement Class Members under the circumstances of this Action;

(b)     Were reasonably calculated, under the circumstances, to apprise Settlement Class Members of: (i) the proposed Settlement of this Action; (ii) their right to exclude themselves from the Settlement Class; (iii) their right to object to any aspect of the proposed Settlement; (iv) their right to appear at the Settlement Hearing, either on their own or through counsel hired at their own expense, if they did not excluded themselves from the Settlement Class; and (v) the binding effect of the proceedings, rulings, orders, and judgments in this Action, whether favorable or unfavorable, on all persons not excluded from the Settlement Class;

(c)     Were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and

(d)     Fully satisfied all applicable requirements of the Federal Rules of Civil Procedure (including Rules 23(c) and (d)), the United States Constitution (including the Due Process Clause), the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), the

- 4 -

Private Securities Litigation Reform Act of 1995, the Rules of Court, and any other applicable law.

8. The terms and provisions of the Stipulation were negotiated by the parties at arm's length and were entered into by the parties in good faith.

9. The Settlement set forth in the Stipulation is fully and finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class taking into account, *inter alia*, the benefits to the Settlement Class; the complexity, expense, and possible duration of further litigation; the risks of establishing liability and damages; and the costs of continued litigation. It shall be consummated in accordance with the terms and provisions therein, and the Lead Plaintiffs and the Settlement Class Members, and all and each of them, are hereby bound by the terms of the Settlement as set forth in the Stipulation.

10. The Plan of Allocation, as described in the Notice and Publication Notice, is hereby approved as fair, reasonable and adequate. Any order, proceeding, appeal, modification or change relating to the Plan of Allocation or the Fee and Expense Award shall in no way disturb or affect the finality of this Judgment, and shall be considered separate from this Judgment.

11. Upon the Effective Date, Lead Plaintiffs and Settlement Class Members (whether or not they submit a Proof of Claim or share in the Net Settlement Fund), on behalf of themselves and their heirs, executors, administrators and assigns, and any person(s) they represent, shall be deemed by this Order to have, and shall have, released, waived, dismissed, and forever discharged the Settlement Class Claims, and shall be deemed by this Order to be, and shall be forever enjoined from prosecuting each and every one of the Settlement Class Claims.

12. Upon the Effective Date, Settling Defendants, on behalf themselves and their heirs, executors, administrators, insurers, reinsurers, and assigns, and any person(s) they represent, shall

be deemed by this Order to have, and shall have, released, waived, dismissed, and forever discharged the Defendant Claims, and shall be deemed by this Order to be, and shall be forever enjoined from prosecuting each and every one of the Defendant Claims.

13. The Settlement Consideration having been paid to the Escrow Account by Settling Defendants, the Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund is distributed or returned to the Defendants pursuant to the Stipulation and/or further order of this Court.

14. The Settling Defendants and all former defendants have denied, and continue to deny, any and all allegations and claims asserted in the Action, and the Settling Defendants have represented that they entered into the Settlement solely in order to eliminate the burden, expense, and uncertainties of further litigation. This Judgment, whether or not it becomes Final, and any statements made or proceedings taken pursuant to it:

(a) Is not, shall not be deemed to be, and may not be argued to be or offered or received against any of the Released Parties as evidence of, or construed as evidence of any presumption, concession, or admission by any of the Released Parties with respect to the truth of any fact alleged by the Lead Plaintiffs in this Action or the validity of any claim that has been or could have been asserted against any of the Released Parties in this Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in this Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind by any of the Released Parties.

(b) Is not, shall not be deemed to be, and may not be argued to be or offered or received against any of the Released Parties as evidence of, or construed as evidence of any presumption, concession, or admission of any fault, misrepresentation, or omission

with respect to any statement or written document approved or made by any of the Released Parties, or against the Lead Plaintiffs or any Settlement Class Member as evidence of, or construed as evidence of any infirmity of the claims alleged by the Lead Plaintiffs.

(c)    Is not, shall not be deemed to be, and may not be argued to be or offered or received against any of the Released Parties, the Lead Plaintiffs, or any Settlement Class Member as evidence of, or construed as evidence of any presumption, concession, or admission by any of the Released Parties, the Lead Plaintiffs, or any Settlement Class Member with respect to any liability, negligence, fault, or wrongdoing as against any of the Released Parties, the Lead Plaintiffs, or any Settlement Class Member in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation or this Judgment, provided, however, that, the Released Parties, the Lead Plaintiffs, and any Settlement Class Member may use it to effectuate the liability protection granted them by the Stipulation and may file this Judgment in any action brought against them to support an argument, defense, or counterclaim based on principles of res judicata, collateral estoppel, release, good faith-settlement, judgment bar, reduction, or any theory of claim or issue preclusion (or similar argument, defense, or counterclaim);

(d)    Is not, shall not be deemed to be, and may not be argued to be or offered or received against any of the Released Parties as evidence of, or construed as evidence of any presumption, concession, or admission by any of the Released Parties that the Settlement Consideration represents the amount which could or would have been received after trial;

- 7 -

(e)     Is not, shall not be deemed to be, and may not be argued to be or offered or received against Lead Plaintiffs or any Settlement Class Member as evidence of, or construed as evidence of any presumption, concession, or admission by any of the Lead Plaintiffs or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by Defendants or any former defendants in this Action have any merit, or that damages recoverable in this Action would not have exceeded the Settlement Fund; and

(f)     Is not, shall not be deemed to be, and may not be argued to be or offered or received as evidence of, or construed as evidence of any presumption, concession, or admission that class certification is appropriate in this Action, except for purposes of this Settlement.

15.     No person shall have any claim against Lead Plaintiffs, Lead Counsel, the Settlement Administrator, the Escrow Agent or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement, the Plan of Allocation, or further orders of the Court, except in the case of fraud or willful misconduct. No person shall have any claim under any circumstances against the Released Parties, based on any distributions, determinations, claim rejections or the design, terms, or implementation of the Plan of Allocation.

16.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated, and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

17.     The Parties are hereby authorized, without further approval of the Court, to unanimously agree to and adopt in writing such amendments, modifications, and expansions of the Stipulation and all exhibits attached thereto, provided that such amendments, modifications, and expansions of the Stipulation are done in accordance with the terms of Paragraph 48 of the Stipulation, are not materially inconsistent with this Judgment, and do not materially limit the rights of the Settlement Class Members under the Stipulation. This Court finds that during the course of this Action, all Parties, Lead Counsel and counsel to the Settling Defendants at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

18.     Lead Counsel are awarded attorneys' fees in the amount of three million five hundred thousand U.S. dollars (USD$3,500,000.00) and reimbursement of expenses, including experts' fees and expenses, in the amount of two hundred twenty-six thousand, nine hundred thirty-three U.S. dollars and ninety-three cents (USD$226,933.93), such amounts to be paid from out of the Settlement Fund. Lead Plaintiffs Dale Hachiya and Charles A Burnes are awarded the sum of twelve thousand five hundred U.S. dollars (USD$12,500.00) each, as reasonable costs and expenses directly relating to the representation of the Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from the Settlement Fund.

19.     The attorneys' fees and expenses awarded herein shall be payable from the Settlement Fund, 50% payable ten (10) business days after entry of this Judgment and 50% payable upon distribution of the Settlement fund proceeds to the Class.

20.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement and any award or distribution from the Settlement Fund, including interest earned thereon; (b) disposition of the Net Settlement Fund; (c) hearing and determining applications for attorneys' fees, costs, interest and

reimbursement of expenses in the Action; and (d) all parties for the purpose of construing, enforcing and administering the Settlement.

21.     This Action and all Settlement Class Claims are dismissed with prejudice. The parties are to bear their own costs, except as otherwise provided in the Stipulation or this Judgment.

22.     The provisions of this Judgment constitute a full and complete adjudication of the matters considered and adjudged herein, and the Court determines that there is no just reason for delay in the entry of this Judgment. The Clerk is hereby directed to immediately enter this Judgment.

**SO ORDERED** in the Southern District of New York on ____2/11____, 2015.

_____
THE HON. JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

## Exhibit A

### Persons Excluded From The Settlement

(1)   Richard G. Byerly, 3315 Cargill Street, Pittsburgh, PA 15219;

(2)   Dmitry I. Kamenev, 1075 Myrtle Street, Apt. 13, Los Alamos, NM 87544.

# TAB 12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHIVA STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE BANCORP, INC., SUSAN G. RIEL, RONALD D. PAUL, CHARLES D. LEVINGSTON, JAMES H. LANGMEAD, and LAURENCE E. BENSIGNOR,<br><br>Defendants. | Case No. 1:19-cv-06873-LGS |

## ORDER AWARDING ATTORNEYS' FEES
## AND REIMBURSEMENT OF LITIGATION EXPENSES

This matter came on for hearing on January 20, 2022 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was provided to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and litigation expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated June 28, 2021 (ECF No. 72-1, "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the action and all parties to this action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

1

4.      Per Lead Counsel's motion for attorneys' fees as amended by it's letter of January 27, 2022 (Dkt. Nos 85, 101), Lead Counsel are hereby awarded attorneys' fees in the amount of $2,250,000, which is 30% of  the 7.5 million settlement amount, and $71,121.58 in reimbursement of counsel's out-of-pocket litigation expenses, which fees and expenses shall be paid from the Settlement Fund.  The Court finds these sums to be fair and reasonable.  Half of the fee award and all of the expense reimbursement are payable immediately, and the remaining half of the fee award is payable upon substantial distribution to the Settlement Class upon prior written notice to the Court.

5.      In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      The Settlement has created a fund of $7,500,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel and other Plaintiffs' Counsel;

(b)      Approximately 35,448 Notice Packets, consisting of the Notice and Claim Form, were mailed to potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 33⅓% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $105,000.  There were no objections to the requested attorneys' fees and reimbursement of Litigation Expenses;

(c)      Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)      The Action raised a number of complex issues;

2

(e)     Had Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less than the Settlement Amount, or nothing at all, from Defendants;

(f)     Plaintiffs' Counsel devoted at least 2,164.10 hours through December 14, 2021, with a lodestar value of approximately $1,531,095.00 and a lodestar multiplier of 1.47, to achieve the Settlement; and

(g)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     Lead Plaintiff Danilee Cassinelli, as Trustee of the Danilee Cassinelli Trust DTD 7-23-93 is hereby awarded $7,500 from the Settlement Fund as reimbursement for her reasonable costs and expenses directly related to her representation of the Settlement Class.

7.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.     Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Settlement.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this 10th day of February, 2022.

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

4

# TAB 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

### 3.   A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit permits courts to "cross-check" the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect the quality of the result, the contingency-fee risk, and other relevant factors. *See, e.g., Flag Telecom*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'"); *Comverse*, 2010 WL 2653354, at *5 ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

"In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *16 (S.D.N.Y. July 21, 2020) (collecting cases). *See also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (in complex contingent litigation, "[c]ourts commonly award lodestar multipliers between two and six"). Even higher multipliers have been awarded, particularly where, as here, "Class Counsel were able to use their considerable expertise in the type of claims asserted in th[e] action to achieve an excellent result for the Class in a highly efficient manner at an early stage of litigation." *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012). *See Maley v. Del. Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding that a multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country" in securities cases); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20,

13

2011) (4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (3.97 multiplier)

Here, if the Court decides to consider it, a lodestar cross-check would support the requested fee. Plaintiffs' Counsel devoted 2,453.95 hours of attorney and staff time in prosecuting this Action, and its lodestar – derived by multiplying the hours each person worked by their current hourly rates – is $1,703,987.75[4] *See* Wernke Decl., ¶¶20-22. The requested fee of 33.3% of the Settlement Amount represents a multiplier of 3.8 of lodestar. *Id.*

The multiplier here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and is fully justified given the effort required, the risks faced and overcome, and the results achieved. *See, e.g., See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (approving a lodestar multiple of "just over 6"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (lodestar multiplier of 5 found "not unreasonable"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 20, 2011) (4.7 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, ECF 107 at 5 (¶9(f)) (S.D.N.Y. July 17, 2007) (awarding "a reasonable multiplier of 10.26"); *Davis v. J.P.*

---

[4] The Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate lodestar as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. See *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; Jenkins, 491 U.S. at 284.

*Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. Oct. 11, 2011) (multiplier of 5.3 was "not atypical" in similar cases).

The reasonableness of the lodestar multiplier is further confirmed upon examining recent fee awards from this District. *See, e.g., In Re Wells Fargo & Company Securities Litigation*, No. 1:20-cv-04494, ECF 206 at 2 (S.D.N.Y. Sep. 8, 2023) (awarding fees representing a multiplier of 3.8 as referenced in the fee brief at ECF 189 at 21); *City of St. Clair Shores Police and Fire Retirement System v. Credit Suisse Group AG*, No. 1:21-cv-03385, ECF No. 94 at 1 (S.D.N.Y. May 11, 2023) (awarding fees representing a multiplier of 5.6 as referenced in the fee brief at ECF 79 at 29); *In re Luckin Coffee Inc. Securities Litigation*, No. 1:20-cv-01293, ECF 338 at 2-3 (S.D.N.Y. Jul. 22, 2022) (awarding fees with a lodestar multiplier of 4.6); *In re BRF S.A. Securities Litigation*, No. 1:18-cv-02213, ECF 181 at 16-19 (S.D.N.Y. Nov. 2, 2020) (awarding $10 million in fees with a lodestar multiplier of 5.57)

The multiplier is amply supported by the outstanding nature of the recovery as well as the significant risks Lead Counsel faced in pursuing this complex securities litigation on a contingency basis. The risk of no recovery in cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 328 (S.D.N.Y. 2023) (granting summary judgment after over six years of litigation), *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005). Even plaintiffs who get past summary judgment and succeed at trial may

find their judgment overturned on appeal or on a post-trial motion.[5] Moreover, even when cases

settle, attorneys often do not recover the value of their time expended on behalf of the class. A

survey by Lead Counsel of the 92 most recent securities class action settlements in this District

revealed that 40 of the settlements were submitted with a ***negative*** lodestar multiplier.

Here, Lead Counsel's reputation as experience counsel in complex securities cases

facilitated Lead Counsel's ability to not only achieve an excellent result for the Settlement Class

but also do so relatively early in the case so as to not diminish or delay the Settlement Class's

recovery. Such diligence should be rewarded, not penalized for such efficiency. As Judge Castel

recently observed:

> I think it's very important from a public policy standpoint, from the interests of class
> members, the public, and the administration of justice, that a plaintiff's counsel not
> be penalized because their lodestar is perhaps lower than other people's lodestars
> because they did not take the case through the motion practice, through the
> discovery, etc. It would really not be a very difficult task for a plaintiff's counsel to
> just prolong the process to run up a lodestar, which would serve no useful purpose
> other than to justify fees and would impose burdens on other parties. So I do not
> believe the plaintiffs should, in any way, be penalized for the multiple of the
> lodestar on the facts of this particular case.

---

[5] *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props*., 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig*., 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp*., 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment notwithstanding the verdict was denied, on appeal the judgment was reversed and the case was dismissed after 11 years of litigation); B*erkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

*In re BRF S.A. Securities Litigation*, No. 1:18-cv-02213, ECF 181 at 17-18 (S.D.N.Y. Nov. 2, 2020) (awarding $10 million in fees with a lodestar multiplier of 5.57). *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *9 (S.D.N.Y. Sept. 4, 2013) (awarding fee that amounts to 5.65 multiplier, noting that counsel "should be rewarded for having reached a substantial and beneficial result prior to the Court ruling on a motion to dismiss").

Thus, the multiplier is within the acceptable range awarded in cases of this type.

The hourly rates used by Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Wernke Decl. ¶25; Wolf Popper Decl. ¶5. Courts in this Circuit have approved Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g., In re Jumia Techs. S.A. Sec. Litig.*, Case No. 1:19-cv-04397-PKC (S.D.N.Y. Mar. 24, 2021) (ECF No. 128); *Pirnik v. Fiat Chrysler Automobiles N.V.*, No. 15-cv-07199-JMF (S.D.N.Y. Sept. 5, 2019) (ECF No. 369). Lead Counsel's rates are also reasonable in comparison to defense counsel's rates. *See, e.g.*, Sixth Interim Application of Cooley LLP at 4-6, *In re Mallinckrodt PLC*, No. 20-125222 (JTD) (Bankr. D. Decl. May 17, 2022), ECF No. 7392 (Wernke Decl. Ex. 4) (a fee application in a bankruptcy matter for the first quarter of 2022 included hourly rates of $1,180 to $1,590 for Cooley's partners; $1,165 to $1,175 for special counsel; $720 to $1,155 for associates; and $300 to $380 for paralegals).

Thus, the time and effort Plaintiffs' Counsel have devoted to this case to obtain the $19,650,000 recovery for the Settlement Class confirms that the requested fee is reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

## B. Reimbursement of Litigation Expenses

In addition to Lead Counsel's request for a fee of 33.3% of the net Settlement Fund, Lead Counsel seeks reimbursement of $55,464.66 in litigation costs and expenses incurred by Plaintiffs' Counsel in connection with the prosecution of the Action. "Courts routinely grant the expense

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE Y-mAbs THERAPEUTICS, INC. SECURITIES LITIGATION | Civil Action No.: 1:23-cv-00431-AS |

**FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

On the 28th day of ___October___, 2024, a hearing having been held before this Court to determine, among other things: (1) whether the terms and conditions of the Stipulation of Settlement dated June 26, 2024 (the "Stipulation") are fair, reasonable, and adequate for the settlement of all claims asserted by Lead Plaintiff and the Settlement Class against Y-mAbs Therapeutics, Inc., Thomas Gad and Claus Juan Møller San Pedro (collectively, the "Defendants") as a settlement of this litigation (the "Settlement"); (2) whether to approve the proposed Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among the Settlement Class Members; (3) whether to approve Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund; and (4) whether to approve Lead Plaintiff's application for a compensatory award to be paid from the Settlement Fund.

The Court having considered all matters submitted to it at the hearing and otherwise; and

It appearing that the Notice substantially in the form approved by the Court in the Court's Order Preliminarily Approving Settlement and Providing For Notice ("Preliminary Approval Order") was mailed to all reasonably identifiable potential Settlement Class Members; and

It appearing that the Publication Notice substantially in the form approved by the Court in the Preliminary Approval Order was published in accordance with the Preliminary Approval Order and the specifications of the Court; and

It appearing that the Stipulation, all forms of the Notice, and the Proof of Claim were posted on the Claims Administrator's website;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Unless indicated otherwise, capitalized terms used herein have the same meanings defined in the Stipulation.

2. The Court has jurisdiction over the subject matter of the Action, Lead Plaintiff, all Settlement Class Members, and the Defendants.

3. In the Preliminary Approval Order the Court certified, for purposes of the Settlement only, the Action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Settlement Class consisting of all persons who purchased, or otherwise acquired, the stock of Y-mAbs between October 6, 2020, and October 28, 2022, both dates inclusive (the "Settlement Class Period"). Excluded from the Settlement Class are Defendants; members of their immediate families and their affiliates; any entity in which any Defendant had a controlling interest during the Settlement Class Period; any person who served as an officer or director of Y-mAbs during the Settlement Class Period; the judges presiding over the Action and the immediate family members of such judges; any persons or entities listed on the Settlement Exclusion List (as defined in the Stipulation); and the successors, heirs, and assigns of any excluded person. Per the terms of the Stipulation, Defendants shall assist in identifying the persons and entities to be excluded from the Settlement Class. Also excluded are those persons or entities who filed valid and timely requests

2

for exclusion in accordance with the Preliminary Approval Order. If any persons or entities have filed such valid and timely requests for exclusion, they are set forth in Exhibit A hereto; if no person or entity has filed such a valid and timely request for exclusion, there is no Exhibit A hereto.

4.      The Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions met the requirements of due process and Fed. R. Civ. P. 23 and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation. No Settlement Class Member is relieved from the terms of the Settlement, including the releases provided for therein, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the hearing thereon. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged and that the statutory waiting period has elapsed. Thus, it is hereby determined that all members of the Settlement Class are bound by this Order and Final Judgment, except those persons (if any) listed on Exhibit A to this Order and Final Judgment.

5.      The Settlement, whereby Defendants caused to be paid per the terms of the Stipulation an aggregate gross payment amount of nineteen million six hundred fifty thousand dollars ($19,650,000.00), is approved as fair, reasonable and adequate, and in the best interests of the Settlement Class. The Court finds that there was no collusion in connection with the Stipulation; the Stipulation was the product of informed, arm's length negotiations among

3

competent, able counsel representing the Parties' interests; and the record is sufficiently developed and complete to have enabled the Lead Plaintiff, Lead Counsel, Defendants, and their counsel to have adequately evaluated and considered their positions before deciding to settle. Lead Plaintiff and Defendants are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

6.      Except with respect to any persons who have validly and timely requested exclusion from the Settlement Class (as listed on any Exhibit A hereto), this Action is dismissed with prejudice as to the Defendants.

7.      Lead Plaintiff and all Settlement Class Members (regardless of whether they submitted a Proof of Claim or share in the Settlement Fund) on behalf of themselves, their successors, heirs, executors, administrators, and assigns, hereby release, waive, and forever discharge all of the Released Settlement Class Claims against Defendants and other Released Parties. Lead Plaintiff and the Settlement Class Members hereby are permanently and forever enjoined from prosecuting the Released Settlement Class Claims, as set forth in the Stipulation. For purposes of this Order and Final Judgment:

   a. "Released Settlement Class Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims, whether contingent or absolute, whether suspected or unsuspected, whether asserted or unasserted, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in

4

the Action; or (ii) could have asserted in any court or forum that arise out of or are based on the allegations, transactions, facts, matters, occurrences, representations, or omissions in any of Plaintiffs' pleadings in the Action and that relate to the purchase or acquisition of shares of Y-mAbs common stock during the Settlement Class Period. "Released Settlement Class Claims" shall exclude claims relating to the enforcement of the Settlement.

b. "Released Parties" means, for the Released Settlement Class Claims, (a) Defendants Y-mAbs, Gad, Møller, Rajah (b) their respective past, present or future directors, officers, employees, parents, partners, members, principals, agents, owners, fiduciaries, shareholders, related or affiliated entities, subsidiaries, divisions, accountants, auditors, attorneys, associates, consultants, advisors, insurers, co-insurers, reinsurers, trustees, estates, beneficiaries, administrators, foundations, underwriters, banks or bankers, personal or legal representatives, divisions, joint ventures, spouses, domestic partners, family members, heirs, executors, or any other person or entity acting or purporting to act for or on behalf of any of the Defendants, and each of their respective predecessors, successors and assigns, and any trusts for which any of them are trustees, settlors, or beneficiaries, and (c) any persons or entitles listed on the Settlement Exclusion List (as defined in the Settlement Agreement).

8.     Defendants and other Released Parties, on behalf of themselves, their successors, heirs, executors, administrators, and assigns, hereby fully, finally, and forever release, relinquish, and discharge each and every one of the Released Defendant Claims against Lead Plaintiff, any Settlement Class Member, and any of their counsel including Lead Counsel. Defendants and other

5

Released Parties are hereby permanently and forever enjoined from prosecuting the Released Defendant Claims, as set forth in the Stipulation. For purposes of this Order and Final Judgment:

    a. "Released Defendant Claims" means any and all claims or causes of action of every nature and description, whether known or Unknown Claims, whether asserted or unasserted, whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants, including without limitation any claims under Fed. R. Civ. P. 11, except for claims relating to the enforcement of the Settlement.

    b. "Released Parties" means, for the Released Defendant Claims, Lead Plaintiff, Lead Counsel, and the Settlement Class members.

9. **Bar Order**: All Persons are barred from commencing, prosecuting, or asserting any Barred Claims (as defined below). All Barred Claims are hereby extinguished, discharged, satisfied, and unenforceable. If any term of this Bar Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all Released Parties the fullest protection permitted by law from any Barred Claim. For purposes of this Order and Final Judgment:

    a. "Barred Claim" means any claim, if any, however styled, whether for indemnification, contribution, or otherwise and whether arising under state, federal or common law, against the Defendants or other Released Parties

6

(including claims asserted by Released Parties against other Released Parties) where the claim is or arises from a Released Claim and the alleged injury to such Person arises from that Person's alleged liability to the Settlement Class or any Settlement Class Member, including any claim in which a Person seeks to recover from any of the Released Parties (i) any amounts such person or entity has or might become liable to pay to the Settlement Class or any Settlement Class Member and/or (ii) any costs, expenses, or attorneys' fees from defending any claim by the Settlement Class or any Settlement Class Member.

10.   Notwithstanding the foregoing, nothing in this Order and Final Judgment:

a.   Will bar the Released Parties from pursuing claims that are outside the scope of or independent of the Released Claims, including but not limited to any claim that any Released Party may have for indemnification related to costs and expenses incurred in conjunction with the Action;

b.   Will bar or constitute a release of any claim by any of the Released Parties for insurance or reinsurance coverage arising out of, related to, or in connection with this Action or the Released Claims; or

c.   Shall prevent Lead Plaintiff or any Settlement Class Member from pursuing any claim against Defendants or other Released Parties that are excluded from the Released Settlement Class Claims as set forth above.

d.   Shall prevent any Person listed on any Exhibit A hereto from pursuing any claim against any Released Party; if any such Person pursues any such claim against any Released Party, nothing in this Order and Final Judgment or in the

7

Stipulation shall operate to preclude such Released Party from (i) asserting any claim of any kind against such Person, including any Released Claim or (ii) seeking contribution or indemnity from any Person, including any other Released Party, in respect of the claim made by a Person listed on Exhibit A.

11. Lead Plaintiff's counsel are awarded attorneys' fees in the amount of $_____6,543,350.00_____, plus interest at the same rate and for the same periods as earned by the Settlement Fund (until paid), and expenses in the amount of $_____55,464.66_____, plus interest at the same rate and for the same periods as earned by the Settlement Fund (until paid), such amounts to be paid from the Settlement Fund upon entry of this Order. Lead Counsel shall thereafter be solely responsible for allocating the attorneys' fees and expenses among Wolf Popper LLP and Glancy Prongay & Murray LLP in the manner in which ~~Lead Counsel in good faith believe reflects the contributions of such counsel~~ Lead Counsel described in its October 28, 2024 letter to the Court at Dkt. 68. ~~to the initiation, prosecution, and resolution of the Actions.~~ In the event that this Judgment does not become Final, and any portion of the Fee and Expense Award has already been paid from the Settlement Fund, Lead Counsel shall within thirty (30) calendar days of entry of the order rendering the Settlement and Judgment non-Final or notice of the Settlement being terminated, refund the Settlement Fund the Fee and Expense Award paid to Lead Counsel.

12. Lead Plaintiff is awarded the sum of $_____5,000.00_____, as reasonable costs and expenses directly relating to the representation of the Settlement Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from the Settlement Fund upon the Effective Date of the Settlement.

13. The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members.

14.     The Court finds that all parties and their counsel have complied with each requirement of Fed. R. Civ. P. 11 as to all proceedings herein.

15.     Neither this Order and Final Judgment, the Preliminary Approval Order, the Stipulation (including the exhibits thereto), the Memorandum Of Understanding ("MOU"), nor any of the negotiations, documents or proceedings connected with them shall be deemed to be, or be, argued to be offered or received:

a.     Against any of the Defendants or other Released Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants or other Released Parties with respect to the truth of any fact alleged by the Lead Plaintiff in this Action or the validity of any claim that has been or could have been asserted against any of the Defendants or the Released Parties in this Action, or the deficiency of any defense that has been or could have been asserted in the Action, or of any alleged wrongdoing or liability by any of the Defendants or other Released Parties;

b.     Against any of the Defendants, the Lead Plaintiff, any Settlement Class Member, or the other Released Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them with respect to any liability, negligence, fault, or wrongdoing as against any of them in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation, provided, however, that if this Stipulation is approved by the Court, the Defendants, the Lead Plaintiff, any Settlement Class Member, and the other

9

Released Parties may refer to it to effectuate the liability protection granted them hereunder;

c. Against any of the Defendants or other Released Parties as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the Settlement Amount represents the amount which could or would have been received after trial of the Action against them;

d. Against the Lead Plaintiff or any Settlement Class Member as evidence of, or construed as evidence of, any presumption, concession, or admission by Lead Plaintiff or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by the Defendants in the Action have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Fund;

e. Against the Lead Plaintiff or any Settlement Class Member or Lead Counsel as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Lead Plaintiff in the Complaint or the Action or of any lack of merit to the claims or the Action or of any bad faith, dilatory motive, or inadequate prosecution of the claims or the Action or any non-compliance with Fed. R. Civ. P. or any similar rule or ethical obligation.

16. Notwithstanding the foregoing Paragraph 15, the Parties and other Released Parties may file or refer to this Order and Final Judgment, the Stipulation, Preliminary Approval Order, and/or any Proof of Claim Form: (a) to effectuate the liability protections granted hereunder or thereunder, including without limitation, to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or

10

any theory of claim preclusion or issue preclusion or similar defense or counterclaim; (b) to obtain a judgment reduction under applicable law; (c) to enforce any applicable insurance policies and any agreements relating thereto; or (d) to enforce the terms of the Stipulation and/or this Order and Final Judgment.

17. Exclusive jurisdiction is hereby retained over the Parties for all matters relating to the Action, including the administration, interpretation, effectuation or enforcement of the Stipulation or Settlement and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the Settlement Class Members.

18. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions in the Stipulation.

19. There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is directed pursuant to Fed. R. Civ. P. 54(b).

20. The finality of this Order and Final Judgment shall not be affected, in any manner, by any appeals concerning the Attorneys' Fees and Expenses awarded herein, the compensatory award to Lead Plaintiff, or the Plan of Allocation.

21. In the event that the Settlement does not become Final and effective in accordance with the terms and conditions set forth in the Stipulation, then the Stipulation, except as otherwise provided in ¶¶2.3, 2.4, 2.5, 3.6, 3.9, 3.11, 3.12, 3.13, 3.14, 3.15, 8.2, 9.2, 9.3, 9.4, 10.1, 10.4, 10.5, 10.13, 10.14, 10.16, and 10.18 therein, including any amendment(s) thereto, the Preliminary Approval Order, as set forth in ¶26 thereof, and this Order and Final Judgment, except for ¶¶14, and 20-22 shall be rendered null and void of no further force or effect, and all Parties shall be deemed to have reverted *nunc pro tunc* to their respective status prior to the execution of the MOU,

11

and all Parties shall proceed in all respects as if the MOU and the Stipulation had not been executed and the related orders had not been entered, without prejudice in any way from the negotiation, fact, or terms of the Settlement, and preserving all of their respective claims and defenses in the Action, and shall revert to their respective positions in the Action.  In such circumstances, all Parties shall thereafter work together to arrive at a mutually agreeable schedule for resuming litigation of the Action.

22.     In the event the Settlement and Judgment do not become Final or the Settlement is terminated in accordance with the terms and conditions set forth in the Stipulation, within ten (10) business days of entry of the order rendering the Settlement and Judgment non-Final or notice of the Settlement being terminated, all monies then held in the Notice & Administration Account and Settlement Fund, including interest earned, shall be returned to Defendants or any other person or entity who or which paid any portion of the Settlement Fund, *pro rata* as had been paid by them respectively, per their instructions, except for any monies paid or any then-accrued costs yet-to-be-paid for Notice & Administration Costs, Taxes, and Tax Expenses.  Under those circumstances, Lead Counsel shall undertake to return those amounts by taking all steps necessary to cause the Escrow Agent to make the foregoing repayments.  Lead Plaintiff and the Settlement Class shall have no responsibility for the return of such consideration.

23.     If, instead, the Settlement and Judgment become Final, once they become Final, there shall be no reversion whatsoever of any monies held in the Notice & Administration Account or Settlement Account to any of the Defendants or any other person or entity who or which paid any portion of the Settlement Amount.

24.     Any Court orders entered during this Action relating to the confidentiality of information shall survive this Settlement.

12

Local Rule 23.1 requires that in class action cases, the notice "must include a statement of the names and addresses of the applicants for the fees and the amounts requested respectively and must disclose any fee sharing agreements with anyone." Here, the notice sent out to class members mentioned the names of the other law firms with whom fees would be shared (Glancy Prongay & Murray LLP and Wolf Popper LLP) and indicated that Lead Counsel would be requesting a total amount "not greater than one-third . . . of the Settlement Fund." Dkt. 64-1. While the notice did not comply with all of Local Rule 23.1's requirements, the disclosures that were made satisfy the Court that no remedial action is needed. However, counsel are reminded to familiarize themselves with and adhere closely to Local Rule 23.1 in all future proceedings.

The Clerk of Court is respectfully directed to close the case.


Dated: ___October 29___, 2024

_____
THE HON. ARUN SUBRAMANIAN
UNITED STATES DISTRICT JUDGE

13